Civil Case No.

(Guam Superior Court Nos. CF 0317-97 & SP 0228-03;
Guam Supreme Court Nos. CRA 00-002 & WHC 04-001;
Ninth Circuit No. 01-70172; United States Supreme Court
No. 00-10126)

DISTRICT COURT OF GUAM

---

RANDY IGNACIO CHARGUALAF,

Petitioner,

vs.

ROBERT D. CAMACHO,
Director of Corrections,
Government of Guam,

Respondent,

and

THE ATTORNEY GENERAL OF GUAM,

Additional Respondent.

---

PETITION FOR WRIT OF HABEAS CORPUS

---

HOWARD TRAPP

Howard Trapp Incorporated
200 Saylor Building
139 Chalan Santo Papa
Hagåtña, Guam 96910
Telephone (671) 477-7000

Attorney for petitioner

**ORIGINAL**

FILED
DISTRICT COURT OF GUAM
MAY -5 2005
MARY L.M. MORAN
CLERK OF COURT

Civil Case No.

(Guam Superior Court Nos. CF 0317-97 & SP 0228-03;
Guam Supreme Court Nos. CRA 00-002 & WHC 04-001;
Ninth Circuit No. 01-70172; United States Supreme Court
No. 00-10126)

## DISTRICT COURT OF GUAM

---

RANDY IGNACIO CHARGUALAF,

Petitioner,

vs.

ROBERT D. CAMACHO,
Director of Corrections,
Government of Guam,

Respondent,

and

THE ATTORNEY GENERAL OF GUAM,

Additional Respondent.

---

## PETITION FOR WRIT OF HABEAS CORPUS

---

TO THE HONORABLE JUDGE OF THE DISTRICT COURT OF GUAM:

I

The petitioner's name is "Randy Ignacio Chargualaf." He has no prison number. He is confined at the Department of Corrections of the government of Guam in Mangilao, Guam.

The court which entered the judgment of conviction under attack is the

Superior Court of Guam. The case number is CF 0317-97. The date of the judgment of conviction is March 9, 2000. The date of sentencing was February 1, 2000. The length of the sentence is 35 years. The crimes of which petitioner was convicted and sentenced are robbery, conspiracy to commit robbery, and theft. Petitioner's plea was "not guilty." The trial was to a jury. Petitioner did not testify at the trial.

II

This petition is timely. The date on which the judgment became final by the conclusion of direct review is January 23, 2004. That the date on which the judgment became final by the conclusion of direct review is January 23, 2004, more fully appears hereinbelow. The time during which properly filed applications for Guam post-conviction review with respect to the judgment of conviction were pending was from September 26, 2003, to November 5, 2004. That the time during which properly filed applications for Guam post-conviction review with respect to the judgment of conviction were pending was from September 26, 2003, to November 5, 2004, more fully appears hereinbelow. (*See Saffold v. Carey*, 312 F.3d 1031 (9th Cir. 2002), *cert. denied*, 539 U.S. 927 (2003).) Accordingly, the time from September 26, 2003, to November 5, 2004, is not counted toward any period of limitation under 28 U.S.C. § 2244(d).

III

Petitioner has exhausted the remedies available in the courts of Guam. That petitioner has exhausted the remedies available in the courts of Guam more

2

fully appears hereinbelow. The exhaustion requirement does not extend to the Supreme Court of the United States. (*Fay v. Noia*, 372 U.S. 391, 435-38 (1963).)

IV

Petitioner appealed from the judgment of conviction to the Supreme Court of Guam. The case number is CRA 00-002. The grounds raised were different from those in the present proceeding. The result was as follows:

> APPEAL from the Superior Court of Guam and the subsequent filing for Certiorari by the Appellant, Randy Ignacio Chargualaf, to the United States Court of Appeals for the Ninth Circuit.
>
> THIS CAUSE came before this court on October 26, 2000. The Appellant's Petition for Writ of Certiorari to the Ninth Circuit was *DENIED*. The denial was filed on April 16, 2001 by the Ninth Circuit. The Supreme Court of Guam did not receive a copy of the Order filed April 16, 2001 from the Ninth Circuit. The appellant upon the decision of the Ninth Circuit, filed a Petition for Writ of Certiorari to the United States Supreme Court in which the Petition was *DENIED* on October 1, 2001. The Supreme Court of Guam did not receive a copy of the Order filed October 1, 2001, from the United States Supreme Court. These aforementioned decisions having recently come to the attention of this court, the mandate of this court is herein issued.
>
> ON CONSIDERATION THEREOF, it is now hereby ordered and adjudged by this court that the trial court's denial of the Appellant's motion to suppress the evidence and in-court identification and the judgment of conviction is *AFFIRMED*.

The date of the result was January 23, 2004.

Petitioner filed a petition for writ of certiorari to the United States Court of Appeals for the Ninth Circuit. The case number is 01-70172. The grounds

3

raised were different from those in the present proceeding. The result was as follows: "The petition for writ of certiorari to review a final decision of the Supreme Court of Guam is denied." The date of the result was April 16, 2001.

Petitioner filed a petition for writ of certiorari to the Supreme Court of the United States. The case number is 00-10126. The grounds raised were different from those in the present proceeding. The result was as follows: "Petition for writ of certiorari to the United States Court of Appeals for the Ninth Circuit denied." (*Chargualaf v. Guam*, 534 U.S. 843 (2001).) The date of the result was October 1, 2001. (*Id.*)

On September 26, 2003, petitioner filed a petition for writ of habeas corpus to the Superior Court of Guam. The case number is SP 0228-03. The grounds raised were identical to those in the present proceeding. Petitioner received an evidentiary hearing on his petition. The result was as follows: "Petitioner Randy Ignacio Chargualaf's Petition for Writ of Habeas Corpus is hereby *DENIED*." The date of the result was February 27, 2004.

On July 8, 2004, petitioner filed a petition for writ of habeas corpus to the Supreme Court of Guam. The case number is WHC 04-001. The grounds raised were identical to those in the present proceeding. Petitioner did not receive an evidentiary hearing on his petition. The result was that "the Writ [sic] for Habeas Corpus is hereby denied." The date of the result was October 4, 2004.

On October 18, 2004, petitioner filed a petition for rehearing to the Supreme Court of Guam. The result was that "Chargualaf's Petition for Rehearing

4

is hereby *DENIED*." The date of the result was November 5, 2004.

V

The illegality of the confinement consists in the ineffectiveness of defense counsel's representation of petitioner on direct appeal from the judgment of conviction in violation of the Sixth Amendment to the Constitution of the United States.

Petitioner moved to substitute one appointed counsel for another. (Excerpts of R. 75-80.)

The motion was denied. (Excerpts of R. 98, 107.)

Petitioner's counsel did not argue on direct appeal from the judgment of conviction that the superior court erred in denying petitioner's motion to substitute counsel. (Excerpts of R. 22.) According to petitioner's counsel, "I never considered that point." (Excerpts of R. 22.) The failure of petitioner's counsel to argue on direct appeal from the judgment of conviction that the superior court erred in denying petitioner's motion to substitute counsel requires that petitioner's conviction be vacated.

VI

The applicable standard

> for measuring a claim of ineffective assistance of appellate counsel is a two-prong test forth in *Strickland v. Washington*, 466 U.S. 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Defendants must prove that their counsel's performance fell below an objective standard of reasonableness and, but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 688,

5

694, 104 S.Ct. at 2065, 2068; *see Miller v. Keeney*, 882 F.2d 1428, 1433-1434 (9th Cir. 1989).

(*Morrison v. Estelle*, 981 F.2d 425, 427 (9th Cir. 1992), *cert. denied*, 508 U.S. 920 (1993); *accord*, *Angoco v. Bitanga*, 2001 Guam 17 ¶8, *cert. denied*, No. 01-71305 (9th Cir. Sept. 18, 2002).)[2]

Petitioner's counsel would have been successful in arguing on direct appeal from the judgment of conviction that the superior court erred in denying petitioner's motion to substitute counsel.

An appellate court

> review[s] the denial of a motion for substitution of counsel for abuse of discretion. *United States v. Corona-Garcia*, 210 F.3d 973, 976 (9th Cir. 2000), *cert. denied*, 531 U.S. 898, 121 S.Ct. 231, 148 L.Ed.2d 165 (2000). In reviewing a denial of substitution of counsel, [the appellate court] consider[s] (1) the timeliness of the motion; (2) the adequacy of the trial court's inquiry; and (3) the extent of conflict created. *Id.*

(*United States v. Nguyen*, 262 F.3d 998, 1004 (9th Cir. 2001).)

(1) *The timeliness of the motion.*

---

[2] "The actual phrasing of the second prong in both *Strickland* and *United States v. Birtle*, 792 F.2d 846 (9th Cir. 1986), is this: 'The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' *Birtle*, 792 F.2d at 849, quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. We did not make clear in *Birtle* whether 'the proceeding' in question when evaluating appellate counsel's performance was the appeal or a potential second trial; that is, whether we should focus on whether there was a reasonable probability that the appellant would have won the appeal, or whether there was a reasonable probability that, once having obtained a reversal, the appellant would have prevailed at retrial. *Birtle* concentrates on the appeal, so we assume that the appeal is the relevant proceeding to consider." (*Miller v. Keeney*, 882 F.2d 1428, 1434 n.9 (9th Cir. 1989).)

6

Neither the timeliness of petitioner's motion nor the extent of resulting inconvenience or delay is dispositive. The superior court did not indicate that timeliness was a consideration underlying its denial of petitioner's motion. Rather, it denied the request after concluding that petitioner's then counsel was competent. (Excerpts of R. 98, 105-07.) It did not indicate that timing or delay affected its decision to deny the motion. (Excerpts of R. 98, 105-07.) Because the timeliness of petitioner's request did not underlie the superior court's exercise of its discretion to deny the request, it is not dispositive. (*Nguyen*, 262 F.3d at 1004; *United States v. Walker*, 915 F.2d 480, 482-83 (9th Cir. 1990), *overruled on other grounds by United States v. Nordby*, 225 F.3d 1053, 1059 (9th Cir. 2000); *see also United States v. Musa*, 220 F.3d 1096, 1102 n.2 (9th Cir. 2000)("Although a district court has discretion to deny an untimely substitution of counsel motion, the court here did not base its denial of Musa's request on untimeliness grounds"), *cert denied*, 531 U.S. 999 (2000).)

(2) *The adequacy of the superior court's inquiry.*

The superior court's inquiry into petitioner's complaint was wholly inadequate. Before a trial court can engage in a measured exercise of discretion, it must conduct an inquiry adequate to create a sufficient basis for reaching an informed decision. (*Nguyen*, 262 F.3d at 1004; *Musa*, 220 F.3d at 1102).) For an inquiry regarding substitution of counsel to be sufficient, a court should question the attorney and defendant privately and in depth. (*Nguyen* at 1004.) The superior court did neither here. It focused on petitioner's counsel's competence. (Excerpts

7

of R. 98, 105-06.) The proper focus of such an inquiry is on the nature and extent of the conflict between defendant and counsel, not on whether counsel is legally competent. (*Walker*, 915 F.2d at 483.) It is settled that a court may not deny a substitution request simply because it thinks current counsel's representation is adequate. (*Musa*, 220 F.3d at 1102.) Even if a defendant's counsel is competent, a serious breakdown in communication can result in an inadequate defense. (*Id.*)

>The following was the superior court's inquiry in its entirety:
>
>>THE COURT: . . . What seems to be the problem, Mr. Chargualaf?
>>
>>THE DEFENDANT: I don't trust Mr. Timblin in handling my case.

(Excerpts of R. 97.) Other than this, the superior court did nothing more than ask intimidating questions of petitioner and lecture him on his own incompetence:

>>THE COURT: Well, that's the same reason you used for the other ones. Can you at least be more innovative?
>
>>(No response from Defendant)
>
>>. . . .
>
>>THE COURT: . . . All of the lawyers I've appointed you have had long experience with prosecution and defense. You know? What makes you an expert as opposed to the long experience in their line of work, Mr.Chargualaf?
>
>>. . . .
>
>>THE COURT: You know, the lawyers I gave you have all had experiences in prosecution -- almost all of them, anyway; and also on defense. Mr. Timblin was a defense counsel for a long time. And didn't you work for

8

> the Attorney General at one time?
>
> MR. TIMBLIN: Correct.
>
> THE COURT: Right. So if anybody knows all the angles on both sides, it's Mr. Timblin. Mr. Williams is another one I appointed who used to be prosecutor at one time. Now, he's an attorney as a defense counsel.
>
> . . . .
>
> THE COURT: Mr. Mantanona's another one. You know? If anybody knows prosecution the best and their angles, it's these people. You know? And you, you just probably read a few books and you think you know everything.

(Excerpts of R. 97-98.) Petitioner had been ordered never to contact the superior court again:

> THE COURT: . . . The Court does not want you to contact us again because you do have legal counsel. Okay? That's what they're there for. Okay? So, from now on, Mr. Chargualaf, you must not contact the Court or any officers of the Court except for your lawyer.

(Excerpts of R. 87.)

(3) *The extent of conflict created.*

The conflict between petitioner and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense. This is clearly demonstrated by the following:

Copy to Clerk of Court of Letter from Randy I. Chargualaf to Terry E. Timblin of April 28, 1999:

> This letter will confirm our conversation of 27 Apr 99.

9

As I have stated to you, you have failed to effectively provide me with an assistance of counsel. I have requested to have witnesses called so that we may be able to cross-examined them on stand. Now, we have a judge who had relied his decision and order based on an unsworn testimony. This unsworn testimony is a violation of my constitutional rights. You allowed this. Is this how you are going to represent me at trial?

You stated that I had stipulated to Officer Santo Tomas' report concerning matching a description of a robbery a day before. That is not true! We stipulated in open court that for the purpose of Santo Tomas' testimony, that a gun had been found on the curb. The court tapes will reveal this.

I was denied my right to confront and cross-examine an adverse witness stating that I had fit a description of a robbery suspect, whom you have stated on your moving papers, as someone who fits the description of "several hundred and possibly thousands of Chamorro male."

There are a lot of inconsistent and discrepancy of the reports on matching a description of a robbery suspect. You did not raise any of these issues during the suppression hearing.

You stated on your conversation that I had stipulated to the consent. Again this is not true! If you would have called "Kandi" Mendiola to the stand, this would have contradicted the officer testimony. You failed to do this.

On our conversation, I requested you to submit a "second motion to suppress" based on the fact that an unsworn testimony was used by the court. You have discouraged me not to do so. Even after I had mentioned to you a violation of the Sixth Amendment "Confrontation Clause." I have every right to cross-examine and confront an adverse witness. You want me to give-up that right!

. . . .

10

> In closing, you also stated to me that you are the attorney in this case and I am only the defendant. If that's the case, then I can no longer trust you to represent me in this criminal proceedings just because I did not finish high school and did not attend law school means that I cannot actively participate in my defense.
>
> Please inform me as soon as you have submitted your motion to withdraw as court-appointed counsel.

(Excerpts of R. 70-74.)

Affidavit of Terry E. Timblin:

1. I am the attorney of record for Defendant in the above matter and I make this Affidavit in support of my Motion to Withdraw as Counsel.

2. On April 26, 1999, I received a copy of Judge Lamorena's Decision and Order denying Defendant's Motion to Suppress. On that date, I delivered a copy of the Decision and Order to Defendant.

3. On April 27, 1999, I received a call from Defendant in which he indicated that he was "disappointed" at how the hearing went. He stated that Officer Santo Tomas should have been called as a witness and cross-examined. When asked what he should have been cross-examined about, Defendant indicated that this would have established a contradiction between his version of events and that of Officer Dawson in that Officer Santo Tomas had drawn a connection between the Bulletin about the previous day's robbery and Defendant and Candalaria Mendiola while Officer Dawson had not. I explained to Defendant that there was no contradiction as both indicated that Officer Santo Tomas informed Officer Dawson of the perceived connection at the scene of the stop.

4. Defendant than asserted that I should have called Mendiola as a witness to contradict Officer Dawson's testimony that Defendant had consented to the search of his vehicle. The issue of consent was discussed during the preparation for this Motion and I had advised

11

> Defendant that the best and probably only means of contradicting Officer Dawson was for Defendant to testify himself that he not consented. Defendant declined to do so stating that he felt that the assertion that any consent was vitiated by an illegal detention was sufficient. At neither this time nor any other time prior to April 27, 1999 did Defendant claim that Mendiola would testify that he not consented. In Mendiola's written statement, she neither confirms nor contradicts whether consent was given and there was no other indication that she might have been of help.
>
> 5. I informed Defendant that I did not agree with either of these objections and he then indicated that he would like to have a new lawyer.
>
> 6. On April 28, 1999, I received a fax transmission from Defendant . . . in which he restates his objections and indicated at the end that a copy was to be sent to the Ethics Committee.
>
> 7. Based on the above, I believe that an irreconcilable conflict of interest now exists between myself and Defendant and that we would not be able to work together effectively to conduct a defense.

(Excerpts of R. 78-80.)

Copy to Presiding Judge of Letter from Randy Ignacio Chargualaf to Terry E. Timblin of May 6, 1999:

> Your impression to me at the court hearing today was not of a pleasant one.
>
> I cannot see how we can continue to work together. You may probably be aware by now that I am going to file a complaint with the Guam Bar Association ethics committee of your deficiency of not calling witness to testify during my suppression hearing. Your performance was very poor which are my grounds for an ineffective assistance of counsel. You are merely trying to railroad me into a conviction.

12

My next hearing date is on 10 May 1999. I do not wish to have your railroad me again. I feel that you are incompetent to go trial with, as your record will speak for itself. How may others have you helped the government put-away?

I do not want to have anything to do with your representation. You should have said something in court today to have dismissed yourself. Instead you remained silent and then laughed at me when I got denied.

You will be hearing from the Ethics Committee soon.

(Excerpts of R. 101.)

Letter from Randy I. Chargualaf to Honorable Alberto C. Lamorena III of May 7, 1999:

Please allow this letter to serve as a formal request for a reconsideration for motion to withdraw court-appointed counsel on the above referenced matter.

The basis on this request to withdraw counsel is that we cannot communicate any longer. I am filing a complaint to the Guam Bar Association Ethics Committee for an ineffective assistant of counsel. I have asked him to prepare witness to be called during my suppression hearing and he failed to do so. His performance is so inefficient that it renders ineffective counsel.

An accused has every right to confront and cross-examine any adverse witness against him. Mr. Timblin did not call Officer Santo Tomas to the stand for cross-examination. Thus, allowing the court to use an unsworn testimony as a factor in making its decision.

I had asked court-appointed counsel to submit for a reconsideration of the court's decision, but refuses to do so, stating that he would leave this matter up to the appeals court. I believe that I am entitle to have a reconsideration based on the court's decision to use and unsworn testimony which is a violation of the Sixth

Amendment of the U.S. Constitution's *"Confrontational Clause"*.

The issues involving this Court are constitutional issues. The court is more concern in obtaining a conviction then protecting the rights of a defendant.

A copy of this letter will be made to the Guam Bar Association Ethics Committee and the Supreme Court of Guam.

Thank you for your attention.

(Excerpts of R. 102.)

There is no evidence to the contrary. To compel one charged with grievous crimes to undergo a trial with counsel with whom he has become embroiled in irreconcilable conflict is to deprive him of the effective assistance of any counsel whatever. (*Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000)(en banc).) "An irreconcilable conflict undermines confidence in trial proceedings and is reversible error." (*United States v. Moore*, 159 F.3d 1154, 1161 (9th Cir. 1998).) The superior court's denial of the motion to substitute counsel violated petitioner's Sixth Amendment right to counsel. (*Nguyen*, 262 F.3d at 1005.)

Petitioner is unlawfully imprisoned and restrained of his liberty. The illegality of the confinement consists in the ineffectiveness of defense counsel's representation of petitioner on direct appeal from the judgment of conviction. It could not be clearer that defense counsel would have been successful in arguing on direct appeal from the judgment of conviction that the superior court erred in denying petitioner's motion to substitute counsel. (*See Nguyen*, 262 F.3d at 1004-05 ("The District Judge's . . . denial of the motion to substitute counsel violated

14

Nguyen's Sixth Amendment right to counsel. The judgment of conviction is *REVERSED*").)

VII

No petition or appeal is now pending in any court, either state or federal, as to the judgment under attack.

The name and address of each attorney who represented petitioner in the following stages of the judgment attacked herein are as follows:

(a) At arraignment and plea: William C. Bischoff, HCR Box 17268, Inarajan, Guam 96917.

(b) At trial, sentencing, and on appeal: Terrence E. Timblin, 115 Hesler Place, Ground Floor, Gov. Joseph Flores Bldg., Hågåtña, Guam 96910.

(c) In the post-conviction proceedings: Howard Trapp, 200 Saylor Bldg., 139 Chalan Santo Papa, Hågåtña, Guam 96910.

Petitioner was sentenced on more than one count of an indictment, but not on more than one indictment, in the same court and at the same time.

Petitioner has no future sentence to serve after he completes the sentence imposed by the judgment under attack.

WHEREFORE petitioner prays that the Court grant him all relief to

which he may be entitled in this proceeding.

Dated, Hagåtña, Guam,

May 3, 2005.

*[signature]*
HOWARD TRAPP
For HOWARD TRAPP INCORPORATED
Attorney for petitioner

16

## VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 4, 2005, at Mangilao, Guam.

RANDY IGNACIO CHARGUALAF

17

## DECLARATION OF SERVICE

I, Charlene C. Cruz, declare that I am a secretary employed in the office of Howard Trapp, Esq., the attorney for petitioner herein, and that I served the document to which this declaration is annexed on Robert D. Camacho, Director of Corrections, Government of Guam, by leaving a copy thereof at his office at Building A111, Mariner Blvd, Tiyan, Guam, his last known address, with a person in charge thereof, on May 5, 2005.

I declare under penalty of perjury that the foregoing is true and correct. Executed at Hagåtña, Guam, on May 5, 2005.

CHARLENE C. CRUZ

## DECLARATION OF SERVICE

I, Charlene C. Cruz, declare that I am a secretary employed in the office of Howard Trapp, Esq., the attorney for petitioner herein, and that I served the document to which this declaration is annexed on the Honorable Douglas B. Moylan, Attorney General of Guam, by leaving a copy thereof at his office at 247 West O'Brien Drive, Hagåtña, Guam, his last known address, with a person in charge thereof, on May 5, 2005.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Hagåtña, Guam, on May 5, 2005.

CHARLENE C. CRUZ