(ccc)

HOWARD TRAPP INCORPORATED
200 Saylor Building
139 Chalan Santo Papa
Hagåtña, Guam 96910
Telephone 477-7000

Attorney for petitioner



FILED
DISTRICT COURT OF GUAM

JUL 1 4 2006

MARY L.M. MORAN
CLERK OF COURT

DISTRICT COURT OF GUAM

------------

| | | |
|---|---|---|
| RANDY IGNACIO CHARGUALAF, | ( | Civil Case No. 05-00014 |
| | ) | |
| Petitioner, | ( | **ADDITIONAL DOCUMENTS/** |
| | ) | **PORTIONS OF RECORD** |
| vs. | ( | |
| | ) | |
| ROBERT D. CAMACHO, | ( | |
| Director of Corrections, | ) | |
| Government of Guam, and | ( | |
| THE ATTORNEY GENERAL OF GUAM, | ) | |
| | ( | |
| Respondents. | ) | |

------------

Petitioner provides to the Court, herewith, each of the items, with the exception of items 47 and 68, set forth in the Court's order of April 19, 2006.

Dated, Hagåtña, Guam

July 14, 2006.

HOWARD TRAPP
For HOWARD TRAPP INCORPORATED
Attorney for Petitioner

(DOCUMENTS/AffidavitRChargualaf)

ORIGINAL

## DECLARATION OF SERVICE

I, Charlene C. Cruz, declare that I am an administrative assistant employed in the office of Howard Trapp, Esq., the attorney for petitioner herein, and that I served the document to which this declaration is annexed on Marianne Woloschuk, Esq., Assistant Attorney General, the attorney for respondents herein, by leaving a copy at the Office of the Attorney General, The Justice Building, 287 West O'Brien Drive, Hagåtña, Guam, Ms. Woloschuk's last known address, with a person in charge thereof, on July 14, 2006.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 14, 2006, at Hagåtña, Guam.

_____
CHARLENE C. CRUZ



# SUPERIOR COURT OF GUAM
## MINUTE ENTRY

| | | | | | |
|---|---|---|---|---|---|
| TAPE NO: 97-1433 | PAGE NO: 1 | COURT CONVENED AT: | 4:00 __ AM X PM | DATE: 07 22 1997 |

PRESENT: **JUDGE:** ALBERTO C . LAMORENA III , Presiding Judge
**CLERK:** EVELYN L. CABRERA

CASE NUMBER: CF0317-97

CASE TITLE:
PEOPLE OF THE TERRITORY OF GUAM
VS.
RANDY IGNACIO CHARGUALAF

COUNSEL PRESENT:
PLAINTIFF: _____
DEFENDANT: _____

PROCEEDINGS: MAGISTRATE'S HEARING

RECEIVED

| LOG NUMBER | DESCRIPTION |
|---|---|
| 855 | J - call of case |
| | (✓)Deft appeared: //with ✓/without counsel |
| | (✓)Court provided deft with copy of complaint and affidavit of probable cause |
| | (✓)Pursuant to 8 GCA s45.30, court read complaint and affidavit of probable cause |
| | ()Deft's counsel waived reading of complaint |
| | ()Court advised deft of right to retain attorney |
| | (✓)Court advised deft of right to court-appted atty if unable to afford/hire one |
| | (✓)Court inquires if deft desires assistance of counsel |
| | (✓)Court appoints:    ()Public Defender    ()Other: W. aischoff |
| | ()Deft will retain own attorney |
| | ()Court advised deft regarding pre-trial release and bail pursuant to |
| | 8 GCA s40.10; 40.15; 40.20 |
| | ()Deft is released on own recognizance |
| | (✓)Court set bail at $ 100,000 //cash //10% //PR |
| | (✓)Court set conditions if bail is met (see attached) |
| | ()Court advised deft of right to proceed by indictment |
| | (✓)Court advised deft of right not to make a statement regarding matter before |
| | court, and that any statement made can and may be used against him. |
| | (✓)Court advised deft of right to preliminary examination |
| | (✓)Preliminary Hearing Set For: 8/1 , 1997 At: 4:00 pm |
| | ()Arraignment Set For: _____ , 1997 At: 10:00 am |

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the Clerk of the Superior Court of Guam

MAY 16 2006

Jerimie K.J. Duenas
Deputy Clerk Superior Court of Guam

# IN THE SUPERIOR COURT OF GUAM

## TERRITORY OF GUAM



THE PEOPLE OF THE TERRITORY OF GUAM ) CRIMINAL CASE NO. CF0317-97
                                      )
                    vs.               )
                                      )
RANDY IGNACIO CHARGUALAF,             )
                                      )
                    Defendant.        )
_____ )

## NOTICE OF COURT APPOINTMENT OF COUNSEL

TO:  [          ]  PUBLIC DEFENDER SERVICE CORPORATION

     [XXXXXXXXX]  WILLIAM BISCHOFF, ESQ.

     You are hereby notified that you are appointed by the court to represent Defendant  RANDY IGNACIO CHARGUALAF , as stated on the above-captioned case.

**SAID DEFENDANT IS PRESENTLY ON:**
[XXX] Confined pending posting of cash bond of $ 100,000.00 .
[   ] Confined = prior case
[   ] Personal Recognizance (PR) Bond of.......$_____.
[   ] Unsecured Bond...........................$_____.
[   ] Surety Bond of...........................$_____.
[   ] Bench Warrant............................$_____.
[   ] Own Recognizance

**COURT APPEARANCE DATE:**

[XXX] Preliminary Hearing:_AUGUST 1, 1997 AT 4:00PM_____.
[   ] Arraignment:_____.
[   ] Status Hearing:_____.
[   ] Trial Setting:_____.
[   ] Bench Trial:_____.
[   ] Jury Selection/Trial:_____.
[   ] Other:_____.

                          ALBERTO C. LAMORENA, III
                          Presiding Judge
                          Superior Court of Guam

DATED:  JULY 23, 1997     BY:_____
                               EVELYN P. CABRERA
                               Deputy Clerk/Court Clerk

*RECEIVED FOR SERVICE*
_____m.

Deputy Marshal
Superior Court of Guam



TAPE NO: 97- 1493  | PAGE NO: 1  | COURT CONVENED AT: 4:00 _ AM X PM | DATE: 08 22 1997

PRESENT: **JUDGE:** ALBERTO C . LAMORENA III , Presiding Judge
**CLERK:** EVELYN L. CABRERA

CASE NUMBER: CF0352-97  | CASE TITLE:
*C317-97*

PEOPLE OF THE TERRITORY OF GUAM

COUNSEL PRESENT:                          | VS.
PLAINTIFF: _D. Moore_ |
DEFENDANT: _P. Aefulut_ | DON A. MENDIOLA AKA "KAELAUNI" *

PROCEEDINGS: CRIMINAL TRIAL SETTING

---

| LOG NUMBER | DESCRIPTION |

2310  | Case called: (X) Deft present w/atty ( ) Deft not present ( ) D/A not present

( ) Jury selection and trial set for: _____ ____am/pm

( ) Motion cut-off date: _____

( ) Pretrial Conference: _____ ____am/pm

( ) Time waived by D/A

( ) Speedy trial asserted

(X) Trial setting continued: _9/26_ _4_ am/pm

( ) Change of plea hearing: _____ ____am/pm

( ) Further proceedings hearing: _____ ____am/pm

( ) Issue order to show cause on defense attorney

( ) Bench warrant to issue - Bail set $_____

Others:

OFFICE OF THE ATTORNEY GENERAL
2000
JUSTICE FOR ALL
HAGÅTÑA, GUAM

**RECEIVED**

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

JUL 06 2000

Jerimie K. J. Duenas
Deputy Clerk Superior Court of Guam

IN THE SUPERIOR COURT OF GUAM

TERRITORY OF GUAM

THE PEOPLE OF THE TERRITORY OF GUAM ) CRIMINAL CASE NO. CF0317-97
　　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　vs. 　　　　　　　 )
　　　　　　　　　　　　　　　　　　　 )
RANDY I. CHARGUALAF, 　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　Defendant. 　　 )
　　　　　　　　　　　　　　　　　　　 )
_____ )

**ORIGINAL**

**RECEIVED**

### NOTICE OF COURT APPOINTMENT OF COUNSEL

TO:　[　　　　]　　PUBLIC DEFENDER SERVICE CORPORATION

　　　[XXXXXXXXX]　　MARK WILLIAMS, ESQ._____

　　　You are hereby notified that you are appointed by the court to
represent Defendant　RANDY I. IGNACIO , as stated on the
above-captioned case.

**SAID DEFENDANT IS PRESENTLY ON:**
　[XXX] Confined pending posting of cash bond of $  100,000.00.
　[　] Confined = prior case
　[　] Personal Recognizance (PR) Bond of.......$_____.
　[　] Unsecured Bond...........................$_____.
　[　] Surety Bond of...........................$_____.
　[　] Bench Warrant............................$_____.
　[　] Own Recognizance

**COURT APPEARANCE DATE:**

　[　] Preliminary Hearing:_____.
　[　] Arraignment:_____.
　[　] Status Hearing:_____.
　[XXX] Trial Setting:  SEPTEMBER 26, 1997 AT 4:00PM ___.
　[　] Bench Trial:_____.
　[　] Jury Selection/Trial:_____.
　[　] Other:_____.

　　　　　　　　　　　　　　ALBERTO C. LAMORENA, III
　　　　　　　　　　　　　　Presiding Judge
　　　　　　　　　　　　　　Superior Court of Guam

DATED:　AUGUST 25, 1997　　　BY:_____ CABRERA
　　　　　　　　　　　　　　　　　　EVELYN  　  CABRERA
*RECEIVED FOR SERVICE*　　　　　　Deputy Clerk/Courtroom
　　　8:15  　m.　　　　　　　　　I do hereby certify that the foregoing
_____　　　　　　is a full true and correct copy of the
　　　8/8/97　　　　　　　　　　original on file in the office of the
_____　　　　　　clerk of the Superior Court of Guam
Deputy Marshal　　　　　　　　　　　　　　　　　MAY 1 6 2006
Superior Court of Guam　　**ORIGINAL**

　　　　　　　　　　　　　　　　　　Jerime K.J. Duenas

# IN THE SUPERIOR COURT OF GUAM

## TERRITORY OF GUAM

THE PEOPLE OF THE TERRITORY OF GUAM )    CRIMINAL CASE NO. CF00317-97
                                )
                vs.                     )
                                )
RANDY I. CHARGUALAF,           )
                                )
                Defendant.    )
_____ )

## NOTICE OF COURT APPOINTMENT OF COUNSEL

TO:   [      ]    PUBLIC DEFENDER SERVICE CORPORATION

      [XXXXXXXXX]    __MARK WILLIAMS, ESQ.__

     You are hereby notified that you are appointed by the court to represent Defendant __RANDY I. CHARGUALAF__, as stated on the above-captioned case.

**SAID DEFENDANT IS PRESENTLY ON:**
[XXX] Confined pending posting of cash bond of $ __100,000.00__.
[   ] Confined = prior case
[   ] Personal Recognizance (PR) Bond of.......$_____.
[   ] Unsecured Bond..........................$_____.
[   ] Surety Bond of...........................$_____.
[   ] Bench Warrant...........................$_____.
[   ] Own Recognizance

**COURT APPEARANCE DATE:**

[   ] Preliminary Hearing:_____.
[   ] Arraignment:_____.
[   ] Status Hearing:_____.
[XXX] Trial Setting:__SEPTEMBER 26, 1997 AT 4:00PM_____.
[   ] Bench Trial:_____.
[   ] Jury Selection/Trial:_____.
[   ] Other:_____

ALBERTO C. LAMORENA, III
Presiding Judge
Superior Court of Guam

DATED: AUGUST 27, 1997

BY: ____EVELYN L. CABRERA____
      Deputy Clerk/Courtroom

*RECEIVED FOR SERVICE*
_____11:45 a.m._____
_____8/29/97_____
_____
Deputy Marshal
Superior Court of Guam

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam

MAY 1 6 2006

Jerimie K.J. Duenas
Deputy Clerk Superior Court of Guam

**WILLIAM C. BISCHOFF**
Attorney At Law
134 Chalan Santo Papa, Ste.202
Agana, Guam  96910
Telephone: (671) 477-2301/2
Facsimile: (671) 477-2303

AUG 27

OFFICE OF THE ATTORNEY GENERAL

RECEIVED

IN THE SUPERIOR COURT OF GUAM

TERRITORY OF GUAM

| | | |
|---|---|---|
| PEOPLE OF THE TERRITORY OF GUAM | ) | CRIMINAL CASE NO. CR |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | MOTION TO WITHDRAW, ORDER APPOINTING COUNSEL |
| RANDY IGNACIO CHARGUALAF, | ) ) | |
| Defendant. | ) ) | |

I, William C. Bischoff, move to withdraw as court appointed counsel of record for defendant Randy I. Chargualaf, who has expressed his extreme dissatisfaction with my representation of him and who has asked that new counsel be appointed him. Our attorney-client relationship has deteriorated to the point that I can no longer effectively represent defendant Chargualaf, as we have a lack of communication.

Respectfully submitted,

William C. Bischoff
8-21-97

Based upon the foregoing, IT IS HEREBY ORDERED that attorney William C. Bischoff's motion to withdraw as counsel is granted; and attorney *Mark Williams* is appointed to represent defendant Chargualaf.

HONORABLE
Judge, Superior Court of Guam

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam

MAY 1 6 2006

Jerimie K.J. Duenas
Deputy Clerk Superior Court of Guam

c:\wp50\forms.bil\criminal\chargrd.wdr

# VOUCHER FOR COMPENSATION OF
## COURT-APPOINTED COUNSEL

# FELONY CASE
### SUPERIOR COURT OF GUAM

PAYEE _William C. Bischoff_
ADDRESS _184 Chalan Santo Papa, Ste. 202, Hagatna, Guam_
CASE _____ People_ vs _Randy P. Cruz_
CASE NO. _CF 0317-97_

RECEIVED
JUL 24 2006
OFFICE OF THE ATTORNEY GENERAL HAGATNA, GUAM

**A. TIME SPENT IN COURT:**

|  |  |  |  |
|---|---|---|---|
| 1. Date _8/04/97_ | No. of Hrs. _.5_ | x $ 75.00 _37.50_ | |
| 2. Date _8/14/97_ | No. of Hrs. _.5_ | x 75.00 _37.50_ | |
| 3. Date _____ | No. of Hrs. _____ | x 75.00 _____ | |
| 4. Date _____ | No. of Hrs. _____ | x 75.00 _____ | _75_ |

**B. TIME SPENT IN PREPARATION:**

|  |  |  |  |
|---|---|---|---|
| 1. Date _7/23/97 - 8/14/97_ | No. of Hrs. _6.7_ | x $ 50.00 _335.00_ | |
| 2. Date _____ | No. of Hrs. _____ | x 50.00 _____ | |
| 3. Date _____ | No. of Hrs. _____ | x 50.00 _____ | |
| 4. Date _____ | No. of Hrs. _____ | x 50.00 _____ | _335_ |

**C. EXPENSES OF REPRESENTATION:**

1. _____  _____
2. _____  _____
3. _____  _____
4. _____  _____

**D. LESS COMPENSATION RECEIVED OR CLAIMS FILED EARLIER UNDER SEPARATE VOUCHER (S) FOR REPRESENTATION IN THIS CASE.**

NET AMOUNT CLAIMED _$410.00_

I certify that the above claim is correct and just and that payment has not been received and, except as noted in item D, no payment or promise of payment has been requested or accepted for representation in the above case.

_____
SIGNATURE OF PAYEE

_____
PAYEE SS# OR TAXPAYER I.D. #

* For felony cases, this amount plus item D shall not exceed $7,500.00 the limit set by the Judicial Court.

**FOR COURT USE ONLY**

Certification of Fund

VOUCHER VERIFIED
By: _____
Deputy Clerk
Date: _____ SEP 1997

Approved for Payment

Original Signed By:
_____
Judge, Superior Court

Date: _____

**WILLIAM C. BISCHOFF**
**Client Billing Worksheet**

Chargualaf,Rand : !! MISSING DATA !!
Rounding       : None
Full Precision : No

*CF 3/7-97*
*COURT APPOINTED*

| Date/Slip# | Description | HOURS/RATE | AMOUNT | TOTAL |
|---|---|---|---|---|
| 07/28/97 #1314 | Bischoff, W. / PREPARATION conferences w/ clt., pros., clt's family; see clt.at TDC | 1.50 50.00 | 75.00 | |
| 08/04/97 #1315 | Bischoff, W. / PREPARATION conferences w/ pros.; clt. | 0.30 50.00 | 15.00 | |
| 08/06/97 #1316 | Bischoff, W. / REPRESENTATION arraignment | 0.50 Flat | 37.50 | |
| 08/06/97 #1317 | Bischoff, W. / CONFERENCE conferences w/ clt., pros., pros. investigator | 0.40 50.00 | 20.00 | |
| 08/11/97 #1318 | Bischoff, W. / CONFERENCE see clt. at TDC | 1.00 50.00 | 50.00 | |
| 08/13/97 #1319 | Bischoff, W. / PREPARATION see clt. at TDC; copy all discovery for clt; review all 112 pages discovery | 3.00 50.00 | 150.00 | |
| 08/14/97 #1320 | Bischoff, W. / REPRESENTATION trial setting | 0.50 Flat | 37.50 | |
| 08/18/97 #1321 | Bischoff, W. / CONFERENCE see clt at TDC | 0.50 50.00 | 25.00 | |

| TOTAL BILLABLE TIME CHARGES | 7.70 | | $410.00 |
|---|---|---|---|
| TOTAL BILLABLE COSTS | | | $0.00 |

Chargualaf,Rand : (continued)

TOTAL NEW CHARGES                                                 $410.00

NEW BALANCE

New Current month                              410.00

TOTAL NEW BALANCE                                                $410.00

Mark E. Williams, Esq.
404 W. Soledad Ave
Suite #A12-225
Agana, Guam 96910
Tel: 671-477-1389
Fax: 671-653-4502

Attorney for Defendant

## IN THE SUPERIOR COURT OF GUAM
## TERRITORY OF GUAM

PEOPLE OF THE TERRITORY OF GUAM,

                Plaintiff,

        vs.

RANDY CHARGUALAF,

                Defendant.

| CRIMINAL CASE NO. CF-317~~RECEIVED~~
|
| ORDER APPOINTING NON-LEGAL
| ASSISTANCE TO DEFENDANT
| BY WAY OF COURT-APPOINTED
| INVESTIGATOR
|
|
|
|

RECEIVED

1    THIS MATTER having come to the attention of the court, the defendant through counsel

2  having orally moved the court to appoint an investigator to assist counsel in the preparation of the

3  defense of the the above-named defendant, and good cause appearing from the request;

4    IT IS HEREBY ORDERED, that defendant's request for non-legal assistance by way of

5  an investigator is hereby granted and the defendant shall be permitted the services of an

6  investigator at the rate of $15.00 per hour, not to exceed $1,500.00, the limit set by the Superior

7  Court of Guam, Judicial Counsel.

8
9  SO ORDERED: 9/26/97

            HONORABLE JUDGE, SUPERIOR COURT OF GUAM

is a full true and correct copy of ...
original on file in the office of the
clerk of the Superior Court of Guam

MAY 1 8 2006

Jerimie K.J. Duenas
Deputy Clerk Superior Court of Guam

# VOUCHER FOR COMPENSATION OF
# COURT-APPOINTED COUNSEL

## FELONY CASE
### SUPERIOR COURT OF GUAM

RECEIVED

PAYEE _____ Mark Williams
ADDRESS _____ 406 W. Soledad Ave. Ste. A12-215, Agana, Guam 9____
CASE _____ CF-317-97: People _____ vs _____ Randy Charoualat
CASE NO. _____ CF-317-97

**A. TIME SPENT IN COURT:**

1. Date 9/26/97   No. of Hrs. .33   x $ 75.00   24.75
2. Date _____   No. of Hrs. _____   x 75.00 _____
3. Date _____   No. of Hrs. _____   x 75.00 _____
4. Date _____   No. of Hrs. _____   x 75.00 _____   24.75

**B. TIME SPENT IN PREPARATION:**

1. Date 8/25/97   No. of Hrs. .75   x $ 50.00   37.50
2. Date 9/5/97   No. of Hrs. 1.66   x 50.00   83.00
3. Date 9/13/97   No. of Hrs. .33   x 50.00   16.50
4. Date 9/14/97   No. of Hrs. 1.33   x 50.00   66.50
   Date 9/26/97   No. of Hrs. 1.00   50.00   286.50

**C. EXPENSES OF REPRESENTATION:**

1. Inhouse copies for client:
2. Police Rpt, CC trans.: 158pgs @ .50¢/pg. = $79.00
3. _____
4. _____   79.00

**D. LESS COMPENSATION RECEIVED OR CLAIMS FILED EARLIER UNDER
SEPARATE VOUCHER (S) FOR REPRESENTATION IN THIS CASE.**

         **NET AMOUNT CLAIMED**    390.25

I certify that the above claim is correct and just and that payment has not been received and, except as noted in item D, no payment or promise of payment has been requested or accepted for representation in the above case.

_____
Mark F. Williams
**SIGNATURE OF PAYEE**

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

**PAYEE SS# OR TAXPAYER I.D. #**

* For felony cases, this amount plus item D shall not exceed $7,500.00 the limit set by the Judicial Court.

## FOR COURT USE ONLY

Certification of Fund                          Approved for Payment

_____

By: _____

      Deputy                              **Judge, Superior Court**

Date: _____ 14 OCT 1997            Date: _____ OCT 20 1997

# VOUCHER FOR COMPENSATION OF
## COURT-APPOINTED COUNSEL

# FELONY CASE
### SUPERIOR COURT OF GUAM

No 3689

DATE: 9/30/97

PAYEE ___Mark Williams___
ADDRESS ___404 W. Soledad Ave. Ste. A12-225, Agana, Guam 96910___
CASE ___CF-317-97; People___ vs ___Randy Chargualaf___
CASE NO. ___CF-317-97___

**A. TIME SPENT IN COURT:**

| | | | |
|---|---|---|---|
| 1. Date 9/26/97 | No. of Hrs. .33 | x $ 75.00 | 25.00 |
| 2. Date ___ | No. of Hrs. ___ | x 75.00 | |
| 3. Date ___ | No. of Hrs. ___ | x 75.00 | |
| 4. Date ___ | No. of Hrs. ___ | x 75.00 | 25.00 |

**B. TIME SPENT IN PREPARATION:**

| | | | |
|---|---|---|---|
| 8/28/97 | .75 | | 37.50 |
| 1. Date 8/29/97 | No. of Hrs. .33 | x $ 50.00 | 16.50 |
| 2. Date 9/5/97 | No. of Hrs. 1.66 | x 50.00 | 83.00 |
| 3. Date 9/13/97 | No. of Hrs. .33 | x 50.00 | 16.50 |
| 4. Date 9/14/97 | No. of Hrs. 1.33 | x 50.00 | 66.50 |
| 9/22/97 | .33 | | 16.50 |
| 9/23/97 | 1.00 | | 50.00 |
| | | | 286.50 |

**C. EXPENSES OF REPRESENTATION:**

| | | |
|---|---|---|
| 1. Inhouse copies for client: | | |
| 2. Police rpt, GJ trans.: 158pgs @ .50¢/pg. = | $79.00 | |
| 3. ___ | ___ | |
| 4. ___ | ___ | 79.00 |

**D. LESS COMPENSATION RECEIVED OR CLAIMS FILED EARLIER UNDER SEPARATE VOUCHER (S) FOR REPRESENTATION IN THIS CASE.**

**NET AMOUNT CLAIMED** 390.50

I certify that the above claim is correct and just and that payment has not been received and, except as noted in item D, no payment or promise of payment has been requested or accepted for representation in the above case.

_Mark E. Will_
Mark E. Williams
SIGNATURE OF PAYEE

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
PAYEE SS# OR TAXPAYER I.D. #

* For felony cases, this amount plus item D shall not exceed $7,500.00 the limit set by the Judicial Court.

## FOR COURT USE ONLY

Certification of Fund

Approved for Payment

_____

_____
Judge, Superior Court

Mark Williams, Esq.
Suite A12-225, GCIC Bldg.
404 W. Soledad Ave.
Agana, Guam 96910
Telephone: 477-1389
Facsimile: 653-4502

## EXHIBIT "A"

PEOPLE vs.                              |          CASE NO. CF - 317-97
                                        |
          RANDY CHARGUALAF              |
                                        |
                                        |

---

### TIME SPENT IN COURT:
| | | |
|---|---|---|
| 9/26/97 | Exparte mtn for investigator / Judge Manibusan | .33 |

### TOTAL NO. OF HOURS = .33

### TIME SPENT IN PREPARATION:
| | | |
|---|---|---|
| 8/28/97 | rcv appt, rvw chgs, setup file | .75 |
| 8/29/97 | t/c w/AAG Moore re: plea offer | .33 |
| 9/5/97 | rcv/rvw GJ trans; t.c w/proposed 3d pty; prep mtn for investigator and intro ltr for Ws | 1.66 |
| 9/13/97 | t/c w/client re: 3d pty, case status | .33 |
| 9/14/97 | t/c w/cleint at TDC re: case; rcv/rvw police rpt | 1.33 |
| 9/22/97 | t/c w/client re: evid, plea offer, case status | .33 |
| 9/23/97 | mtg w/client at TDC re: GJ, add'l disco | 1.00 |

### TOTAL NO. OF HOURS = 5.73

**COSTS: Copies for client:**

Inhouse copies:
    Police report and Grand Jury transcript: 158 pgs @ .50c/pg. = $79.00

# VOUCHER FOR COMPENSATION OF
## COURT-APPOINTED COUNSEL

# FELONY CASE
### SUPERIOR COURT OF GUAM

DATE 30/98

PAYEE _Mark E. Williams_
ADDRESS _404 W. Soledad Ave. Ste.#A12-225, Agana, Guam_
CASE _People_ VS _Randy Charguala_
CASE NO. _CF-317-97_

**RECEIVED**

## A. TIME SPENT IN COURT:

| | | | |
|---|---|---|---|
| 1. Date _____ | No. of Hrs. _____ | x $ 75.00 _____ | |
| 2. Date _____ | No. of Hrs. _____ | x 75.00 _____ | |
| 3. Date _____ | No. of Hrs. _____ | x 75.00 _____ | |
| 4. Date _____ | No. of Hrs. _____ | x 75.00 _____ | -0- |

## B. TIME SPENT IN PREPARATION:

| | | | |
|---|---|---|---|
| 1. Date _12/11/97-1/15/98_ _15.75_ | No. of Hrs. | x $ 50.00 _787.50_ | |
| 2. Date _-see attached-_ | No. of Hrs. _____ | x 50.00 _____ | |
| 3. Date _____ | No. of Hrs. _____ | x 50.00 _____ | |
| 4. Date _____ | No. of Hrs. _____ | x 50.00 _____ | 787.50 |

## C. EXPENSES OF REPRESENTATION:

1. _____ _____
2. _____ _____
3. _____ _____
4. _____ _____

## D. LESS COMPENSATION RECEIVED OR CLAIMS FILED EARLIER UNDER SEPARATE VOUCHER (S) FOR REPRESENTATION IN THIS CASE.

**NET AMOUNT CLAIMED** 787.50

I certify that the above claim is correct and just and that payment has not been received and, except as noted in item D, no payment or promise of payment has been requested or accepted for representation in the above case.

_Mark E. Williams_
**SIGNATURE OF PAYEE**

_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_
**PAYEE SS# OR TAXPAYER I.D. #**

* For felony cases, this amount plus item D shall not exceed $7,500.00 the limit set by the Judicial Court.

## FOR COURT USE ONLY

Certification of Fund

Approved for Payment

_____ _____
**Judge, Superior Court**

VOUCHER VERIFIED
By: _____
Deputy Clerk

JAN 29 1998

Date: _____ Date: _____ Date: _____

# VOUCHER FOR COMPENSATION OF
## COURT-APPOINTED COUNSEL

№ 1910

# FELONY CASE
### SUPERIOR COURT OF GUAM

DATE: 1/20/98

PAYEE **Mark E. Williams**
ADDRESS **404 W. Soledad Ave. Ste.#A12-225, Agana, Guam 96910**
CASE **People** vs **Randy Chargualaf**
CASE NO. **CF-317-97**

**A. TIME SPENT IN COURT:**

| | | | |
|---|---|---|---|
| 1. Date _____ | No. of Hrs. _____ | x $ 75.00 _____ | |
| 2. Date _____ | No. of Hrs. _____ | x 75.00 _____ | |
| 3. Date _____ | No. of Hrs. _____ | x 75.00 _____ | |
| 4. Date _____ | No. of Hrs. _____ | x 75.00 _____ | -0- |

**B. TIME SPENT IN PREPARATION:**

| | | | |
|---|---|---|---|
| 1. Date 12/11/97-1/15/98 -see attached- | No. of Hrs. 15.75 | x $ 50.00 787.50 | |
| 2. Date _____ | No. of Hrs. _____ | x 50.00 _____ | |
| 3. Date _____ | No. of Hrs. _____ | x 50.00 _____ | |
| 4. Date _____ | No. of Hrs. _____ | x 50.00 _____ | 787.50 |

**C. EXPENSES OF REPRESENTATION:**

1. _____
2. _____
3. _____
4. _____

**D. LESS COMPENSATION RECEIVED OR CLAIMS FILED EARLIER UNDER SEPARATE VOUCHER (S) FOR REPRESENTATION IN THIS CASE.**

**NET AMOUNT CLAIMED** 787.50

I certify that the above claim is correct and just and that payment has not been received and, except as noted in item D, no payment or promise of payment has been requested or accepted for representation in the above case.

*Mark E. Williams*
**SIGNATURE OF PAYEE**

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
**PAYEE SS# OR TAXPAYER I.D. #**

* For felony cases, this amount plus item D shall not exceed $7,500.00 the limit set by the Judicial Court.

## FOR COURT USE ONLY

Certification of Fund

_____

Date: _____

Approved for Payment

_____

**Judge, Superior Court**

Date: _____

Mark Williams, Esq.
Suite A12-225, GCIC Bldg.
404 W. Soledad Ave.
Agana, Guam 96910
Telephone: 477-1389
Facsimile: 653-4502

## EXHIBIT "A"

PEOPLE vs.                                    |        CASE NO. CF - 317-97
                                              |
        RANDY CHARGUALAF                      |
                                              |
                                              |

---

## TIME SPENT IN COURT:

### TOTAL NO. OF HOURS = 0.00

### TIME SPENT IN PREPARATION:

| | | |
|---|---|---|
| 12/11/97 | mtg/interview w/client at TDC re: add'l disco | 1.50 |
| 12/23/97 | conf. w/co-defendant counsel Sukola re: testimony | 1.75 |
| | mtg w/investigator re: interviews/ case status | |
| 12/28/97 | legal rsrch re: victim ID, officer impeachment issues | 3.00 |
| 12/29/97 | mtg w/client at TDC re: alibi, add'l Ws, plea | 2.00 |
| 1/5/98 | interview witness Wusstig at TDC | 2.00 |
| | interview witness Cruz at DOC | |
| 1/6/98 | draft memo to investigator re evid, addl Ws | 1.00 |
| 1/12/98 | conf w/investigator re: interviews, add'l disco | .50 |
| 1/14/98 | interview victim, visit crime scene | 3.00 |
| 1/15/98 | conf w/client re: co-defendant contact/ stmts made | 1.00 |
| | conf w/co-defendant counsel Sukola re: interview | |

### TOTAL NO. OF HOURS = 15.75

## COSTS:  Copies for client:

Inhouse copies:  none

Mark E. Williams, Esq.
404 W. Soledad Ave
Suite #A12-225
Agana, Guam 96910
Tel: 671-477-1389
Fax: 671-653-4502

Attorney for Defendant



FILED
SUPERIOR COURT
OF GUAM

1998 MAR -3 PM 12: 51

ALFRED M. BORJA
CLERK OF COURT
BY: _____

## IN THE SUPERIOR COURT OF GUAM
## TERRITORY OF GUAM

| | |
|---|---|
| PEOPLE OF THE TERRITORY OF GUAM, | CRIMINAL CASE NO. CF-?12-96 |
| Plaintiff, | **REQUEST FOR DISCOVERY AND NOTICE** |
| vs. | |
| RANDY CHARGUALAF, | |
| Defendant. | |



RECEIVED

Pursuant to 8 G.C.A. Sections 65.25(b) and 70.10(a), Defendant RANDY

CHARGUALAF, through counsel Mark Williams, hereby requests disclosure by the Attorney

General of the following materials, whether they be in the possession or control of members of the

Attorney General's staff or of any other persons who have participated in the investigation or

evaluation of the case and who either regularly report or with reference to this case have reported

to his or her office:

    1. The reports or documentation of the identification of the defendant by the victim in this

case as included in testimony before the Grand Jury on July 31, 1997, including the approximate

time of the identification, the procedure followed and the names of all officers present.

    2. Access to the gun seized in this case by Officer J.E.D. Santo Tomas for fingerprinting

purposes;

3. The rap sheet and record of prior criminal convictions concerning the co-defendants in this case, Candy Quidachay Mendiola and Don Allen Borja Mendiola, as well as other persons whom the prosecuting attorney intends to call as witnesses at trial;

4. All written or recorded statements and the substance of any oral statements made by any of the co-defendants in this case;

5. The pouch seized by Guam Police from Candy Quidachay Mendiola during the pullover of the defendant on July 21, 1997.

6. Any report or statement by an expert, made in connection with the case, including results of physical or mental examinations and of scientific tests, comparisons, or experiments;

7. Any book, paper, document, photograph or tangible object which the prosecuting attorney intends to use in the trial or which was obtained from or belonged to the Defendant;

8. Whether there has been any electronic surveillance of defendant's premises or conversations to which the defendant was party;

9. Any material or information which tends to negate the guilt of the Defendant as to the offense charged or would tend to reduce his or her punishment therefor.

Dated: February 27, 1998.

_Mark E. Will_

**MARK E. WILLIAMS, Esq.**

*Attorney for Defendant*

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam

MAY 1 6 2006

**Jerimie K.J. Duenas**
Deputy Clerk Superior Court of Guam

# VOUCHER FOR COMPENSATION OF
# COURT-APPOINTED COUNSEL

## FELONY CASE
### SUPERIOR COURT OF GUAM

4457

DATE: 12/10/97

PAYEE: Trace Investigations
ADDRESS: Suite 301, Sunny Plaza Bldg. 125 Ton Jesus Crisostom St. Tamuning
CASE: People vs Randy Charoalai
CASE NO. CF0311-97

**A. TIME SPENT IN COURT:**

| | | | |
|---|---|---|---|
| 1. Date _____ | No. of Hrs. _____ | x $ 75.00 _____ |
| 2. Date _____ | No. of Hrs. _____ | x 75.00 _____ |
| 3. Date _____ | No. of Hrs. _____ | x 75.00 _____ |
| 4. Date _____ | No. of Hrs. _____ | x 75.00 _____ |

**B. TIME SPENT IN PREPARATION:**

| | | | |
|---|---|---|---|
| 1. Date _____ | No. of Hrs. _____ | x $ 50.00 _____ |
| 2. Date _____ | No. of Hrs. _____ | x 50.00 _____ |
| 3. Date _____ | No. of Hrs. _____ | x 50.00 _____ |
| 4. Date _____ | No. of Hrs. _____ | x 50.00 _____ |

**C. EXPENSES OF REPRESENTATION:**

1. Investigator (Inv #29) ........... 457.50
2. _____
3. _____
4. _____ ........... 457.50

**D. LESS COMPENSATION RECEIVED OR CLAIMS FILED EARLIER UNDER SEPARATE VOUCHER (S) FOR REPRESENTATION IN THIS CASE.**

**NET AMOUNT CLAIMED** 457.50

I certify that the above claim is correct and just and that payment has not been received and, except as noted in item D, no payment or promise of payment has been requested or accepted for representation in the above case.

_____
SIGNATURE OF PAYEE

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

PAYEE SS# OR TAXPAYER I.D. #

* For felony cases, this amount plus item D shall not exceed $7,500.00 the limit set by the Judicial Court.

## FOR COURT USE ONLY

Certification of Fund

VOUCHER
By: _____
Deputy Clerk
Date: _____

Approved for Payment

_____
Judge, Superior Court

MAR 12 1998

Date: _____

OFFICE OF THE ATTORNEY GENERAL JUL 2006 JUSTICE FOR ALL HAGÅTÑA GUAM RECEIVED

Superior Court of Guam
Guam Judicial Center
120 West O'Brien Drive
Agana Guam 96910
ATTN:

MATTER 970012

People v. Randy Chargualaf; CF317-97

| FEES | | HOURS | AMOUNT | |
|---|---|---|---|---|
| Oct-24-97 | Conference at Atty. Williams office regarding case status | 0.25 | 3.75 | RST |
| | Reviewed grand jury transcripts; police reports | 2.00 | 30.00 | MAG |
| Oct-27-97 | Teleconference with Atty. Williams regarding case status | 0.50 | 7.50 | RST |
| | Conducted background check on persons listed in discovery | 2.75 | 41.25 | RST |
| | Interview with defendant at TDC | 1.75 | 26.25 | RST |
| | Teleconference with Atty. White | 0.25 | 3.75 | RST |
| | Prepare case notes for defenses | 0.50 | 7.50 | RST |
| | Review report of investigation | 3.00 | 45.00 | RST |
| Oct-28-97 | Continued report of investigation regarding cas | 1.00 | 15.00 | RST |
| Nov-04-97 | Reviewed initial discovery | 1.00 | 15.00 | RST |
| | Prepared report detailing discrepancies between grand jury transcripts and police reports | 2.00 | 30.00 | RST |
| | Prepare witness list and possible defense strategy for attorney's review | 1.50 | 22.50 | RST |
| | Outlined case analysis strength, weaknesses, and questionable areas | 1.50 | 22.50 | RST |
| | Prepared chronology of event and variations bases on discovery and grand jury transcripts | 2.50 | 37.50 | RST |
| | Researched alleged vehicle with Department of Motors Vehicle | 1.00 | 15.00 | RST |
| | Continue to prepare investigative report | 3.00 | 45.00 | RST |
| Nov-05-97 | Review administrative documents | 0.50 | 7.50 | RST |
| | Research defendant's family and history | 1.00 | 15.00 | RST |
| | Prepare questions and answer for interview with defendant | 1.25 | 18.75 | RST |
| | Photocopied discovery | 0.75 | 11.25 | RST |
| | Prepared trial folder | 2.00 | 30.00 | RST |
| Nov-14-97 | Conference with Atty. Williams | 0.50 | 7.50 | RST |

HOURS        AMOUNT

FEES

regarding case

TOTAL FEES                                    30.50      $457.50

TOTAL FOR THIS BILL        $457.50

PREVIOUS BALANCE           $172.50

PREVIOUS RECEIPTS            $0.00

PLEASE PAY                 $630.00

# VOUCHER FOR COMPENSATION OF
## COURT-APPOINTED COUNSEL

# FELONY CASE
### SUPERIOR COURT OF GUAM

DATE: 11/24/__

PAYEE Mark E. Williams
ADDRESS 414 W. Soledad Ave, #913-223, Agana, Guam 96910
CASE People _____ VS Nancy Charfauros
CASE NO. 97-917-3)



**A. TIME SPENT IN COURT:**

| | | | | |
|---|---|---|---|---|
| 1. Date 10/3/97 | No. of Hrs. 1.00 | x | $ 75.00 | 75.00 |
| 2. Date | No. of Hrs. | x | 75.00 | |
| 3. Date | No. of Hrs. | x | 75.00 | |
| 4. Date | No. of Hrs. | x | 75.00 | |

RECEIVED

**B. TIME SPENT IN PREPARATION:**

| | | | | |
|---|---|---|---|---|
| 1. Date 10/1/97 thru 11/13/97 6.00 | No. of Hrs. | x | $ 50.00 | 300.00 |
| 2. Date | No. of Hrs. | x | 50.00 | |
| 3. Date | No. of Hrs. | x | 50.00 | |
| 4. Date | No. of Hrs. | x | 50.00 | 300.00 |

**C. EXPENSES OF REPRESENTATION:**

1. _____
2. _____
3. _____
4. _____

**D. LESS COMPENSATION RECEIVED OR CLAIMS FILED EARLIER UNDER SEPARATE VOUCHER (S) FOR REPRESENTATION IN THIS CASE.**

**NET AMOUNT CLAIMED** 375.00

I certify that the above claim is correct and just and that payment has not been received and, except as noted in item D, no payment or promise of payment has been requested or accepted for representation in the above case.

_____
Mark E. Williams, Esq.
**SIGNATURE OF PAYEE**

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

**PAYEE SS# OR TAXPAYER I.D. #**

\* For felony cases, this amount plus item D shall not exceed $7,500.00 the limit set by the Judicial Court.

## FOR COURT USE ONLY

Certification of Fund

Approved for Payment

_____          _____
                                  **Judge, Superior Court**

Mark Williams, Esq.
Suite A12-225, GCIC Bldg.
404 W. Soledad Ave.
Agana, Guam 96910
Telephone: 477-1389
Facsimile: 653-4502

## EXHIBIT "A"

PEOPLE vs.                 |      CASE NO. CF - 317-97

      RANDY CHARGUALAF        |

                                         |

                                         |

## TIME SPENT IN COURT:

| 10/3/97 | Trial Setting/Pres. Judge Lamorena | 1.00 |
|---|---|---|

**TOTAL NO. OF HOURS = 1.00**

## TIME SPENT IN PREPARATION:

| 10/1/97 | rcv/rvw plea offer | 1.00 |
|---|---|---|
| 10/2/97 | mtg w/AAG Stern and Moore re: case status, plea offer | 1.00 |
| 10/3/97 | mtg w/client re:evid,plea offer, case status | 1.50 |
| 10/22/97 | mtg w/client re: evid, case status | 1.00 |
| 11/13/97 | mtg w/investig re: case status | 1.50 |

**TOTAL NO. OF HOURS = 6.00**

**COSTS: Copies for client:**

Inhouse copies: none

# VOUCHER FOR COMPENSATION OF
# COURT-APPOINTED COUNSEL

## FELONY CASE
### SUPERIOR COURT OF GUAM

DATE: 2/2/98

PAYEE  Mark E. Williams
ADDRESS  404 W. Soledad Ave. Ste.#702-225, Agana, Guam 96910
CASE  People  VS  Ponoy Chardualat
CASE NO.  CF-317-97

**A. TIME SPENT IN COURT:**

| | | |
|---|---|---|
| 1. Date _____ | No. of Hrs. _____ | x $ 75.00 _____ |
| 2. Date _____ | No. of Hrs. _____ | x 75.00 _____ |
| 3. Date _____ | No. of Hrs. _____ | x 75.00 _____ |
| 4. Date _____ | No. of Hrs. _____ | x 75.00 _____ |

**B. TIME SPENT IN PREPARATION:**

| | | |
|---|---|---|
| 1. Date 1/28/98 | No. of Hrs. .50 | x $ 50.00  25.00 |
| 2. Date 1/29/98 | No. of Hrs. .25 | x 50.00  12.50 |
| 3. Date 1/28 1/29/98 | No. of Hrs. 3.33 | x 50.00  166.50 |
| 4. Date 1/30/98 | No. of Hrs. 1.33 | x 50.00  66.50 |

230.50

**C. EXPENSES OF REPRESENTATION:**

1. _____  _____
2. _____  _____
3. _____  _____
4. _____  _____

**D. LESS COMPENSATION RECEIVED OR CLAIMS FILED EARLIER UNDER**
SEPARATE VOUCHER (S) FOR REPRESENTATION IN THIS CASE.  _____

**NET AMOUNT CLAIMED**  270.50

I certify that the above claim is correct and just and that payment has not been received and, except as noted in item D, no payment or promise of payment has been requested or accepted for representation in the above case.

_Mark Williams_
Mark Williams, Esq.

**SIGNATURE OF PAYEE**

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

**PAYEE SS# OR TAXPAYER I.D. #**

* For felony cases, this amount plus item D shall not exceed $7,500.00 the limit set by the Judicial Court.

## FOR COURT USE ONLY

Certification of Fund

_____

Date: _____

VOUCHER VERIFIED
3/4/98

Approved for Payment

_____

**Judge, Superior Court**

MAR 1 ____

Date: _____

OFFICE OF THE ATTORNEY · JUSTICE · HAGÅTÑA GUAM
JUL 14 2006
RECEIVED

Mark Williams, Esq.
Suite A12-225, GCIC Bldg.
404 W. Soledad Ave.
Agana, Guam 96910
Telephone: 477-1389
Facsimile: 653-4502

## EXHIBIT "A"

PEOPLE vs.                                      CASE NO. CF - 317-97

|

RANDY CHARGUALAF                  |

|

|

|

---

## TIME SPENT IN COURT:

### TOTAL NO. OF HOURS = 0.00

## TIME SPENT IN PREPARATION:

| Date | Description | Hours |
|------|-------------|-------|
| 1/20/98 | mtg w/AAG Moore re: disco, V's I.D., W's rapsheet | .50 |
| 1/28/98 | conf. w/ co-def se Sukola re: testimony | .25 |
| 1/29/98 | intvw co-def Mendiola | 1.50 |
| 1/29/98 | t/c w/W se Mantanona re: testimony | .33 |
| 1/29/98 | intvw W Rodney Cruz | 1.00 |
| 1/29/98 | t/c w/co-def Kaelani se Long re: testimony | .50 |
| 1/30/98 | t/c w/co-def Kaelani re: testimony | .33 |
| 1/30/98 | t/c w/def re: case status | .50 |
| 1/30/98 | mtg w/AAG Moore re: counter-offer, disco | .50 |

### TOTAL NO. OF HOURS = 5.41

**COSTS:  Copies for client:**

Inhouse copies:  none

# VOUCHER FOR COMPENSATION OF
## COURT-APPOINTED COUNSEL

# FELONY CASE
### SUPERIOR COURT OF GUAM

DATE: _12/30/97_

PAYEE _Trace Investigations, Inc._
ADDRESS _104F Ada's Comm & Prof Cntr 216 A Chalan Santo Papa Agana, GU 96910_
CASE _People_ VS _Randy Charguale?_
CASE NO. _CF317-97_

---

### A. TIME SPENT IN COURT:

| | | | |
|---|---|---|---|
| 1. Date _____ | No. of Hrs. _____ | x $ 75.00 | _____ |
| 2. Date _____ | No. of Hrs. _____ | x   75.00 | _____ |
| 3. Date _____ | No. of Hrs. _____ | x   75.00 | _____ |
| 4. Date _____ | No. of Hrs. _____ | x   75.00 | _____ |

### B. TIME SPENT IN PREPARATION:

| | | | |
|---|---|---|---|
| 1. Date _____ | No. of Hrs. _____ | x $ 50.00 | _____ |
| 2. Date _____ | No. of Hrs. _____ | x   50.00 | _____ |
| 3. Date _____ | No. of Hrs. _____ | x   50.00 | _____ |
| 4. Date _____ | No. of Hrs. _____ | x   50.00 | _____ |

### C. EXPENSES OF REPRESENTATION:

1. _Investigator (inv.#41)_     236.25
2. _____
3. _____
4. _____     236.25

### D. LESS COMPENSATION RECEIVED OR CLAIMS FILED EARLIER UNDER SEPARATE VOUCHER (S) FOR REPRESENTATION IN THIS CASE.

_Please see attached Investigator's Orders._     **NET AMOUNT CLAIMED**    236.25

*(stamp: OFFICE OF THE ATTORNEY GENERAL — JUL 14 2006 — HAGÅTÑA, GUAM — RECEIVED)*

I certify that the above claim is correct and just and that payment has not been received and, except as noted in item D, no payment or promise of payment has been requested or accepted for representation in the above case.

_____
**SIGNATURE OF PAYEE**

_411-06-736?_
**PAYEE SS# OR TAXPAYER I.D. #**

\* For felony cases, this amount plus item D shall not exceed $7,500.00 the limit set by the Judicial Court.

---

### FOR COURT USE ONLY

Certification of Fund

VOUCHER VERIFIED

By: _____
_Deputy Clerk_

Date: _____

_____
Date: _____

Approved for Payment

_____
**Judge, Superior Court**

MAR 12 1998

Date: _____

Superior Court of Guam
Guam Judicial Center
120 West O'Brien Drive
Agana Guam 96910
ATTN:

MATTER 970012

People v. Randy Chargualaf

| FEES | | HOURS | AMOUNT | |
|---|---|---|---|---|
| Dec-04-97 | Conducted a check for the defendant's witness. Unable to locate at residence. | 1.25 | 18.75 | RST |
| | Conducted surveillance at the same witness's residence - awaiting return. | 5.75 | 86.25 | RST |
| Dec-05-97 | Began surveillance for alleged witness, in Tamuning (no vehicle at the residence). | 5.75 | 86.25 | RST |
| | Discontinued surveillance. Resume report writing. | 1.00 | 15.00 | RST |
| Dec-08-97 | Made a check for information regarding motor vehicle identification numberrelating to the Randy Chargulaf felony case. | 2.00 | 30.00 | RST |
| TOTAL FEES | | 15.75 | $236.25 | |

| | |
|---|---|
| TOTAL FOR THIS BILL | $236.25 |
| PREVIOUS BALANCE | $630.00 |
| PREVIOUS RECEIPTS | $0.00 |
| PLEASE PAY | $866.25 |

FROM:

**ALFREDO M. BORLAS**
CLERK OF COURT
SUPERIOR COURT OF GUAM
120 WEST O'BRIEN DRIVE
AGANA, GUAM 96910
PHONE: 475-3360 / 3420

SUBJECT: 4621-97

DATE: 4.6.94

TO: Mark E. Williams Esq.

MESSAGE

Please Reply To: ☞

SIGNED:

ANSWER

DATE:

SIGNED:

Send white and pink copies with carbons intact.



OFFICE OF THE ATTORNEY GENERAL
HAGÅTÑA, GUAM
RECEIVED 2006

Mark E. Williams, Esq.
404 W. Soledad Ave
Suite #A12-225
Agana, Guam 96910
Tel: 671-477-1389
Fax: 671-653-4502

Attorney for Defendant

# IN THE SUPERIOR COURT
# OF GUAM

PEOPLE OF GUAM,

        Plaintiff,

        vs.

RANDY I. CHARGUALAF,

        Defendant.

| CRIMINAL CASE NO. CF-317-97
|
|
| **MOTION AND ORDER**
| **TO SUPPRESS EVIDENCE**
|
|
|
|

---

1       The Defendant in the above-entitled case moves the court for an order instructing the

2   prosecutor, his representatives and witnesses to refrain from making any direct or indirect

3   reference whatsoever at trial by counsel or through witnesses, to the specified matters set forth

4   below without first obtaining permission from the Court outside the presence and hearing of the

5   jury. This motion is made on the following grounds:

6

7       1. The Defendant is informed, believes and hence alleges that at said trial the Prosecutor

8   will attempt to introduce evidence, make reference to, or otherwise leave the jury with the

9   impression that the victim in this case properly identified the defendant as one of the persons

10   responsible in this case. Also, the defendant believes that the government will attempt to have

11   the victim identify the defendant at trial as a product of this pretrial identification. However in

12   fact, as shown in the statement of the victim's spouse attached as Exhibit 1, the defendant was

1    the only person shown to the victim the day after the crime at the Tumon Precinct, and when the

2    spouse of the victim asked Officer Cress if that person was one of the perpetrators, it was Officer

3    Cress who responded by saying, "Yes". Because the Defendant was the only one present in this

4    "show-up" "line-up" and the victim and spouse were told by the officer that the defendant was

5    responsible for this crime, this identification was unduly suggestive and misleading as prohibited

6    by the rule of <u>Stovall v. Denno</u>, 388 U.S. 293 (1969). In such cases, the exclusionary rule is

7    invoked to exclude both the pre-trial identification and any identification at trial as a product of

8    the pretrial identification procedure. This unlawful identification procedure will contribute

9    materially to the likelihood of an irreparably mistaken in-court identification by the victim at

10   trial. Therefore, admission of any out-of-court and in-court identifications by the victim would

11   violate the Defendant's right to due process of law.

12

13        2. The Defendant has pled not guilty and it is anticipated that he will invoke his

14   privilege against self-incrimination at trial. To prevent any prejudicial speculation as the jurors

15   might make, the Defendant respectfully moves this court to require the government not to

16   mention or refer to any prior conviction or extrinsic act not within the scope of the Indictment in

17   this case. Because such evidence is extrinsic to the case, the probative value of such evidence

18   would be substantially outweighed by the danger of unfair prejudice created in the minds of the

19   jury. 6 G.C.A. § 403 (1993). In the interests of justice and fairness, it is absolutely necessary

20   that the Defendant be entitled to pretrial disposal of this issue in order to have the ability to

21   prepare for trial. Therefore the Defendant moves the Court to issue an order preventing the

1  government from using any extrinsic convictions, crimes, wrongs or acts as evidence at trial.

2  Therefore the Defendant prays that the Court exercise its power over the conduct of this

3  trial and order the Prosecution not to elicit testimony respecting, mentioning, or referring to the

4  above matters without securing prior clearance from the Court.

5

6  Respectfully submitted this _20th_ day of _MAR_, 19 _8_.

7

8  _Mark E. Will_

9  **MARK E. WILLIAMS, Esq.**

10  *Attorney for Defendant*

11

12  This matter having come before the court upon defendant's motion to suppress evidence,

13  IT IS HEREBY ORDERED that the government refrain from making any direct or indirect

14  reference whatsoever at trial by counsel or through witnesses, to the specified matters set forth

15  below without first obtaining permission from the Court outside the presence and hearing of the

16  jury

17

18  Date:_____

19  _____

20  THE HONORABLE ALBERTO C. LAMORENA, III

21  PRESIDING JUDGE, SUPERIOR COURT OF GUAM

EXHIBIT I

PLACE STATEMENT TAKEN: _TUN JOAQUIN SANTOS_ KETION APT 105    EVENT NO. _CF317-97_

NAME: _CERTEZA, BENJAMIN F.T._    NATIONALITY: _GUAMANIAN_

SOCIAL SECURITY/ID. NO.: _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_    DATE OF BIRTH: _4-7-54_

ADDRESS: _P.O. Box 12351 TAM, GUAM 96931_    HOME PHONE: _646-1968_

EMPLOYED BY: _LAM LAM TOURS_    WORK PHONE: _646-1028_

DATE STATEMENT STARTED: _1:45 p.m. 1-14-98_    TIME STARTED: _10:45 p.m._

## I AM GIVING THE FOLLOWING STATEMENT FREELY AND VOLUNTARILY.

ON OR ABOUT 20 JUL 97, 22:25 p.m. I WAS CALLED ON THE
(JOSE PANGELINAN)
RADIO BY J.P. OUR DISPATCHER upon ARRIVAL AT MY RESIDENCE
AN OFFICER WAS AT MY HOME TALKING TO MY WIFE. AT ABOUT
ON THE 21 JUL 97
08:45 A.m. I RECEIVED A CALL ABOUT THE INCIDENT LAST NIGHT
CAN YOU COME OVER TO KOBAN AT TAM PRECINCT. UPON ARRIVING
AT THE KOBAN I MET OFFICER CHRIST AT THE FRONT DESK.
HE ASK MY WIFE TO IDENTIFY A CARD LIKE A CREDIT CARD
IN JAPANESE WRITING. AT THAT TIME I ASKED OFFICE CHRIST
WAS THAT THE INDIVIDUAL SITTING AT THE TABLE WITH SOME
EVIDENCE THAT WAS IN FRONT OF OFFICER SANTO THOMAS.
THIS IS WHEN OFFICER CHRIST DROP THE COVER OR FLAG ON THE CARDS
AT WHICH TIME I IDENTIFIED THE ENVELOP THAT MY WIFE
HAD PUT MONEY (TAITAGUE GAS. SALES) AND THE WAY SHE
HAD FOLD THE MONEY.

The above statement is true and correct to the best of my knowledge

WITNESSED: _Nobuyo. K. Certeza_    SIGNATURE

WITNESSED: _____    TIME: _14:10 p.m._  DATE: _1-14-98_

| | |
|---|---|
| BJ | THIS the way I ASKED officer CREST. |
| BJ. | OFFICER CREST WAS THAT the SoN of BitcH Sitting there |
| CREST | yes. |
| BJ. | How ABOUT the others – |
| CREST | THEre out picking them up. |
| BJ. | Any else |
| other | NO. will can you later. |
| BJ | my wife And I LEFT to Go Home. met OFFICER DAWSON |
| | A Junction ok Ayless. |
| BJ | officer DAWSON any thing |
| Dawson | yes but will can you I Got lucking I found A |
| | purse that was about to be toss in the Dumpster. |
| BJ | CAN I SEE IT |
| Dawson | yes is it this. |
| BJ | yes. |
| Dawson | ok will can you ALAN. |
| | Upon Receiving RANdy CHARGUARE He Has BLK Hair TATO |
| | oN His ARM. AT that time I was So mad that I wanted |
| | To TAKE the Law in my HANDS. As Foe Pig mR mendioLA |
| | ConceRNS I saw Her is he ExIT the bean. when I saw |

The above statement is true and correct to the best of my knowledge

WITNESSED: *Nelaya. K. Cuteza*　　　SIGNATURE _____

WITNESSED: _____　　　TIME: 14:30 pm　DATE: 1-14-58

HER, SHE WAS LIKING looking individual like who cares "WHAT are you going to Do" At time we left and never saw the third person.

*- END -OF STATEMENT*

The above statement is true and correct to the best of my knowledge

WITNESSED: _Nelaya. K. Citeza_     SIGNATURE_____

WITNESSED:_____     TIME: _14:30 pm_     DATE: _1-14-98_

Mark E. Williams, Esq.
404 W. Soledad Ave
Suite #A12-225
Agana, Guam 96910
Tel: 671-477-1389
Fax: 671-653-4502

Attorney for Defendant



*12:41 pm*

*MAY 6 1998*
*pm*

## IN THE SUPERIOR COURT OF GUAM
## TERRITORY OF GUAM

RECEIVED

| | |
|---|---|
| PEOPLE OF THE TERRITORY OF GUAM, | CRIMINAL CASE NO. CF-317-97 |
| Plaintiff, | **NOTICE OF MOTION;** |
| | **EX PARTE MOTION TO WITHDRAW** |
| vs. | **AS COURT-APPOINTED COUNSEL;** |
| | **ORDER** |
| RANDY CHARGUALAF, | |
| Defendant. | |

1

2   TO:   ATTORNEY GENERAL'S OFFICE - Prosecution Division

3        PLEASE TAKE NOTICE that on May 1, 1998, at the hour of 11 A.M., or as soon

4   thereafter as counsel may be heard, the undersigned will bring the above motion on for hearing.

5                              MOTION

6        COMES NOW the law office of MARK E. WILLIAMS, and hereby moves this court for

7   permission to withdraw as counsel of record for Defendant, due to a conflict of interest.

8        This request is based on good cause and supported by the Memorandum of Points and

9   Authorities below.

10        Respectfully submitted this date: ___5/1/98___.

11                                        Mark E. Williams, Esq.

12

13                                        *Attorney for Defendant*

1

2                                    ORDER

3        IT IS HEREBY APPROVED AND SO ORDERED that the law office of Mark

4   Williams' motion to withdraw is GRANTED.

5   _____ Alexander Corman is hereby appointed as counsel for

6   defendant Randy Chargualaf.

7

8        SO ORDERED _____ MAY 05 1998 _____.

9

10                                        _____

11                        HONORABLE JUDGE, SUPERIOR COURT OF GUAM

12

13

14

15   I do hereby certify that the foregoing
     is a full true and correct copy of the
     original on file in the office of the
     clerk of the Superior Court of Guam

16

     MAY 1 6 2006

17

18   Jerimie K.J. Duenas
     Deputy Clerk Superior Court of Guam

19

20

21

22

Mark E. Williams, Esq.
404 W. Soledad Ave
Suite #A12-225
Agana, Guam 96910
Tel: 671-477-1389
Fax: 671-653-4502

Attorney for Defendant

# IN THE SUPERIOR COURT OF GUAM
## TERRITORY OF GUAM

PEOPLE OF THE TERRITORY OF GUAM,   |   CRIMINAL CASE NO. CF-317-97

             Plaintiff,     |   **MEMORANDUM OF POINTS**
                              |   **AND AUTHORITIES IN SUPPORT OF**
             vs.           |   **MOTION TO WITHDRAW;**
                              |   **ORDER APPOINTING COUNSEL**

RANDY CHARGUALAF,        |

            Defendant.    |

---

## MEMORANDUM OF POINTS AND AUTHORITIES

The law office of Mark Williams, brings this Motion to Withdraw as Court-Appointed Counsel, due to conflict of interest as defendant has continuously made harassing phone calls to counsel involving obscene and personal threats, has expressed the intent to file ethical complaints against counsel, desires to represent himself in these proceedings, refuses to accept the advice or recommendations of counsel, and despite admonishment by counsel, persists in making ex-parte communications with the court. Therefore, the attorney-client relationship between the defendant and counsel has deteriorated to such a point that effective communication with counsel is no longer possible nor desired.

The Guam Rules of Professional Conduct provide:

A lawyer shall not represent a client if the representation of that client may be materially limited by ... the lawyer's own interests... 7 G.C.A. App. F (1993).

1

2     The attorney-client relationship has deteriorated to such an extent that counsel no longer

3  desires or believes that he can represent defendant in this matter.

4     For these reasons, counsel respectfully requests that the Court grant this motion to

5  withdraw from representation.

6     Respectfully submitted this date: _5/1/97_.

7                                    Mark E. Williams, Esq.

8

9                                    *Attorney for Defendant*

10

11

12

13

14

15                          I do hereby certify that the foregoing
                            is a full true and correct copy of the
16                          original on file in the office of the
                            clerk of the Superior Court of Guam
17                          MAY 1 6 2006

18                          Jerimie K.J. Duenas
                            Deputy Clerk Superior Court of Guam
19

20

21

22

# IN THE SUPERIOR COURT OF GUAM

THE PEOPLE OF GUAM

        vs.

RANDY CHARGUALAF,

               Defendant.

CRIMINAL CASE NO. CF0317-97

RECEIVED

## NOTICE OF COURT APPOINTMENT OF COUNSEL

TO: [     ] PUBLIC DEFENDER SERVICE CORPORATION

[XXXXXXXXX]   ALEXANDER GORMAN, ESQ.

You are hereby notified that you are appointed by the court to represent Defendant **RANDY CHARGUALAF**, as stated on the above-captioned case.

## SAID DEFENDANT IS PRESENTLY ON:

[XXX] Confined pending posting of cash bond of $ __100,000.00__ .
[  ] Confined = Prior Case(s)
[  ] Personal Recognizance (PR) Bond of.......$_____.
[  ] Unsecured Bond............................$_____.
[  ] Surety Bond of...........................$_____.
[  ] Bench Warrant............................$_____.
[  ] Own Recognizance

## COURT APPEARANCE DATE:

[  ] Preliminary Hearing:_____.
[  ] Arraignment:_____.
[  ] Status Hearing:_____.
[XXX] Trial Setting: __MAY 8, 1998 AT 4:00PM_____.
[  ] Bench Trial:_____.
[  ] Jury Selection/Trial:_____.
[  ] Other:_____.

ALBERTO C. LAMORENA, III
Presiding Judge
Superior Court of Guam

DATED: MAY 6, 1998

BY: _____ EVELYN CABRERA
Courtroom Chamber

*RECEIVED FOR SERVICE*

_____
Deputy Marshal SCOG

I do hereby certify that the foregoing is a full, true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam

MAY 18 2006

Jerimie K.J. Dueñas
Deputy Clerk, Superior Court of Guam

| TAPE NO: | 98-423 | PAGE NO: | 1 | COURT CONVENED AT: | 4:00 _ AM X PM | DATE: 05 08 1998 |

PRESENT: **JUDGE:** ALBERTO C. LAMORENA III , Presiding Judge
**CLERK:** EVELYN L. CABRERA

CASE NUMBER: CF0317-97

CASE TITLE:
PEOPLE OF THE TERRITORY OF GUAM
VS.
RANDY I CHARGUALAF *

COUNSEL PRESENT:
PLAINTIFF:
DEFENDANT: _A. Gorman_

PROCEEDINGS: CRIMINAL TRIAL SETTING

LOG NUMBER ! DESCRIPTION

0710 Case called: (✓)Deft present w/atty ( )Deft not present ( )D/A not present

RECEIVED am/pm

( ) Jury selection and trial set for: _____ _____ am/pm

( ) Motion cut-off date: _____

( ) Pretrial Conference: _____ ____ am/pm

( ) Time waived by D/A

( ) Speedy trial asserted

(✓) Trial setting continued: _6/5_ _4_ am/(pm)

( ) Change of plea hearing: _____ ____ am/pm

( ) Further proceedings hearing: _____ ____ am/pm

( ) Issue order to show cause on defense attorney

( ) Bench warrant to issue - Bail set $_____

Others:

_D/A reg. continuance_

_Plea - 12/23/97_
_- PSI report due 4/7/97_
_- Sentency on 4/28/97_
_- DOES A_

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam

JUL 06 2006

Jerimie K.J. Duenas
Deputy Clerk Superior Court of Guam

# VOUCHER FOR COMPENSATION OF
## COURT-APPOINTED COUNSEL

## FELONY CASE
### SUPERIOR COURT OF GUAM

DATE: 4/13/98

PAYEE Mark E. Williams
ADDRESS 414 W. Soledad Ave., Ste. A12-215, Agana, Guam 96910
CASE Janet Chargualaf _____ VS _____
CASE NO. CF-017-97

**A. TIME SPENT IN COURT:**

| | | |
|---|---|---|
| 1. Date _____ | No. of Hrs. _____ | x $ 75.00 _____ |
| 2. Date _____ | No. of Hrs. _____ | x 75.00 _____ |
| 3. Date _____ | No. of Hrs. _____ | x 75.00 _____ |
| 4. Date _____ | No. of Hrs. _____ | x 75.00 _____ |

-0.00-

**B. TIME SPENT IN PREPARATION:**

| | | |
|---|---|---|
| 1. Date 2/4/98-4/8/98 | 10.00 | x $ 50.00   500.00 |
| 2. Date dis.and atty. | No. of Hrs. _____ | x 50.00 _____ |
| 3. Date _____ | No. of Hrs. _____ | x 50.00 _____ |
| 4. Date _____ | No. of Hrs. _____ | x 50.00 _____ |

500.00

**C. EXPENSES OF REPRESENTATION:**

1. _____   _____
2. _____   _____
3. _____   _____
4. _____   _____

**D. LESS COMPENSATION RECEIVED OR CLAIMS FILED EARLIER UNDER
SEPARATE VOUCHER (S) FOR REPRESENTATION IN THIS CASE.**

NET AMOUNT CLAIMED   500.00

I certify that the above claim is correct and just and that payment has not been received and, except as noted in item D, no payment or promise of payment has been requested or accepted for representation in the above case.

_____
SIGNATURE OF PAYEE

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
PAYEE SS# OR TAXPAYER I.D. #

\* For felony cases, this amount plus item D shall not exceed $7,500.00 the limit set by the Judicial Court.

## FOR COURT USE ONLY

Certification of Fund

6·3·98

Approved for Payment

_____
Judge, Superior Court

JUN 18 1998

Date: _____

OFFICE OF THE ATTORNEY
HAGÅTÑA, GUAM
RECEIVED

# VOUCHER FOR COMPENSATION OF
## COURT-APPOINTED COUNSEL

No 4835

## FELONY CASE
### SUPERIOR COURT OF GUAM

DATE: 4/13/98

PAYEE        Mark E. Williams
ADDRESS      404 W. Soledad Ave. Ste. A12-225, Agana, Guam 96910
CASE         Randy Chargualaf          — VS —
CASE NO.     CF-317-97

---

**A. TIME SPENT IN COURT:**

| | | | |
|---|---|---|---|
| 1. Date _____ | No. of Hrs. _____ | x $ 75.00 _____ | |
| 2. Date _____ | No. of Hrs. _____ | x 75.00 _____ | |
| 3. Date _____ | No. of Hrs. _____ | x 75.00 _____ | |
| 4. Date _____ | No. of Hrs. _____ | x 75.00 _____ | –0.00– |

**B. TIME SPENT IN PREPARATION:**

| | | | |
|---|---|---|---|
| 1. Date 2/4/98-4/8/98 pls.see atch. | No. of Hrs. 10.00 | x $ 50.00   500.00 | |
| 2. Date _____ | No. of Hrs. _____ | x 50.00 _____ | |
| 3. Date _____ | No. of Hrs. _____ | x 50.00 _____ | |
| 4. Date _____ | No. of Hrs. _____ | x 50.00 _____ | 500.00 |

**C. EXPENSES OF REPRESENTATION:**

1. _____
2. _____
3. _____
4. _____

**D. LESS COMPENSATION RECEIVED OR CLAIMS FILED EARLIER UNDER SEPARATE VOUCHER (S) FOR REPRESENTATION IN THIS CASE.**

**NET AMOUNT CLAIMED** 500.00

I certify that the above claim is correct and just and that payment has not been received and, except as noted in item D, no payment or promise of payment has been requested or accepted for representation in the above case.

_Mark E. Williams_
Mark Williams, Esq.
**SIGNATURE OF PAYEE**

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
**PAYEE SS# OR TAXPAYER I.D. #**

\* For felony cases, this amount plus item D shall not exceed $7,500.00 the limit set by the Judicial Court.

---

### FOR COURT USE ONLY

Certification of Fund

Approved for Payment

_____

_____
**Judge, Superior Court**

Date: _____

Date: _____

Mark Williams, Esq.
Suite A12-225, GCIC Bldg.
404 W. Soledad Ave.
Agana, Guam 96910
Telephone: 477-1389
Facsimile: 653-4502

## EXHIBIT "A"

| | | |
|---|---|---|
| PEOPLE vs. | | CASE NO. CF -317 - 97 |
| RANDY CHARGUALAF | | |

---

## TIME SPENT IN COURT:

### TOTAL NO. OF HOURS = 0.00

## TIME SPENT IN PREPARATION:

| | | |
|---|---|---|
| 2/4/98 | conf w/co-def se Long re: testimony | .50 |
| 2/27/98 | prep waiver ltr for victim | .50 |
| 3/3/98 | prep, file, serve disco request | 1.50 |
| 3/3/98 | conf. w/witness Guerrero and Investigator | 1.00 |
| 3/13/98 | mtg w/victim re: waiver | 1.00 |
| 3/14/98 | rsrch mtn to suppress, dismiss | 2.00 |
| 3/15/98 | mtg w/client re: evid, disco, case status | 2.00 |
| 3/31/98 | conf. w/client re: mtns, waiver | .50 |
| 4/8/98 | rcv/rvw add'l disco, W-list | 1.00 |

### TOTAL NO. OF HOURS = 10.00

**COSTS: Copies for client:**

Inhouse copies: none

# VOUCHER FOR COMPENSATION OF
## COURT-APPOINTED COUNSEL

# FELONY CASE
## SUPERIOR COURT OF GUAM

DATE: _____

PAYEE ___Trace Investigations, Inc.___
ADDRESS ___104F Ada's Comm & Prof Cntr 216 A Chalan Santo Papa Agana___
CASE ___People___ VS ___Randy Charqualaf___
CASE NO. ___CF317-97___

**RECEIVED**

### A. TIME SPENT IN COURT:

| | | |
|---|---|---|
| 1. Date _____ | No. of Hrs. _____ | x $ 75.00 _____ |
| 2. Date _____ | No. of Hrs. _____ | x 75.00 _____ |
| 3. Date _____ | No. of Hrs. _____ | x 75.00 _____ |
| 4. Date _____ | No. of Hrs. _____ | x 75.00 _____ |

### B. TIME SPENT IN PREPARATION:

| | | |
|---|---|---|
| 1. Date _____ | No. of Hrs. _____ | x $ 50.00 _____ |
| 2. Date _____ | No. of Hrs. _____ | x 50.00 _____ |
| 3. Date _____ | No. of Hrs. _____ | x 50.00 _____ |
| 4. Date _____ | No. of Hrs. _____ | x 50.00 _____ |

### C. EXPENSES OF REPRESENTATION:

| | | |
|---|---|---|
| 1. Investigator sees Inv.#46 | | $333.75 |
| 2. Photocopies 10 x .50 | | 5.00 |
| 3. _____ | | |
| 4. _____ | | $38.75 |

### D. LESS COMPENSATION RECEIVED OR CLAIMS FILED EARLIER UNDER SEPARATE VOUCHER (S) FOR REPRESENTATION IN THIS CASE.

Please see Investigator Order attached.

**NET AMOUNT CLAIMED** 338.75

I certify that the above claim is correct and just and that payment has not been received and, except as noted in item D, no payment or promise of payment has been requested or accepted for representation in the above case.

_____
SIGNATURE OF PAYEE

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
PAYEE SS# OR TAXPAYER I.D. #

* For felony cases, this amount plus item D shall not exceed $7,500.00 the limit set by the Judicial Court.

## FOR COURT USE ONLY

Certification of Fund

_____

Date: _____

VOUCHER VERIFIED
By: _____
Deputy Clerk
Date: 3/24/98

Approved for Payment

_____
Judge, Superior Court

Date: _____

Superior Court of Guam
Guam Judicial Center
120 West O'Brien Drive
Agana Guam 96910
ATTN:

MATTER 970012

People v. Randy Chargualaf; CF317-97

| FEES | | HOURS | AMOUNT | |
|---|---|---|---|---|
| Jan-07-98 | Conference with Defense Attorney regarding victim's testimony and other relevant defense concerns. | 1.00 | 15.00 | RST |
| Jan-12-98 | Tele-conference with Attorney Mark Williams regarding case status. | 0.25 | 3.75 | RST |
| | Called Territorial Detention Center to coordinate interview with the defendant. | 0.25 | 3.75 | RST |
| | Interviewed the defendant, Randy Chargualaf at the Territorial Detention Center. | 0.75 | 11.25 | RST |
| | Drafted notes for further addition to the defendant's case file. | 0.75 | 11.25 | RST |
| | Revised investigative report for the Randy Chargualaf case. | 0.75 | 11.25 | RST |
| Jan-13-98 | Called defense attorney regarding the defendant's case. | 0.25 | 3.75 | RST |
| | Tele-conference with Mark Williams regarding the defendant, Randy Chargulaf's case. | 0.50 | 7.50 | RST |
| Jan-14-98 | Appointment conference with Attorney Mark Williams regarding Randy Chargualaf's case. | 2.00 | 30.00 | RST |
| | Interviewed Mrs. Certeza regarding Randy Chargualaf's case with Attorney Mark Williams. | 1.00 | 15.00 | RST |
| | Interview Mr. Certeza regarding the Randy Chargualaf case with Attorney Mark Williams. | 1.00 | 15.00 | RST |
| | Revised report of Investigation with update information for the Randy Chargualaf's felony case. | 2.00 | 30.00 | RST |
| | Contacted witness regarding Randy Chargualaf case. | 0.25 | 3.75 | RST |
| | Checked neighbors at apartment building for potential witnesses. | 2.00 | 30.00 | RST |
| | | 0.00 | 0.00 | RST |
| Feb-02-98 | Teleconference with Attorney | 2.00 | 30.00 | RST |

FEES     HOURS     AMOUNT

| Date | Description | Hours | Amount | |
|---|---|---|---|---|
| | Williams regarding the defendant's information. Review case file in comparison with recent information from Attorney Williams. | 2.00 | 30.00 | RST |
| Feb-03-98 | Called Attorney Sukola's office regarding Randy Chargualaf (left message). | 0.25 | 3.75 | RST |
| | Conducted a background check of additional possible witnesses for the defendant's case. | 0.75 | 11.25 | RST |
| | Review Chargualaf correspondence from defense attorney regarding additional information. | 0.50 | 7.50 | RST |
| | Compare additional information from correspondence with existing discovery, Grand Jury Transcripts and other information. | 0.50 | 7.50 | RST |
| | Conference with Attorney Sukola regarding interview of co-defendant in regards to the defendant's case. | 0.50 | 7.50 | RST |
| Feb-06-98 | Conducted background check regarding Chargualaf case matters. | 2.00 | 30.00 | RST |
| | Revised witness list for the Randy Chargualaf case. | 0.50 | 7.50 | RST |
| Feb-09-98 | Conference with Attorney Mark Williams regarding the defendant's case status. | 0.50 | 7.50 | RST |

TOTAL FEES     22.25     $333.75

Photocopies 10 @ .50 = $5—

| | |
|---|---|
| TOTAL FOR THIS BILL | $333.75 |
| PREVIOUS BALANCE | $866.25 |
| PREVIOUS RECEIPTS | $0.00 |
| PLEASE PAY | $1,200.00 |

# VOUCHER FOR COMPENSATION OF COURT-APPOINTED COUNSEL

## FELONY CASE
### SUPERIOR COURT OF GUAM

DATE: 7/30/98

PAYEE A. ALEXANDER Solmani
ADDRESS 238 PDS 237 Lujan 419 N. Douglas, Harmon
CASE People of Guam vs
CASE NO. CF 517-97

**A. TIME SPENT IN COURT:**

| | | | | |
|---|---|---|---|---|
| 1. Date _____ | No. of Hrs. _____ | x | $ 75.00 | _____ |
| 2. Date _____ | No. of Hrs. _____ | x | 75.00 | _____ |
| 3. Date _____ | No. of Hrs. _____ | x | 75.00 | _____ |
| 4. Date _____ | No. of Hrs. 2.2 | x | 75.00 | _____ |

RECEIVED

**B. TIME SPENT IN PREPARATION:**

| | | | | |
|---|---|---|---|---|
| 1. Date _____ | No. of Hrs. _____ | x | $ 50.00 | _____ |
| 2. Date _____ | No. of Hrs. _____ | x | 50.00 | _____ |
| 3. Date _____ | No. of Hrs. _____ | x | 50.00 | _____ |
| 4. Date _____ | No. of Hrs. 7.2 | x | 50.00 | 360.00 |

**C. EXPENSES OF REPRESENTATION:**

| | | |
|---|---|---|
| 1. 254 copies @ .25 | 63.50 | |
| 2. _____ | _____ | |
| 3. _____ | _____ | 63.50 |
| 4. _____ | _____ | |

**D. LESS COMPENSATION RECEIVED OR CLAIMS FILED EARLIER UNDER SEPARATE VOUCHER (S) FOR REPRESENTATION IN THIS CASE.**

**NET AMOUNT CLAIMED** 588.50

I certify that the above claim is correct and just and that payment has not been received and, except as noted in item D, no payment or promise of payment has been requested or accepted for representation in the above case.

_____
**SIGNATURE OF PAYEE**

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
**PAYEE SS# OR TAXPAYER I.D. #**

* For felony cases, this amount plus item D shall not exceed $7,500.00 the limit set by the Judicial Court.

---

## FOR COURT USE ONLY

Certification of Fund

_____

Date: _____

Approved for Payment

_____

**Judge, Superior Court**

Date: _____

*See Invoice dated 7/29/98 for detail*

# VOUCHER FOR COMPENSATION OF COURT-APPOINTED COUNSEL

05967

## FELONY CASE
### SUPERIOR COURT OF GUAM

DATE: 7/29/98

PAYEE A. ALEXANDER GORMAN
ADDRESS Ste 805 GCIC BLDG, 414 W. SOLEDAD, AGANA 96910
CASE RANDY CHARGUALAF _____ VS _____
CASE NO. CF 317-97

---

**A. TIME SPENT IN COURT:**

| | | | | |
|---|---|---|---|---|
| 1. Date _____ | No. of Hrs. _____ | x $ 75.00 _____ | | |
| 2. Date _____ | No. of Hrs. _____ | x   75.00 _____ | | |
| 3. Date _____ | No. of Hrs. _____ | x   75.00 _____ | | |
| 4. Date _____ | No. of Hrs. 2.2 | x   75.00 _____ | | 165.00 |

**B. TIME SPENT IN PREPARATION:**

| | | | | |
|---|---|---|---|---|
| 1. Date _____ | No. of Hrs. _____ | x $ 50.00 _____ | | |
| 2. Date _____ | No. of Hrs. _____ | x   50.00 _____ | | |
| 3. Date _____ | No. of Hrs. _____ | x   50.00 _____ | | |
| 4. Date _____ | No. of Hrs. 7.2 | x   50.00 _____ | | 360.00 |

**C. EXPENSES OF REPRESENTATION:**

1. 254 copies @ .25          63.50
2. _____
3. _____
4. _____                                        63.50

**D. LESS COMPENSATION RECEIVED OR CLAIMS FILED EARLIER UNDER SEPARATE VOUCHER (S) FOR REPRESENTATION IN THIS CASE.**

NET AMOUNT CLAIMED    588.50

I certify that the above claim is correct and just and that payment has not been received and, except as noted in item D, no payment or promise of payment has been requested or accepted for representation in the above case.

_____
SIGNATURE OF PAYEE

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
PAYEE SS# OR TAXPAYER I.D. #

* For felony cases, this amount plus item D shall not exceed $7,500.00 the limit set by the Judicial Court.

---

## FOR COURT USE ONLY

Certification of Fund

_____

Date: _____

Approved for Payment

Original Signed By:
HON. ALBERTO C. LAMORENA III
Judge, Superior Court

Date: AUG 10 1998

A. Alexander German, Esq.
Suite 805, GCIC Building
414 W. Soledad Avenue
Agana, Guam 96910

## INVOICE

Date:     7/29/98
To:       Superior Court of Guam

Re:       Randy Chargualaf
          CF317-97

**PREPARATION:  $50.00/hr.**

| Date | Description | Hours | Amount |
|------|-------------|-------|--------|
| 5/7 | Review Indictment | .5 | 25.00 |
|     | Admin | .3 | 15.00 |
| 5/8 | Court prep | .6 | 30.00 |
| 5/26 | Discuss w/Mark Williams | .3 | 15.00 |
| 5/29 | T/c w/client | .5 | 25.00 |
| 6/1 | Discuss w/Mark Williams | .5 | 25.00 |
|     | Discuss w/Mark Williams | .2 | 10.00 |
| 6/4 | Discuss w/David Moore | .3 | 15.00 |
| 6/12 | Court prep | .8 | 40.00 |
| 6/29 | Review records | 1.0 | 50.00 |
| 7/6 | Court prep | .3 | 15.00 |
| 7/8 | Review file | .5 | 25.00 |
| 7/10 | Deliver file | .3 | 15.00 |
| 7/15 | Draft Req./Order | .5 | 25.00 |
| 7/16 | File docs | .3 | 15.00 |
| 7/29 | Admin | .3 | 15.00 |
|     |  | **7.2** | **360.00** |

**COURT:  $75.00/hr.**

| Date | Description | Hours | Amount |
|------|-------------|-------|--------|
| 5/8 | Court hearing | 1.0 | 75.00 |
| 6/12 | Court hearing | .6 | 45.00 |
| 7/6 | Court hearing | .6 | 45.00 |
|     |  | **2.2** | **165.00** |

```
                         360.00
                         165.00
254 copies @ .25 =        63.50
```

## TOTAL INVOICE:   $588.50

A. Alexander Gorman, Esq.
LAW OFFICES OF A. ALEXANDER GORMAN
Suite 805, GCIC Building
414 West Soledad Avenue
Agana, Guam 96910
Telephone: 472-2302
Facsimile: 472-2342

Attorneys for Defendant
RANDY IGNACIO CHARGUALAF

RECEIVED
JUL 1 6 1998
3:17
TIME:
INT:
OF COURT OF GUAM
CLERK OF COURT

# IN THE SUPERIOR COURT

## OF GUAM

**PEOPLE OF GUAM**

Plaintiff,

vs.

**RANDY IGNACIO CHARGUALAF,**

Defendant.
_____/

CRIM. CASE NO. CF 317-97

**REQUEST AND
ORDER FOR INVESTIGATOR**

## REQUEST

COMES NOW, Defendant RANDY IGNACIO CHARGUALAF, by and through his

counsel of record, A. Alexander Gorman, Esq., and hereby requests the appointment of

the investigative firm of Hall & Associates, Inc., to assist his defense of this case

pursuant to 8 G.C.A. 45.50 and Mason v. Arizona, 504 F.2d 1345 (9th Cir. 1974).

Executed on July 15, 1998

LAW OFFICES OF A. ALEXANDER GORMAN

BY: _____
A. ALEXANDER GORMAN, ESQ.
Attorneys for Defendant
RANDY IGNACIO CHARGUALAF

## ORDER

Hall & Associates, Inc. are hereby appointed investigators in this case at $15.00

per hour, not to exceed $1500.00.

DATED: AUG 10 1998

_____
HONORABLE ALBERTO C. LAMORENA, III.
Presiding Judge, Superior Court of Guam

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

MAY 1 6 2006

Jerimie K.J. Duenas
Deputy Clerk Superior Court of Guam

2

| APE NO: | 98- | !PAGE NO: | 1 | !COURT CONVENED AT: | 3:00 _ AM X PM | DATE: 08 17 1998 |

PRESENT: **JUDGE:** JOAQUIN VE . MANIBUSAN , Judge
**CLERK:** PETER SANTOS

CASE NUMBER: CF0317-97

CASE TITLE:
PEOPLE OF THE TERRITORY OF GUAM
VS.
DON AB MENDIOLA

COUNSEL PRESENT:
PLAINTIFF:
DEFENDANT:

PROCEEDINGS: _further Proceedings_

RECEIVED

| LOG NUMBER | DESCRIPTION |
|---|---|
| | -Case Called |

_DNP due to TDF not appearing on Systems_

_Could PTP 8/18/88 3PM_

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

JUL 0 6 2006

**Jerimie K.J. Duenas**
Deputy Clerk Superior Court of Guam

| !Matter continued to: | , 1998 At: | am/pm |

98-706
705

015

TAPE NO: 98-    PAGE NO:    1    COURT CONVENED AT:    3:00 _ AM X PM  DATE: 08 18 1998

PRESENT: **JUDGE:** JOAQUIN VE . MANIBUSAN , Judge
**CLERK:** PETER SANTOS

CASE NUMBER:    CF0317-97          CASE TITLE:
                                   PEOPLE OF THE TERRITORY OF GUAM
COUNSEL PRESENT:                        VS.
PLAINTIFF:                         DON AB MENDIOLA
DEFENDANT:

PROCEEDINGS:

| LOG NUMBER | DESCRIPTION |
|---|---|
| | -Case Called |

OFFICE OF THE ATTORNEY GENERAL
RECEIVED

Jerimie K.J. Duenas
Deputy Clerk Superior Court of Guam

| TAPE NO: 98-/ᴅ88 | PAGE NO: 1 | COURT CONVENED AT: | 4:00 _ AM X PM | DATE: 08 21 1998 |

PRESENT: **JUDGE:** ALBERTO C . LAMORENA III , Presiding Judge
**CLERK:** EVELYN L. CABRERA

CASE NUMBER: CF0317-97 | CASE TITLE:
PEOPLE OF THE TERRITORY OF GUAM

COUNSEL PRESENT: VS.
PLAINTIFF: _P. gume_ RANDY I CHARGUALAF *
DEFENDANT: _A Eamen_

PROCEEDINGS: CRIMINAL TRIAL SETTING

| LOG NUMBER | DESCRIPTION |

5010

Case called: (✓)Deft present w/atty ()Deft not present ()D... **RECEIVED**

() Jury selection and trial set for: _____ ____ am/pm

() Motion cut-off date: _____

() Pretrial Conference: _____ ____ am/pm

() Time waived by D/A

() Speedy trial asserted

(✓) Trial setting continued: _____ ____ am/pm

() Change of plea hearing: _____ ____ am/pm

(✓) Further proceedings hearing: _8/25_ _4_ am/pm

() Issue order to show cause on defense attorney

() Bench warrant to issue - Bail set $_____

Others:

Ct= appt. R. Montanana

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

JUL 0 6 2006

**Jerimie K.J. Duenas**
Deputy Clerk Superior Court of Guam

A. Alexander Gorman, Esq.
**LAW OFFICES OF A. ALEXANDER GORMAN**
**Suite 805, GCIC Building**
**414 West Soledad Avenue**
**Agana, Guam 96910**
**Telephone: 472-2302**
**Facsimile: 472-2342**

**Attorneys for Defendant**
**RANDY IGNACIO CHARGUALAF**

## IN THE SUPERIOR COURT

## OF GUAM

**PEOPLE OF GUAM**

**CRIM. CASE NO. CF 317-97**

                                    Plaintiff,

          vs.                                    **ORDER**

**RANDY IGNACIO CHARGUALAF,**

                                    Defendant.
_____/

### ORDER

          After a hearing and for good cause shown:

          IT IS HEREBY ORDERED that attorney A. Alexander Gorman be allowed to

withdraw from his representation of the Defendant and that _Rowden Matonm_

is hereby appointed to represent the Defendant in the above-entitled matter.

DATE: AUG 2 6 1998

_____
HONORABLE ALBERTO C. LAMORENA, III.
Presiding Judge, Superior Court of Guam

I hereby certify that the foregoing is a true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam

MAY 1 6 2006

Jerimie K. J. Duenas
Deputy Clerk Superior Court of Guam

A. Alexander Gorman, Esq.
LAW OFFICES OF A. ALEXANDER GORMAN
Suite 805, GCIC Building
414 West Soledad Avenue
Agana, Guam 96910
Telephone: 472-2302
Facsimile: 472-2342

Attorneys for Defendant
RANDY IGNACIO CHARGUALAF

## IN THE SUPERIOR COURT

## OF GUAM

PEOPLE OF GUAM

                **Plaintiff,**

   vs.

RANDY IGNACIO CHARGUALAF,

                **Defendant.**
_____/

CRIM. CASE NO. CF 317-97

**EX-PARTE MOTION TO
WITHDRAW AS COUNSEL:
CERTIFICATE OF SERVICE**

RECEIVED

### NOTICE OF EX-PARTE APPLICATION

On the 21st day of August, 1998, at the hour of 4:00 p.m., or as soon thereafter

as the matter may be heard, Defendant's counsel, A. Alexander Gorman, Esq., will

move the Court Ex-Parte, for the relief noted below.

### MOTION

Counsel for Defendant RANDY IGNACIO CHARGUALAF, in the above-

captioned matter and respectfully requests the Court to permit his withdrawal as court-

appointed counsel on the grounds that counsel is experiencing severe financial

difficulties with his law practice. Furthermore, as a solo practicioner, the inevitable trial

of this multiple felony criminal case will be unduly financially burdensome to counsel's

law practice. Finally, counsel currently has more than 50 other active and semi-active

court appointed criminal and juvenile cases that require counsel's time and attention.

Currently, no trial date(s) are set and the matter will come on for a trial setting

conference concurrently with this motion.

This motion will be based on these moving papers, the court file, and any

evidence to be presented at the time of the hearing.

## CONCLUSION

Based on all of the foregoing, counsel respectfully requests this Honorable Court

to Grant his Motion to Withdraw and to appoint alternative counsel to represent the

Defendant in the above-captioned matter.

Executed on August 21, 1998

LAW OFFICES OF A. ALEXANDER GORMAN

BY: _____
A. ALEXANDER GORMAN, ESQ.
Attorneys for Defendant
RANDY IGNACIO CHARGUALAF

2

## CERTIFICATE OF SERVICE

I certify that I will cause to be served upon the Attorney General's Office a true

and correct copy of this document on or before August 21, 1998.

Executed on August 21, 1998

LAW OFFICES OF A. ALEXANDER GORMAN

BY: _____

A. ALEXANDER GORMAN, ESQ.
Attorneys for Defendant
RANDY IGNACIO CHARGUALAF

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

MAY 1 2006

Jerimie K.J. Duenas
Deputy Clerk Superior Court of Guam

3

# IN THE SUPERIOR COURT OF GUAM

THE PEOPLE OF GUAM                    )    CRIMINAL CASE NO.  CF0317-97
                                      )
                 vs.                  )
                                      )
RANDY IGNACIO CHARGUALAF,             )
                                      )
                      Defendant.      )
_____)

## NOTICE OF COURT APPOINTMENT OF COUNSEL

TO:   [        ]   PUBLIC DEFENDER SERVICE CORPORATION

      [XXXXXXXXX]   __RAWLEN MANTANONA, ESQ._____

      You are hereby notified that you are appointed by the court to
represent Defendant   __RANDY IGNACIO CHARGUALAF__ , as stated on the
above-captioned case.

**SAID DEFENDANT IS PRESENTLY ON:**
      [XXX] Confined pending posting of cash bond of $__10,000.00__ .
      [   ] Confined = Prior Case(s)
      [   ] Personal Recognizance (PR) Bond of.......$_____.
      [   ] Cash Bond .................................$_____.
      [   ] Surety Bond of.............................$_____.
      [   ] Bench Warrant.............................$_____.
      [   ] Own Recognizance

**COURT APPEARANCE DATE:**

      [   ] Preliminary Hearing:_____.
      [   ] Arraignment:_____.
      [   ] Status Hearing:_____.
      [XXX] Trial Setting:__SEPTEMBER 18, 1998 AT 4:00PM_____.
      [   ] Bench Trial:_____.
      [   ] Jury Selection/Trial:_____.
      [   ] Other:_____.

                              **ALBERTO C. LAMORENA, III**
                              **Presiding Judge**
                              **Superior Court of Guam**

DATED:  SEPTEMBER 8, 1998

                              BY: _____
                                  Courtroom Chamber Clerk

*RECEIVED FOR SERVICE*
_____ ___m.

_____
Deputy Marshal SCOG

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

MAY 19 2006

**Jerimie K.J. Duenas**
Deputy Clerk, Superior Court of Guam



# VOUCHER FOR COMPENSATION OF
# COURT-APPOINTED COUNSEL

## FELONY CASE
### SUPERIOR COURT OF GUAM

DATE: 9/2/98

PAYEE _____
ADDRESS _____
CASE _____ VS _____
CASE NO. _____

**RECEIVED**

**A. TIME SPENT IN COURT:**

| | | |
|---|---|---|
| 1. Date _____ | No. of Hrs. _____ | x $ 75.00 _____ |
| 2. Date _____ | No. of Hrs. _____ | x 75.00 |
| 3. Date _____ | No. of Hrs. _____ | x 75.00 |
| 4. Date _____ | No. of Hrs. _____ | x 75.00 |

**B. TIME SPENT IN PREPARATION:**

| | | |
|---|---|---|
| 1. Date _____ | No. of Hrs. _____ | x $ 50.00 _____ |
| 2. Date _____ | No. of Hrs. _____ | x 50.00 |
| 3. Date _____ | No. of Hrs. _____ | x 50.00 |
| 4. Date _____ | No. of Hrs. _____ | x 50.00 |

**C. EXPENSES OF REPRESENTATION:**

1. _____   _____
2. _____   _____
3. _____   _____
4. _____   _____

**D. LESS COMPENSATION RECEIVED OR CLAIMS FILED EARLIER UNDER
SEPARATE VOUCHER (S) FOR REPRESENTATION IN THIS CASE.**

**NET AMOUNT CLAIMED**

I certify that the above claim is correct and just and that payment has not been received and, except as noted in item D, no payment
or promise of payment has been requested or accepted for representation in the above case.

_____
**SIGNATURE OF PAYEE**

_____
**PAYEE SS# OR TAXPAYER I.D. #**

* For felony cases, this amount plus item D shall not exceed $7,500.00 the limit set by the Judicial Court.

## FOR COURT USE ONLY

Certification of Fund

Approved for Payment

_____

_____
**Judge, Superior Court**

Date: _____

See invoice
dated 9/2/98
for details

# VOUCHER FOR COMPENSATION OF
# COURT-APPOINTED COUNSEL

Nº 4584

## FELONY CASE
### SUPERIOR COURT OF GUAM

DATE: 9/2/98

PAYEE A. ALEXANDER GORMAN
ADDRESS #805 GCIC BLDG, 414 W. SOLEDAD, AGANA
CASE RANDY CHARGUALAF _____ VS _____
CASE NO. CF 317-97

**A. TIME SPENT IN COURT:**

| | | | |
|---|---|---|---|
| 1. Date _____ | No. of Hrs. _____ | x $ 75.00 _____ | |
| 2. Date _____ | No. of Hrs. _____ | x 75.00 _____ | |
| 3. Date _____ | No. of Hrs. _____ | x 75.00 _____ | |
| 4. Date _____ | No. of Hrs. .6 | x 75.00 _____ | 45.00 |

**B. TIME SPENT IN PREPARATION:**

| | | | |
|---|---|---|---|
| 1. Date _____ | No. of Hrs. _____ | x $ 50.00 _____ | |
| 2. Date _____ | No. of Hrs. _____ | x 50.00 _____ | |
| 3. Date _____ | No. of Hrs. _____ | x 50.00 _____ | |
| 4. Date _____ | No. of Hrs. 1.9 | x 50.00 _____ | 95.00 |

**C. EXPENSES OF REPRESENTATION:**

1. _____
2. _____
3. _____
4. _____

**D. LESS COMPENSATION RECEIVED OR CLAIMS FILED EARLIER UNDER
SEPARATE VOUCHER (S) FOR REPRESENTATION IN THIS CASE.**

Withdrew
s Atty

~~CASE CLOSED~~

NET AMOUNT CLAIMED 140.00

I certify that the above claim is correct and just and that payment has not been received and, except as noted in item D, no payment or promise of payment has been requested or accepted for representation in the above case.

A. _____
SIGNATURE OF PAYEE

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
PAYEE SS# OR TAXPAYER I.D. #

* For felony cases, this amount plus item D shall not exceed $7,500.00 the limit set by the Judicial Court.

## FOR COURT USE ONLY

Certification of Fund

Approved for Payment

_____

_____

Judge, Superior Court

Date: _____

A. Alexander Go[...]an, Esq.
Suite 805, GCIC Building
414 W. Soledad Avenue
Agana, Guam 96910

## INVOICE

Date:     9/2/98
To:       Superior Court of Guam

Re:       Randy Chargualaf
          CF317-97

**PREPARATION:    $50.00/hr.**

| Date | Description | Hours | Amount |
|------|-------------|-------|--------|
| 8/13 | Discuss w/ Mike Shaw | .3 | 15.00 |
| 8/20 | Draft Motion and Order | .5 | 25.00 |
| 8/21 | Discuss w/court | .5 | 25.00 |
| 8/24 | Case prep | .3 | 15.00 |
| 9/2  | Admin | .3 | 15.00 |
|      |       | **1.9** | **95.00** |

**COURT:    $75.00/hr.**

| Date | Description | Hours | Amount |
|------|-------------|-------|--------|
| 8/24 | Court hearing | **.6** | **45.00** |

                         95.00
                         45.00

**TOTAL  INVOICE:        $140.00**

### CASE  CLOSED

# IN THE SUPERIOR COURT OF GUAM

THE PEOPLE OF GUAM )    CRIMINAL CASE NO. CM1544-98;
                    )                     CF0317-97
            vs.     )
RANDY IGNACIO CHARGUALAF, )
                    )
            Defendant. )
_____)

## NOTICE OF COURT APPOINTMENT OF COUNSEL

TO:  [        ]    PUBLIC DEFENDER SERVICE CORPORATION

     [ xxxxxxx ]    RAWLEN MANTANONA, ESQ.

**RECEIVED**

     You are hereby notified that you are appointed by the court to
represent Defendant ___RANDY IGNACIO CHARGUALAF___, as stated on the
above-captioned case.

## SAID DEFENDANT IS PRESENTLY ON:

[CCCC] Confined pending posting of cash bond of $1,000.00      .
[    ] Confined = Prior Case(s)
[    ] Personal Recognizance (PR) Bond of.......$_____.
[    ] Cash Bond ...............................$_____.
[    ] Surety Bond of..........................$_____.
[    ] Bench Warrant...........................$_____.
[    ] Own Recognizance

## COURT APPEARANCE DATE:

[    ] Preliminary Hearing:_____.
[xxxx] Arraignment:__OCTOBER 28, 1998, 4:00 P.M._____.
[    ] Status Hearing:_____.
[    ] Trial Setting:_____.
[    ] Bench Trial:_____.
[    ] Jury Selection/Trial:_____.
[    ] Other:_____.

ALBERTO C. LAMORENA, III
Presiding Judge
Superior Court of Guam


DATED:  OCTOBER 22, 1998     BY: _____
                                  EVELYN L. CABRERA
*RECEIVED FOR SERVICE*            Courtroom Chamber Clerk
_____m.

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

MAY 19/2006

_____
Deputy Marshal SCOG

Jerimie K.J. Duenas

# VOUCHER FOR COMPENSATION OF
# COURT-APPOINTED COUNSEL

## FELONY CASE
### SUPERIOR COURT OF GUAM

DATE: _____

PAYEE _____ The law Office of
RAWLEN M T MANTANONA P.C.
ADDRESS _____ First Savings & Loan Bldg. Suite 102
655 South Marine Drive
CASE _____ Tamuning, Guam 96911 _____ VS _____
CASE NO. _____ Telephone (671) 646-2991
Telecopier (671) 646-0777

**RECEIVED**

## A. TIME SPENT IN COURT:

|   |   |   |   |   |
|---|---|---|---|---|
| 1. Date _____ | No. of Hrs. _____ | x $ 75.00 | |
| 2. Date _____ | No. of Hrs. _____ | x   75.00 | |
| 3. Date _____ | No. of Hrs. _____ | x   75.00 | |
| 4. Date _____ | No. of Hrs. _____ | x   75.00 | |

## B. TIME SPENT IN PREPARATION:

|   |   |   |   |   |
|---|---|---|---|---|
| 1. Date _____ | No. of Hrs. _____ | x $ 50.00 | |
| 2. Date _____ | No. of Hrs. _____ | x   50.00 | |
| 3. Date _____ | No. of Hrs. _____ | x   50.00 | |
| 4. Date _____ | No. of Hrs. _____ | x   50.00 | |

## C. EXPENSES OF REPRESENTATION:

1. _____  _____
2. _____  _____
3. _____  _____
4. _____  _____

## D. LESS COMPENSATION RECEIVED OR CLAIMS FILED EARLIER UNDER
SEPARATE VOUCHER (S) FOR REPRESENTATION IN THIS CASE.    _____

**NET AMOUNT CLAIMED**    _____

I certify that the above claim is correct and just and that payment has not been received and, except as noted in item D, no payment or promise of payment has been requested or accepted for representation in the above case.

_____
SIGNATURE OF PAYEE

_____
PAYEE SS# OR TAXPAYER I.D. #

\* For felony cases, this amount plus item D shall not exceed $7,500.00 the limit set by the Judicial Court.

## FOR COURT USE ONLY

Certification of Fund

_____

Date: _____

Approved for Payment

_____
Judge, Superior Court

# VOUCHER FOR COMPENSATION OF
# COURT-APPOINTED COUNSEL

05762

## FELONY CASE
### SUPERIOR COURT OF GUAM

DATE: _11/9/98_

PAYEE: The law Office of RAWLEN M. T. MANTANONA P.C., First Savings & Loan Bldg. Suite 102

ADDRESS: 655 South Marine Drive

CASE: Tamuning, Guam 96911    _People_ vs. _Randy Charguald_

CASE NO.: Telephone (671) 646-2001    _CF 317-97_

Telecopier (671) 646-0777

## A. TIME SPENT IN COURT:

| | Date | No. of Hrs. | | Amount |
|---|---|---|---|---|
| 1. | _9/18_ | _.50_ | x $ 75.00 | _37.50_ |
| 2. | _10/6_ | _1.0_ | x 75.00 | _75.00_ |
| 3. | _10/28_ | _1.5_ | x 75.00 | _112.50_ |
| 4. | | | x 75.00 | |
| | | | | _225.00_ |

## B. TIME SPENT IN PREPARATION:

| | Date | No. of Hrs. | | Amount |
|---|---|---|---|---|
| 1. | _9/11_ | _1.0_ | x $ 50.00 | _50.00_ |
| 2. | _10/2 - 10/14_ | _18.0_ | x 50.00 | _900.00_ |
| 3. | | | x 50.00 | |
| 4. | | | x 50.00 | |
| | | | | _950.00_ |

## C. EXPENSES OF REPRESENTATION:

1. _____    _____
2. _____    _____
3. _____    _____
4. _____    _____

## D. LESS COMPENSATION RECEIVED OR CLAIMS FILED EARLIER UNDER SEPARATE VOUCHER (S) FOR REPRESENTATION IN THIS CASE.

NET AMOUNT CLAIMED    _1175.00_

I certify that the above claim is correct and just and that payment has not been received and, except as noted in item D, no payment or promise of payment has been requested or accepted for representation in the above case.

_____
SIGNATURE OF PAYEE

_66-05 30311_
PAYEE SS# OR TAXPAYER I.D. #

* For felony cases, this amount plus item D shall not exceed $7,500.00 the limit set by the Judicial Court.

## FOR COURT USE ONLY

Certification of Fund

Approved for Payment

_____

_____
Judge, Superior Court

Date: _____

# Rawlen M.T. Mantanona, P.C.

**First Savings & Loan Building**
**655 S. Marine Drive, Suite 102**
**Tamuning GU 96911**

**Invoice submitted to:**
**Randy Chargualof**
**Superior Court of Guam**

October 2, 1998

**In Reference To:** *Criminal Case No. CF317-97*
**Invoice #** **10981**

### Professional services

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 09/11/98 | Review indictment and notice of appointment. | 1.00 50.00/hr | 50.00 |
| 09/18/98 | Court appearance for trial setting; hearing continued. | 0.50 75.00/hr | 37.50 |
| | For professional services rendered | 1.50 | $87.50 |
| | Balance due | | $87.50 |

Payment is due upon receipt of this statement. Thank you in advance for your prompt payment.

# Rawlen M.T. Mantanona, P.C.

**First Savings & Loan Building**
**655 S. Marine Drive, Suite 102**
**Tamuning GU 96911**

Invoice submitted to:
Randy Chargualof
Superior Court of Guam

November 7, 1998

In Reference To:     *Criminal Case No. CF317-97*
Invoice #    11023

Professional services

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 10/02/98 | Telephone conference with client; two telephone conferences with former attorney, Alex Gorman. | 1.00 50.00/hr | 50.00 |
| 10/06/98 | Review discovery; review grand jury indictment. | 6.00 50.00/hr | 300.00 |
| | Meeting with Mark Williams; research motion. | 4.00 50.00/hr | 200.00 |
| | Court appearance for trial setting. | 1.00 75.00/hr | 75.00 |
| 10/07/98 | Draft motion for suppression of evidence due to illegal arrest. | 3.50 50.00/hr | 175.00 |
| 10/08/98 | Re-draft motion to suppress evidence. | 0.50 50.00/hr | 25.00 |

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 10/09/98 | Research on case. | 1.00<br>50.00/hr | 50.00 |
| 10/13/98 | Revise motion for dismissal and suppression of evidence. | 1.00<br>50.00/hr | 50.00 |
| 10/14/98 | Review facts for motion's summary of facts. | 1.00<br>50.00/hr | 50.00 |
| 10/28/98 | Court appearance for arraignment. | 1.50<br>75.00/hr | 112.50 |
| | For professional services rendered | 20.50 | $1,087.50 |
| | Previous balance | | $87.50 |
| | Balance due | | $1,175.00 |

Payment is due upon receipt of this statement. Thank you in advance for your prompt payment.



| TAPE NO: 99- | PAGE NO: 1 | COURT CONVENED AT: 3:00 _ AM X PM | DATE: 01 28 1999 |

PRESENT: **JUDGE:** ALBERTO C . LAMORENA III , Presiding Judge
**CLERK:** E. CABRERA

CASE NUMBER: CF0317-97

CASE TITLE:
PEOPLE OF THE TERRITORY OF GUAM
VS.
RANDY I CHARGUALAF *

COUNSEL PRESENT:
PLAINTIFF: _D. more_
DEFENDANT: _R muton_

PROCEEDINGS: _PTC_

LOG NUMBER !          DESCRIPTION

!-Case Called

*deft not present*

*PTC 2/25/99 3pm PTC*

*3/4/99 2pm JST*

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

JUL 1 2006

**Jerimie K.J. Duenas**
Deputy Clerk Superior Court of Guam

RECEIVED

!Matter continued to: _____ , 1999 At: _____ am/pm

 

10

## SUPERIOR COURT OF GUAM
## MINUTE ENTRY

TAPE NO: 99-94 !PAGE NO: 1 !COURT CONVENED AT: 4:00 _ AM X PM !DATE: 02 05 1999

PRESENT: **JUDGE**: ALBERTO C . LAMORENA III , Presiding Judge
**CLERK**: EVELYN CABRERA

CASE NUMBER: CF0317-97 ! CASE TITLE:
! PEOPLE OF THE TERRITORY OF GUAM
COUNSEL PRESENT: ! VS.
PLAINTIFF: _____ ! RANDY I CHARGUALAF *
DEFENDANT: _R. Montanun_ !

PROCEEDINGS: _____ _7P_

LOG NUMBER ! DESCRIPTION

1480 !-Case Called

deft present

D/A = address ct. of mco
to be extended

p/A = object to extension of mco

D/A = request two weeks for motion
hearing.

ct. extend mco 2/16/99

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

JUL 06 2006

Jerimia Kid. Duenas
Deputy Clerk Superior Court of Guam

!Matter continued to: _____ , 1999 At: _____ am/pm

RECEIVED FROM CHAMBERS
2/1/99

**MANTANONA**
LAW OFFICE

GCIC Building, Suite 601B
414 W Soledad Avenue
Agana, Guam 96910
Telephone (671) 472-3666
Telecopier (671) 472-3668

RECEIVED
JAN 20 1999
SUPERIOR COURT


OFFICE OF THE ATTORNEY GENERAL
JUL 14 2000
AGAÑA, GUAM
RECEIVED

Attorney for **Randy Ignacio Chargualaf**

## IN THE SUPERIOR COURT OF GUAM

THE PEOPLE OF GUAM, )
)
)
)
)
vs. )
)
RANDY IGNACIO CHARGUALAF )
)
Defendant. )
_____)

CRIMINAL CASE NO: CF317-97

**NOTICE OF MOTION; MOTION
FOR CONTINUANCE OF TRIAL
DATE; DECLARATION OF
COUNSEL; MEMORANDUM OF
POINTS AND AUTHORITIES IN
SUPPORT OF MOTION**

### NOTICE OF MOTION

TO:   David Moore
      Assistant Attorney General

PLEASE TAKE NOTICE that on _5th February, 1999_ at _____ .m., the Defendant Randy

Chargualaf, by and through counsel, shall bring a motion for continuance of the trial date

set for February 2, 1999 in the above captioned matter.

Dated: January 20, 1999

MANTANONA LAW OFFICE
Attorney for **Randy Ignacio Chargualaf**

By: _____

RAWLEN M T MANTANONA,
A duly licensed employee

ORIGINAL

4
1/21/99

## MOTION FOR CONTINUANCE

Comes now Defendant, RANDY CHARGUALAF, by and through counsel, and moves this Honorable Court for a continuance of the trial date in the above captioned matter set for February 2, 1999

This motion is supported by the Notice of Motion, Motion For Continuance of Trial Date, Declaration of Counsel, and Memorandum of Points and Authorities in Support of Motion filed contemporaneously herewith and all pleadings and documents on file herein and upon such further evidence and legal argument as may be presented at the hearing on this matter.

Respectfully submitted this 30th day of December, 1998.

MANTANONA LAW OFFICE
Attorney for **Randy Ignacio Chargualaf**

By: _____
RAWLEN M T MANTANONA,
A duly licensed employee

## DECLARATION OF COUNSEL

I Rawlen M T Mantanona, hereby declare as follows:

1.  That my office has been appointed new counsel for Defendant Randy Chargualaf, by order of the Court on August 26, 1998.

2.  That the trial date for the above matter is set for February 2, 1999.

3.  Defendant's counsel has been involved in the litigation of <u>People v. Bruneman</u> CF 0081-96.

4.  Defendant's counsel then prepared to go to trial on January 19, 1999 in CF0520-98 <u>People v. Jose S. Chargualaf</u>. The case was ultimately dismissed on January 15, 1999.

5.  The Defendant's Counsel has been basically handling court appointed <u>trial</u> matters for the last four months at great detriment to his other clients and practice in general.

6.  Defendant's counsel has not due to the other trial case commitments been able to investigate and research and file the necessary motions in this matter, which looks likely to go to trial. Defendant's Counsel needs additional time to prepare his defense.

7.  Defendant is aware and agrees and is willing to continue to wave time and his right to a speedy trial in this case.

8. That Assistant Attorney General, David Moore has been notified of our intention to file the instant motion.

9. The facts and statements set forth in the foregoing document are true and correct to the best of my knowledge and belief.

I declare under penalty or perjury that the foregoing is true and correct tot he best of my knowledge and belief.

Dated: January 20, 1999

MANTANONA LAW OFFICE
Attorney for **Randy Ignacio Chargualaf**

By: _____
RAWLEN M T MANTANONA,
A duly licensed employee

## MEMORANDUM OF POINTS
## AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION

As a general rule, the decision to grant or deny a continuance lies within the broad

discretion of the trial court. U.S. v. Pederson, 782 F. 2d 1462 (9th Cir. 1986). The

law on continuances of trial is addressed in 8 GCA §80.50(b)

> (b) In accordance with the policy stated in Subsection(a),
> criminal cases shall be given precedence over, and set for trial
> and heard without regard to the pendency of, any civil matters
> or proceedings. No continuance of a trial shall be granted
> except upon affirmative proof in open court, upon reasonable
> notice, that the ends of justice require a continuance. No
> continuance shall be granted for any longer time than it is
> affirmatively proved the ends of justice require. Whenever any
> continuance is granted, the court shall enter in its minutes the
> facts proved which require the continuance. Emphasis added.

The Defendant assets for him to have a fair trial he needs his attorney to have

adequate time to prepare for trial. Defendant believes the ends of justice require a

continuance in this case.

Courts have generally recognized the granting of continuances in order that newly

appointed counsel may be given the opportunity to become familiar with its case and

prepare its defense thereof. See U.S. v. Goetz, 826 F. 2d 1025 (11th Cir. 1987); U.S. v.

Elkins, 795 F. 2d 919, 924 (11th Cir.), cert denied 107 S.Ct. 443 (1986).

## CONCLUSION

There being good cause, the Defendant respectfully requests that in order that the ends

of justice may be achieved, that the motion for continuance be granted.

Respectfully submitted this 20th day of January, 1999.

MANTANONA LAW OFFICE
Attorney for **Randy Ignacio Chargualaf**

By:

RAWLEN M T MANTANONA,
A duly licensed employee

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

MAY 1 9 2006

Jerimia K.J. Duenas
Deputy Clerk Superior Court of Guam

**MANTANONA**
LAW OFFICE

GCIC Bld. Suite 601B
414 W Soledad Avenue
Hagatna, Guam 96910
Telephone (671) 472-3666
Telecopier (671) 472-3668

Attorney for **Randy Chargualaf**

### IN THE SUPERIOR COURT OF GUAM

FILED
SUPERIOR COURT
OF GUAM

FEB 16  4 47 PM '99

ALFRED G. BORJA
CLERK OF COURT
BY: _____

FILED
SUPERIOR COURT
OF GUAM

FEB 16  5 15 PM '99

ALFRED G. BORJA
CLERK OF COURT
BY: _____

| | | |
|---|---|---|
| THE PEOPLE OF GUAM, | ) | CRIMINAL CASE NO: CF347-97 |
| | ) | **RECEIVED** |
| | ) | |
| | ) | **DEFENDANT'S** |
| | ) | **SUPPLEMENTAL MOTION** |
| | ) | **TO SUPPRESS BAD ACTS** |
| vs. | ) | **PURSUANT TO CODE** |
| | ) | **§404(B), 403** |
| | ) | |
| RANDY CHARGUALAF | ) | |
| | ) | |
| Defendant. | ) | |




Comes now Defendant, RANDY CHARGUALAF, by and through counsel, and moves this Honorable Court for an order prohibiting the Government from introducing evidence of the prior bad acts contained in Defendant's police record or other bad acts known by the People at the trial of this cause.

This motion is supported by the, and Memorandum of Points and Authorities in Support of Motion filed contemporaneously herewith and all pleadings and documents on file herein and upon such further evidence and legal argument as may be presented at the hearing on this matter.

Respectfully submitted this _____ day of February, 1999.

MANTANONA LAW OFFICE
Attorney for **Randy Chargualaf**

By: _____

RAWLEN M T MANTANONA,
A duly licensed employee

# MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF FACTS

At about 9:40 a.m. on January 21, 1997, Officer C.F. Dawson, Badge No. 537 of the Guam Police Department saw a black Nissan Sedan traveling south bound on Route 1 in Tamuning. The black sedan had a cracked windshield and did not possess a front license plate. Office Dawson then pulled over the vehicle and approached the driver at 9:45 a.m. to inform him of the violations. The driver of the vehicle was Randy Ignacio Chargualaf, the Defendant in this case. The female passenger was Candelaria Q. "Kandi" Mendiola.

At 9:47 a.m., because of the driver's actions, Officer Dawson contacted Officer J.E.D. Santo Tomas, Badge No. 542, for assistance with the pullover. At about 9:48 a.m., Officer J.E.D. Santo Tomas arrived at the scene to assist Officer Dawson. Officer Santo Tomas found a firearm on the ground outside the automobile. At 10:15 a.m. Officer Santo Tomas informed Officer Dawson that he and Officer Grino talked to Ms. Mendiola who stated that the weapon belonged to Chargualaf. At 10:20 a.m. Chargualaf was placed under arrest by Officer Dawson for the possession of a concealed firearm. At 12:05 p.m. the same

date, Officer Dawson discovered a press clipping of Defendant's 1988 guilty

verdict. They also found Defendant's release order from the Department of

Corrections.

## ARGUMENT

This motion is to supplement the original motion to suppress Defendant's

prior gad acts filed by previous counsel.

> **1. Defendant's alleged prior bad acts contained on Defendants police records is inadmissible pursuant to GRG §404(b).**

The Defendant believes the People intend to introduce evidence of his 1988

robbery and assault convictions contained in documents found on Defendant's

person at the time of his arrest. These are Defendant's alleged prior bad acts

pursuant to 6 GCA § 404(b). Although the Defendant has not been orally notified

of the People's intention of this evidence, if they do so the Defense is in the dark as

to the exception of which the People seek to introduce this evidence. GCA §404(b)

provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

This section is virtually identical to Federal Evidence Rule 404(b). The Ninth circuit's four-part test is thus appropriately used in reaching the initial determination of admissibility under 6 GCA §404(b). This test is:

> Rule 404(b) evidence must satisfy four requirements: (1) it must prove a material element of the offense for which the defendant is charges; (2) in certain cases the prior conduct must able similar to the charge conduct; (3) proof of the prior conduct must be based upon sufficient evidence; and (4) the prior conduct must not be too remote in time. United States v. Arambula-Ruiz, 987 F2d 599, 602 (9th Cir. 1993).

U.S. v. Manning, 56 F.3d 1188, 1197 (9th Cir. 1995).

Application of this test, however, is not just perfunctory and should not be undertaken without bearing firmly in mind that the type of evidence the People seeks to have admitted is looked upon with disfavor.

> We have emphasized that extrinsic acts evidence "is not looked upon with favor,". . . and that its use "must be narrowly circumscribed and limited." . . . Our reluctance to sanction the use of evidence of other crimes stems from the underlying premise of our criminal justice system, that the defendant must be tried for what he did, not for who he is. Under our system, an individual may be convicted only for the offense of which he is charged and not for other unrelated criminal acts which he may have committed. Therefore, the guilt or innocence of the accused must be established by evidence relevant to the particular offense being tried, not by showing that the defendant has engaged in other acts of wrongdoing. Emphasis added.

U.S. v. Hodges, 770 F2d 1475, 1479 (9th Cir. 1985). See also, U.S. v. Bradley, 5 F.3d 1317, 1320 (9th Cir. 1993).

Under the prevalent Ninth Circuit tests, introduction of Defendant's prior alleged bad acts does not fall within the Gambit of 6 GCA §404(b). It is therefore not admissible as evidence in the trial of this case. To allow the proffered evidence would be to put Chargualaf on trial for alleged crimes unrelated to the ones charged here.

The initial question in the 404(b) test is whether the proposed evidence proves a material element of the crime charged. The People have not stated what a material element of the offenses charged in this case it intends to prove with this evidence.

The failure of the People to give such notice prohibits them from using such evidence by failing to comply with the Manning test.

What the government actually seeks to prove here is that Mr. Chargualaf because of his prior robbery and assault is that he is a very bad and dangerous person. This is precisely what 404(b) is intended to prevent.

> "[Rule 404(b)] is designed to avoid a danger that the jury will punish the defendant for offenses other than those charged, or at least that it will convict when unsure of guilt, because it is convinced that the defendant is a bad man deserving of punishment." United States v. Brown, 880 F.2d 1012, 1014 (9th Cir. 1989)

U.S. v. Hill, 593 F.2d 452, 457 (9th Cir. 1991)

The People have not shown how the alleged acts are similar to the case being litigated. Any link between prior incidents and the crime charged here is so attenuated as to be nonexistent.

In regards to the third prong of the test, proof of prior conduct must be based upon sufficient evidence. In this case, the Defendant was convicted only of some of the offenses originally charged.

Lastly, If the Court has determined that the first three prongs have been met the Court must address the remoteness in time of the prior conduct. The Defendant asserts the acts he was convicted of was too remote in time as they ocurred over nine years prior to the alleged crime.

### 2. The Defendant's alleged prior bad acts contained on his police rap sheet are inadmissible pursuant to GRE § 403.

The Government has overlooked one other small detail:

> This "inclusionary rule," however,, is subject to the balancing test of Rule 403. Thus, "(i)n admitting relevant evidence under Rule 404(b), the trial court must balance the probative value of the evidence against the possibility that the jury would be prejudiced against the defendant because of his participation in other criminal conduct." United States v. Young, 573 F.2d 1137, 1140 (9th Cir. 1978)

6 GCA §403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

This section is the safety value for 6 GCA §404(b), as for other evidence rules. In the final event, even relevant evidence is not to be admitted if it is more prejudicial than probative. Given the attenuated link between the facts of this case and the extraneous facts the Government seeks to introduce, prejudice clearly outweighs probative value here. Assuming, arguendo, that the earlier incidents fulfilled the requirements of a 404(b) exception, it is nonetheless inadmissible under 403. If the People's claim that any of Chargualaf's alleged incidents are relevant to prove anything here it is tenuous at best, but the potential for prejudice in allowing it into evidence is extremely high.

In <u>U.S. v. Bradley</u>, 5 F.3d 1317, 1320 (9th Cir.), the Court held that evidence of an alleged attempt to plan a murder by hire was not admissible under 404(b) in a trial for conspiracy to commit murder by hire. The Court went meticulously into the specified facts and found that the proposed 404(b) evidence was "at best, of dubious value." 5 F.3d at 1321.

Chargualaf's bad acts are also of dubious value, and, as in <u>Bradley</u>, the proposed evidence is highly and unfairly prejudicial.

> We have warned repeatedly of "the type of evidence that makes 'conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." . . . There is tremendous risk here that the jury decided that <u>Bradley</u> and <u>Powell</u> should not go unpunished because of their <u>propensity</u> for violence. Given the negligible legitimate value of the Bell homicide evidence, our finding of its highly prejudicial nature gives us no choice but to conclude that the trial judge abused his discretion in admitting the evidence.

5 F.3d at 1321-22.

Like the evidence in <u>Bradley</u>, the alleged Chargualaf bad acts here are more prejudicial than probative. There is great risk that a jury would simply decide that Chargualaf is a danger and a troublemaker who should be dealt with regardless of the evidence before it on the crime at issue.

Alternatively, the Court should exclude it pursuant to Rule 403 as being unduly prejudicial.

## CONCLUSION

Defendant respectfully moves the Court to grant his motion and exclude any evidence of the Defendant's prior bad acts known to the People or contained in his

police record, specifically his robbery, kidnapping and assault convictions of 1988

in the form of the alleged press clipping and release order.

Dated:February ＿＿, 1999

MANTANONA LAW OFFICE
Attorney for **Randy Chargualaf**

By: ＿＿＿＿＿＿＿＿＿＿＿＿＿＿

RAWLEN M T MANTANONA,
A duly licensed employee.

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

MAY 1 9 2006

Jerimie K. J. Duenas
Deputy Clerk Superior Court of Guam

**MANTANONA**
LAW OFFICE

GCIC Bld. Suite 601B
414 W. Soledad Avenue
Hagatna, Guam 96910
Telephone (671) 472-3666
Telecopier (671) 472-3668

Attorney for **Randy Chargualaf**

## IN THE SUPERIOR COURT OF GUAM

| | | |
|---|---|---|
| THE PEOPLE OF GUAM | ) | CRIMINAL CASE NO. CF |
| | ) | |
| Plaintiff, | ) | **NOTICE OF MOTION, MOTION TO** |
| | ) | **SUPPRESS IN COURT** |
| | ) | **IDENTIFICATION** |
| vs. | ) | |
| | ) | |
| | ) | |
| RANDY CHARGUALAF | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### NOTICE OF MOTION

To:  David Moore, Assistant Attorney General
Prosecution Division
Attorney General's Office

PLEASE TAKE NOTICE that on MAR 18 1999 3:00p at __.m., Mantanona Law Office,

shall bring a motion to suppress in court identification in the above titled matter at the

Superior Court of Guam for the Territory of Guam, West O'Brien Drive, Agana, Guam.

DATED:___2/16/99___

MANTANONA LAW OFFICE
Attorney for **Randy Chargualaf**

By:  _____
RAWLEN M T MANTANONA,
A duly licensed employee

## MOTION TO SUPPRESS IN COURT IDENTIFICATION

Comes now Defendant, RANDY CHARGUALAF, by and through his attorney

Rawlen M.T. Mantanona and moves this Honorable Court for an order suppressing or

prohibiting the Government from bringing in the victim in the above titled matter, at trial

for the purpose of in court identification.  This motion is based on the attached

Memorandum of law and such other further evidence and argument as may be

presented at the hearing thereon.

DATED: ___2/16/99___

MANTANONA LAW OFFICE
Attorney for **Jose S. Chargualaf**

By: _____
RAWLEN M T MANTANONA,
A duly licensed employee.

## MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF FACTS

At about 9:40 a.m. on January 21, 1997, Officer C.F. Dawson, Badge No. 537 of the Guam Police Department saw a black Nissan Sedan traveling south bound on Route 1 in Tamuning. The black sedan had a cracked windshield and did not possess a front license plate. Office Dawson then pulled over the vehicle and approached the driver at 9:45 a.m. to inform him of the violations. The driver was a Chamorro male with a female passenger. The Guam Police Department Report No. 97-17453, Discovery page 56. The vehicle was identified as a 1988 black Nissan Sentra with a Guam License Plate No. AHT367 registered to Victor Tuncap Mendiola. The driver of the vehicle was Randy Ignacio Chargualaf, the Defendant in this case. The female passenger was Candelaria Q. "Kandi" Mendiola. The driver allegedly appeared to be very nervous.

At 9:47 a.m., because of the driver's actions, Officer Dawson contacted Officer J.E.D. Santo Tomas, Badge No. 542, for assistance with the pullover. At 9:48 a.m., Officer Dawson inquired from Chargualaf whether there was any drugs or weapons in the vehicle to which Chargualaf allegedly stated "no". Officer Dawson asked Chargualaf to search the vehicle of which he alleges that Chargualaf stated "okay". He then asked Chargualaf and Mendiola to exit the vehicle.

At about 9:48 a.m., Officer J.E.D. Santo Tomas arrived at the scene to assist Officer Dawson at which time he noticed Officer Dawson searching the passenger side of the vehicle just outside the opened passenger door. Officer Dawson stated he requested assistance in the investigation because both parties seemed extremely

nervous at the presence of police officers. Officer Santo Tomas allegedly states that the individual later identified as Randy Chargualaf, stated to him that he had given Officer Dawson consent to search his vehicle.

Officer Santo Tomas then inquired whether he could also search the vehicle for weapons or drugs at which time he stated that Mr. Chargualaf stated "go for it", Discovery page 6. Officer Santo Tomas searched the vehicle and was unable to find any weapons or drugs within the vehicle.

Officer Santo Tomas then states that he saw Chargualaf and Mendiola look at the vicinity of his feet at which time he looked down and saw a black colored firearm. He immediately drew his firearm and had the individuals handcuffed.

At 10:15 a.m. Officer Santo Tomas informed Officer Dawson that he and Officer Grino talked to Ms. Mendiola who stated that the weapon belonged to Chargualaf

At 10:20 a.m. Chargualaf was placed under arrest by Officer Dawson for the possession of a concealed firearm. Defendant was taken to the Police station at which time the Defendant was improperly viewed by the victim of a robbery and was notified by a police officer that he was the suspect.

## ARGUMENT

The issue of pretrial identification was addressed in previous counsel's motion to suppress. The People in their opposition to Defendant's motion to suppress evidence and points and authorities "concede the pretrial "show-up" was unnecessary and suggestive." The issue then arises and the purpose of this motion is whether the tainted and excludable pretrial identification taints and is cause for the suppression of an in court identification by the same witness. The People have argued in their moving

papers, the factors in determining whether to suppress an at trial identification are set out in U.S. v. Foppe, 993 F.2d 1444, 1450 (9th Cir. 1993).

U.S. v Foppe, is not on point, in that case, the frisk of the Defendant, Foppe, was declared illegal and tainted and suppressed the subsequent seized evidence and a photo lineup identification but allowed the in court identification at trial. In U.S. v. Crews, 445 U.S. 463 (1980), the Defendant was illegally arrested based on a pretext, police took his photograph and Defendant was identified by the victim. The Defendant was later identified in a court ordered lineup. The Superior Court held that the in court identification need not be suppressed as fruit of an unlawful arrest because police knowledge of Defendant's identity and victim's independent recollection of him antedated the unlawful arrest and was untainted by the constitutional violation.

The issue before the court is does a tainted pre-trial identification taint an in court identification. It does not deal with an illegal search or arrest. In cases where identity is an issue, the Defendant may move under the due process clause to suppress any in court identification testimony that is tainted by out of court error by the prosecution. Foster v. California, 394 U.S. 440 (1969). In cases that involve pre-accusation show up or the case of photographic displays, counsel may move to suppress in court identification evidence that is the fruit of the out of court display, if the display was overly suggestive or unfair. Simmons v. U.S., 390 U.S. 377 (1968), Williams v. Lockhart, 736 F.2d 1264, 1266 (8th Cir. 1984).

In Moore v. Illinois, 98 S.Ct. 458, 463 (1977), the Superior Court held, because of the likelihood that the witnesses' in court identifications were based on their observations of the Defendant at the uncounseled lineup rather than at the scene of the

crime, the court held this testimony should have been excluded unless the prosecution could "establish by clear and convincing evidence that the in court identifications were based upon observations of the support other than the lineup identification" citing Gilbert v. California, 87 S.Ct. 1951 (1967).

In this case, the Defendant was not identified by the witness. He in fact, was pointed out by Guam Police Officers as the suspect. The Defendant was sitting alone at a table with a police officer with assorted evidence of the crime. The victim/witness's husband had to ask a police officer if that was him. See Defendant's motion and order to suppress evidence, Exhibit #1. The police officer then affirmed the husband's question.

The Defendant asserts that any in court identification would stem from the tainted and overly suggestive pretrial identification. To allow such evidence as an in court identification testimony would violate Defendant's constitutional right to due process and fundamental right to a fair trial.

### 2. Defendants in court identification should be inadmissible pursuant to 6 GCA §403.

§403. **Exclusion of Relevant Evidence on Ground of Prejudice, Confusion, or Waste of Time.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The Defendant asserts that if this esteem court believes this evidence is permissible pursuant to constitutional parameters it should be excluded pursuant to Guam Rules of Evidence Rule §403. The evidence is very prejudicial considering the

probative value is minimal in light of the witness's problems with identification at the first

one on one confrontation, which was only one day after the crime. The Defendant on

the other hand is faced with the extremely prejudicial damage that comes from an in

court identification.

Rule 403 was meant to exclude evidence that would confuse the jury and waste

the time of this court. All this is likely considering the witness's problems with the

Defendant's identification. The Defendant respectfully moves this court to exclude any

in court identification pursuant to Rule 403.

## CONCLUSION

Defendant respectfully moves the Court to grant Defendant's motion and to

suppress and prohibit any in court identification by the victim.


Dated: February 16, 1999      MANTANONA LAW OFFICE
Attorney for **Randy Chargualaf**

By:     _____
RAWLEN M T MANTANONA,
A duly licensed employee.

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

MAY 1 9 2006

Jerimie K.J. Duenas
Deputy Clerk Superior Court of Guam

# MANTANONA
## LAW OFFICE

GCIC Bld. Suite 601B
414 W. Soledad Avenue
Hagatna, Guam 96910
Telephone (671) 472-3666
Telecopier (671) 472-3668

Attorney for **Randy Chargualaf**

## IN THE SUPERIOR COURT OF GUAM

| | | |
|---|---|---|
| THE PEOPLE OF GUAM | ) | CRIMINAL CASE NO. CF317-97 |
| | ) | |
| | ) | **NOTICE OF MOTION, MOTION** |
| | ) | **TO DISMISS AND TO** |
| vs. | ) | **SUPPRESS EVIDENCE,** |
| | ) | **MEMORANDUM OF LAW** |
| RANDY CHARGUALAF | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## NOTICE OF MOTION

To:     David Moore, Assistant Attorney General
         Prosecution Division
         Attorney General's Office

PLEASE TAKE NOTICE that on MAR 18 _____ at 3:00 .m., Mantanona Law Office,

shall bring a motion to dismiss and suppress certain evidence in the above titled matter at

the Superior Court of Guam for the Territory of Guam, West O'Brien Drive, Agana, Guam.

DATED:  February 16, 1999.

MANTANONA LAW OFFICE
Attorney for **Randy Chargualaf**

By: _____
RAWLEN M T MANTANONA,
A duly licensed employee

## MOTION TO SUPPRESS EVIDENCE

Comes now Defendant, RANDY CHARGUALAF, by and through his attorney

Rawlen M.T. Mantanona and moves this Honorable Court for an order dismissing this case

or in the alternative suppressing certain evidence. This motion is based on the attached

Memorandum of law and such other further evidence and argument as may be presented

at the hearing thereon.

Respectfully submitted this 16th day of February, 1999.

MANTANONA LAW OFFICE
Attorney for **Randy Chargualaf**

By: _____

RAWLEN M T MANTANONA,
A duly licensed employee

ORIGINAL

## MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF FACTS

At about 9:40 a.m. on July 21, 1997, Officer C.F. Dawson, Badge No. 537 of the Guam Police Department saw a black Nissan Sedan traveling south bound on Route 1 in Tamuning. The black sedan had a cracked windshield and did not possess a front license plate. Office Dawson then pulled over the vehicle and approached the driver at 9:45 a.m. to inform him of the violations. The driver was a Chamorro male with a female passenger. The Guam Police Department Report No. 97-17453, hereinafter referred to as discovery, page 56. The vehicle was identified as a 1988 black Nissan Sentra with a Guam License Plate No. AHT367 registered to Victor Tuncap Mendiola. The driver of the vehicle was Randy Ignacio Chargualaf, the Defendant in this case. The female passenger was Candelaria Q. "Kandi" Mendiola. The driver appeared to be very nervous. Discovery page 57. Officer Dawson acquired Defendant's driver's license and vehicle registration.

At 9:47 a.m., because of the driver's actions, Officer Dawson contacted Officer J.E.D. Santo Tomas, Badge No. 542, for assistance with the pullover. At 9:48 a.m., Officer Dawson inquired from Chargualaf whether there was any drugs or weapons in the vehicle to which Chargualaf stated "no". Discovery page 58. Officer Dawson asked Chargualaf to search the vehicle of which he alleges that Chargualaf stated "okay". He then asked Chargualaf and Mendiola to exit the vehicle.

At about 9:48 a.m., Officer J.E.D. Santo Tomas arrived at the scene to assist Officer Dawson at which time he noticed Officer Dawson searching the passenger side

of the vehicle just outside the opened passenger door. Discovery page 4. Officer Dawson stated he requested assistance in the investigation because both parties seemed extremely nervous at the presence of police officers. Discovery page 5. Officer Santo Tomas allegedly states that the individual later identified as Randy Chargualaf, stated to him that he had given Officer Dawson consent to search his vehicle. Discovery page 6.

Officer Santo Tomas then inquired whether he could also search the vehicle for weapons or drugs at which time he stated that Mr. Chargualaf stated "go for it", Discovery page 6. Officer Santo Tomas searched the vehicle and was unable to find any weapons or drugs within the vehicle. Discovery page 7. Officer Santo Tomas searched the vehicle and was unable to find any weapons or drugs within the vehicle. Discovery page 7. Officer Santo Tomas then inquired of Mr. Chargualaf where he had placed the "ice". He stated that Mr. Chargualaf remained silent. Chargualaf then stated that he did not have any "ice", but wished he did. Discovery page 8.

It was at this time that Officer Santo Tomas states that he realized that the female and male matched the description of two suspects involved in a home invasion robbery summarized in a flyer given to the police personnel. Discovery page 8.

Officer Santo Tomas then states that he saw Chargualaf and Mendiola look at the vicinity of his feet at which time he looked down and saw a black colored firearm. Discovery page 9. He immediately drew his firearm and had the individuals handcuffed.

At 9:55 a.m. Officer Dawson and Officer Tomas began to search the vehicle. Discovery page 59.

At 10:00 a.m. Officer Dawson saw Officer Santo Tomas draw his weapon and point it at Chargualaf. Discovery page 60.

At 10:15 a.m. Officer Santo Tomas informed Officer Dawson that he and Officer Grino talked to Mendiola who stated that the weapon belonged to Chargualaf. Discovery page 61.

At 10:20 a.m. Chargualaf was placed under arrest by Officer Dawson for the possession of a concealed firearm. Discovery at page 61. At 10:31 a.m. Officer Dawson advised Chargualaf of his rights at which time Chargualaf waived his rights and stated that the firearm was not his. Discovery at page 62.

## ARGUMENT

1. **The arrest of Defendant was an illegal seizure and mandating a dismissal of Defendant's case.**

The Defendant asserts his arrest was illegal, thus the seizure of the Defendant was in violation of the Fourth Amendment to the Constitution of the United States. The Defendant moves this Court to dismiss this case.

The Fourth Amendment protects all persons from unreasonable search and seizure.

8 G.C.A. §30.10 states:

> §30.10. **Detention Permitted; standards.** Whenever a peace officer encounters any person under circumstances which reasonably indicate that such person had committed, is committing or is about to commit a criminal offense, the peace officer my detain such person.

The Defendant was pulled over for vehicle equipment defects. The People would argue that the Defendant was acting nervous and for the police officer's safety he asked

the Defendant to step out of the vehicle. The Defendant greatly denies this fact. Guam police officers asked for and allegedly received consent to search the vehicle the Defendant was driving. Again, the Defendant greatly denies this factual allegation.

The police officers had asked the Defendant if there were any drugs or weapons in the vehicle. Thus, the officers were suspicious and detained Defendant to investigate the vehicle for weapons or guns. Thus, Defendant asserts he was being detained as defined and permitted under 8 G.C.A. §30.10.

The police officer had the occupants get out of the vehicle and commenced to search the vehicle, requesting additional officers to assist him.

The officers' statutory right to search pursuant to 8 G.C.A. §30.10 is not without limits. The defendant refers to 8 G.C.A. §30.30 which states:

> §30.30 **Time and Place Limitation Upon Detention.** No personal shall be detained under the provisions of §30.30 longer than is reasonably necessary to effect the purposes of that section, and in <u>no event longer than fifteen (15) minutes</u>. Such detention shall not extend beyond the place where it was first effected or the immediate vicinity thereof. (Emphasis added.)

As stated, the Defendant denies giving consent to the police officers to search his car. Even if the officers did have consent, they had to conduct the alleged purpose for detention stated in 8 G.C.A. §30.30 within the allotted time.

According to police reports, the Defendant was pulled over at 9:45 a.m., and confronted at 9:47 a.m. Police Officer Dawson alleges Defendant acted nervous giving him his reasonable suspicion for the detention. The clock beings to run! The gun is not found until 10:00 a.m. by Officer Santo Tomas. Thirteen (13) minutes had elapsed before the

discovery of the weapon, the detention of the Defendant continues. The probable cause to arrest Chargualaf did not arise until 10:15 a.m., 28 minutes later. He is not arrested until 10:20 a.m. by Officer Dawson, 33 minutes later. The Defendant was being illegally detained in violation of the limitations set forth in 8 G.C.A §30.30. The detention of the Defendant and continued investigation is clearly a violation of Defendant's statutory rights and he should have been released pursuant to §30.40 which states:

> §30.40. **When Arrest Permitted; Release Required.** If at any time after the onset of the detention authorized by §30.10, probable cause for arrest of the person shall appear, the person shall be arrested. If after an inquiry into the circumstances which prompted the detention, <u>no probable cause for the arrest of the person shall appear, he shall be released</u>. (Emphasis added)

The law mandated the release of the Defendant at 10:02 a.m., which the police did not do and they continued to search the vehicle and detain the Defendant past the 15-minute period. Defendant asserts that even when the police found the gun, they had no probable cause to arrest the Defendant. Probable cause to arrest the Defendant did not arise until after the Co-defendant in this case Candelaria "Kandi" Mendiola was questioned and implicated the Defendant. This information was not discovered until 10:15 a.m. The Defendant was then arrested by Officer Dawson at 10:20 a.m.

It is clear that the officers conducted an illegal detention and more importantly a seizure of the Defendant which developed into an arrest of the Defendant. The major problem is probable cause arose after the Defendant was already illegally seized. The Defendant's petition became an illegal seizure at 10:02 a.m.

It is quite plain that the Fourth Amendment governs "seizures" of the person, Terry v. Ohio, 392 U.S. 1, (1968). The language of the Fourth Amendment applies equally to seizures of person and property, Payton v. New York, 445 U.S. 573, 585 (1980). Seizures of a person has means taking possession, California v. Hodari, 499 U.S. 621, (1991). A seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel fine to disregard the police and go about his business. Florida v. Bostick, 501 U.S. 321 (1991).

In the case before the bench, the Defendant was pulled over on a vehicle equipment violation. He was ordered out of his vehicle, the vehicle was searched while he was being asked questions and watched by other officers. This was clearly detention and any reasonable person would think they were not free to leave. He would obviously be stopped by the subsequent officers called to watch them.

The general rule is that every arrest, and every seizure having the essential attributes of a formal arrest is unreasonable unless it is supported by probable cause. Michigan v. Summers, 452 U.S. 692, 706 (1981). In this case, at 10:02 a.m. on July 21, 1997, no probable cause to arrest the Defendant existed, much less the discovery of the gun. The Defendant's detention and arrest was without probable cause and illegal. The Defendant asks for the Court to dismiss this case based on his illegal arrest.

### 2. The evidence stemming from the stop should be suppressed as tainted fruits of a poisonous tree.

If the Court does not feel the illegal police act merits dismissal, then the Defendant prays for the Court to suppress all evidence stemming from the illegal seizure.

Evidence secured as a result of an illegal search or seizure is tainted fruit of a poisonous tree, and not admissible at trial.  United States v. Jordan, 958 F.2d 1085, 1089 (D.C. Cir. 1992).  At 10:02 a.m. the detention turned into an arrest/seizure.  The probable cause in this case was the statements by Co-defendant "Kandi" Mendiola.  This evidence was only acquired after the detention of Defendant turned into an illegal seizure as stated the probable cause did not arise until 10:15 a.m.  When the detention turned into an illegal seizure, the officers did not have any probable cause to arrest Defendant.  Thus, any and all subsequent evidence used to establish the Defendant's culpability is fruit of a poisonous tree and is inadmissible.

3. **The Officers searching of the Defendant's vehicle because of Defendants nervous behavior violated Defendant's 4th Amendment right to protection from illegal searches and seizures.**

An ordinary traffic stop is a limited seizure, however, it is more like an investigative detention than a custodial arrest.  U.S. v. Walker, 933 F.2d 812, 815 (10th Cir. 1991), U.S. v. Rusher, 966 F.2d 868, 875 (4th Cir. 1992).  The reasonableness of traffic stops are controlled by the principles of investigative detentions announced  in Terry v. Ohio, Id at 815.  The Terry v. Ohio approach entails a determination of whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justify the interference in the first place.  U.S. v. Dewitt, 946 F.2d 1497, 1501 (10th Cir. 1991).  In this case there is no connection between the reason for the stop regarding the windshield and the reason for the detention the search for drugs and guns.

The lack of constraint on an officer's decision to detain individuals and to let others go creates a situation ripe for abuse. Walker supra at 1089. While the perspective of a trained and experienced agent must be considered, mere subjective impressions are never enough and hunches alone cannot be relied upon to transform innocent driving behavior into suspicious activity U.S. v Rodriguez, 976 F.2d 592, 594 (9th Cir. 1992).

An Officer when making a traffic stop, can request for the driver's license and registration, run a computer check, and issue a citation. Once the driver has produced a valid driver's license and proof that he is entitled to operate the car, he must be allowed to proceed on his way, without being subjected to further delay by police for additional questioning. U.S. v. Walker, Supra at 816.

Once the stop was conducted the Defendant gave his license and registration to the Officer as requested. In this case, the detention of the Defendant went unnecessarily beyond the length necessary for the issuance of the citation. The detention was not reasonably related to the scope and of the circumstances of the interference in the first place, the defective windshield. This is an unreasonable seizure under the 4th Amendment. U.S. v Walker, Supra at 816. The Guam Police Officers try to cleanse the detention by asserting they were given consent to search the vehicle by the Defendant, Randy Chargualaf. The Defendant again denies ever giving consent to the officers. Even if true, the request to search made when the Officer had Defendant's driver's license and vehicle registration put the detention outside the scope of a consensual encounter and into the realm of seizure.

If an officer wishes to detain the driver for further questioning unrelated to the instant stop, the officer must have an objectively <u>reasonable articulable suspicion</u> that illegal activity has occurred or is occurring. <u>U.S. v. Soto</u>, 988 F.2d 1548, 1554 (10th Cir. 1993). Under appropriate circumstances, extensive questioning about matters wholly unrelated to the purpose of a routine traffic stop may violate the fourth amendment <u>U.S. v. Kelley</u>, 981 F.2d 1464, 1470 (5th Cir. 1993). This is to prevent any pretext searches which occur when officers cannot find any reasonable suspicion but in their zeal to fight crime concoct a pretext to search the Defendant. The alleged request to search was made due to the nervousness during a traffic stop and not based on any other articulable or specific facts. In this case there are no articuable facts that could amount to reasonable suspicion to further detain the Defendant. This is the clearest form of constitutional violations of an individual's right to be protected from illegal search and seizure. In this case all that could be articulated was nervousness.

The nervous demeanor of the Defendant and his passengers alone or with other factors is insufficient to create <u>reasonable suspicion</u> or justify an in investigatory stop. <u>U.S. v. Hernandez v. Alvarado</u>, 891 F.2d 1414, 1418 (9th Cir. 1989). Law enforcement personnel deal in probabilities rather than certainties and must rely on experience to make conclusions about human behavior. In exercising their judgment, however, police officers may not infringe on the privacy rights of individuals without just cause, regardless of any eventual determination of guilt. <u>Id</u> at 1419. This was the only factor that the officer could articulate, as stated in the law it is insufficient to expand the scope of the detention which means the Defendant was illegally detained.

The Defendant's detention during the search was illegal due to the lack of reasonable suspicion. It violated the Defendant's right pursuant to the fourth amendment. The detention being illegal so is the subsequent arrest and this case, Defendant asserts this case should be dismissed or in the alternative all evidence stemming from the stop be declared tainted fruit of the poisonous tree!

### 4. Even if the court finds Defendant gave consent to search, the detention is illegal and evidence is tainted fruit and should be suppressed.

In this case, Defendant was legally detained for an equipment violation. The detention should have ceased once the performance of the stop and issuance of the citation was completed. The officer continued the detention to search Defendant's vehicle for drugs or weapons. The officer claims he noticed Defendant's nervous behavior and alleged that he asked for and received consent to search Defendant's car for drugs and any weapons. No articuable facts where stated by Officer Dawson as to why he wanted to search Defendant's vehicle. The officer was on a fishing expedition. Defendant asserts that since the officer stopped him and held his identification he was not free to leave. He was seized at that point.

In Wilson v. Superior Court, 195 Cal Rptr. 671, 677 (1983) the California Supreme Court held in light of the officer's experience, "brief eye contact" is a reed too slender to support a seizure. This followed the analysis in Reid v. Georgia, 100 S.Ct. 1752 (1980), in which the agent stated that from his experience that the Defendant was trying to conceal they where traveling together. In this case, all the officer could articulate nervous behavior, a slender reed indeed. In all these cases, the officer could not elaborate any articuable

basis for detaining the Defendant from the great bulk of motorists. The court in <u>Wilson</u>, and the Defendant moves the court to follow suit and hold as a matter of law, that the police did not have an objective articuable basis to justify a detention. <u>Id</u>. At 677.

There is no doubt that the Defendant was detained when the officer has his vehicle documents and license and then tells him he wants to search for weapons or drugs. In the absence of an explanation to the Defendant that he was free to drive away if he desired, no reasonable person would believe he was free to leave. <u>Id</u>. At 680 citing, <u>U.S. v. Berry</u>, 670 F2d 583, 597 (5th Cir. 1982). No such warning was given to Defendant, in this case.

In this case as in <u>Wilson</u>, the Defendant was detained when the consent to search was given. In <u>Wilson</u> the California Supreme Court held that if the alleged basis for the detention had been true (information that Defendant was carrying drugs) then the consent would be valid because a reasonable basis for the detention would exist. A reasonable basis must exist for the consent to hold up. In this case as in <u>Wilson</u>, no reasonable basis existed for the detention prior to any alleged consent being acquired. Thus, any consent that might have been acquired cannot cleanse the tainted evidence. The court should find the police detained the Defendant in violation of the Fourth Amendment, and even if consent was given, all evidence should be suppressed.

## CONCLUSION

The Defendant moves the Court to rule that he was illegally detained, then seized

and grant Defendant's motion to dismiss or in the alternative that all evidence stemming

from that illegal seizure is "tainted" and should be suppressed,

Dated: February 16, 1999

By: _____

MANTANONA LAW OFFICE
Attorney for **Randy Chargualaf**

RAWLEN M T MANTANONA,
A duly licensed employee.

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

MAY 1 9 2006

Jerimie K. J. Duenas
Deputy Clerk Superior Court of Guam

**MANTANONA**
LAW OFFICE

GCIC Bld. Suite 601B
414 W. Soledad Avenue
Hagatna, Guam 96910
Telephone (671) 472-3666
Telecopier (671) 472-3668

Attorney for **Randy Chargualaf**



## IN THE SUPERIOR COURT OF GUAM

| | | |
|---|---|---|
| THE PEOPLE OF GUAM | ) | CRIMINAL CASE NO. CF 317-97 |
| | ) | |
| Plaintiff, | ) | **NOTICE OF MOTION** |
| | ) | **AND MOTION TO** |
| | ) | **COMPEL DISCOVERY** |
| | ) | |
| vs. | ) | |
| | ) | |
| RANDY CHARGUALAF | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

PLEASE TAKE NOTICE that on **MAR 1 8 1999** at 3:00 m., Defendant will

move the Superior Court of Guam for an order compelling discovery as requested

herein. This motion is base upon the pleadings on file, this memorandum of points and

authorities, and such other and further matters as may be present to the Court at the

time of hearing.

Dated: February 8, 1999

MANTANONA  LAW OFFICE
Attorney **Randy Chargualaf**

By: _____
RAWLEN M T MANTANONA,
A duly licensed employee.

ORIGINAL

## MATERIALS REQUESTED

1.      All materials which must be provided according to 8 G.C.A. §70.10, especially all statements, writings and summaries of oral statements by the alleged victim.

2.      Any; and all statements, by any means recorded, made by either the Defendant herein or by any other witness.

3.      The name, address, and telephone number of any person who is a witness to any statement by the victim which is inconsistent with any other statement the victim had made.

4.      Any documents, recordings or writings which pertain to theses charges and which are in the possession of the alleged victim, his or her family, or any other known witness, which have not yet been provided to the defense.

5.      Defendant asks the Court to order the prosecution to turn over all exculpatory evidence of which it is aware.

6.      All Department of Revenue and Taxation motor vehicle division records on Guam license  AHT367, A 1988 Nissan Sentra

7.      All radio logs or tape recordings of the Guam Police Department between 9:30 a.m. to 12:00 noon on July 21, 1997.

8.      All traffic citations issued on July 21, 1997 to Defendant.


## MEMORANDUM OF POINTS AND AUTHROITIES

## STATEMENT OF FACTS

On July 21, 1997 the Defendant was stopped by Guam Police Department

Officers for equipment violations of his automobile.  The Defendant was detained and



eventually arrested for possession of a firearm and allegedly linked to a robbery case

that occurred on July 20, 1997. The Defendant was magistrated on July 22, 1997 and

remains in custody to date. The Territorial Grand Jury handed an indictment for the

Defendant on July 31, 1997. This Defendant was indicted on robbery, robbery by

complicity, conspiracy to commit robbery, theft, possession of a firearm without

identification card, and possession of a concealed firearm.

The Defendant was appointed a string of several attorneys to represent him in

this matter. His previous attorney has been provided some discovery. The Defendant

asserts that he is entitled to additional discovery which he believes to exist. The

Defendant seeks this of the court to order the People to produce the requested

evidence.

### ARGUMENT

The parties have stipulated that they will provide certain items of discovery to

each other. That stipulation is in the Court's file and generally requires compliance with

8 G.C.A. §70.10. Defendant requests that the prosecution be ordered to comply with

this stipulation and with §70.10. They have not done so thus far.

The law is clear that the prosecutor's obligation to provide discovery is not limited

to materials in the actual possession of the Attorney General. Guam law at 8 G.C.A.

§70.10(b) provides:

> The prosecuting attorney's obligations under his section
> extend to any material information in the possession or
> control of members of his staff and any other persons who
> have participated in the investigation or evaluation of the
> case and who either regularly report or with reference to this
> case have reported to his office.



The discovery materials requested herein fall within the scope of this law and should be provided promptly. All the materials requested are required for the Defendant to prepare his case. The Court is additionally authorized to order discovery pursuant to 8 G.C.A. 70.15(a), which provides:

> Except as otherwise provided by this section and §70.20 and §70.30, upon notice of motion by the defendant and a showing of materiality to the preparation of his defense and that the request is reasonable, the court in its discretion may order the prosecuting attorney to disclose to the defendant's attorney any relevant material and information not entered by §70.10.

Finally, the Defendant asks the Court for a specific order requiring the prosecutor to seek out and provide all exculpatory evidence within the possession of its office or anyone who has reported to them. Defendant's right to discovery of this exculpatory material is a due process right of constitutional dimension. The prosecution has an affirmative duty to provide such information, even without the present motion.

We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution Brady v. Maryland, 373 U.S. 83 (1963).

Courts have held such Brady materials to include the existence of witnesses favorable to the defense, U.S. v. Wilkins, 326 F.2d 135 (2nd Cir. 1964), favorable witness statements, Jackson v. Wainwright, 390 F.2d 288 (5th Cir. 1968), evidence which reduces the credibility or probative value of evidence used by the prosecution, Thomas v. U.S., 343 F.2d 49 (9th Cir. 1965), prior inconsistent statements of witnesses,



Giles v. Maryland, 386 U.S. 66 (1972), the criminal record of a witness, U.S. v. Strifler, 851 F.2d 1197 (9th Cir. 1988), and promises of immunity or other favorable treatment made by government agents to a witness, Giglio v. U.S., 405 U.S. 150 (1972).

## CONCLUSION

The Defendant hereby respectfully moves the court to order the People to produce items the requested in this motion numbers1 to 8 and all Brady material known to the People and its investigative agencies.

Dated: _____

MANTANONA LAW OFFICE
Attorney for **Randy Chargualaf**

By: _____
RAWLEN M T MANTANONA,
A duly licensed employee.



I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam

MAY 1 9 2006

Jerimie K.J. Duenas
Deputy Clerk, Superior Court of Guam



# VOUCHER FOR COMPENSATION OF
## COURT-APPOINTED COUNSEL

## FELONY CASE
### SUPERIOR COURT OF GUAM

DATE: _____

MANTANONA
LAW OFFICE
A Professional Corporation

PAYEE _____
ADDRESS _414 W Soledad Avenue Ste 601B_
CASE _Hagatna, Guam 96910_ _People_ vs _Kind_
CASE NO. _Telephone (671) 472-5665_ _CF 417-99_
Telecopier (671) 472-3443

RECEIVED

**A. TIME SPENT IN COURT:**

| | | | |
|---|---|---|---|
| 1. Date ___ | No. of Hrs. 1.50 | x $ 75.00 | |
| 2. Date ___ | No. of Hrs. ___ | x 75.00 | |
| 3. Date ___ | No. of Hrs. ___ | x 75.00 | |
| 4. Date ___ | No. of Hrs. ___ | x 75.00 ___ | $112.50 |

**B. TIME SPENT IN PREPARATION:**

| | | | |
|---|---|---|---|
| 1. Date ___ | No. of Hrs. .5 | x $ 50.00  25.00 | |
| 2. Date ___ | No. of Hrs. ___ | x 50.00  25.00 | |
| 3. Date ___ | No. of Hrs. 3.0 | x 50.00  150.00 | |
| 4. Date ___ | No. of Hrs. .5 | x 50.00  25.00 | $225.00 |

**C. EXPENSES OF REPRESENTATION:**

1. _____   _____
2. _____   _____
3. _____   _____
4. _____   _____

**D. LESS COMPENSATION RECEIVED OR CLAIMS FILED EARLIER UNDER SEPARATE VOUCHER (S) FOR REPRESENTATION IN THIS CASE.**

NET AMOUNT CLAIMED  $337.50

I certify that the above claim is correct and just and that payment has not been received and, except as noted in item D, no payment or promise of payment has been requested or accepted for representation in the above case.

_____
SIGNATURE OF PAYEE

_66-0-38-311_
PAYEE SS# OR TAXPAYER I.D. #

* For felony cases, this amount plus item D shall not exceed $7,500.00 the limit set by the Judicial Court.

### FOR COURT USE ONLY

Certification of Fund

Approved for Payment

_____
Judge, Superior Court

Date: _____

# Rawlen M.T. Mantanona, P.C.

**First Savings & Loan Building**
**655 S. Marine Drive, Suite 102**
**Tamuning GU 96911**

Invoice submitted to:
Randy Chargualof
Superior Court of Guam

February 2, 1999

In Reference To:    *Criminal Case No. CF317-97*
Invoice #   11178

Professional services

|  |  | Hrs/Rate | Amount |
|---|---|---|---|
| 01/08/99 | Draft letter to Assistant Attorney General for discovery. | 0.25 50.00/hr | 12.50 |
| 01/11/99 | Telephone conference with Assistant Attorney General, David Moore on status. | 0.25 50.00/hr | 12.50 |
| 01/15/99 | Prepare file for trial. | 0.50 50.00/hr | 25.00 |
| 01/19/99 | Prepare trial bnders, separation of reports, catagorizing evidence. | 3.00 50.00/hr | 150.00 |
| 01/20/99 | Revise motion to continue trial. | 0.50 50.00/hr | 25.00 |
| 01/28/99 | Meeting with client and pretrial conference. | 1.50 75.00/hr | 112.50 |

Randy Chargualof

|  | Hours | Amount |
|---|---|---|
| For professional services rendered | 6.00 | $337.50 |
| Previous balance |  | $464.00 |
| Balance due |  | $801.50 |

Payment is due upon receipt of this statement. Thank you in advance for your prompt payment.

FILED
SUPERIOR COURT
OF GUAM

MAR 12  3 47 PM '99

ALFRED ... E. ORLAS
CLERK OF COURT

**MANTANONA**
LAW OFFICE

GCIC Building, Suite 601B
414 W Soledad Avenue
Agana, Guam 96910
Telephone (671) 472-3666
Telecopier (671) 472-3668

Attorney for **Randy Ignacio Chargualaf**

## IN THE SUPERIOR COURT OF GUAM

RECEIVED

| | | |
|---|---|---|
| THE PEOPLE OF GUAM, | ) | CRIMINALCASE NO: CF317-97 |
| | ) | |
| | ) | **DECLARATION OF COUNSEL** |
| | ) | **FOR CONTINUANCE OF TRIAL** |
| | ) | **DATE** |
| vs. | ) | |
| | ) | |
| RANDY IGNACIO CHARGUALAF | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF COUNSEL

I Rawlen M T Mantanona, hereby declare as follows:

1.  That my office has been appointed new counsel for Defendant Randy Chargualaf, by order of the Court on August 26, 1998.

2.  That the Motions hearing date for Defendant's voluminous motions is set for March 18, 1999.

3.  The Defendant's counsel is preparing for trial in <u>People v. Gasetoto</u>, set for March 22, 1999.

4.  The opposing counsel is also the counsel for <u>People v. Gasetoto</u> set for trail on March 22, 1999.

ORIGINAL

5.    Defendant estimates a need for about 3 to 5 court days to finish the motions because testimonial evidence will need to be put on to support Defendant's motions.

6.    Defendant is aware and agrees and is willing to continue to wave time and his right to a speedy trial in this case.

7.    That Assistant Attorney General, Thomas Fisher has been notified of our intention to file the instant motion.

8.    The facts and statements set forth in the foregoing document are true and correct to the best of my knowledge and belief.

I declare under penalty or perjury that the foregoing is true and correct tot he best of my knowledge and belief.

Dated: March 12, 1999

MANTANONA LAW OFFICE
Attorney for **Randy Ignacio Chargualaf**

By: _____

RAWLEN M T MANTANONA,
A duly licensed employee

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

MAY 1 9 2006

Jerimie K.J. Duenas
Deputy Clerk Superior Court of Guam

ORIGINAL

**MANTANONA**
LAW OFFICE

GCIC Building, Suite 601B
414 W Soledad Avenue
Agana, Guam 96910
Telephone (671) 472-3666
Telecopier (671) 472-3668

Attorney for **Randy Chargualaf**

IN THE SUPERIOR COURT OF GUAM

RECEIVED

| | | |
|---|---|---|
| THE PEOPLE OF GUAM, | ) | CRIMINAL CASE NO: CF317-97 |
| | ) | |
| | ) | **DECLARATION OF COUNSEL** |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| RANDY IGNACIO CHARGUALAF | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF COUNSEL

I Rawlen M T Mantanona, hereby declare as follows:

1.  That my office has been appointed counsel for Defendant Randy Chargualaf, by order of the Court on August 26, 1998.

2.  Counsel was involved in the People v. Beau Bruneman trial in which the Defendant allowed the counsel to continue the proceedings until another date. The Defendant wanted counsel to thoroughly review and investigate his case.

3.  In the interim the Defendant began drafting his own motions in this matter.

4. Counsel advise Defendant that his motions though they identified the necessary issues were inadequate legally and that they needed work.

5. Counsel then redraft the issues and the motions and submitted the following motions:

   a. Motion to Dismiss and Motion to Suppress Evidence, March 9, 1999.

   b. Motion to Compel Discovery, March 9, 1999.

   c. Motion to Suppress In-Court Identification, March 9, 1999.

   d. Motion to Exclude 404(b) Evidence, March 9, 1999.

6. The Defense counsel inquired whether Defendant believed everything was being done in his best interest. At that time the Defendant stated that he believed that 95% of everything that could be done on behalf of his case was being done.

7. Defendant has constantly second guessed and questioned counsel in regards to his decisions as far as strategy and legal arguments in this matter.

8. During the week of March 8, 1999, counsel advised the Defendant that there was a motion date set for March 18, 1999 in regards to his motions.

9. Counsel then advised the Defendant that he needed a continuance because these motions are evidentiary motions and that evidence and testimony must be put on for the court for the court to determine whether to grant or deny the motions.



10. Counsel advised the Defendant that he would need to continue the matter because he would be going to trial on a terrorizing case on March 22, 1999 in front of Judge Michael Bordallo. Counsel stated he would not have enough time to complete the hearings in the limited court time before trial. Counsel believed Defendant would be prejudiced if the hearings were rushed and not thoroughly done and argued properly. Secondly, counsel advised Defendant he needed that time to prepare for trial.

11. The Defendant then gave grudgingly his consent to defense counsel to continue the motions.

12. On March 15, 1999 Defendant called counsels office and informed Counsel's staff that he changed his mind and wanted to have the motions heard on the 18th and did not want to continue the matter. The Defendant stated that it was in his best interest to have the motions heard on March 18, 1999. The assertion was that Assistant Attorney General, Thomas Fisher was not prepared to answer the motions. Defendant said that he would have won the motions due to the People's lack of preparation and timely motion response.

13. In a telephone conversation later that day Defendant informed the counsel that he was advised by the court that his motion hearing date had been already moved to April 8, 1999. He further asserted that he wanted to go

because he knew he would win the motions based upon the People's failure to meet the response deadline.

14. In the telephone conversation on March 15, 1999 with the Defendant Defendant stated to counsel that he did not know that counsel was doing everything in his best interest.

15. He stated that he was not sure whether he could trust counsel, personally and in his legal decisions.

16. Counsel asked Defendant if he wanted counsel to remain as his counsel, Defendant stated he doesn't know.

17. Counsel believes the constant harassment and second guessing, and Defendant's lack of trust and faith in counsel has lead, in counsel's opinion rendered Defendant continued representation <u>unreasonably difficult</u> by the client.

18. This is extremely difficult in light of the Defendant's trust and cooperation will be needed in counsel's preparation for trial and any evidentiary hearing.

19. Defendant was notified as to counsels need to withdraw and decision to file this motion, the Defendant stated you got to do what you have to do.

20. Opposing counsel Assistant Attorney Thomas Fisher was notified on March 15, 1999 by telephone and he state he had no objection to counsel going Ex Parte to shorten time for the hearing.

21.   Counsel believes that Defendant will not be prejudiced at this stage if counsel
is substituted but may prejudice Defendant if representation is continued into
the upcoming critical phases of Defendant's case.

I declare under penalty or perjury that the foregoing is true and correct tot he best
of my knowledge and belief.

Dated: March 16, 1999

MANTANONA LAW OFFICE
Attorney for **Randy Chargualaf**

By:

RAWLEN M T MANTANONA,
A duly licensed employee

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

MAY 1 9 2006

Jerime K.J. Duenas
Deputy Clerk, Superior Court of Guam

**MANTANONA**
LAW OFFICE

GCIC Bld. Suite 601B
414 W Soledad Avenue
Hagatna, Guam 96910
Telephone (671) 472-3666
Telecopier (671) 472-3668

Attorney for **Randy Chargualaf**

## IN THE SUPERIOR COURT OF GUAM

| | | |
|---|---|---|
| THE PEOPLE OF GUAM, | ) | CRIMINAL CASE NO: |
| | ) | |
| vs. | ) | **RULE 9 STATEMENT** |
| | ) | |
| RANDY CHARGUALAF, | ) | **RECEIVED** |
| | ) | |
| Defendant. | ) | |

The undersigned counsel for Defendant spoke with Assistant Attorney General,

Thomas Fisher at approximately 3:30 p.m. March 15, 1999 and advised him that he

would be going ex parte before the Ex Parte Judge on an Ex Parte Motion to withdraw.

Copies of Defendant's Ex Parte Motion to Shorten Time for Hearing, Points and

Authorities attached thereto and the Notice of Motion and Motion to Withdraw were

faxed to Plaintiff's counsel March 16, 1999.

MANTANONA  LAW OFFICE
Attorney for **Randy Chargualaf**

By:

Rawlen M T Mantanona, a duly
Licensed employee.

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

MAY 1 9 2006

Jerimie K.J. Duenas
Deputy Clerk Superior Court of Guam

# MANTANONA
## LAW OFFICE

GCIC Bld. Suite 601B
414 W Soledad Avenue
Hagatna, Guam 96910
Telephone (671) 472-3666
Telecopier (671) 472-3668

Attorney for **Randy Chargualaf**



RECEIVED

### IN THE SUPERIOR COURT OF GUAM

THE PEOPLE OF GUAM,            )     CRIMINAL CASE NO: CF317-97
                              )
         OF                   )     **EXPARTE MOTION TO SHORTEN**
                              )     **TIME OF HEARING ON MOTION**
RANDY CHARGUALAF,             )     **TO WITHDRAW AS COUNSEL**
                              )
              Defendant.      )
_____ )

**TO:  Office of the Attorney General, Criminal Prosecution Division, Assistant Attorney General Thomas Fisher**

Please take notice that on March 16, 1999 at 11:00 a.m., Defendant Randy Chargualaf, through counsel, Mantanona Law Office by Rawlen M T Mantanona, Esq. will move this Court ex parte, to shorten the time for hearing his motion to Withdraw as Counsel.

This motion is based upon the Points and Authorities submitted herein and such other matters to be presented at the hearing on this ex parte application.

Dated this 15th day of March, 1999.

                                        MANTANONA  LAW OFFICE
                                        Attorney for Randy Chargualaf

              By:  _____
                                        Rawlen M T Mantanona, a duly
                                        Licensed employee.

## POINTS AND AUTHORITIES

Rule 9 of the Rules of Superior Court of Guam provide for ex parte application.

Under normal motion procedure, the earliest Defendant could have a motion heard is 21

days. See Rule 5 of the Rules of Superior Court of Guam. By this ex parte application,

Defendant asks the Court to shorten the time for hearing and set the Motion for hearing

within five days.

Dated this 15th day of March, 1999.

<table>
<tr><td></td><td>MANTANONA  LAW OFFICE<br>Attorney for Randy Chargualaf</td></tr>
<tr><td>By:</td><td>_____<br>Rawlen M T Mantanona, a duly<br>Licensed employee.</td></tr>
</table>

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

MAY 1 9 2006

Jerimie K.J. Duenas
Deputy Clerk Superior Court of Guam

GCIC Bld. Suite 601B
414 W Soledad Avenue
Hagatna, Guam 96910
Telephone (671) 472-3666
Telecopier (671) 472-3668

Attorney for **Randy Chargualaf**



FILED
SUPERIOR COURT
OF GUAM

MAR 18  3 51 PM '99

ALFREDO M. BORJAS
CLERK OF COURT
BY:

### IN THE SUPERIOR COURT OF GUAM

| | | |
|---|---|---|
| THE PEOPLE OF GUAM, | ) | CRIMINAL CASE ~~RECEIVED~~ 97 |
| | ) | |
| vs. | ) | **NOTICE OF MOTION** |
| | ) | **TO WITHDRAW AS COUNSEL** |
| | ) | |
| | ) | |
| RANDY CHARGUALAF, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

TO:    Office of the Attorney General, Prosecution Division

### NOTICE OF MOTION

PLEASE TAKE NOTICE that the below described motion will come on for

hearing before this Court on *March 18*_____, 1999, at the hour of *4:00 p*m.,

or as soon thereafter as counsel may be heard.

DATED:  March 16, 1999         MANTANONA LAW OFFICE
                              Attorney for **Randy Chargualaf**

                    By: _____
                         RAWLEN M T MANTANONA,
                         A duly licensed employee.

# MOTION TO WITHDRAW AS COUNSEL

Attorney for Defendant applies to the Court for an order granting the following relief: For withdrawal as counsel for Defendant. The Defendant retained Rawlen M T Mantanona to represent him in the above entitled action. A situation has arisen that mandates the Rawlen M T Mantanona withdrawing as the Defendant's counsel. The Court has the power to grant this relief for good cause shown pursuant to 8 G.C.A. 1.25(c).

## MEMORANDUM OF LAW

Attorney for Defendant was appointed to represent Defendant. A personal situation has arisen between client and counsel which counsel believes interferes with counsels ability to represent Defendant. Client does not trust counsel and does not believe that counsel is doing everything on his behalf and defense. Defendant does not believe counsel is doing his job in protecting his rights in this matter. A breakdown of trust and communication has occurred which makes it unreasonably difficult to represent Defendant especially in light of the oncoming evidentiary hearings and pending trial.

This request is in accordance with the spirit of the Guam Rules of Professional responsibility, in particular, Rule 1.16(b) 5 which states:

> 5. The representation will result in an unreasonable financial burden on the lawyer of <u>has been rendered unreasonably difficult by the client</u>. [Emphasis added].

In <u>Ashker v. International Business Machine Corp</u>., 607 NYS2d 488 (App. Div. 1994), the Court in affirming an appeal of an order granting withdrawal of plaintiff's lawyer, noted that the client's accusation, in addition to threats and refusal to accept the lawyer's advice, rendered representation unreasonably difficult to efficiently carry out the legal representation. Mr. Chargualaf's constant questioning of counsel's handling of this case has strained the attorney-client relationship with Mr. Chargualaf beyond repair.

In <u>Brown v. Craven</u>, 424 F.2d 1166 (9th Cir. 1970), the Court posited that a refusal to allow substitution of attorneys may result in a denial of the constitutional right to effective assistance of counsel if the Defendant and the client are embroiled in an irreconcilable conflict. <u>See also United States v. Mills</u>, 597 F.2d 693, 700 (9th Cir. 1979) (citing <u>Brown</u> and referring to an irreconcilable conflict as one that was so great between the attorney and client that it resulted in a total lack of communication preventing an adequate defense).

As the Court can clearly see that such a situation has arisen and that calls for Defendant's counsel to be allowed to withdraw.

### CONCLUSION

Defendant's present counsel respectfully request that he be allowed to withdraw as counsel.

Dated: March 16, 1999

MANTANONA LAW OFFICE
Attorney for **Randy Chargualaf**

By: _____

Rawlen M T Mantanona, a duly
Licensed employee.

SO ORDERED this _18th_ day of _March_____, 1999.

_____

HONORABLE JUDGE, Superior Court of Guam

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file is the office of the
clerk of the Superior Court of Guam

MAY 1 9 2006

Jerimie K.J. Duenas
Deputy Clerk Superior Court of Guam



**MANTANONA**
**LAW OFFICE**

GCIC Bld. Suite 601B
414 W Soledad Avenue
Hagatna, Guam 96910
Telephone (671) 472-3666
Telecopier (671) 472-3668

Attorney for **Randy Chargualaf**

FILED

MAR 18  5 1  AN '99

SUPERIOR COURT
GUAM

RECEIVED

**IN THE SUPERIOR COURT OF GUAM**

| | | |
|---|---|---|
| THE PEOPLE OF GUAM, | ) | CRIMINAL CASE NO. CF317-97 |
| | ) | |
| vs. | ) | **STIPULATION AND ORDER** |
| | ) | |
| RANDY CHARGUALAF, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The People, by and through Assistant Attorney General, Thomas J. Fisher, Esq.

and Defendant, Randy Chargualaf, by and through his counsel, Rawlen M T

Mantanona, Esq., hereby stipulate that they agreed to continue the hearing on all

motions scheduled for March 18, 1999 at 11:00 a.m. **APR 0 8 1999** *at 3:00 p m*

DATED: _____

ASSISTANT ATTORNEY GENERAL
THOMAS J. FISHER
Attorney for The People

By: _Thomas J. Fisher_
    Thomas J. Fisher

DATED: March 11, 1999

MANTANONA LAW OFFICE
Attorney for Defendant

By: _____
    Rawlen M T Mantanona, a duly
    Licensed employee.

SO ORDERED this **MAR 1 5 1999** day of March, 1999.

_____
JUDGE, Superior Court of Guam

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

MAY 1 9 2006

**Jerimie K.J. Duenas**
Deputy Clerk Superior Court of Guam



**SUPERIOR COURT OF GUAM**
**MINUTE ENTRY**

| | | | | |
|---|---|---|---|---|
| APE NO: 99- 358 | PAGE NO: 1 | COURT CONVENED AT: 4:00 _ AM X PM | DATE: 03 18 1999 |

RESENT: **JUDGE:** ALBERTO C . LAMORENA III , Presiding Judge
**CLERK:** EVELYN L. CABRERA

| | |
|---|---|
| ASE NUMBER: CF0317-97 | CASE TITLE: |
| | PEOPLE OF THE TERRITORY OF GUAM |
| OUNSEL PRESENT: | VS. |
| PLAINTIFF: *T. Fisher* | RANDY I CHARGUALAF * |
| EFENDANT: *R. Montanton* | |

PROCEEDINGS: _*mtn to withdraw as counsel*_

**RECEIVED**

| LOG NUMBER | DESCRIPTION |
|---|---|
| *1650* | -Case Called |
| | *deft present w/atty.* |
| *166* | *ct= inform counsels of deft that deft had contacted court.* |
| *1710* | *d/a= FHe address ct. of mtn to withdraw as counsel.* |
| *1930* | *p/a= object to mtn to withdraw deft has been through a number of counsels.* |
| *2130* | *d/a= address ct. of mtn brought forward by myself as counsel.* |
| *2350* | *ct= appt. Terry Timblin* |
| | *3/23/99 4PM* |

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the Clerk of the Superior Court of Guam

MAY 1 9 2006

**Jerimie N.J. Duenas**
Deputy Clerk, Superior Court of Guam

| | | | |
|---|---|---|---|
| Matter continued to: | , 1999 At: | am/pm |

TERRY E. TIMBLIN
Attorney at Law
Suite 501C, GCIC Bldg.
414 W. Soledad Ave.
Hagåtña, Guam 96910
Telephone:    (671) 477-1389
Facsimile:    (671) 477-4809

Attorney for Defendant



## IN THE SUPERIOR COURT OF GUAM

PEOPLE OF GUAM          )

         Plaintiff,          )

vs.          )

RANDY IGNACIO CHARGUALAF          )

         Defendant,          )

CASE NO. CF0317-97

NOTICE OF ADDITIONAL
AUTHORITIES

**RECEIVED**

TO:    Attorney General of Guam, Prosecution Division

Please take notice that, at the hearing on the Defendant's Motion to Dismiss and Suppress

Evidence set for hearing on the 8th day of April, 1999, at 3:00 P.M., in the Superior Court of

Guam, the Defendant will cite the additional Authorities set forth below.

## AUTHORITIES

In support of the overall motion, the Decision and Order of January 5, 1999 of the

Honorable Alberto C. Lamorena III, in People v. Glenn C. Pareges, Case No. CF0679-98, and

the authorities cited therein. A copy is attached hereto.

In support of the proposition that mere nervousness does not provide a basis for an

investigative detention (Motion, Page 11) , People v. Moore, 72 Cal.Rptr. 800 (1968):

> It is clear that the officer detained defendant for questioning, and the only
> suspicious circumstances relied upon by the officer were that the area was
> one where narcotic transactions had taken place in the past and that
> defendant upon seeing the officers' car turned his back on them, moved
> from a comfortable position, and appeared nervous. Defendant was
> talking on a telephone in a booth at ten in the morning, and there seems

little to distinguish defendant from any other citizen who may have been making a telephone call at that time and place. To hold that police officers should in the proper discharge of their duties detain and question all persons in that location or all those who act nervous at the approach of officers would for practical purposes involve an abrogation of the rule requiring substantial circumstances to justify the detention and questioning of persons on the street. 72 Cal.Rptr. at 805-06.

And People v. Loewen, 196 Cal.Rptr. 846 (1983):

Cozart's observation that Landrum stammered and glanced at the ground while conversing with him did not give Cozart cause to stop another's vehicle. Nervousness in the presence of a police officer does not furnish a reasonable basis for a detention, especially where, as here, it "could understandably result from . . . police questioning because of a 'traffic violation' ". 196 Cal.Rptr. at 851-52.

DATED: 4/6/99

_____
TERRY E. TIMBLIN, Attorney for
Defendant

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
Clerk of the Superior Court of Guam

MAY 1 9 2006

Jennie K.J. Duenas
Deputy Clerk Superior Court of Guam

ORIGINAL

TERRY E. TIMBLIN
Attorney at Law
Suite 501C, GCIC Bldg.
414 W. Soledad Ave.
Hagåtña, Guam 96910
Telephone:     (671) 477-1389
Facsimile:     (671) 477-4809

Attorney for Defendant

IN THE SUPERIOR COURT OF GUAM

PEOPLE OF GUAM                          )    CASE NO. CF0317-97
                                        )
              Plaintiff,                )
                                        )
       vs.                              )    REPLY TO OPPOSITION TO
                                        )    MOTION TO DISMISS AND
RANDY IGNACIO CHARGUALAF                )    SUPPRESS EVIDENCE
                                        )
              Defendant,                )
_____)

       The Defendant, through counsel, hereby replies to the Government's Opposition to his

Motion to Dismiss and Suppress Evidence. The Opposition fails to meaningfully rebut the

points and authorities contained in the supporting Memorandum and Notice of Additional

Authorities and the Motion should be granted.

## MEMORANDUM OF POINTS AND AUTHORITIES

       The Defendant was stopped by Officer Dawson because of a cracked windshield on his

vehicle and a missing front license plate. The only evidence of these infractions was the

windshield itself and the damage thereto and the failure of the plate to appear where it should

have been on the front bumper. No conceivable further evidence could have been obtained by

searching the interior of the vehicle or the driver or the passenger, and any further delay to for

this purpose would be clearly unreasonable. As pointed out in People v. Glenn C. Pareges, Case

No. CF0679-98 (Page 5, quoting United States v. Daniel, 804 F.Supp. 1330 [Dist. Nev. 1992]):

> When a police officer effectuates an automobile stop on the grounds that the driver has violated a traffic law, the scope of the resultant detention is strictly limited to the enforcement of that law. (citing Daniel) An officer conducting a traffic stop may detain the motorist only as long as is necessary to check the driver's license and vehicle registration, ask a few perfunctory questions, and write out the ticket. Id. Any expansion of the scope of the stop to include investigation of other suspected illegal activity is allowed only if the officer has a reasonable articulable suspicion that other criminal activity is afoot. Id. see also Terry v. Ohio, supra.

In this instance, Defendant did provide his license and registration and there was nothing left for Officer Dawson to do but write the ticket and send him on his way, in the absence of reasonable suspicion that any other criminal activity was taking place. Officer Dawson abandoned whatever interest he had in the traffic violation at 9:48 a.m. when he asked Defendant whether or not there were any drugs or weapons in the vehicle. Any doubt about this shift in focus is dispelled by the fact that there is no indication in the police report that a ticket for the traffic violations was ever written. It was at this point that Officer Dawson was required to have reasonable suspicion in order to continue the detention. There is no question that Defendant was not free to leave at this point as Officer Dawson retained possession of Defendant's driver's license and registration and called for backup. The only conceivable motive for calling for assistance would be to further place Defendant under his control.

The right to detain an individual for reasons short of probable cause to make an arrest is governed by the rules set forth in Terry v. Ohio, 392 U.S. 1 (1968), as codified on Guam in 8 GCA §§30.10-50. §30.30 places an outside limit on such a detention at 15 minutes. While considerable discussion was given over to the 15 minute rule in the Memorandum of Points and Authorities in support of the Motion as well as the Opposition, a police officer is not even entitled to the 15 minutes unless there is reasonable suspicion. The only suspicion articulated by Officer Dawson and asserted by the government in its Opposition, is that Defendant appeared to

be nervous. Defendant has cited three cases: <u>United States v. Hernandez-Alvarado</u>, 891 F.2d 1414 (9th Cir 1989); <u>People v. Moore</u>, 72 Cal.Rptr. 800 (1968); and <u>People v. Loewen</u>, 196 Cal.Rptr. 846 (1983), for the proposition that mere nervousness is insufficient to arouse reasonable suspicion. The Government has failed to cite any authority to the contrary.

As pointed out in the initial Motion, even if reasonable suspicion did exist, the 15 minute rule was violated. The Government, in its Opposition, disputes this arguing that probable cause to arrest of the Defendant did arise within the 15 minute period and that his arrest was therefore justified pursuant to §30.40. Dealing with these in the order presented:

That Defendant "matched" the description of one of the suspects in the Certeza robbery. The short answer to this is that he also matched the description of about one-third of the Chamorro males on the island. Attached as Exhibit A is a copy of the bulletin that Officer SantoTomas was relying on. Suspect No. 3 was described as "Male/Guam/30+ yrs.; 5'8"; med build; mustache; black hair; black baseball cap; Light green shirt." Attached as Exhibit B is a copy of the Arrest Record of Defendant in which he is described as "Weight 185 lbs. brown and blue stripe shirt blue and a gray stripe shorts black flip-flops". He is further described as 5'9", black hair and age 27. There's no indication as to whether or not he had a mustache.

The shirt he was wearing at the time of his arrest did not match the shirt described as being worn by the suspect and there is no indication that he was wearing a black baseball cap. In addition, the Court can take judicial notice, if it has not done so already, that Defendant has a rather extravagant series of tattoos on both of his arms and that no mention of these was made in the bulletin. Basically, he was a Chamorro male with black hair (and there are very few who have hair of any other color) somewhere in his 20s or 30s and, if 185 lbs. on a 5'9" frame is a medium build, had a medium build. If the Government is correct, then there were several

hundred and possibly thousands of Chamorro males who were in danger of being arrested on July 21, 1997. Should the Government argue that the presence of Mendiola made things a bit more specific, the fact remains that no third suspect, described as a "female Caucasian" in the bulletin, was present.

That Defendant "feigned" compliance with the initial request to exit the vehicle and that this amounted to obstruction of justice. Attached as Exhibit C is a copy of the to Vehicle Report with respect to the impoundment of Defendant's vehicle. In block 42 of the report, Officer Santo Tomas indicates that the condition of the vehicle was "Poor". In block 105 entitled "Itemization of Damage to Vehicle" there is listed "Doors and Trunk locks". And finally, in block 9 on the second page, the overall damage to vehicle is listed as "Heavy" with an X drawn at the position of the driver's door. While driving a Guam bomb may be enough to get you the traffic ticket, it certainly does not arise the level of obstruction of justice.

That the credit card with Japanese script was found on Mendiola. Mendiola claimed to have found the card and, in the absence of an affirmative admission to the contrary, there was no probable cause to believe that her possession of the card was wrongful. In any event, if probable cause for an arrest did exist, it was for the arrest of Mendiola, not Defendant.

That Defendant consented to the detention and search and that this corrected any defects. The consent was only given after the unlawful detention had begun and, as the product of such unlawful detention, is tainted and invalid. Pareges Decision and Order, page 9, citing Florida v. Royer, 460 U.S. 491 (1983); United States v. Hotal, 143 F.2d 1223 (1998); and United States v. Contreras-Dias, 575 F.2d 740 (9th Cir. 1978).

> The Florida District Court of Appeal in the case before us, however, concluded not only that Royer had been seized when he gave his consent to search his luggage but also that the bounds of an investigative stop had been exceeded. In its view the "confinement" in this case went beyond the

limited restraint of a *Terry* investigative stop, and Royer's consent was thus tainted by the illegality, a conclusion that required reversal in the absence of probable cause to arrest. The question before us is whether the record warrants that conclusion. We think that it does. Royer, 460 U.S. at 501.

## APPROPRIATENESS OF DISMISSAL

The standard remedy for constitutional violations is to simply suppress any evidence resulting therefrom but the courts normally refuse to dismiss the entire action. United States v. Morrison, 449 U.S. 360 (1981). However, in this instance, virtually all of the evidence against Defendant would have to be suppressed as the product of the unlawful detention. This includes all physical evidence taken from Defendant, his vehicle, and his hotel room; the statements and testimony of the two Co-Defendants and the seriously flawed identification of Defendant by Mrs. Certeza. As a practical matter, there'd be insufficient evidence for the Government to go forward with this prosecution and a Defendant submits that it would be appropriate to also dismiss this case entirely.

DATED: 4/12/99

TERRY E. TIMBLIN, Attorney for
Defendant

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam

MAY 1 9 2006

Jerimie K.J. Duenas
Deputy Clerk Superior Court of Guam



People v. Parages, CF 679-98
Decision and Order Regarding Defendant's Motion to Suppress.

IN THE SUPERIOR COURT OF GUAM

PEOPLE OF GUAM,                          )    CRIMINAL CASE NO. CF 679-98
                                         )
            vs.                          )
                                         )    **DECISION AND ORDER**
GLENN C. PARAGES                         )    **REGARDING DEFENDANT'S**
                                         )    **MOTION TO SUPPRESS**
            Defendant,                    )
_____  )

## INTRODUCTION

On October November 10, 1998, the Defendant filed a Motion to Suppress evidence obtained subsequent to a routine traffic stop. The People filed a response on November 25, 1998. A hearing on the matter was held before the Honorable Alberto Lamorena on December 7, 1998. The Defendant is represented by James Canto while the People are represented by Bonnie Brady. Based upon the written and oral arguments[1] presented this Court renders the following Decision and Order.

## BACKGROUND

On September 15, 1998, Officer B. T. Babauta conducted a routine traffic stop for a vehicle travelling at a high rate of speed through heavy rush hour traffic and for the passenger's failure to wear a seatbelt as mandated by Guam law. The operator of the vehicle, later identified to be the Defendant Parages, stopped his vehicle in the center lane, with heavy traffic flowing by on each side. While approaching the vehicle the officer observed the occupants moving around as if they were frantically trying to hide something. The Officer identified himself and told the

---

[1] The only evidence presented to this Court was the testimony of Officer Babauta.

operator of the vehicle that he had been stopped for imprudent driving and for failure of the front passenger to wear a seat belt. The officer asked Defendant to move the vehicle to the Busan Restaurant parking lot to avoid injury to those involved in the stop, the officer, and other motorists.

As Defendant moved his vehicle, Officer Babauta again noted that the Defendant and the passenger were moving about the vehicle more than average motorist during a traffic stop and were exceptionally nervous. Defendant produced an invalid Hawaii drivers' license and told the officer that he had been living on Guam for four years. Officer Babauta's suspicions were heightened because as an experienced police officer he was aware that individuals who wish to avid having their local records checked for outstanding warrants produce licenses from other jurisdictions. Additionally, Officer Babauta knew of certain robberies in the area which were undertaken by individuals who generally matched the description of the occupants of the vehicle. Based upon his belief that the occupants were trying to conceal something (due to passenger bending over while officer approached the vehicle) Officer Babauta had the occupants exit the vehicle. While the passenger exited the vehicle a black pouch fell to the ground, and upon query, neither the driver nor the passenger claimed ownership, which only served to heighten the officer's belief that a weapon was present.

As a result of his belief the officer conducted a pat down of the occupants of the vehicle. During his pat down of the Defendant, the officer discovered an object in the crotch area of Defendant's pants. The officer could not identify what the item was (the object was a precision scale with residue of what appeared to be Methamphetamine, a.k.a. "Ice"). The officer then called for back-up units per standard Guam Police Department procedure. Officer Babauta once again asked both the Defendant and the passenger who owned the pouch. Again neither individual acknowledged ownership. Officer Babauta asked both occupants of the vehicle if he could search the pouch as it was within the reach of both individuals. Both persons stated, "go ahead."

Located within the pouch was a heat sealed straw containing a crystalline substance thought to be Methamphetmine, various straws, scissors, plastic baggies containing a crystal-like substance, baggies containing a substance which appeared to be Marijuana, a glass "Ice" pipe with residue and U.S. currency totaling three thousand seven hundred ninety dollars ($3,790.00). At this time both occupants were placed under arrest and read their rights. All these events up to the arrest occurred within approximately five to seven minutes of the initial stop.

After the back-up unit arrived both men were read their constitutional rights again. Defendant acknowledged these rights and then signed a rights waiver form. Subsequent to signing the form, Defendant admitted owning the scale, although later he recanted this statement and stated that he was hiding the scale so the passenger (Mondina) would not get into trouble. Defendant admitted he was on probation for Possession of a Schedule II Controlled Substance, Methamphetamine, in CF 369-96. Defendant further admitted to being an addict as well as ingesting "Ice" at 9:00 a.m. on the date of his arrest, September 15, 1998.

Defendant was indicted on the following charges: (1) Possession of a Schedule II Controlled substance With the Intent to Deliver (As a 1st Degree Felony); (2) Possession of a Schedule II Controlled Substance (As a 3rd Degree Felony); (3) Possession of a Schedule I Controlled Substance With the Intent to Deliver (As a 1st Degree Felony); (4) Failure to Wear a Seat Belt (As a Misdemeanor); and (5) Imprudent Driving (As a Petty Misdemeanor). Defendant asserted his right to a speedy trial on October 28, 1998.

## DISCUSSION

Defendant now moves this Court to suppress all evidence subsequent to the stop by Officer Babauta based upon several theories. First Defendant argues that the Defendant was illegally detained during a routine traffic stop. Second, Defendant argues that Officer Babauta's suspicions as to the presence of a weapon were unreasonable. Third, as a result of unreasonable

search, the evidence seized should be suppressed. Finally, the consent to search the pouch was tainted due to the preceding illegal acts by Officer Babauta.

The People submit that the acts undertaken by Officer Babauta were subject to several exceptions to the search warrant requirement, namely: (1) the search was consensual; (2) exigent circumstances apply the automobile exception to the search warrant rule; (3) the officer had probable cause to arrest defendant upon discovery of the scale containing the suspected "Ice" residue and thus the search of the pouch was incident to arrest; (4) the officer may properly conduct a protective search under the totality of the circumstances as they existed at the time; (5) the search would have conducted later during an inventory search of the vehicle and been inevitably been discovered in any event. This Court will address the Defendant's arguments in turn.

### A.  Was The Detention Illegal?

Defendant raises both a statutory argument well as a Constitutional argument as to the legality of the detention.

#### 1.  Guam Statutes Governing Detention.

According to 8 G.C.A. § 30.30 a detention undertaken pursuant to 8 G.C.A. § 30.10 shall be no longer than is reasonably necessary to effectuate the purposes of the stop or no longer than fifteen (15) minutes. A detention under § 30.10 is allowed by a peace officer whenever there are circumstances which reasonably indicate that a person has committed, is committing or is about to commit a criminal offense. In this case the People have shown that Defendant was driving imprudently and that the passenger was not wearing a seatbelt. The detention, up until the time of Defendant's arrest, was five (5) to seven (7) minutes, clearly within the time frame allowed by § 30.30. Moreover, Defendant does not question the purpose of the initial stop, i.e., traffic violation[s]. Thus, under Guam statutory law Officer Babauta executed a legitimate detention. Defendant further asserts that any purpose aside from issuing a traffic citation of the Defendant

was a violation of Defendant's Fourth Amendment right against unreasonable searches and seizures.

　　　2. Constitutional Analysis.

　　　It is true that the Fourth Amendment applies to routine traffic stops. Knowles v. Iowa, ___ U.S. __, WL 840933 (Dec. 8, 1998); *see also* United States v. Daniel, 804 F.Supp. 1330 (Dist. Nev. 1992)("[I]t is well settled that any police-initiated stop of a moving automobile, including a simple traffic stop, constitutes a limited seizure under the Fourth Amendment and falls within the purview of Terry v. Ohio, 392 U.S.1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Delaware v. Prouse, 440 U.S. 648, 661-63, 99 S.Ct. 1391, 1400-01, 59 L.Ed.2d 660 (1979)").

　　　When a police officer effectuates an automobile stop on the grounds that the driver has violated a traffic law, the scope of the resultant detention is strictly limited to the enforcement of that law. Daniel, *supra*, (citing U.S. v. Guzman, 864 F.2d 1512, 1519 (10th Cir. 1988); U.S. v. Gonzalez, 763 F.2d 1127, 1130 n.1 (10th Cir. 1985). An officer conducting a traffic stop may detain the motorist only as long as is necessary to check the driver's license and vehicle registration, ask a few perfunctory questions, and write out a ticket. Id. Any expansion of the scope of the stop to include investigation of other suspected illegal activity is allowed only if the officer has a reasonable articulable suspicion that other criminal activity is afoot. Id., *see also* Terry v. Ohio, *supra*.

　　　It is also equally well settled, however, that an officer may order a driver from the vehicle so as to assure an officer's safety. Pennsylvania v. Mimms, 434 U.S. 160, 111, 98 S.Ct. 330, 333 (1977). Moreover, for the same reason an officer may order any passengers out of the vehicle as well. Maryland v. Wilson, 117 S.Ct. 882, 886 (1997). Thus, in this instance Officer Babauta's request for both occupants to exit the vehicle was entirely proper.

## B. Were The Searches Reasonable?

The Defendant argues that an illegal detention occurred when, instead of citing Defendant for the traffic infractions, Officer Babauta extended the scope of the traffic stop by conducting a pat down of the Defendant and asking about a black pouch which Officer Babauta first noticed on the floor of the vehicle on the passenger side, and which subsequently fell out of the vehicle when the passenger exited the vehicle. This Court will examine the validity of each search in turn.

### 1. Pat Down Search.

The seminal case of <u>Terry v. Ohio</u>, *supra*, brought the validity of pat down searches to the forefront of law enforcement procedures. Since <u>Terry</u>, The United States Supreme Court has consistently upheld the validity of pat down searches to determine whether the person is in fact carrying a weapon. *See* <u>Pennsylvania v. Mimms</u>, *supra*, <u>Maryland v. Wilson</u>, and <u>Minnesota v. Dickerson</u>, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). However, "[t]he purpose of the limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence."[2] <u>Adams v. Williams</u>, 470 U.S. 143, 146, 92 S.Ct. 1921, 1923 (1972). The Supreme Court in <u>Minnesota v. Dickerson</u>, *supra*, has further held that the "plain feel" doctrine would apply to seizures of contraband. If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under <u>Terry</u> and its fruits will be suppressed. <u>Sibron v. New York</u>, 392 U.S. 40, 65-66, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968).

In relation to the object discovered in Defendant's pants, Officer Babauta on direct

---

[2] This Court is mindful of the fact that Guam Police Officers have a dangerous job to perform. For example, in 1994 alone, there were 5,762 officer assaults and 11 officers killed during traffic pursuits and stops. FBI, Uniform Crime Reports: Law Enforcement Officers Killed and Assaulted 71, 33 (1994). Granted these statistics extend from the FBI and there is no indication that Guam is included in these statistics. However, Officer Babauta did indicate that his police cruiser had 14 bullet holes in it after a "routine traffic stop" turned into a high speed chase. Tape 98-1991 at 380-2380.

examination stated that he did not know what the item was:

> Q: Did you have any thoughts as to about what the item might be?
>
> A: No, I just thought it was something unusual and I just wanted
>
>    to find out what it was . . . it was a rectangular type object.

Tape No. 98-1991 at 890. By Officer Babauta's own admission he knew it was not a weapon, and he knew it was not contraband. While it is true the location of the item (Defendant's crotch area) may be unusual, the location of an object alone is insufficient, without proper articulable facts, i.e., stating the object is either a weapon or contraband, to warrant further intrusion into ones privacy. In <u>Minnesota v. Dickerson</u>, *supra*, the Supreme Court stated that the sense of touch is capable of revealing the nature of an object with sufficient reliability to support a seizure. The very premise of <u>Terry</u>, after all, is that officers will be able to detect the presence of weapons through the sense of touch and <u>Terry</u> upheld precisely such a seizure. <u>Id.</u> As such, the continued search of the Defendant's crotch area of his pants and subsequent discovery that the unknown item was merely contraband necessitates its suppression.

    2.  <u>Search Of Black Pouch</u>.

The search of the black Pouch requires this Court to look at several Constitutional doctrines to determine whether the contents thereof should be suppressed. First, whether Officer Babauta had reason to believe the pouch contained a weapon. Second, is whether Officer Babauta had probable cause to search the pouch. Third is whether the consent to search the pouch was tainted by the improper pat down.

    a.  <u>Reason to Believe Pouch Contained Weapons</u>.

The search of the black pouch took place after Officer Babauta had "cleared" for weapons. Tape No. 98-1991 at 1985. Since, the officer testified that he no longer had a belief that the pouch to contain weapons the search of the pouch cannot be supported by <u>Terry</u>. Thus,

by the officer's own testimony he was not searching the pouch to discover weapons, rather he was searching the pouch for something else.

    b. <u>Probable Cause To Search Pouch.</u>

    In order to search a vehicle prior to arrest, the police require either a search warrant or probable cause. In this case a search warrant was not obtained because the officer merely executed a routine traffic stop and had no occasion to know that other possible criminal activity was afoot. Without probable cause the officer is merely going on a fishing expedition. As stated in <u>Knowles</u>, *supra*, "while concern for safety during a routine traffic stop may justify the 'minimal' additional intrusion of ordering a driver and passengers out of the car, it does not by itself justify the often considerably greater intrusion attending a full field-type search." <u>Knowles</u>, at 3. Thus, a general search of an automobile during a traffic stop requires probable cause consisting of specific facts articulated by the officer that he had reason to know there was a crime taking place. <u>Carroll v. United States</u>, 267 U.S. 132, 151, 45 S.Ct. 280, 284, 698 L.Ed. 543 (1925); <u>California v. Acevedo</u>, 500 U.S. 565, 111 S.Ct. 1982, (1991); 111 S.Ct. 1982, (1991); <u>Michigan v. Long</u>, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). In this instance the probable cause which the officer would otherwise have at his disposal, i.e., the precision scale found in Defendant's crotch area, is not available because the scale and the fruit which it bore shall be suppressed.

    The People argue that they would have discovered the evidence after arrest, or that the discovery falls under one of the exceptions to the Fourth Amendment, i.e., search incident to arrest. Since the pat down was improper the fruits thereof will be suppressed under <u>Sibron</u>, *supra*, there is no need to address the exceptions argued by the People here. The People do have one more bite at the apple — consent was granted by the Defendant and passenger to search the pouch.

### c. Was Consent Tainted by Improper Pat Down?

In this instance the consent to search the pouch was given after the pat down of the Defendant and passenger. Any expansion of the scope of the stop to include investigation of other suspected illegal activity will only be allowed if the officer has reasonable, articulable suspicion that other criminal activity is afoot. Florida v. Royer, 460 U.S. 491, 499, 103 S.Ct.1319, 1324 (1983); *see also* United States v. Hotal, 143 F.2d 1223 (1998); United States v. Conteras-Dias, 575 F.2d 740, 744-45 (9th Cir. 1978). The officer's testimony that he had already "cleared" for weapons, requires this Court to conclude that Officer Babauta lacked probable cause to continue to search for weapons. Furthermore, as stated above in section 2(b), the officer also lacked probable cause to search for contraband. Thus, as such the consent was tainted and it shall suppressed. Royer, *supra*.

Guam law also requires suppression of the evidence. According to 8 G.C.A. § 30.60, evidence seized in violation of the provisions of Chapter 30 may not be admitted in any court against any person. Specifically, § 30.60 states that:

> nothing seized by a peace officer in the search authorized by § 30.50 shall be admissible against any person in any court of this Territory unless both the detention and the search which disclosed its existence was authorized by, and conducted in compliance with, the provisions of this Chapter.

Since the consent was tainted, the officer's search was inconsistent with the Fourth Amendment as well as Guam statutory law. Id., *see also* Florida v. Royer, *supra*; Florida v. Jimeno, 500 U.S. 248, 111 S.Ct. 1801, 114 L.ed.2d 297 (1991)(standard for measuring scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness – what would the typical reasonable person have understood by the exchange); Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) (protective search permitted without a warrant on basis or reasonable suspicion is allowed only to extent to discover weapons); and United States v. Hotal, *supra*, (consent tainted by illegal entry). Thus, the consent to search was invalid and the fruits thereof must be suppressed.

## C. Should the Evidence be Suppressed?

Officer Babauta did not have reasonable suspicion to believe that the item located in Defendant's crotch was a weapon. Moreover, Officer Babauta did not have a reasonable suspicion that the pouch contained a weapon because he had already "cleared" the pouch. Lacking probable cause, which would have otherwise been supplied by the crystals of "Ice" located on the scale, the subsequent search of the pouch was improper despite the fact that consent was given. Thus, as such the contraband seized during the pat down search, as well as that of the pouch, along with any statements or references thereto shall be suppressed.

## CONCLUSION

This Court finds that during a routine traffic stop a police officer may, order an individual from a vehicle to protect the safety of an officer, other motorists and the occupants of the vehicle involved in the stop. Furthermore, the officer may properly conduct a pat down search of the occupants of a vehicle to search for weapons when he or she has reasonable and specific facts which would put them in fear of harm from a weapon. In this instance Officer Babauta did have reasonable and articulable facts which support such a finding. Thus, the detention for the purposes of conducting a pat down was proper. However, if during a pat down if an officer encounters an object whose size and shape is not immediately apparent to them, they must cease searching the individual and continue with the original purpose of the stop. Failing to do so requires this Court to grant the Motion to Suppress.

Officer Babauta conducted a textbook stop in this case with the exception of taking a legitimate Terry type pat down too far. As a result of his testimony in which he stated that he did not know what the object located in the Defendant's pants was, and by continuing the search when he lacked any specific or reasonable explanation for continuing the search, any evidence obtained after the officer conducted the pat down will be suppressed, despite any consent given to conduct such a search.

1

2

3   Based upon the foregoing, the People's Motion to Suppress is hereby GRANTED. A

4  pretrial conference is scheduled for 3:00 p.m. on January 14, 1999. Jury selection will be held at

5  2:00 a.m. on January 19, 1999.

6  .

7

8   Dated this _____ day of _____ JAN 05 1999 _____ 1998

9

10

11

12  Alberto C. Lamorena III
    Presiding Judge
13  Superior Court of Guam

14

15

16

17

18

19

20

21

22

23  I do hereby certify that the foregoing
    is a full true and correct copy of the
24  original on file in the office of the
    clerk of the Superior Court, Guam
25  Dated at Agana, Guam
    JAN 0 5 19 1999
26  ALVINA D. QUITORIANO

27  Deputy Clerk, Superior Court of Guam

28

# TUMON/TAMUNING PRECINCT WANTED BULLETIN:

## HOME INVASION ROBBERY
## CS.# 97-17453

## DATE: JULY 20, 1997
## LOCATION: #105 KITETSU APTS. TUMON
## (Rearside of Acanta Mall)
## TIME: 10:05P.M.

**M.O.:** Entry is gained using the emergency distress plea. suspect #1 knocked, asking for help, when victim opened the door, Suspects #1&2 then asked to use the telephone. Victim went to get the telephone, and upon return noticed Suspect #3 holding a black color firearm. While all suspects were inside, suspect #3 instructed victim to give him money, in which $120.00 was relinquished.

## SUSPECTS:

1. Female/Guam/12-15yrs. of age; slim build; shoulder length, black hair; black blouse w/silver lining on sleeves; black shorts.

2. Female/Cauc./30+ yrs.; 5'-6"; med. Build; dirty blond hair; white shirt; black shoes(boots); unk. pants.

3. Male/Guam/30+ yrs.; 5'-8"; med build; mustache; black hair; black baseball cap; Light green shirt.

EXHIBIT A



ARREST RECORD

Weight 185 lbs.
brown and blue striped shirt
blue and grey striped shorts
black flip flops

PERSON ARRESTED Randy Ignacio Charguelaf _____ ALIAS N/A

ADDRESS #486 Chalan Macajana, Agana Heights _____ BIRTHDATE 5/23/70 _____ SSN 586-72-839

AGE 27 _____ RACE GUA _____ SEX Male _____ HT 5'9" EYES Brown _____ HAIR Black

OCCU/EMP. Unemployed _____ HOME ADDRESS #486 Chalan Macajana, Agana Hei

MILITARY ☐    RANK N/A _____ Branch of Service N/A _____ Base Assigned N/A

CIVILIAN ☒

ARRESTED BY PO2 C.S. Danson #573 _____ TIME OF ARREST 1020 Am PLACE OF ARREST Parking lot Ron 57

DATE OF ARREST 21 July 1997 _____ CITIZEN ✓ _____ NON-CITIZEN

CHARGE(S) 1) Robbery 2) Possession of stolen Property 3) Possession of a Controlled Substance - ICE 4) Po
of a concealed Firearm 5) Possession of a Firearm without Firearm Identification 6) Possession of a Fire
with obliterated serial numbers 7) Possession of a firearm while in the commission of a felony

DEPARTMENT DISPOSITION Booked and Confined as per the Arresting supervisor, PO:
H C. Vibar.

ARRESTING OFFICER PO2 CS Danson #573 _____

PROCESSING OFFICER _____

[stamp: RECEIVED JUL 22 1997 GUAM ... RECORDS SECTION]

Rev. 3/90

EXHIBIT B

# GUAM POLICE DEPARTMENT

| | | | |
|---|---|---|---|
| **1. COMPLAINT NO.** ky 97-1453 | | | |

| 1. DATE REPORTED 7-21-97 | 15. TIME REPORTED 1000 hrs | 2. COMPLAINT'S NAME Guam Police Dept | 3. RACE - SEX - DOB |
|---|---|---|---|
| 16. LOCATION STOLEN (ADDRESS) | | 4. HOME ADDRESS 40 Tan Burnt CITY/STATE | 5. HOME PHONE |
| | | | 6. BUSINESS PHONE |
| 17. DATE STOLEN | 18. TIME STOLEN | 7. BUSINESS | |
| 8. DESCRIBE LOCATION OF THEFT/TYPE PREMISE | A | 8. ADDRESS | 9. PHONE |
| | | | STATE |

**10. TYPE OF CASE**
☐ STOLEN ☐ RECOVERED ☑ IMPOUNDED
☐ OTHER (SPECIFY)

| 10. REPORTING PERSON Police Santo Tomas | 11. RACE - SEX - DOB |
|---|---|

**11. IDENTIFY REPORTING PERSON**
☐ RELATIVE ☐ NEIGHBOR ☑ EMPLOYEE
☐ OTHER (SPECIFY)  GPD

| 12. HOME ADDRESS | 13. HOME PHONE |
|---|---|
| CITY | STATE |

| 22. REGISTERED OWNER'S NAME Victor T. Munbola | 23. ADDRESS Box 12506 Tamu Guam 96951 | 24. PHONE nll |
|---|---|---|

| | 25. YEAR 1988 | 26. MAKE Nissan | 27. MODEL Sentra | 28. BODY 2dr | 29. COLOR (S) Black | 30. MAKE Guam | YEAR 993 |
|---|---|---|---|---|---|---|---|
| VEHICLE DESCRIPTION | 31. TAG NO. 93/AH73G7 | | 32. SERIAL NO. 311PB12S3JK0070 | | 33. MOTOR NO. E16101291m | 34. VALUE $ | |
| | 35. IDENTIFYING CHARACTERISTICS Heavily Dented | | | | | | |

| 36. IGNITION LOCKED ☐ YES ☑ NO | 37. KEY IN IGNITION ☐ YES ☑ NO | 38. DOORS LOCKED ☐ YES ☐ NO | 39. TRUNK LOCKED ☐ YES ☑ NO | 40. WINDOWS CLOSED ☑ YES ☐ NO | 41. REG. IN CAR ☐ YES ☑ NO |
|---|---|---|---|---|---|

| 42. CONDITION OF VEHICLE Poor | 43. MILEAGE |
|---|---|

| 44. LOCATION RECOVERED | 45. DATE | 46. TIME |
|---|---|---|

**47. METHOD OF THEFT (JUMP WIRES-TINFOIL-IGNITION LEFT OPEN ETC.)**

| 48. LOCATION STORED Hala Township (Yard | 49. DATE 7-21-97 | 50. TIME 1520 hrs |
|---|---|---|
| 51. OWNER NOTIFIED BY              A | 52. DATE | 53. TIME |

| 54. MAY VEHICLE BE RELEASED ☐ YES ☑ NO | 55. IF NO, WHY? Pending Authorization from TIS |
|---|---|

| ITEM NO. | 56. ANY DETAILS OR INFORMATION Refer to Attached GPD G's |
|---|---|

EXHIBIT C

GUAM POLICE DEPARTMENT
CONFIDENTIAL

| | | | | OFFICE USE ONLY |
|---|---|---|---|---|

| 57. TELETYPE NOTIFIED | CLERK | I.D. NO. | DATE |
|---|---|---|---|
| 58. IMPOUND NOTIFIED | CLERK | DATE | |

| DATE/TIME TYPED NO. | REPRODUCED NO. |
|---|---|

| 59. REP. OFFICER Police Santo Tomas | I.D. NO. | 60. BEAT P/8 | 61. DISTRICT | UNIT REFERRED TO: CRS | UCR DISPOSITION |
|---|---|---|---|---|---|
| 2ND OFFICER | I.D. NO. | 62. SUPERVISOR, APPROVING I.D. NO. | REVIEWER | | I.D. NO. |

GPD FORM 4 (REV. JAN. '81) PREVIOUS EDITIONS OBSOLETE

| ITEM NO. | 63. CONTINUED |
|---|---|
| | |

BELOW PORTION TO BE COMPLETED ON ALL IMPOUNDS

D/S · DRIVER'S SIDE
P/S · PASSENGER'S SIDE

BLOCK CHECKED YES MEANS ITEM IS IN VEHICLE

| 64. RADIO | TYPE | 65. CIGARETTE LIGHTER | 66. C.B. RADIO | 9. DAMAGE |
|---|---|---|---|---|
| ☑ YES ☐ NO | ☐ AM ☑ AM/FM | ☐ YES ☑ NO | ☐ YES ☑ NO | LIGHT ☐ MEDIUM ☑ HEAVY |
| 67. TAPE PLAYER | 68. CLOCK | 69. REAR VIEW MIRROR | 70. ALL SEATS | GLASS ☐ SCRATCH ☐ |
| ☐ YES ☐ NO | ☐ YES ☑ NO | ☑ YES ☐ NO | ☑ YES ☐ NO | UPHOLSTERY |
| 71. ENGINE | 72. BATTERY | 73. RADIATOR | 74. ALTERNATOR/GENERATOR | Mark damage area with an X on diagram |
| ☑ YES ☐ NO | ☑ YES ☐ NO | ☑ YES ☐ NO | ☑ YES ☐ NO | |
| 75. CARBURATOR | 76. AIR CLEANER | 77. SPARE TIRE | 78. JACK | |
| ☐ YES ☐ NO | ☐ YES ☑ NO | ☑ YES ☐ NO | ☑ YES ☐ NO | |
| 79. LUG WRENCH | 80. FRONT BUMPER | 81. HOOD | 82. WINDSHIELD | |
| ☑ YES ☐ NO | ☑ YES ☐ NO | ☑ YES ☐ NO | ☑ YES ☐ NO | |
| 83. D/S FRONT FENDER | 84. D/S FRONT TIRE | 85. D/S FRONT DOOR | 86. D/S WING WINDOW | |
| ☑ YES ☐ NO | ☑ YES ☐ NO | ☑ YES ☐ NO | ☑ YES ☐ NO | |
| 87. D/S FRONT WINDOW | 88. D/S REAR DOOR | 89. D/S REAR WINDOW | 90. D/S REAR FENDER | |
| ☑ YES ☐ NO | ☐ YES ☑ NO | ☑ YES ☐ NO | ☑ YES ☐ NO | |
| 91. D/S REAR TIRE | 92. REAR BUMPER | 93. TRUNK LID | 94. REAR WINDOW | |
| ☑ YES ☐ NO | ☑ YES ☐ NO | ☑ YES ☐ NO | ☑ YES ☐ NO | |
| 95. P/S REAR FENDER | 96. P/S REAR TIRE | 97. P/S REAR DOOR | 98. P/S REAR WINDOW | 99. P/S FRONT DOOR |
| ☑ YES ☐ NO | ☑ YES ☐ NO | ☐ YES ☑ NO | ☑ YES ☐ NO | ☑ YES ☐ NO |
| 100. P/S FRONT WINDOW | 101. P/S WING WINDOW | 102. P/S FRONT FENDER | 103. P/S FRONT TIRE | |
| ☑ YES ☐ NO | ☐ YES ☑ NO | ☑ YES ☐ NO | ☑ YES ☐ NO | |

104. ITEMIZATION OF MISSING PARTS NOT COVERED ABOVE (REGULATOR, COIL, DISTRIBUTOR, HEADLIGHTS, HUBCAPS, ETC.)

105. ITEMIZATION OF DAMAGE TO VEHICLE.

Doors and Trunk locks Empy

106. VEHICLE CONTENT: LIST ALL PROPERTY NOT ATTACHED TO VEHICLE.

Chumerous Music Cassette Tape

107. SIGNATURE AND PRINTED NAME OF WRECKER OPERATOR TOWING VEHICLE IN CONDITION AS STATED ABOVE.

V Paul UPLS TOWING 7-21-97

| REPORTING OFFICER | BEAT | DISTRICT |
|---|---|---|
| Port ... Santa Fran... | R-8 | 1 |

10

| TAPE NO: 99-602 | PAGE NO: 1 | COURT CONVENED AT: 3:00 _ AM X PM | DATE: 04 13 1999 |

PRESENT: **JUDGE:** ALBERTO C . LAMORENA III , Presiding Judge
**CLERK:** JESSICA CRUZ

CASE NUMBER: CF0317-97

CASE TITLE:
PEOPLE OF THE TERRITORY OF GUAM
VS.
RANDY I CHARGUALAF *

COUNSEL PRESENT:
PLAINTIFF: Fisher
DEFENDANT: Timblin

PROCEEDINGS: Mot. To Compel
Mot. To Suppress
MTD



RECEIVED

| LOG NUMBER | DESCRIPTION |
|---|---|
| 2408 | Case Called |
| 2560 | DA addresses Ct |
| | "Motion to Dismiss" |
| 2653 | ~~[struck out]~~ |
| | Ct notes witness is a hostile witness |
| 2698 | ~~[struck out]~~ |
| | - Black Nissan Sentra |
| | - Large amt. of household items in the back of the vehicle |
| | - Was stuttering and was shaking |
| | - Inquired if he can search the vehicle |

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the Office of the
clerk of the Superior Court of Guam

JUL 06 2006

Jerimie K. J. Duenas
Deputy Clerk, Superior Court of Guam

Matter continued to: _____ , 1999 At: _____ am/pm

# IN THE SUPERIOR COURT OF GUAM



| | |
|---|---|
| PEOPLE OF GUAM | Supreme Court Case No. CRA00-002 |
| Plaintiff-Appellee, | Superior Court Case No. CF0317-97 |
| vs. | |
| RANDY IGNACIO CHARGUALAF, | VOLUME I of IV |
| Defendant-Appellant. | COPY |

### B E F O R E:

## The Honorable Alberto C. Lamorena, III
### Judge, Superior Court of Guam

| Date & Type of Proceeding | Page No. |
|---|---|
| April 13, 1999<br>**Motion to Dismiss & to Suppress** | 2 - 44 |
| May 14, 1999<br>**Motion to Suppress Identification** | 45 - 62 |
| | |




*Priscilla Castro Torres*
*Court Transcriber, Superior Court of Guam*

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| **PEOPLE OF GUAM** | Supreme Court Case **No. CRA00-002** |
| Plaintiff-Appellee, | Superior Court Case **No. CF0317-97** |
| vs. | **Motion to Dismiss & to Suppress** |
| **RANDY IGNACIO CHARGUALAF,** | |
| Defendant-Appellant. | April 13, 1999 |

## B E F O R E:

*The Honorable Alberto C. Lamorena, III*
Judge, Superior Court of Guam

## A P P E A R A N C E S:

### For the People:

*Thomas J. Fisher, Assistant Attorney General*
OFFICE OF THE ATTORNEY GENERAL
Prosecution Division
Hagåtña, Guam

### For the Defendant:

*Terrence E. Timblin, Attorney at Law*
Hagåtña , Guam

 *Priscilla Castro Torres*
*Court Transcriber, Superior Court of Guam* 

1     **THE COURT:** Okay. We'll start with **People of Guam vs. Randy**

2 **Chargualaf**. Motions? Mr. Timblin?

3     **MR. TIMBLIN:** Good afternoon, Your Honor.

4     **MR. FISHER:** Good afternoon, Your Honor.

5     **THE COURT:** Good afternoon. Defendant is present in Court. Proceed with

6 your first Motion. How many motions have been filed in this case?

7     **MR. TIMBLIN:** Your Honor, there are -- it's kind of confusing because there

8 have been so many lawyers in the case, but there was initially one motion filed by

9 Mr. Mark Williams back early on to suppress in-court evocation and to limit any

10 reference to any prior bad acts.

11     Then Mr. Mantanona took over the case. He filed a second motion to

12 suppress and dismiss which is seeking to suppress all items based on the

13 commissioned detention. There is also a motion separate -- a kind of a renewed

14 motion by Mr. Mantanona to suppress in-court evocation. And finally, there is a

15 motion to compel discovery.

16     Does the Court just wish to take witnesses -- all witnesses -- and then argue

17 about it or one at a time -- one motion at a time? However you prefer.

18     **THE COURT:** Why don't we do this? Let's take the Motion to Dismiss first.

19 How about you? You have a motion to dismiss, right?

20     **MR. TIMBLIN:** Yes. Okay, I'm going to need to call at least Officer Dawson,

21 who is here.

22     **THE COURT:** Okay. Let's start with him.

23                   (Pause for Witness to be Called)

24 *///*

25 *///*

April 13, 1999                              ❖ *Priscilla Castro Torres, Court Transcriber* ❖

*Christopher Shane Dawson*

*called as a witness by the Defendant, after having been first duly sworn, testified on his oath as follows:*

1
2
3

4      **THE CLERK:** Please be seated and state your name for the record.

5      **THE WITNESS:** Christopher Shane Dawson.

6      **THE COURT:** Okay. Mr. Timblin?

7      **MR. TIMBLIN:** Your Honor, I'd ask permission to ask the witness leading

8  questions, first of all, for the purpose of moving things along and secondly, he is on

9  the Government's witness list and would be subject to cross at trial.

10     **MR. FISHER:** Your Honor, we don't object to him leading in foundational

11 areas.

12     **THE COURT:** No problem. Go ahead. You may ask leading questions.

13     **MR. TIMBLIN:** Thank you.

14     **THE COURT:** And the Court will consider Officer Dawson as a hostile

15 witness to the Defendant.

16     **MR. FISHER:** Your Honor, just for the record, we would object to that since

17 there's been no showing of hostility whatsoever and this is a witness called by

18 Mr. Timblin. Thank you.

19     **THE COURT:** Okay, go ahead.

20     **MR. TIMBLIN:** Thank you, Your Honor.

21                                    *Direct Examination*

22 *by Mr. Timblin:*

23     **Q**    Officer Dawson, you are with the Guam Police Department?

24     **A**    Yes, sir.

25     **Q**    And were you on duty on July 21st of 1997 at about 9:40 a.m.?

April 13, 1999                                    ❖ *Priscilla Castro Torres, Court Transcriber* ❖

1       **A**      Yes, sir.

2       **Q**      Okay.  And at that time, did you happen to come into contact with the

3  Defendant, Randy Chargualaf?

4       **A**      Yes, sir.

5       **Q**      And is this the Defendant to my right?

6       **A**      That is correct.

7       **Q**      Okay.  And I take it you were on patrol that morning.  Is that correct?

8       **A**      Yes, sir.

9       **Q**      Okay.  And where did you make contact with Mr. Chargualaf?

10       **A**      He was driving a vehicle on Route 1 that was slightly behind me near

11  Denny's or Atkins Kroll area on Route 1, headed southbound.  He was in the

12  outermost lane; I was in the middle when I noticed a vehicle with a broken front

13  windshield and no front license plate.

14       **Q**      What kind of vehicle was it?

15       **A**      I believe it was a black Mazda 323 if I remember correctly.

16       **Q**      Officer, would you care to refer to your notes on this one?

17       **A**      Yes, sir.

18       **Q**      Do you have your notes with you?

19       **A**      They're over there, sir.

20       **Q**      (Addressing Marshal)  Perhaps you could put his notes--?

21       **A**      Thank you.  (Pause to review notes)  Correction.  That was a black

22  Nissan Sentra.

23       **Q**      All right.  A 1988 Guam License Plate AHT 367?

24       **A**      That is correct.

25  ///

April 13, 1999                                    ❖ *Priscilla Castro Torres, Court Transcriber* ❖

1       **Q**      And this was about 9:40 in the morning when you first saw the car.

2   Is that correct?

3       **A**      That is correct.

4       **Q**      Okay.  And tell us what happened then, sir.

5       **A**      After I saw the vehicle, I started to slow down.  I was gonna allow the

6   vehicle to pass me.  And the said vehicle slowed down as I slowed down, so it took

7   a few minutes for him to pass me and when he finally did, I executed a traffic pull

8   over in the parking lot of Paul's Tailor on the corner of Route 1 and Route 14.

9       **Q**      By pull over, you mean he just simply pulled off into the parking lot?

10      **A**      Well, I turned on my lights and siren and he pulled over.

11      **Q**      I see.  And after he pulled over, what did you do, sir?

12      **A**      When he pulled over, I then approached the vehicle and requested for

13  his driver's license and registration.  I also informed him for the reason of the pull

14  over.

15      **Q**      Okay, now, this was about 9:45 when you first approached

16  Mr. Chargualaf?

17      **A**      That is correct.

18      **Q**      And did he produce his license and registration?

19      **A**      Yes, he did.

20      **Q**      And were those valid as far as you were -- could determine?

21      **A**      Yes, sir.

22      **Q**      And you informed him that he was -- the violations were broken

23  windshield and missing the license plate?

24      **A**      That is correct.

25      **Q**      Okay.  At any time after this instance after -- at this point, did you ever

April 13, 1999                                               ❖ *Priscilla Castro Torres, Court Transcriber* ❖

1    issue Mr. Chargualaf citations for these offenses?

2         **A**      No, sir.

3         **Q**      Okay. Tell us what happened then.

4         **A**      When I asked for his driver's license and registration, he seemed more

5    than nervous compared to my normal pull overs. And I noticed a large amount of

6    household items in the back of the vehicle and I requested -- or, I inquired from him

7    if there were any -- any narcotics or weapons inside the vehicle.

8         **Q**      What caused you to ask him that?

9         **A**      His suspicion. He was trembling. He was stuttering when he was

10   speaking. He kept looking around as if, you know, somebody's watching in that

11   might recognize him or something for whatever reason I didn't know at the time.

12   And I simply inquired if there were any drugs or weapons and he said no. I

13   requested to search the vehicle to which he said yes, that was no problem.

14        **Q**      All right, now, that's basically it? He simply appeared to be nervous?

15        **A**      That is correct.

16        **Q**      And nothing -- as far as the household goods that you saw scattered

17   around, there was nothing in there that appeared to be out of line or illegal or

18   anything?

19        **A**      Well, with his nervousness, I was in fear that he might have had a

20   weapon in his near reach.

21        **Q**      Okay, but you couldn't see a weapon. But you looked around and you

22   didn't see a weapon, I take it?

23        **A**      It's called officer safety, sir. I have to make sure I go home safely.

24        **Q**      I understand, sir. But the question is did you see a weapon at that

25   time?

1          **A**      No, sir.

2          **Q**      Thank you. Tell us what happened then, sir.

3          **A**      I inquired if it was all right to search the vehicle. He said okay. I
4    requested for him and Candelaria Mendiola to step out of the vehicle, also for officer
5    safety, to which Mr. Chargualaf then reached over with his right hand and pulled up
6    the door panel on his door and stuck his left hand underneath and was -- was doing
7    something underneath there. And I immediately became in fear of my life. And I
8    requested for him to remove his hands and he said he was trying to jimmy the lock
9    to get the door open. And at which time, I placed my hand on my firearm and I
10   attempted to open the door from the outside, strictly for officer safety. At which
11   time, the door opened. He reached across with the -- he let go of the panel that
12   was on the thing that he was holding up with his right hand, and reached on the
13   door sill, and pulled it shut. At which time, I withdrew my firearm from my holster
14   and opened the door. By this time, both of his hands were in his lap. And I
15   requested for him to step out of the vehicle.

16         **Q**      And all this happened roughly around 9:48. Is that correct?

17         **A**      Approximately.

18         **Q**      Okay. So, if I could clarify? You say that -- did he -- did you attempt
19   to open the door yourself?

20         **A**      When he was trying to reach for whatever I could not see due to the
21   panel being in my way, I was afraid that there was a weapon. In my line of
22   business, it is very common to find people hiding firearms inside the door panels of
23   the vehicle.

24         **Q**      But the question is, did you attempt to open the door yourself, pull it
25   open?

April 13, 1999                                          ❖ *Priscilla Castro Torres, Court Transcriber* ❖

1          **A**      When he was reaching under there and I could not see his hands, yes,
2    for officer's safety, I did.

3          **Q**      Okay. And at that time, after you -- the door did -- or, back up. Was
4    there in fact damage to this vehicle? Or, to the door, specifically?

5          **A**      No, there was not.

6          **Q**      Did you attempt to use the--? Tried -- when you tried to open the
7    door, did you simply pull it? Did you try to use the latch or was there a latch? How
8    did you try to open the door?

9          **A**      I used the outside door handle and it opened with no problem.

10         **Q**      What was the general condition of the vehicle as you recall?

11         **A**      It was an older vehicle.

12         **Q**      All right. And what happened, then, sir?

13         **A**      And then he stepped out of the vehicle. I asked him and he complied.
14   I requested for him to stand at the far end of the vehicle to ensure that he's as far
15   away from any weapons that might be inside the vehicle. I was unaware that, you
16   know, he had a firearm on him at that time. But I did search the door to -- to see if
17   there was a problem with the lock or if there was anything in there, and at which
18   time I noticed there was nothing in there at that time.

19         **Q**      Did Mr. Chargualaf follow your instruction to go to the front of the
20   vehicle?

21         **A**      That is correct.

22         **Q**      How about Ms. Mendiola? Did you ask her to do anything, go
23   anywhere?

24         **A**      I also requested for her to step out and go to the front of the vehicle
25   also, which she complied.

April 13, 1999                                    ❖ *Priscilla Castro Torres, Court Transcriber* ❖

1    **Q**    She complied?  Okay.  So after you did not find anything in the

2    vehicle, what did you do?

3        **A**    At that time, Officer Santo Tomas arrived at my location.

4        **Q**    Was that pursuant to your request?

5        **A**    That is correct.

6        **Q**    You radioed in for assistance, I take it?

7        **A**    That is correct.

8        **Q**    Do you remember -- do you recall when you did that?

9        **A**    No, sir.  I would have to refer to my report to do so.

10       **Q**    Okay.  So, anyway, the next event is Officer Santo Tomas arrives.  Is

11   that correct?

12       **A**    Yes, sir.

13       **Q**    And what happened then?

14       **A**    I informed Officer Santo Tomas that Mr. Chargualaf had agreed to

15   allow me to search his vehicle for any drugs or weapons, at which time Officer

16   Santo Tomas even asked Mr. Chargualaf if he gave his consent, to which he replied

17   okay.  It's okay to search the vehicle.

18       **Q**    Now, at the time, did you still have Mr. Chargualaf's license and

19   registration in your possession?

20       **A**    Yes, sir.

21       **Q**    If Mr. Chargualaf had said *"Well, I'm getting kind of bored with this.*

22   *I'm leaving"*, would you have allowed him to leave?

23       **A**    Yes, sir.

24       **Q**    And yet you had still -- what was the purpose of your calling for back

25   up?

1      **A**      Because of his suspicious activity. Officer safety.

2      **Q**      Okay. Despite the concern, is it your testimony you would have let

3   him leave?

4      **A**      With -- okay. As far as at that point in time -- okay? -- the only crimes

5   that were involved were the two traffic violations.

6      **Q**      Right. But the point is, would he have been allowed to leave at that

7   point, though, if he had -- after Officer Santo Tomas arrived?

8      **A**      As soon as we found out that, you know, everything was secure and

9   everything, no problem.

10     **Q**      Okay. Hadn't you already secured him and you'd put him in the front

11  of the vehicle--

12     **A**      That is correct.

13     **Q**      --and you found no guns in the car?

14     **A**      What's that?

15     **Q**      Isn't it correct that you had secured in the sense that he had gone to

16  the front of the vehicle? You had checked the car; checked the door panel and

17  there was no gun. Is that correct?

18     **A**      That is correct.

19     **Q**      Okay. So what more was there for you to do? What more did you

20  think should be done?

21     **A**      Well, I requested to search the vehicle. Just because one door panel

22  was checked does not mean that the entire vehicle was secure for any weapons.

23     **Q**      And then did -- were any weapons ever found in the vehicle?

24     **A**      No, sir.

25     **Q**      What happened then?

1      **A**      When I first began the search, I noticed Ms. Mendiola did not remove
2  her purse but she had taken a black pouch. So I requested from her and my -- in
3  my time in duty with the Police Department, it's very common for people to hide
4  firearms inside the black pouch, the type that she was carrying. So I requested to
5  check for weapons, which she allowed me to do so.

6              As soon as I opened the pouch, I immediately noticed a Japanese credit card
7  that was written in Kanji. And that was when Officer Santo Tomas had brought to
8  my attention that these two individuals fit the description that was given out to us in
9  briefing in reference to a robbery that was committed a few days prior.

10     **Q**      Okay. You had not heard about this yourself, I take it? You had to
11  receive a bulletin?

12     **A**      I had. I just didn't put two and two together until he mentioned it.

13     **Q**      You hadn't made the connection yourself?

14     **A**      What's that?

15     **Q**      You hadn't made the connection yourself at that point?

16     **A**      No, sir.

17     **Q**      What time was it, if you recall, when you asked to search
18  Ms. Mendiola's bag?

19     **A**      That was approximately about 9:55.

20     **Q**      Okay. And after you searched the bag, what happened then?

21     **A**      There was narcotics that was located, and the credit card that was
22  located. And that's when we began to suspect them of the robbery in reference to
23  this incident. We continued the search and during my search, Officer Santo Tomas
24  later located a firearm to the front of the vehicle where Mr. Chargualaf had been
25  standing.

April 13, 1999                                        ❖ *Priscilla Castro Torres, Court Transcriber* ❖

1        **Q**      Okay. And was that roughly at 10:00?

2        **A**      Yes, sir.

3        **Q**      And after that, what did you do when you saw Santo Tomas pull the

4    gun?

5        **A**      I was inside the vehicle still finishing the search when I noticed Officer

6    Santo Tomas yelling at Chargualaf to raise his hands above his head and slowly

7    kneel down to the ground and lay face down on the concrete. And at which time I

8    got out of the vehicle. At this point in time, I had no idea of what Officer Santo

9    Tomas had located. And he requested for me to pat him down and place handcuffs

10   on him to secure him for safety reasons, to which we did. And he then informed me

11   that he had located a firearm to the front of the vehicle where I had placed

12   Mr. Chargualaf.

13       **Q**      And at some point, did Officer Grino arrive?

14       **A**      Yes, sir.

15       **Q**      About what time was that?

16       **A**      That was about -- that would have been about 9:50, 9:52, somewhere

17   around there.

18       **Q**      And was she -- what was her--? And she was also responding to your

19   request for backup. Is that correct?

20       **A**      That is correct.

21       **Q**      Okay. And what was her -- what was she instructed or requested to

22   do?

23       **A**      She was instructed -- or, I requested of her to make a more thorough

24   search of Candelaria's bag being that we found the card and the narcotics in there,

25   to which she did. And I also requested for her to pat down Ms. Mendiola since she

April 13, 1999                                    ❖ *Priscilla Castro Torres, Court Transcriber* ❖

1  was a female and we had a female officer there to insure she did not have any

2  weapons on her person.

3     **Q**     And where was -- did you see the gun that Officer Santo Tomas

4  referred to or what -- the reason he pulled the gun out?

5     **A**     After I secured Mr. Chargualaf, yes, I did.

6     **Q**     And where was the gun located in relation to the car?

7     **A**     It was in the very front of the vehicle. There was a concrete, like a

8  curb, a blocking -- parking stall curb. And then there was a regular curb for the

9  sidewalk. It was in between the two curbs, right directly in the front of the vehicle.

10    **Q**     And that's the first time you saw that gun, I take it?

11    **A**     That is correct.

12    **Q**     Okay. Now, at some point, did Officer Grino relate to you what she

13 had heard from Candelaria about this, about the gun specifically?

14    **A**     Yes. She informed that when I was checking the door for weapons --

15 or, excuse me, let me back up. When he was pretending to jimmy the lock on the

16 door, he had stuck it in his waistband -- Mr. Chargualaf. And then when he exited--

17    **Q**     Okay. That's what she said?

18    **A**     That's what she said. When she got out of the vehicle -- or, when they

19 both got out of the vehicle, when I was checking the door panel to insure that

20 there's no weapons in there, that slight second I took my eyes off Mr. Chargualaf,

21 that's when he removed it and placed it at the curbside in front of the vehicle.

22    **Q**     And what time was this that you were told this?

23    **A**     I was told this -- I don't recall, sir.

24    **Q**     And if you would look at your report, there's a good chance it would

25 say that it was about 10:15.

April 13, 1999                                         ❖ *Priscilla Castro Torres, Court Transcriber* ❖

1      **A**      Okay.

2      **Q**      As a result of this -- of what occurred -- what you've described so far

3  were statements taken from Ms. Mendiola that incriminated Mr. Chargualaf?

4      **A**      That is correct.

5      **Q**      And did you also participate in a search of a hotel room that

6  apparently was registered to Mr. Chargualaf?

7      **A**      Later that day, we were.

8      **Q**      Did you find certain items of evidence there?

9      **A**      Yes, sir.

10     **Q**      Roughly, what did you find?

11     **A**      We found a hat, an ice pipe, the black hat which was described in the

12  robbery, the paraphernalia, the ice pipe. If I remember correctly, a jewelry box with

13  several miscellaneous items of jewelry. I can't recall if there was anything else at

14  this time.

15     **Q**      As a result of your discussions with Ms. Mendiola, did you become

16  interested in a third suspect?

17     **A**      That is correct.

18     **Q**      And who was that? Again, please refer to your notes if you're not

19  sure.

20     **A**      Yes, please. (Pause) I'm sorry. Officer Grino had informed me at the

21  time and that issue is covered in her report. I did not write the name of the third

22  suspect in my notes.

23     **Q**      Okay. Would that possibly have been a gentleman named Don Borja

24  -- Don Mendiola Borja?

25     **A**      That is correct.

April 13, 1999                                    ❖ *Priscilla Castro Torres, Court Transcriber* ❖

1    **Q**    And then as a result of -- without giving any details -- as a result of that

2    interest, he was arrested and he gave a statement also incriminating

3    Mr. Chargualaf. Is that correct?

4        **A**    That is correct.

5        **Q**    And did you participate in any identification procedure whether -- well,

6    let me back up. The burglary -- or the robbery we were talking about earlier, this

7    was a lady named Mrs. Noboyo Certeza. Is that correct?

8        **A**    That is correct.

9        **Q**    Located in an apartment building behind the Acanta Mall, as far as you

10   know?

11       **A**    That is correct.

12       **Q**    Did you participate in any way in the identification process whether --

13   anytime when there was a conversation between Mr. Chargualaf and her?

14       **A**    When -- okay. My dealings with Ms. Certeza was as we had

15   contacted her via telephone; requested for her to come down and look at the card --

16   the credit card that we found, to which she stated that that was hers. I informed her

17   that we had to have it photographed before we could return it to her, so she later

18   went -- she went home. And then Officer Grino had later informed me of where the

19   three individuals had thrown away Ms. Certeza's purse, which was in a trash

20   dumpster behind the little motel off of Route 14 -- I think it's the Golden Motel, if I

21   recall the name correctly -- in the trash dumpster, to which I did go back and retrieve

22   from the dumpster and later brought her down to -- what you call it? -- to identify

23   those items.

24       **Q**    Where did this take place?

25       **A**    This was inside the briefing room of the Tamuning Precinct.

April 13, 1999                                    ❖ *Priscilla Castro Torres, Court Transcriber* ❖

1    **Q**    Okay. This is this month? This is not the koban by the Parc Hotel is

2    it?

3    **A**    No. This is the koban next to the Palace Hotel.

4    **Q**    Oh, okay.

5    **A**    Yeah. And when she did come in, there was a -- I had a white

6    envelope Officer Santo Tomas was taking care of. When I had patted down

7    Mr. Chargualaf, I had, you know, located a white envelope full of currency --

8    American currency. And Officer Santo Tomas was taking care of the confiscation

9    at that point because I did have a lot of confiscations in reference to this case.

10    **Q**    (Indiscernible) Did you happen to see any confrontation between

11    Mrs. Certeza and Mr. Chargualaf as far as an altercation?

12    **A**    No, I did not.

13    **Q**    Okay. That's my question.

14    **MR. TIMBLIN:** I have no further questions.

15    **THE COURT:** Mr. Fisher?

16    **MR. FISHER:** Thank you, Your Honor.

17                          *Cross-Examination*

18    *by Mr. Fisher:*

19    **Q**    Sir, did either of the occupants in the car appear to be Japanese?

20    **A**    No.

21    **Q**    Did either of the occupants of the car speak to you in the Japanese

22    language?

23    **A**    No.

24    **Q**    Are you familiar with the Japanese language?

25    **A**    Very.

1    **Q**    How is it that you're familiar with the Japanese language?

2    **A**    My fiancé's from Saporo, Japan.

3    **Q**    And in the course of the search of the car, you discovered a document

4    or a credit card that had Japanese on it?

5    **A**    That is correct.

6    **Q**    Did you ask anyone how they came into possession of this?

7    **A**    Yes, I did.

8    **Q**    And what did they tell you?

9    **A**    Ms. Mendiola told me she found it.

10    **Q**    All right. Did she tell you where she found it?

11    **A**    No.

12    **Q**    Now, how long have you been a police officer?

13    **A**    Five years.

14    **Q**    And in the course of the five years, have you investigated thefts from

15    tourists in the Tumon area?

16    **A**    Many.

17    **Q**    And have you investigated thefts in general?

18    **A**    Yes.

19    **Q**    Based on your five years experience as a police officer, how many

20    investigations have you yourself accomplished find this explanation to be at all

21    unusual?

22    **A**    Yes, I did.

23    **Q**    Now, based on your experience as a police officer, after receiving --

24    seeing this credit card with Kanji script on it, and neither of the occupants being

25    Japanese or providing an accurate explanation for their possession of it, did you

1  think at that time that a crime had been committed, was being committed, or that

2  these individuals were about to engage in a crime?

3       **A**      That is correct.

4       **Q**      Did you?

5       **A**      Yes.

6       **Q**      Okay, sir, I'd like to go back a little bit to some of the time line you

7  developed for the Defendant. You were initially heading down Marine Drive in the

8  southerly direction?

9       **A**      That is correct.

10      **Q**      And that was at what time?

11      **A**      Approximately 9:40.

12                   (Pause for Prosecutor to Write on Board)

13      **Q**      And at 9:40, what happened?

14      **A**      That's when I noticed the violations and I slowed to pull the vehicle

15  over and the vehicle slowed down; and I eventually waited for the vehicle to pass

16  me. As it passed me, I called into the Precinct my pull over; my positioning; the type

17  of vehicle.

18      **Q**      Could you describe for the Judge the violations that caught your eye?

19      **A**      Through my rear view mirror, I noticed the front windshield was

20  cracked. There was no front license plate. If I recall correctly, the front window was

21  heavily tinted.

22      **Q**      Are these sorts of -- these are violations, to your knowledge, here on

23  Guam?

24      **A**      Yes, sir, they are.

25      **Q**      And each car is required to have a front license plate?

April 13, 1999                                    ❖ *Priscilla Castro Torres, Court Transcriber* ❖

1      **A**     That is correct.

2      **Q**     And you're not allowed to drive around with a cracked windshield?

3      **A**     That is correct.

4      **Q**     So, then, you pulled over this vehicle?

5      **A**     Yes, sir.

6      **Q**     What time was that that you pulled them over?

7      **A**     Approximately 9:45.

8      **Q**     Okay, you use the word "approximately". Why do you say

9 approximately?

10     **A**     Because my watch isn't the exact same as everybody's watch in this

11 room. They differentiate in minutes, sometimes seconds.

12     **Q**     Okay. Sir, for example, here it says, on just one part of your report,

13 it says 9:55.

14     **A**     That is correct.

15     **Q**     Was that based on your observation of your watch?

16     **A**     To my knowledge, it was.

17     **Q**     Okay. And does your watch, or the watch you were wearing at that

18 time, did it appear to be operating normally?

19     **A**     Oh, yes, sir.

20     **Q**     Okay, so, at 9:45 you pulled over the Defendant?

21     **A**     That is correct.

22     **Q**     And that's at Paul's Plaza?

23     **A**     Yes, sir.

24                  (Pause for Prosecutor to Write on Board)

25   ///

1    **Q**    Now, you pulled over the Defendant and you asked him for a driver's

2    license and registration?

3    **A**    That is correct.

4    **Q**    You also told the Court that he appeared nervous.

5    **A**    That is correct.

6    **Q**    Now, surely, how many people would you estimate that you have

7    pulled over in your career?

8    **A**    Being that I was in Traffic, I'd say maybe about 3,000.

9    **Q**    Now, of those 3,000, can you give us a percentage, how many of

10   those appeared nervous?

11   **A**    About half.

12   **Q**    And are they -- is it fair to say that they're nervous because the

13   authority has stopped them and maybe the lights were going, and things like that?

14   **A**    Yes, sir.

15   **Q**    And that doesn't necessarily indicate they were involved in a crime.

16   Would you agree with that?

17   **A**    That is correct.

18   **Q**    Now, this individual, you say, appeared nervous. Did he appear more

19   nervous than the roughly 1,500 people you've pulled over?

20   **A**    Yes, sir.

21   **Q**    Could you describe that for us and for the Judge, please?

22   **A**    Okay. In most pull overs, people, sometimes they're nervous; they

23   shake a little bit. But for the most part, after the first second or, you know, first 30

24   seconds I'm with them, they tend to relax a little bit. But Mr. Chargualaf was -- he

25   seemed overly nervous. He couldn't even -- like, when he was handing me his stuff,

April 13, 1999                                          ❖ *Priscilla Castro Torres, Court Transcriber* ❖

1   he was shaking his hand when he was handing me his driver's license and

2   registration.  He was stuttering when he was speaking.  It just seemed overly

3   nervous to me compared to any -- anyone I've pulled over.  And there are times

4   where I have pulled over people that were involved in crimes that, you know, show

5   the same characteristics.  But he was more nervous than the average person that

6   I pull over.

7       **Q**      Now, you've used several -- sometimes (indiscernible) and you have

8   used the phrase "officer's safety".

9       **A**      That is correct.

10      **Q**      Did you receive training from the Guam Police Department about -- in

11  certain procedures in automobile pull overs?

12      **A**      Yes, sir.

13      **Q**      What are some of the things that officers do when they pull over cars?

14      **A**      Okay.  Be cautious of the people's positioning of their hands.  The

15  contents inside of a vehicle.  You know, the time of day.  The person's background,

16  if you know it.

17      **Q**      What about positioning?

18      **A**      Yes.  Positioning of -- on the, like, where you stand in reference to the

19  driver; and, you know, trying to be able to observe everything that's going on inside

20  the vehicle.

21      **Q**      Now, that morning when you pulled over the Defendant, were you

22  aware and conscious of these safety needs?

23      **A**      I was conscious of the fact that I needed to maintain safety but I was

24  a little nervous in reference to that, basically upon his behavior and all the contents

25  inside the vehicle, because the vehicle was really packed with a lot of stuff.

April 13, 1999                                    ❖ *Priscilla Castro Torres, Court Transcriber* ❖

1  **Q**  At what point did you ask him if you could search the vehicle?

2  **A**  I would say about--

3  **Q**  Look at your notes if you need to.

4            (Witness Complies)

5  **A**  About 9:48.

6  **Q**  Okay. At 9:48, was he still seated in the car?

7  **A**  That is correct.

8  **Q**  Now, did you ask him if you could search the vehicle for officer's safety

9 reasons?

10  **A**  I -- yes, sir.

11  **Q**  And what was his response?

12  **A**  *"Okay".*

13  **Q**  He said *"Okay"*?

14  **A**  Yes, sir.

15  **Q**  He had no problem with you searching the vehicle?

16  **A**  No, sir.

17  **Q**  Okay. Now, when you asked him if you could search the vehicle, did

18 you have your gun drawn?

19  **A**  No, not at that time.

20  **Q**  Were you actually searching that car for drugs?

21  **A**  Mainly for weapons but I did inquire if he was willing to allow us to

22 search for drugs also.

23  **Q**  Did you ask him about weapons?

24  **A**  Yes, sir.

25  **Q**  Was the purpose of that for officer's safety?

April 13, 1999            ❖ *Priscilla Castro Torres, Court Transcriber* ❖

Case 1:05-cv-00014  Document 10-9  Filed 07/14/2006  Page 1 of 21

1      **A**      Yes, sir.

2      **Q**      Now, that occurred at 9:48 and his response was *"Okay"*?

3      **A**      Correct.

4      **Q**      Did you ever ask him to step out of the car?

5      **A**      Yes, sir.

6      **Q**      Why is that?

7      **A**      For officer's safety so I am able to search the vehicle without them

8   being inside of it. So, you know, it's kinda hard to reach around a person and stuff

9   and search, so it's procedures. But the thing is it's mainly to maintain their hands

10   and keeping them away from any weapons that may possibly be inside the vehicle.

11      **Q**      And that was going to be my next question, sir. Why is it safer to bring

12   the person outside of the car?

13      **A**      Because if there are weapons inside the vehicle that we are unaware

14   of, they might be able to reach for it before, you know, we have time to locate that

15   item, or whatever.

16      **Q**      Isn't it possible, sir, that the Defendant could have had the weapon on

17   him? So, he's standing outside the car, you're searching inside the car, and then

18   you get shot?

19      **A**      That is correct.

20      **Q**      Why did you call Officer J.D. Santo Tomas to assist?

21      **A**      To watch the individuals while I conduct the search.

22      **Q**      Was that also, then, because of officer' safety?

23      **A**      That is correct.

24      **Q**      Now, did he -- did the Defendant agree to step out of the car?

25      **A**      Yes, sir.

April 13, 1999                                    ❖ *Priscilla Castro Torres, Court Transcriber* ❖

1          **Q**      Could you describe what happened at that point?

2          **A**      Okay. I requested for him to step out, to which he reached his right

3     hand over--

4          **Q**      Okay.

5          **MR. FISHER:** Your Honor, may I ask that the Defendant (sic.) -- or, excuse

6     me, the Witness, to step in the well, please--

7          **THE COURT:** Yes.

8          **MR. FISHER:** --for the purpose of illustration? Thank you.

9          **THE COURT:** (Addressing the Witness) You may step down, Officer

10    Dawson.

11         **THE WITNESS:** Okay.

12                         (Witness Steps Down from the Stand)

13         **Q**      (By Mr. Fisher) Officer Dawson, was the Defendant in this case, the

14    passenger or the driver of the car?

15         **A**      He was the driver.

16         **Q**      Okay, so, he is the driver. And we're facing the Bench right now and

17    the Court. All right, so where is the side of the car?

18         **A**      It's right here (indicating).

19         **Q**      All right. And, sir, just for purposes of illustration, I'm going to hand

20    you my note pad. You say that he was -- had a -- there was a flap or something on

21    the door?

22         **A**      Yeah. The inside -- the interior wall of the door -- the flap -- he

23    grabbed the bottom corner and lifted it up, like this (demonstrating). So it was

24    blocking my view of where his hands are. And when he--

25         **Q**      Sir, it might make more sense if I were to play the part of the

April 13, 1999                                    ❖ *Priscilla Castro Torres, Court Transcriber* ❖

1 | Defendant in this case. So, you are -- you have approached from my left?

2 | **A**     That is correct.

3 | **Q**     Then the flap of the door is down here?

4 | **A**     That is correct.

5 | **Q**     Tell me what to do in order to show the Defendant's actions.

6 | **A**     When he first started, he reached his right hand across and reached

7 | to the bottom, pulling up the flap here; taking this arm underneath and was doing

8 | something underneath the door.

9 | **Q**     Okay. Where were you at this time?

10 | **A**     Outside the vehicle, slightly behind the driver.

11 | **Q**     Okay. Could you put yourself in the approximate position you were

12 | that day?

13 | **A**     Approximately right where I am right now.

14 | **Q**     All right. Now, at this point, could you see the Defendant's left hand?

15 | **A**     No.

16 | **Q**     Did you ask him what he was doing or did you make any comments

17 | at the time?

18 | **A**     I inquired what he was doing to which he told me that a lock was

19 | broken and he was trying to unlock the door.

20 | **Q**     All right. Now, did you do anything when he told you that?

21 | **A**     I requested for him to move his hand out, to which he didn't. So I

22 | grabbed the outside of the door panel -- or, the door handle--

23 | **Q**     Now, you said -- I'm sorry to interrupt -- but you said that the

24 | Defendant told you that he was trying to jimmy open the door or something.

25 | **A**     That is correct.

1      **Q**      Did you hear any mechanical noises? Any banging of metal or

2 anything like that?

3      **A**      Not at that time.

4      **Q**      Did you hear anything that indicated that he was actually trying to

5 open the door by reaching under this panel?

6      **A**      No.

7      **Q**      Okay. So, what happened next?

8      **A**      I went to open the door at this time, at which time he took this hand

9 (indicating)--

10      **Q**      The right hand?

11      **A**      The right hand, and placed it on the windowsill of the door.

12      **Q**      Like this (demonstrating)?

13      **A**      That is correct. And when I went to open the door, he -- it opened with

14 no problem. He pulled it shut.

15      **Q**      Okay. Just kind of a gentle pull?

16      **A**      No. Hard pull shut.

17      **Q**      Did you find anything unusual about that?

18      **A**      Yes. If he was really trying to open the door, that would have just

19 been assistance for him and that wouldn't have been a problem. But it was like he

20 was trying to conceal something, that's why he was pulling it shut.

21      **Q**      Did he actually pull that door shut?

22      **A**      Yes.

23      **Q**      Did he use enough force to counteract your--?

24      **A**      Yes. Well, he pulled it out of my hand.

25      **Q**      What happened next?

1      **A**      At that point, I withdrew my weapon and told him to step out of the

2   vehicle.

3      **Q**      Were you saying this in a very calm voice?  Is that what happened?

4   Were you speaking calmly at that point?

5      **A**      At that point, my tension was really raised.  I'm sure I was a little bit

6   more of a yell, like, *"Step out of the vehicle.  Now."*

7      **Q**      What time was that, sir?

8      **A**      That was at approximately maybe nine -- maybe 9:50.

9      **Q**      All right.  If you can just resume your seat, Officer?

10                          (Witness Resumes Stand)

11     **Q**      Now, you've been a Guam Police officer for five years?

12     **A**      That is correct.

13     **Q**      And you said that based on your experience as a Guam Police officer,

14  you sometimes know people who are defendants or suspects to carry drugs or arms

15  in that door compartment?

16     **A**      Yes, sir.  I was previously assigned to the Narcotics Division for the

17  Guam Police Department.

18     **Q**      And have you been trained, or have people told you about this

19  technique of concealing contraband?

20     **A**      Yes, sir.

21     **Q**      Sir, to your knowledge, based on your conversations with other

22  members of the Guam Police Department as well as your experience and training

23  with the Guam Police Department, is it commonly known within the Department that

24  suspects will hide contraband within doorframes of cars?

25     **A**      Yes, sir.

April 13, 1999                                    ❖ *Priscilla Castro Torres. Court Transcriber* ❖

1    **Q**    So, he pulled the door shut and then you drew your weapon?

2    **A**    That is correct.

3    **Q**    At that time when he pulled the door shut, after he had reached his

4    hand in the door compartment and concealed his left arm, did you then believe that

5    the Defendant was engaged in, had been engaged in, or would be engaging in

6    criminal activity?

7    **A**    Yes, sir.

8    **Q**    And this was at 9:50?

9    **A**    That is correct.

10    **Q**    And, sir, he was asked at roughly 9:50 to step out of the car for

11    officer's safety?

12    **A**    That is correct.

13    **Q**    And that was as a result of the pull over for the traffic violation?

14    **A**    That is correct.

15    **Q**    Then he did step out of the car?

16    **A**    Correct.

17    **Q**    What happened next?

18    **A**    I requested for him to go to the front of the vehicle and place both

19    hands on the hood, to which he did. And when him and Ms. Mendiola were at the

20    front of the vehicle, that's when I did do a quick search of that area to see if there

21    were any firearms to secure it.

22    **Q**    You didn't see anything?

23    **A**    Not at that time.

24    **Q**    Okay.  So, at that time, you hadn't begun to actually search the

25    vehicle?

April 13, 1999                                        ❖ *Priscilla Castro Torres, Court Transcriber* ❖

1    **A**    What's that?

2    **Q**    You hadn't actually begun to search the whole vehicle?

3    **A**    No.

4    **Q**    Do you recall what time Officer Santo Tomas arrived?

5    **A**    It was the same time just after I finished checking that door, so that

6    would have had to have been like 9:51.

7    **Q**    Okay. And when Officer Santo Tomas arrived, did he say anything to

8    you?

9    **A**    Yes. He -- well, I informed him what had happened -- what transpired.

10   I informed him about the card. And then that's when he refreshed my memory as

11   to the briefing that we had that morning and handed me the flyer in reference to the

12   robbery suspects.

13   **Q**    Do you recall what it was he said to you? Did he say *"Hey, these are*

14   *the guys"*, or what?

15   **A**    He said *"You know, these guys fit the description for those -- the ones*

16   *from this morning. That girl looks really young like the flyer had stated."*

17   **Q**    Okay. Do you recall approximately what time that was?

18   **A**    Maybe 9:53. 9:52, 9:53, somewhere around there.

19   **Q**    Could it have been as late as 9:54, 9:55?

20   **A**    Could have been.

21   **Q**    But sometime between 9:52 and 9:55, you were told that these people

22   were suspects in a robbery?

23   **A**    Yes, sir.

24                      (Pause for Prosecutor to Write on Board)

25   ///

April 13, 1999                                    ❖ *Priscilla Castro Torres, Court Transcriber* ❖

1     **Q**     Okay.  Now, say that Officer Santo Tomas has arrived and he -- is it

2   correct that he secured the Defendant and the other lady at the front of the car?

3     **A**     Yes.

4     **Q**     And was it at this time that you were able to actually search the cabin?

5     **A**     That is correct.

6     **Q**     What happened next?

7     **A**     While I was -- well, Officer Grino had arrived and assisted him with

8   watching Ms. Mendiola.  And then I continued with my search.  And at about 10:00

9   is when he withdrew his weapon and told Mr. Chargualaf to raise his hands and,

10  you know, kneel down and then lay down onto the concrete.  He requested for me

11  to cuff him and pat him down for weapons.  And I was later informed that there was

12  a firearm at the front of the vehicle.

13    **Q**     Okay.  And this was at about 10:00?

14    **A**     That is correct.

15    **Q**     And that's when you noticed Officer Santo Tomas with his drawn

16  weapon?

17    **A**     Yes, sir.

18                    (Pause for Prosecutor to Write on Board)

19    **Q**     Now, sir, have you -- in your five years, have you ever seen

20  paraphernalia associated with the use of methamphetamine?

21    **A**     Yes.

22    **Q**     Heat sealed straws, that sort of thing?

23    **A**     That is correct.

24    **Q**     What, if any, paraphernalia did you find between 9:45 and 10:00

25  related to the use of methamphetamine?

April 13, 1999                                    ❖ *Priscilla Castro Torres, Court Transcriber* ❖

1          **A**       Inside Candelaria's purse was a small round -- it's like a -- almost like

2     a Tupperware container.  And inside it were some heat sealed straws.  Like, if I

3     recall correctly, a little spoon.  I don't recall what else.  I'd have to refer to my notes.

4          **Q**       But you did, sometime between 9:45 and 10:00, see paraphernalia

5     connected with the use of methamphetamine?

6          **A**       That was prior to Officer Santo Tomas -- or, no, that was just after

7     Officer Santo Tomas' arrival.  So that would have been about maybe like, um,

8     maybe like 9:53, somewhere around in there.

9          **Q**       Okay.  So, I'll just go ahead and add that.  That's when you saw ice

10    paraphernalia?

11         **A**       That is correct.

12                      (Pause for Prosecutor to Write on Board)

13         **Q**       All right, Officer Dawson.

14    **MR. FISHER:**  If I may have just a moment, Your Honor?  (Pause)  All right.

15    Thank you very much, sir.  I don't have any further questions.

16    **THE WITNESS:**  Okay.

17    **THE COURT:**  Mr. Timblin?

18    **MR. TIMBLIN:**  Thank you, Your Honor.

19                         *Redirect Examination*

20    *by Mr. Timblin:*

21         **Q**       Officer Dawson, getting back to the purse that Ms. Mendiola had.  It

22    was something she carried out of the car with her.  Is that correct?

23         **A**       That is correct.

24         **Q**       And is this -- what is it?  A purse?  A belly bag?  Or how would you--

25    what would you call it?

1  **A**    It was a pouch. She had also left her regular purse inside the vehicle.

2  **Q**    But she took -- she was the one who -- it was in her possession and

3  she took it with her outside of the car?

4  **A**    That is correct.

5  **Q**    Okay. And it was in her purse, then, that you found this credit card

6  with the Kanji and the drug paraphernalia?

7  **A**    That is correct.

8  **Q**    And there's no indication that any of this was in possession of

9  Mr. Chargualaf?

10  **A**    Not at that time.

11  **Q**    Okay. Now, I believe you've testified that you requested

12  Mr. Chargualaf to step out of the car for your own safety. Is that correct?

13  **A**    That is correct.

14  **Q**    Is it also kind of a standard procedure when you're concerned about

15  your own safety to conduct a pat down of the outer clothing of a person?

16  **A**    That is correct.

17  **Q**    Did you do that?

18  **A**    When Officer Santo Tomas got there, yes, I did. Or, Officer Santo

19  Tomas patted him down.

20  **Q**    Okay. But that was after -- that was later on. But when he got out of

21  the car, you didn't pat him down right away?

22  **A**    As soon as he got out of the car, I checked the door. As soon as I

23  finished checking the door, Officer Santo Tomas pulled up. And then that's when

24  Officer Santo Tomas did the pat down on the two individuals while I did the search

25  of the vehicle.

April 13, 1999                                    ❖ *Priscilla Castro Torres, Court Transcriber* ❖

1      **Q**     Okay. Now, Mr. Fisher indicated that your tone of voice, he asked you

2  about when you said *"Step out of the car"*, could you tell us -- like, tell me like I'm

3  Mr. Chargualaf, tell me what you -- in the voice you used -- how to get out of the car.

4      **A**     *"Could you please step out of the vehicle?"*

5      **Q**     Okay. I believe you indicated to Mr. Fisher you were a little more

6  excited than that.

7      **A**     Well, when he pulled the door shut, I was.

8      **Q**     That's what I'm getting at. Okay. So, how would you say that?

9      **A**     Well, when I withdrew my firearm, I probably -- I can't relate to you the

10  exact tone but probably more along the lines of *"Get out of the car. Now."*

11      **Q**     Okay, so, *"Get out of the car. Now."* is pretty close. And your gun was

12  drawn on him?

13      **A**     At that point.

14      **Q**     Okay. And at that point, you hadn't done any kind of a search yet in

15  the car, I take it?

16      **A**     That is correct. Nothing.

17      **Q**     Okay.

18  **MR. TIMBLIN:** No further questions.

19  **THE COURT:** Any other questions, Mr. Fisher?

20  **MR. FISHER:** No, thank you, Your Honor.

21  **THE COURT:** Okay, Officer Dawson. You may step down.

22  **THE WITNESS:** Thank you.

23                      (Witness is Excused)

24  **THE COURT:** Your next witness?

25  **MR. TIMBLIN:** Your Honor, that's all we have as to this Motion, Your Honor.

1   **THE COURT:** Okay. Do we have a Motion to Dismiss and Suppress at the

2   same time?

3   **MR. TIMBLIN:** Well, the -- as I said, it's kind of a two pronged thing.

4   Basically, it started out with Mr. Mantanona's Motion. He still had a Motion to

5   Suppress and Dismiss. My feeling is -- my understanding of the law is that

6   normally--

7   **THE COURT:** You do the dismissal first.

8   **MR. TIMBLIN:** You could just suppress whatever was suppressible but

9   there's still--

10  **THE COURT:** Well, the Court will consider it combined, then.

11  **MR. TIMBLIN:** But all I'm saying is that if -- like if this thing is--

12  **THE COURT:** Suppressed.

13  **MR. TIMBLIN:** --granted, then I think the whole case is that other one.

14  **THE COURT:** It's like the *Progress* case that was--

15  **MR. TIMBLIN:** Does the Court wish argument?

16  **THE COURT:** Mr. Fisher, do you wish to present any evidence?

17  **MR. FISHER:** Yes, Your Honor. Actually, Your Honor, we do have some but

18  I'm not sure that I see the dismissal -- that the prayer for dismissal is based on a

19  Constitutional violation. And you're also asking for a suppression. It seems kind of

20  -- it seems like we ought to just go ahead and take the evidence on the whole thing,

21  Your Honor.

22  **MR. TIMBLIN:** Well, that's fine, then. All I'm saying is--

23  **MR. FISHER:** Because we have -- Your Honor, we now have witnesses

24  subpoenaed, so--

25  **THE COURT:** How many witnesses do you wish to present?

April 13, 1999                              ❖ *Priscilla Castro Torres, Court Transcriber* ❖

1      **MR. FISHER:** There are -- well, he's -- Mr. Timblin's got several motions out

2  there but we do have Officer--

3      **THE COURT:** Okay. We'll just take the Motion to Dismiss and Suppress.

4  Okay? Because if the Court decides to favor the Defendant in more or less a

5  dispositive exchange; if I decide against the Defendant, then we'll set up a schedule

6  for the other motions. Okay?

7      **MR. FISHER:** Okay. Well, Your Honor, then we'll call Officer--

8      **THE COURT:** That's it for you?

9      **MR. TIMBLIN:** That's it for us.

10      **THE COURT:** How many witnesses do you wish -- are you going to call?

11  Will it take long? It's already 4:30.

12      **MR. FISHER:** Well, Officer Santo Tomas is going to testify that he knew--

13      **THE COURT:** No. I just wanted to know how long it would take. Five

14  minutes?

15      **MR. FISHER:** I guess if the Court would take a proffer, we might not have

16  to put him on.

17      **THE COURT:** Okay, go ahead.

18      **MR. TIMBLIN:** Your Honor, I could probably stipulate but if that's what he

19  wants, so--

20      **MR. FISHER:** Officer Santo Tomas will testify that shortly after he got there,

21  at I guess approximately this 9:52 to 9:55 timeframe, based on the briefing he got

22  and based on what he saw in the vehicle, he believed these individuals to be the

23  robbers who had broken into Ms. Certeza's house. And at that point, he had

24  probable cause to believe that these were in fact the "home invaders", as they were

25  called then. And that at 10:00 -- within a fifteen minute point or roughly a fifteen

April 13, 1999                                    ❖ *Priscilla Castro Torres, Court Transcriber* ❖

1  minute point -- a gun was seen at the Defendant's feet.

2      **MR. TIMBLIN:** Your Honor, I will stipulate that -- as to Officer Santo Tomas's
3  belief. I won't stipulate that that constitutes probable cause but I will stipulate that
4  that is what he will testify to.

5      **THE COURT:** Okay. You don't want to cross-examine him or anything?

6      **MR. TIMBLIN:** I'm quite -- based on what I assume he will testify to -- I
7  mean, I will stipulate that he believed that these people matched the description of
8  the robbers, yes.

9      **MR. FISHER:** That's what he will testify to.

10     **THE COURT:** Okay. So, those facts are stipulated then. So, you won't
11 have to call Officer Santo Tomas.

12     **MR. FISHER:** No, sir.

13     **THE COURT:** Your other witness -- Officer--?

14     **MR. FISHER:** No, sir. Just had Officer Dawson and Officer Santo Tomas.

15     **THE COURT:** Okay. I'll hear a five-minute closing. Mr. Timblin?

16     **MR. TIMBLIN:** Thank you, Your Honor. Your Honor, basically this comes
17 down to under the rules of *Cherry vs. Ohio* and of course the codifications of
18 8 G.C.A. §30.10, etc., as to whether or not Officer Dawson had any reasonable
19 suspicion to do anything more than write Mr. Chargualaf a ticket. The violations
20 were obviously patent -- that is, you know, the cracked windshield and the plate
21 were there. And normally, as you have pointed out in the *Pareges* case--

22             (Interruption in Argument due to Tape Change to T99-0603)

23     **MR. TIMBLIN:** --effectuates an automobile stop on the grounds that the
24 driver has violated a traffic law and the scope of the (indiscernible) and detention
25 is strictly limited to the enforcement of that law. An officer conducting a traffic stop

April 13, 1999                                    ❖ *Priscilla Castro Torres, Court Transcriber* ❖

1   may detain the motorist only as long as it is necessary to check the driver's license
2   and vehicle registration; ask a few perfunctory questions; and write out a ticket. Any
3   expansion must be based on terror. That's all we had, basically, was two traffic
4   violations. He never even did write a ticket out but basically he was entitled of what
5   he knew to write the ticket and let him go. Now, the only thing to carry it further was
6   that he was nervous. Now, maybe not just a little nervous but very nervous,
7   according to Officer Dawson. I've cited three cases -- or, Mr. Mantanona and I cited
8   three cases saying basically nervousness, by itself, without pointing in some
9   direction of some specific defense, is insufficient to create a probable -- create
10  reasonable cause or reasonable suspicion to detain. Now, if there was no real
11  suspicion to detain, then at that point, any further detention becomes illegal preface
12  to the fifteen minute rule under §30.30.

13          In this case, he was clearly detained. Officer Dawson claimed that he was
14  free to leave, but he at one point already had said *"Can you please open the door?*
15  *Please step out"*. And he said the door got shut and he pulled his gun. I don't think
16  any reasonable person could ever believe that he was not -- that he was free to go.
17  He had a gun on him; the officer kept his license and registration; he called for back
18  up and suddenly more officers are showing up. So there is no question there was
19  a detention and based on nothing more than a suspicion. And as I said, the
20  precedents are clearly that suspicion -- or, nervousness, is not sufficient. Nothing
21  really happened. And he looked in the door panel and he didn't find any gun. He
22  checked the vehicle and found no contraband. There was contraband found on the
23  Co-Defendant, Ms. Mendiola, but that doesn't -- in no way implicates him. So,
24  basically, nothing really happened until they saw the gun, first of all, and still there
25  was no connection with him. And it wasn't until basically 10:20, or 10:15, excuse

April 13, 1999                                      ❖ *Priscilla Castro Torres, Court Transcriber* ❖

1  me, that Officer Dawson first knew about the gun as maybe connected to

2  Mr. Chargualaf. So, basically you had twenty-five -- twenty to twenty-five minutes

3  before probable cause arose for his arrest. So even if the nervousness did

4  somehow give him the right to make a detention, he only had fifteen minutes to do

5  it in and this didn't happen for well more than fifteen minutes.

6      Now, everything -- there is, of course, independent evidence the Government

7  has that the robbery took place. But everything -- every connection that

8  Mr. Chargualaf has in this case flows from his detention. If his detention had

9  ceased when it should have, there wouldn't have been the search of Ms. Mendiola;

10  Ms. Mendiola wouldn't have given a statement; they wouldn't have gone out and

11  found the third suspect; they wouldn't have searched the hotel room; they wouldn't

12  have further searched the car. So, basically, all evidence pointing to Mr. Chargualaf

13  as the perpetrator of this offense would be gone. That's why I kind of agree with

14  Mr. Mantanona that the case should also be dismissed as well as suppressed

15  because there's nothing left. Based on that, we'll submit.

16      **THE COURT:** Mr. Fisher? Thank you, Mr. Timblin. Mr. Fisher?

17      **MR. FISHER:** Thank you, Your Honor. Your Honor, as this Court observed

18  in the *Pareges* case, an expansion of a scope to stop -- of a stop to include

19  investigation of suspected illegal activities is allowed only if the officer has a

20  reasonable, articulable suspicion that other criminal activity is afoot. And what we

21  learned today from Officer Dawson and what we would have learned, as the parties

22  have stipulated, from Officer Santo Tomas is that in the course of the traffic stop,

23  reasonable suspicion arose that other criminal activity was afoot. But more

24  important than that, and the thing which links it up is that as this Court knows, and

25  the Constitutional doctrine is clear, when there's a traffic stop, police officers are

April 13, 1999                                          ❖ *Priscilla Castro Torres, Court Transcriber* ❖

1   allowed to order a passenger -- now, a passenger with the new Knowles -- or the
2   Wyoming decision from the Supreme Court -- and has been for some time, allowed
3   to order the driver out of the car.

4       Officer Dawson did exactly that. While he was attempting to extract the
5   driver from the car while the driver was feinting this compliance with the officer's
6   lawful order, he slammed the door shut after reaching within the doorframe. And
7   the officer gave articulable reasons why he believed that that was evidence that
8   criminal activity had taken place, was taking place, or would take place. So this is
9   much different from this Court's decision on the _Pareges_ case because there was
10  articulable suspicion.

11      Moreover, Officer Santos Tomas -- the evidence from him is that this
12  individual was known by him to match the description of these people who broke
13  into the car -- or, excuse me, broke into the Certeza household. Because of that,
14  the fifteen minute clock does apply. It's not merely a matter of well, you don't have
15  any reasonable suspicion to go beyond the traffic stop, therefore they have to go,
16  because it developed. Therefore, the next analysis which applies is whether or not
17  in fifteen minutes probable cause to believe a crime had taken place did
18  (indiscernible). Certainly, it did by the fifteen minute when the gun was found and,
19  more obviously, it developed at approximately the seventh or eighth minute when
20  Officer Santo Tomas knew these people to be the ones who were guilty of this --
21  believed them to be guilty of the home invasion. And also when the Kanji credit
22  card was found with no reasonable -- there was no way to explain how that got
23  there, as well as the evidence of paraphernalia from ice use.

24      I was looking, Your Honor, in preparing for this hearing, I looked at the case
25  _Michigan vs. DeFilipo_, which is found in 443 U.S. 31 at 37. This is a decision which

Case 1:05-cv-00014   Document 10-9   Filed 07/14/2006   Page 18 of 21

1   is referred to in the People's moving papers; it's a cited case.  It says that:

2               *The test for probable cause is whether facts and*

3               *circumstances within the officer's knowledge are*

4               *sufficient--*

5   So, the community of sufficient knowledge we're talking about is not the world in

6   general.  Rather, it is the police force.

7               *--sufficient to warrant a prudent person or one with*

8               *reasonable caution to believe in the circumstances*

9               *shown that the suspect has committed, is committing,*

10              *or is about to commit an offense.*

11  Well, that certainly arose when they matched the description that Officer Santo

12  Tomas would have spoken about.  More importantly, the scope of that traffic stop

13  was allowed to expand because of his activity in slamming the door shut, which is

14  knowledge within this officer's ken of potential, or past, or future criminal activity.

15          Your Honor, for those reasons, the Defendant's Motion should fail.  Thank

16  you.

17          **THE COURT:**  Just for clarification, on -- are you going to be stipulating as

18  to Officer Santo Tomas's knowledge also on the present position of the gun by the

19  Defendant?

20          **MR. TIMBLIN:**  I'm sorry, Your Honor.  The--?

21          **THE COURT:**  Officer Santo Tomas's knowledge, or alleged knowledge, of

22  the possession -- presence of the gun.

23          **MR. TIMBLIN:**  I believe the testimony would be that he saw the gun laying

24  between the curb and the car.

25          **MR. FISHER:**  Yes.  In the area of where he had the Defendant and Miss--

April 13, 1999                                    ❖ *Priscilla Castro Torres, Court Transcriber* ❖

1    **THE COURT:** Okay. That's stipulated. Right?

2    **MR. TIMBLIN:** Yeah, that's stipulated.

3    **THE COURT:** Okay. That's all we need. Okay. The Court, then, will take

4    it under advisement. And then I know there are about three or four other motions

5    pending. If the Court decides for the Defendant, more or less it will be dispositive.

6    **MR. TIMBLIN:** It will be disposed of, I believe.

7    **THE COURT:** However, if it doesn't, then the Court will set a list of dates for

8    further hearings. Okay?

9    **MR. FISHER:** Your Honor, we do have some subpoenaed witnesses out

10   there on the issue of in-court identification.

11   **THE COURT:** Will it take long?

12   **MR. FISHER:** It has to come in-- Well, I don't know how long it will take,

13   Your Honor.

14   **THE COURT:** How many witnesses do you have?

15   **MR. FISHER:** Just one.

16   **MR. TIMBLIN:** Is that Certeza?

17   **MR. FISHER:** It's Ms. Certeza.

18   **MR. TIMBLIN:** Yeah. I've subpoenaed too. We do need to have her in here

19   just to be ordered to come back (indiscernible).

20   **THE COURT:** Yes. We can have a date certain. Have her come in.

21   **MR. FISHER:** Okay.

22   **THE COURT:** We can always have the hearing held. We'll set it for May 10th

23   at 2:00.

24                              (Short Pause)

25   **THE COURT:** Is that Ms. Certeza?

April 13, 1999                                    ❖ *Priscilla Castro Torres, Court Transcriber* ❖

1       **MR. FISHER:**  Your Honor, this is Ms. Certeza.

2       **THE COURT:**  Okay.  Ms. Certeza, you've been subpoenaed to testify today.

3    But I want you to come back here on May 10th at 2:00.  Okay?  So, May 10th at 2:00.

4    The Attorney General will remind you and also the Defense Counsel.  Okay?

5                                     (Inaudible Response)

6       **THE COURT:**  Thank you for showing up anyway.  Okay?  So, come back

7    here May 10th at 2:00.  Okay?  The Court will take it under advisement.

8

9

10

11

12

13

14

15

16

17

18

19

20                **❖❖ WHEREUPON PROCEEDINGS WERE COMPLETED ❖❖**

21

22

23

24

25

April 13, 1999                                    *❖ Priscilla Castro Torres, Court Transcriber ❖*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

| WITNESSES | DIRECT Page | CROSS Page | REDIRECT Page | RECROSS Page |
|---|---|---|---|---|
| **I N D E X** | | | | |
| CHRISTOPHER SHANE DAWSON | | | | |
| By: Mr. Timblin | 3 | | 31 | |
| By: Mr. Fisher | | 16 | | --- |
| | | | | |

April 13, 1999                                        ❖ *Priscilla Castro Torres, Court Transcriber* ❖

1

2

3

4                          **C E R T I F I C A T E**

5            I, PRISCILLA C. TORRES, do hereby certify that the foregoing pages one

6    through forty-four (44) inclusive, comprise the true and correct Transcript on Appeal

7    of the **Motion to Dismiss & Motion to Suppress** proceedings had in:

8                   **PEOPLE OF GUAM vs. RANDY IGNACIO CHARGUALAF**

9                                    **CF0317-97**

10   before The Honorable Alberto C. Lamorena III on April 13, 1999; recorded on Tapes

11   Number T99-0602 & T99-0603; and transcribed by me to the best of my knowledge

12   and ability.

13

14            DATED this 7th day of July, 2000.

15

16

17                           *Priscilla C. Torres*

18                           *Priscilla C. Torres*

19

20

21

22

23

24

25

April 13, 1999                              ❖ *Priscilla Castro Torres, Court Transcriber* ❖

1    **THE COURT:** CF0317-97, People of Guam vs. Randall Chargualaf.

2    Defendant is present in Court with his attorney, Mr. Timblin. For the People, there's

3    Mr. Fisher. Okay. I think we're here to hear one witness on the Motion to--

4        **MR. TIMBLIN:** Motion to Suppress Identification.

5        **THE COURT:** Is she -- is that individual here?

6        **MR. FISHER:** Yes, Your Honor, she is.

7        **MR. TIMBLIN:** The witness is here, Your Honor.

8        **THE COURT:** What's her name?

9        **MR. TIMBLIN:** Noboyo Certeza. And I would call her at this time, if the

10   Court please.

11       **MR. FISHER:** Your Honor, prior to Mr. Timblin calling the witness, the Court

12   had instructed me to look into the issue of a fax transmission being sent from the

13   Adult Correctional Facility and then report back to the Court. Your Honor,

14   immediately after doing that, I spoke to the Director of the Department of

15   Corrections, Mr. Sablan, as well as the Officer In Charge at the Guam Detention

16   Facility. And our office has begun an investigation of that. At this point, we've

17   received I guess it's protocol when what prisoners may and may not do. But I just

18   wanted to assure the Court that our office is looking into it.

19       **THE COURT:** (Inaudible) Okay, where is the witness?

20       **MR. FISHER:** Your Honor, she's here. Ma'am?

21                              (Witness Assumes Stand)

22                          *Noboyo Certeza*

23   *called as a witness by the Defendant, after having been first duly sworn,*

24   *testified on her oath as follows:*

25       **THE CLERK:** Please be seated and state your full name.

1      **THE COURT:** Will you please state your name?

2      **THE WITNESS:** My name is Noboyo Certeza.

3      **MR. FISHER:** Your Honor, I believe this is the People's burden, so I think--

4      **THE COURT:** Mr. Fisher?

5      **MR. FISHER:** Thank you, Your Honor.

6                           *Direct Examination*

7   *by Mr. Fisher:*

8      **Q**      Good morning, ma'am.

9      **A**      Good morning.

10     **Q**      I wanted to ask you a few questions about -- just a few questions
11  about the events that comprise this hearing. Ma'am, I'd like to take your attention
12  back to the day your home was broken into.

13     **A**      Okay.

14     **Q**      Okay?

15     **A**      Okay.

16     **Q**      And if you don't understand a question I'm asking you or I'm not
17  speaking loud enough, would you please tell me?

18     **A**      Um-hmm, yes.

19     **Q**      What time of day was your home broken into?

20     **A**      It's almost about 11:00 -- before 11:00 -- 10:00 to 11:00, I think.

21     **Q**      Now, when this happened, could you describe for us the lighting in
22  your house?

23     **A**      Yes. It was bright because I was cooking dinner at that time.

24     **Q**      Do you recall how many people came into your house?

25     **A**      Three people.

1      **Q**    Were you able to see these people clearly?

2      **A**    Yes.

3      **Q**    Was there enough light in your apartment for you to see their faces?

4      **A**    Yes.

5      **Q**    Do you recall how long it was, roughly, that they were in your house?

6      **A**    How long they were here in my house?

7      **Q**    Yes, ma'am.

8      **A**    About almost three -- five to eight minutes.

9      **Q**    And during that five to eight minutes, were you able to see these
10  individuals?

11      **A**    Yes.

12      **Q**    Ma'am, I'd like you to look around the courtroom and tell Judge
13  Lamorena whether or not you see in this courtroom--

14      **A**    Um-hmm.

15      **Q**    --any of the three people who came into your house?

16      **A**    Yes.  In front of me, sitting.

17      **Q**    Could you describe the color of that person's shirt?

18      **A**    The orange now he's wearing.

19      **Q**    All right.  And is that the person seated at the table with the word
20  Defendant on it?

21      **A**    Yes.

22      **MR. FISHER:**  Your Honor, for the record, we'd ask the Court to take notice
23  of the in-court identification of the Defendant.

24      **THE COURT:**  Can you mention the name?

25      **Q**    (By Mr. Fisher)  Do you know the name of that person?

1      **A**      Mr. Randy Chargualaf.

2      **THE COURT:**  Okay.  The Court will so note it.

3      **MR. FISHER:**  Thank you, Your Honor.

4      **Q**      (By Mr. Fisher) Now, after your home was broken into, did you call the

5   police?

6      **A**      Yes.

7      **Q**      Did you go to a police station?

8      **A**      Next day.

9      **Q**      Next day?  And when you were at the police station, did the police ask

10   you to identify a person who allegedly broke into your house?

11      **A**      Yes.

12      **Q**      Were you able to do so?  Could you do it?

13      **A**      Yes, um-hmm.

14      **Q**      Now, did the police show you the person that they believed broke into

15   your house?

16      **A**      Um-hmm.

17      **Q**      That's a yes?

18      **A**      Yes.

19      **Q**      And did you identify that person as the person who broke into your

20   house?

21      **A**      Yes.

22      **Q**      Now, did you identify that person that day at the police station

23   because the police told you that was the person, or because you remembered the

24   face?

25      **A**      Because I remembered his face.

1      **Q**      And this morning, ma'am, as you identified the Defendant in this case,

2    are you identifying him as the Defendant because he's at the table, or because you

3    remember his face from when he broke into your house?

4      **A**      When he broke into my house, I remember his face.

5      **Q**      At the trial, will you be present? Will you come and testify at trial?

6      **A**      If I need to, yes.

7      **MR. FISHER:** All right. Thank you very much, ma'am. I have no further

8    questions.

9      **THE WITNESS:** Thank you.

10      **THE COURT:** Mr. Timblin?

11                                    *Cross-Examination*

12    *by Mr. Timblin:*

13      **Q**      Now, Ms. Certeza, you indicated that this whole incident lasted

14    between five to eight minutes. Is that correct?

15      **A**      Yes.

16      **Q**      Now, when you talk about five to eight minutes, was that the first time

17    you saw any of these three people until they were all gone?

18      **A**      Yes.

19      **Q**      So, in other words, as I understand it, the way this thing happened

20    was that a young lady knocked at the door--

21      **A**      Um-hmm.

22      **Q**      --asked to use the phone, and then I think she walked away for a while

23    and then came back. Is that what happened?

24      **A**      Yes. She went to -- to the stairs and walked -- and walked back to my

25    house and knocked the door again.

May 14, 1999                                                    ❖ *Priscilla Castro Torres, Court Transcriber* ❖

1      **Q**      Okay. And then when she knocked on the door again, what did she

2  say and what did you do?

3      **A**      She was ask me for -- to use the telephone. She said *"Can I use your*

4  *telephone? I need your help."* Then I opened the door.

5      **Q**      All right. Now, is it correct that she, and another person which I

6  believe you've identified as a female, came in?

7      **A**      Yes.

8      **Q**      And the other person that you identified as a female, was that person

9  wearing shoes?

10     **A**      Yes.

11     **Q**      And you objected to that. Is that correct?

12     **A**      Yes.

13     **Q**      Okay. Now, at what point did the third person come in?

14     **A**      Right after the big lady came in. He came into the house and -- with --

15  with gun.

16     **Q**      All right. Now, how long was he in the house?

17     **A**      About five to eight minutes, that's all I can say. I don't count the time.

18  I don't see the watch.

19     **Q**      All right. So, you're not sure?

20     **A**      No.

21     **Q**      Did this person have a gun when he first came in the door?

22     **A**      The two ladies, they didn't have--

23     **Q**      Not the two ladies. The other person.

24     **A**      Yes. He had a gun.

25     **Q**      Okay. And were you frightened by that gun?

May 14, 1999                                    ❖ *Priscilla Castro Torres. Court Transcriber* ❖

Case 1:05-cv-00014    Document 10-10    Filed 07/14/2006    Page 8 of 20

1      **A**      Means?  Excuse me, I don't understand.  I don't understand that
2  meaning.

3      **Q**      Were you scared by the gun?  Frightened?

4      **A**      Yes, I was.  I never see the gun in my life until that time.

5      **Q**      I see.  And do you recall how you described this person to the police?

6      **A**      Um-hmm.

7      **Q**      What did you tell the police he looked like?

8      **A**      He was wearing hat and wearing dark green shirt and a black pants.
9  He has a moustache, black hair, and some tattoo.

10     **Q**      Did you tell the police that he had a tattoo?

11     **A**      I really not sure right now.

12     **Q**      Do you recall making a statement to an investigator on January 14th
13 of 1998--

14     **A**      Yes.

15     **Q**      --the statement I showed you earlier?  Okay.  And is it correct that
16 nowhere in your written statement did you mention tattoos?

17     **A**      Oh, I see.

18     **Q**      Is that true?

19     **A**      I -- I don't remember.

20     **Q**      Would you like to read the statement again?

21     **A**      Yes.

22     **Q**      Okay.

23     **MR. TIMBLIN:** May I approach the witness, Your Honor?

24     **THE COURT:** Yes.

25     **MR. FISHER:** Your Honor, we would object to this.  This is improper

May 14, 1999                                          ❖ *Priscilla Castro Torres, Court Transcriber* ❖

1  impeachment.  She's neither made an affirmative statement of something in the

2  statement or denied.  She simply said she doesn't remember.

3        **MR. TIMBLIN:**  Well, that's why I believe I can impeach her.  She does not

4  recall the contents of her statement.  I believe I have the right to show it to her.

5        **THE COURT:**  I'll overrule.

6        **MR. TIMBLIN:**  Okay.  And Your Honor, referring to Page 3 and 4.

7        **Q**      (By Mr. Timblin)  Starting at the bottom, would you tell us again what

8  you wrote about his description, ma'am?

9        **A**      Where's that part?

10       **Q**      Well, it's about right here.  First of all, is that your statement, ma'am?

11       **A**      Yes.  This is my statement.

12       **Q**      Okay.  Please read.

13                           (Witness Complies)

14            *I notice one Chamorro man who had gun wearing cap,*

15            *dark color, like a polo shirt, half pants.  Polo shirt was*

16            *dark green, I think.*

17       **Q**      And is that your total description of him?

18       **A**      Yes.

19       **Q**      Thank you.  Now, I believe you told Mr. Fisher that the next day you

20  got a call from the police about your case again?

21       **A**      Next morning.

22       **Q**      Next morning?

23       **A**      Yes.

24       **Q**      Okay.  And as a result of that call, did you go down to a police station?

25       **A**      Um-hmm.

May 14, 1999                                    ❖ *Priscilla Castro Torres, Court Transcriber* ❖

1    **Q**    And where was this, ma'am?

2    **A**    At the -- close from Pacific Star police station koban.

3    **Q**    Okay. So what they call a koban?

4    **A**    Um-hmm.

5    **Q**    It's right on San Vitores Road there?

6    **A**    Yes.

7    **Q**    Okay. What time did you arrive there, if you recall?

8    **A**    I don't remember what time but it was in the morning.

9    **Q**    I see. Now, what was the purpose of you going there? What did the

10  police want you to do?

11    **A**    Police was asking me to identify my stuff. They had my card -- the

12  credit card -- to identify.

13    **Q**    Did they also ask you to identify an individual at the time he was

14  there?

15    **A**    I went there. Then he was there.

16    **Q**    Well, what I'm asking right now is did the police ask you -- did they

17  ever ask you *"Is this the person that robbed you?"*

18    **A**    (Pause) The policeman, they didn't ask me. I said *"That's the man*

19  *that robbed me."*

20    **Q**    What caused you to say that?

21    **A**    Yes, because I was nervous next day of the morning after the incident.

22  And I saw him. And my husband was with me.

23    **Q**    Well, did you just right out of the blue say *"That's the guy"*? Or did the

24  police officer ask you *"Is that the guy?"* ?

25    **A**    *"Is that the guy?"* Yes, he was ask me *"Is that the guy?"* Then I--

1    **Q**    Okay. The police officer asked you *"Is that the guy?"*?

2    **A**    Yes.

3    **Q**    Okay. Now, how big is this building that we're talking about?

4    **A**    Building? Of the police station?

5    **Q**    The koban, yeah.

6    **A**    Koban? It's not the big building.

7    **Q**    All right. So, how many rooms are there?

8    **A**    I went inside of the -- the front door, there's a wall. And it's like a

9    window -- open window.

10   **Q**    Okay. So you could see what -- so the person you identified was

11   sitting in the other room, through a window?

12   **A**    Yes.

13   **Q**    How far away was he?

14   **A**    It's not far.

15   **Q**    Five feet? Ten feet, if you know?

16   **A**    I -- I don't know the feet. I should say about two meters -- about two

17   meters, three meters.

18   **Q**    Two to three meters? Okay. And was there anybody else sitting in

19   that room besides this gentleman?

20   **A**    Yes.

21   **Q**    Who was there? Now, was there anybody else besides him?

22   **A**    Police officer.

23   **Q**    Okay. And the police officer had a uniform on. Right?

24   **A**    Yes.

25   **Q**    Okay. So, the only person who did not have a uniform on--

1          **A**      Was him.

2          **Q**      --was him? Okay. And there was -- did the police ever ask you to look

3    at, like, two or three people and say *"Can you pick him out of this group?"*

4          **A**      Um-hmm.

5          **Q**      No?

6          **A**      No.

7          **Q**      No? Okay. Did they ever show you photographs, for instance, say

8    with his picture and four other pictures and see if you could pick him out?

9          **A**      No.

10         **Q**      Okay. And is your testimony they did ask you to say *"Is this the guy?*

11   *Is this the guy that robbed you?"*

12         **A**      I don't understand the point, mister.

13         **Q**      I'll withdraw that one. When the policemen did ask you *"Is that him?"*,

14   did you say *"I don't remember"*? Did you ever tell them that?

15         **A**      I don't remember I said or not.

16         **Q**      Okay.

17         **MR. TIMBLIN:** Again, may I refer her to her statement, Your Honor?

18         **THE COURT:** Yes.

19         **Q**      (By Mr. Timblin) Ma'am, again referring to your statement, could you

20   start reading from this point--

21         **A**      Okay.

22         **Q**      --until here, if you could?

23                              (Witness Complies)

24                    *Next morning, policeman called. He talked to my*

25                    *husband and we went to police station with him. We*

May 14, 1999                                    ❖ *Priscilla Castro Torres, Court Transcriber* ❖

1    *went to Tamuning Koban. I saw one man sitting inside.*

2    *Policeman ask me "Is that him?" "I don't remember"*

3    *Then my husband said "Just close your eyes and try to*

4    *remember". Then "Yes, that's him". My husband was*

5    *so mad, he was saying something to him but policeman*

6    *stop him.*

7    **Q**    So, is that how it happened? Does that refresh your memory, ma'am?

8    **A**    Yes.

9    **Q**    Thank you. And again, ma'am, from where you're sitting, can you

10   clearly see that Mr. Chargualaf does have a rather elaborate set of tattoos on his

11   arm? Can you see that from here?

12   **A**    No.

13   **Q**    You can't tell? Okay.

14   **MR. FISHER:** Your Honor, for the record, the Defendant's arms and hands

15   are in his lap and he's slouched back in his chair with the desk in front of him.

16   **THE COURT:** Okay. So ordered.

17   **MR. TIMBLIN:** I have no further questions, Your Honor.

18   **THE COURT:** Okay. Re-cross, Mr. Fisher?

19   **MR. FISHER:** Your Honor, we have no redirect. We would just ask that we

20   be provided a copy of that statement.

21   **THE COURT:** Well, it's part of the Discovery. Right?

22   **MR. TIMBLIN:** This was taken by a private investigator. I assume that -- I

23   think this is attached to one of the earlier motions too, I believe. So I think that was

24   part of the record. But anyway, I'll be happy to provide a copy of it to Mr. Fisher.

25   **MR. FISHER:** Thank you very much, sir.

1    **MR. TIMBLIN:** I have no further evidence, Your Honor. We'd just like to

2  argue the Motion.

3        **MR. FISHER:** No questions, Your Honor.

4        **THE COURT:** Ms. Certeza, you may step down. Thank you very much.

5        **THE WITNESS:** Okay. Thank you.

6                                          (Witness is Excused)

7        **THE COURT:** Any other witnesses?

8        **MR. FISHER:** No, Your Honor.

9        **THE COURT:** (Inaudible)

10        **MR. FISHER:** Yes, Your Honor, I think so.

11        **THE COURT:** Okay. I'll just hear about five minutes on at least this Motion

12  to Suppress. We'll start with you, Mr. Fisher.

13        **MR. FISHER:** Thank you, Your Honor. We would -- the People would

14  submit to this Court that the controlling test for in-court identifications in situations

15  like this is the one outlined by the 9th Circuit in *United States vs. Foppe* citing a

16  Supreme Court decision *United States vs. Crews*. It's a three part test, Your Honor.

17  The witness's presence at trial -- and she has indicated she will be here; the ability

18  of the witness to identify the defendant as the perpetrator of the crime -- and she

19  has clearly done so; and the presence of the defendant in the courtroom -- he is

20  obviously here. And we believe we have established that she has identified the

21  witness in the courtroom based on her recollection of him at that -- at the time of the

22  crime and not because it was -- the memory was manufactured for her by the police.

23        We believe we've met the three part test and, Your Honor, we would submit

24  to the Court that the Defendant's Motion should be denied. Thank you.

25        **THE COURT:** Thank you, Mr. Fisher. Mr. Timblin?

1    **MR. TIMBLIN:**  Your Honor, first of all, as to the three part test, I mean
2    obviously there's -- it's simply a given that if there's going to be a trial at all in this
3    case, Mr. Chargualaf's going to be here and the witness is going to be here.  So the
4    real issue is her ability to identify.  And she's now indicated that one, of course, we
5    have about as suggestive as an I.D. procedure as one could imagine.  I mean, the
6    standard is to at least -- normally, if you have a lineup, seven or eight people, and
7    say *"Can you pick him out?"*  Or second, you know, five or six pictures with his
8    picture in it and see if you can pick that out.

9        Here, he is sitting by himself in a room which she could clearly see, the only
10   one who wasn't a police officer.  She goes there and she's testified now that the
11   officer asked her *"Is that the guy?"*  It's obviously suggestive.  In fact, so suggestive
12   that the Government, in its opposition, conceded it was not necessarily suggestive.
13   Secondly, she's testified that when she first attempted to identify him, she said *"I*
14   *don't remember"*.  And then it was her husband who said *"Close your eyes and think*
15   *hard and try to remember"* and then suddenly she says *"I remember"*.  Again, he's
16   the only one there, so who else is she going to identify, especially when she's being
17   told, or suggested to the police *"This is the guy"* and her husband says *"Think hard"*.

18       Also, we're talking about -- she said a five to eight minute episode in which
19   she was very frightened.  Somehow she -- even though again, Your Honor, I believe
20   you can see from your distance that there are quite a few tattoos on his arm.  If the
21   Court could take -- (addressing Defendant)  Could you put your arms up, please?
22   Can the Court see those?

23       **THE COURT:**  Yes.

24       **MR. TIMBLIN:**  And yet, somehow, there was no mention made of these
25   tattoos to the police right after -- or, the day after, or to the investigator some

1 ‖ months down the road. So, I think that would have been something she would have

2 ‖ thought about. So, basically, all she said was a medium build Chamorro male with

3 ‖ a moustache. You know, that's about probably a couple thousand people on this

4 ‖ Island.

5 ‖      Now, the issue here is not really necessarily illegality. And I'm not even

6 ‖ suggesting the police tried to set this up. But if it turns out that the I.D. is tainted,

7 ‖ whether deliberately or not, to the point where she could not make an independent

8 ‖ recollection, then of course the Court has to suppress both any testimony that she

9 ‖ identified him the day after the robbery and to identify him in Court.

10 ‖      On that basis, we'd ask the Court the Motion be granted and that no I.D.

11 ‖ testimony from her be permitted.

12 ‖      **THE COURT:** But isn't it a matter of fact that the Jury can see him?

13 ‖ Wouldn't that be enough for the Court?

14 ‖      **MR. TIMBLIN:** Well, still, it's a legal issue as to if the Court does find that the

15 ‖ procedure is so tainted that the Court has a duty to suppress it under the -- you

16 ‖ know, *Neil v. Biggers* and the other -- the caselaw which was cited in the

17 ‖ Memorandas. And if there was -- if it was just up to the Jury to question, there

18 ‖ would never be an issue at all for the Court to decide.

19 ‖      **MR. FISHER:** Your Honor, if the People could respond?

20 ‖      **THE COURT:** (Inaudible)

21 ‖      **MR. FISHER:** Thank you. Your Honor, fundamentally, we've established

22 ‖ before this Court that she has an independent recollection of this man as being the

23 ‖ person who broke into her house. Now, Mr. Timblin and the Defendant can argue

24 ‖ to the Jury that she can't really remember and there was a second statement and

25 ‖ attempt to impeach her just as he did today with a statement taken by a private

May 14, 1999                                    ❖ *Priscilla Castro Torres, Court Transcriber* ❖

1   investigator over a year after the events.  He may argue that and the Jury may buy

2   off on it or may not, but the question is whether or not the People have established

3   a net to the controlling test in this jurisdiction.  And we submit to the Court that we

4   have done so since her testimony established that she would be here and her

5   recollection of the Defendant is based on him breaking into her apartment.  Thank

6   you, Your Honor.

7        **THE COURT:**  The Court will take the Motions under advisement.  Okay?

8   Mr. Timblin, did you want to say something?

9        **MR. TIMBLIN:**  No, Your Honor, other than are we going to get a trial date

10  now or what are we--?

11       **THE COURT:**  What I'll do is I'll decide on the Motion because if I rule in your

12  favor, then the Government's case is kind of moot.  Okay?

13       **MR. TIMBLIN:**  Okay.

14       **THE COURT:**  All right.  If I don't, then I'll set a trial date.

15       **MR. TIMBLIN:**  I see.

16       **THE COURT:**  In case of trial, does time continue to be waived in this case?

17       **MR. TIMBLIN:**  I'm sorry?

18       **THE COURT:**  His time has continued to be waived in this case.  Right?

19       **MR. TIMBLIN:**  It has been so far, yes.

20       **THE COURT:**  Okay.  Court stands adjourned.

21

22       ❖❖ **WHEREUPON PROCEEDINGS FOR 5-14-99 WERE COMPLETED** ❖❖

23

24

25

May 14, 1999                                        ❖ *Priscilla Castro Torres. Court Transcriber* ❖

1

2

3

4

5

6

| I N D E X | | | | |
|---|---|---|---|---|
| **WITNESSES** | **DIRECT**<br>Page | **CROSS**<br>Page | **REDIRECT**<br>Page | **RECROSS**<br>Page |
| **NOBOYO CERTEZA** | | | | |
| By: Mr. Fisher | 46 | | --- | |
| By :Mr. Timblin | | 49 | | --- |
| | | | | |

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

May 14, 1999                                    ❖ *Priscilla Castro Torres. Court Transcriber* ❖

1

2

3

# C E R T I F I C A T E

4

5    I, PRISCILLA C. TORRES, do hereby certify that the foregoing pages forty-

6  five (45) through sixty-two (62) inclusive, comprise the true and correct Transcript

7  on Appeal of the **Motion to Suppress Identification** proceedings had in:

8              **PEOPLE OF GUAM vs. RANDY IGNACIO CHARGUALAF**

9                              **CF0317-97**

10  before The Honorable Alberto C. Lamorena III on May 14, 1999; recorded on Tape

11  Number T99-0673; and transcribed by me to the best of my knowledge and ability.

12

13

14    DATED this 7th day of July, 2000.

15

16

17

18                              *Priscilla C. Torres*

19

20

21

22

23

24

25





## IN THE SUPERIOR COURT OF GUAM

PEOPLE OF GUAM, )
          ) CRIMINAL CASE NO. CF **RECEIVED**
          )
    vs.          )
          ) **DECISION AND ORDER**
RANDY I. CHARGUALAF, ) **REGARDING DEFENDANT'S**
          ) **MOTION TO DISMISS**
          ) **AND SUPPRESS EVIDENCE**
    Defendant, )
_____ )

### INTRODUCTION

On March 9, 1999, the Defendant filed a Motion to Dismiss and Suppress Evidence. The People filed a response on April 7, 1999. The Defendant, at the time of the filing of the Motion to Dismiss and Suppress Evidence, was represented by Rawlen Mantanona. On March 18, 1999, Attorney Mantanona filed a motion to withdraw and the Motion was granted at a hearing which took place on March 18, 1999. Attorney Terry Timblin was appointed in Mr. Mantanona's stead and subsequently filed a Notice of Additional Authorities in April 6, 1999. Subsequent to his appointment, Mr. Timblin filed a reply to the People's Opposition on April 12, 1999. A hearing on the Motion to Dismiss and Suppress Evidence was held on April 13, 1999. Based upon the written and oral arguments presented this Court renders the following Decision and Order.

### BACKGROUND

On about 9:45 a.m. on July 21, 1997, Officer C.F. Dawson of the Guam Police Department stopped a black Nissan Sentra travelling South on Marine Drive in Tamuning for a cracked windshield and lack of front license plate. The driver of the vehicle was Randy Ignacio Chargualaf, the Defendant. The passenger in the vehicle was Candelaria Q. Mendiola, a co-defendant who has already plead and been sentenced. The sequence of events which follow are placed in a timeline format to make reading easier and highlight their importance:

1. 9:46 or 9:47 a.m., due to the extreme nervousness of the occupants of the vehicle, Officer Dawson calls for backup from Officer J.E.D. Santos Tomas (hereinafter "Santos Tomas"). Defendant does not dispute this fact.

2. 9:48 a.m., Officer Dawson asks for and allegedly receives permission to search defendant's vehicle. Defendant disputes this contention.[1]

3. 9:48 a.m., Officer Santo Tomas arrives to assist (both Defendant and the People agree on this point).[2]

4. Between 9:52 and 9:55 a.m., Officer Dawson was informed by Officer Santo Tomas that the occupants of the vehicle fit the description of individuals wanted in connection with an armed robbery of a home. Defendant does not dispute this fact.

5. 10:00 a.m., Officer Tomas Santos sees a weapon on the ground at Defendant's feet and he draws his weapon and has Officer Dawson place both occupants in handcuffs. Defendant does not dispute this fact.

6. 10:15 a.m., Officer Santo Tomas, after having read Ms. Mendiola her rights, learned from her that the weapon allegedly belonged to the Defendant.

On July 31, 19997 Defendant was indicted on the following charges: (1) Robbery (As a 2nd Degree Felony) (with Special Allegation of Possession of a Deadly Weapon in the Commission of a Felony; (2) Robbery by Complicity (As a 2nd Degree Felony)(2 counts); (3) Conspiracy to Commit Robbery (As a 2nd Degree Felony); (4) Theft (As a Misdemeanor); (5) Possession of a Firearm Without an Identification Card (As a Felony) and (6) Possession of a Concealed Firearm (As a Felony). Defendant waived his right to a speedy trial on August 7, 1997, and has not reasserted his right to date.

---

[1] *See* Defendant's Motion to Dismiss and Suppress Evidence at 5-6.

1

2

3  **DISCUSSION**

4   Defendant presented the following theories in support of his Motion to Dismiss and

5  Suppress Evidence: (1) the arrest of the Defendant was an illegal seizure mandating dismissal of

6  Defendant's case; (2) the evidence stemming from an illegal seizure should be suppressed as the

7  fruit of a poisonous tree; (3) the search of Defendant's vehicle was only supported by

8  Defendant's nervous behavior and is insufficient to support the seizure; and even if Defendant

9  gave consent to search, the detention is illegal and evidence is tainted as a result of the poisonous

10  tree. This Court would normally address each of Defendant's argument in turn. However, in

11  this case this Court declines to do so because the disposition of this case does not turn on the

12  arguments presented by Defendant, rather it turns on whether the consent was given and whether

13  it was valid.

14   1. Was Consent Given?

15   In this case the Defendant argues that consent to search the vehicle was not given to

16  Officer Dawson. *See* Defendant's Motion to Dismiss and Suppress Evidence at 6 and *passim*.

17  At the hearing Officer Dawson testified that consent to search was given at 9:48 a.m. and

18  Defendant's motion supports this contention. *See* Tape 99-602 beginning at 2698 and

19  Defendant's Motion to Dismiss and Suppress Evidence at 4. Defendant presented no evidence

20  contradicting the testimony of Officer Dawson. This Court found Officer Dawson's testimony to

21  be credible, and thus, the People met their burden in proving that consent to search the vehicle

22  had been given.

23   2. If Consent Was Given, Was It Valid?

24   Having found that the consent was given, this Court must now determine whether the

25  consent is vitiated by an illegal seizure thereby requiring suppression. In analyzing the legality

26

27

28  [2] *See* Defendant's Motion to Dismiss and Suppress Evidence at 4, and People's Response to Defendant's Motion to
   Dismiss and Suppress Evidence at 1-2.

of circumstances surrounding the consent, this Court will have to determine whether the detention was illegal under both Guam statutory law and United States Constitutional doctrines.

    1. Guam Statutes Governing Detention.

       According to 8 G.C.A. § 30.30 a detention undertaken pursuant to 8 G.C.A. § 30.10 shall be no longer than is reasonably necessary to effectuate the purposes of the stop or no longer than fifteen (15) minutes. A detention under § 30.10 is allowed by a peace officer whenever there are circumstances which reasonably indicate that a person has committed, is committing or is about to commit a criminal offense. In this case the People have shown that Defendant was legally stopped for traffic violations. This Court has previously held that a stop for traffic violations falls under Chapter 30. *See* People v. Glenn C. Parages, CF 679-98 (Super. Ct. Guam, Jan. 5, 1999). There have been numerous cases holding that traffic stops are investigative detentions. For example, the United States Supreme Court in Berkemer v. McCarty, 468 U.S. 420, 439, 104 S. Ct. 3138, 3149, 82 L. Ed. 2d 317 (1984) stated that "[t]he usual traffic stop is more analogous to a so-called 'Terry stop'... than to a formal arrest." *See also* Knowles v. Iowa, 119 S. Ct. 484, 142 L. Ed. 2d 492, 67 (1998); Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); and Delaware v. Prouse, 440 U.S. 648, 661-63, 99 S. Ct. 1391, 1400-01, 59 L. Ed. 2d 660 (1979).

       Defendant argues unless that even if consent had been granted, the officers had to complete the search within the fifteen (15) minute maximum time period found in § 30.30. This Court agrees with the Defendant that, once consent to search had been given, the officers must complete that search within the maximum time period allowed by § 30.30. However, according to § 30.40, "if at any time after the onset of the detention authorized by § 30.10, probable cause for arrest of the person shall appear, the person shall be arrested."

       Section 30.40 can be read in conjunction with § 30.30 in only one of two ways. First, is a reading requiring that both the probable cause and arrest must occur within fifteen minutes. The second reading would have the time limits placed on the officers under § 30.30 tolled or

suspended if sufficient probable cause is found to allow arrest. This Court chooses the second of the two interpretations because it would be patently unfair and against common sense to require officers to not only discover the probable cause for arrest, but also require effectuation of the arrest, within the fifteen minute time frame. For example, if an officer detains an individual at 4:00 p.m. and then discovers the probable cause for arrest at 4:14:59 p.m. the officer would only have one second to arrest the individual. This Court notes that the definition of arrest is "whenever there is a governmental termination of freedom of movement through means intentionally applied." Brower v. County of Inyo, 489 U.S. 593, 596-597, 109 S. Ct. 1378, 1381, 103 L. Ed. 2d 628 (1989).

The People point out that at *by* 9:55 a.m., 10 minutes after the initial detention, Officer Santo Tomas had relayed to Officer Dawson that Defendant fit the description of an individual wanted in relation to a robbery, thereby providing reasonable suspicion upon which to arrest the Defendant. Moreover, officer Santo Thomas had his weapon drawn and was instructing the Defendant to get in a position allowing Officer Dawson to cuff him. This act constituted an arrest of the Defendant and also occurred within the fifteen minute time frame laid out in § 30.30. However, this Court further holds that the fact that the officers did not complete the arrest of the Defendant within the time period is irrelevant because the act of "arrest" had began upon the discovery of the probable cause – namely officer Santo Tomas believing that the Defendant was the suspect sought in the robbery the previous evening. In sum, the officers actions were well within the confines of § 30.30.

2. Constitutional Analysis.

The Fourth Amendment applies to routine traffic stops. Knowles v. Iowa, *supra*. When a police officer effectuates an automobile stop on the grounds that the driver has violated a traffic law, the scope of the resultant detention is strictly limited to the enforcement of that law. Daniel, *supra*, (citing U.S. v. Guzman, 864 F.2d 1512, 1519 (10th Cir. 1988); U.S. v. Gonzalez, 763 F.2d 1127, 1130 n.1 (10th Cir. 1985). An officer conducting a traffic stop may detain the motorist

1

2

3  only as long as is necessary to check the driver's license and vehicle registration, ask a few

4  perfunctory questions, and write out a ticket. Id. Any expansion of the scope of the stop to

5  include investigation of other suspected illegal activity is allowed only if the officer has a

6  reasonable articulable suspicion that other criminal activity is afoot. Id., see also Terry v. Ohio,

7  supra.

8       It is also equally well settled, however, that an officer may order a driver from the vehicle

9  so as to assure an officer's safety. Pennsylvania v. Mimms, 434 U.S. 160, 98 S. Ct. 330 (1977).

10  Moreover, for the same reason an officer may order any passengers out of the vehicle as well.

11  Maryland v. Wilson, 117 S. Ct. 882, 886 (1997). Thus, in this instance Officer Dawsons' request

12  for both occupants to exit the vehicle was entirely proper.

13       In this case, the Defendant was pulled over for traffic violations. The People argue that

14  during the course of the traffic stop the Defendant was asked and gave consent to search his

15  vehicle. The Defendant argues that he did not give consent and that even if he did it was tainted

16  by the resulting illegal detention. Clearly, the request for the search was not related to the

17  subject of the stop. However in Ohio v. Robinette, 519 U.S. 33, 117 S. Ct. 417, 136 L. Ed. 2d

18  347 (1996), the United States Supreme Court was confronted with almost similar facts, and held

19  that a consent, given even after the purpose of the original stop had terminated, did not

20  invalidate the search. The relevant facts in Robinette follow:

21          [after issuing a warning for a speeding violation the officer asked]
        "[o]ne question before you get gone: [a]re you carrying any illegal

22          contraband in your car? Any weapons of any kind, drugs, anything
        like that?" Robinette answered 'no' to these questions, after which

23          Deputy Newsome asked if he could search the car. **Robinette**
        **consented**. In the car, Deputy Newsome discovered a small

24          amount of marijuana and, in a film container, a pill which was later
        determined to be methylenedioxymethamphetamine (MDMA).

25          Robinette was then arrested and charged with knowing possession

26          of a controlled substance.

27

28  Robinette 519 U.S. at 36, 117 S. Ct. at 419 (emphasis added).

In this case, the Defendant's consent was given during a valid detention and therefore falls within the bounds of <u>Robinette</u>. Thus, the search was a permissible extension of the detention of Defendant beyond the scope of the original stop.

## CONCLUSION

This Court finds that the Defendant in this case was validly detained and that during that detention gave consent to have his vehicle searched. If during the course the continued detention for the purpose of searching the vehicle probable cause is found sufficient to support an arrest, the Defendant's status changes from that of "detainee" to that of "arrestee" thereby rendering § 30.30 moot.

Based upon the foregoing, the Defendant's Motion to Dismiss and Suppress Evidence is hereby DENIED. A hearing on the other motions is scheduled for 3:00 p.m. on May 10, 1999.

Dated this _____ day of __**2 3 APR 1999**_____ 1999.

ENTERED INTO CRIMINAL DOCKET
DOCUMENT NO. _____
on _____ date
By:_____
DEPUTY CLERK

Alberto C. Lamorena III
Presiding Judge
Superior Court of Guam

Received for Service
3-20 p
4/23 10 ag
Marshal Superior Court

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

MAY 1 9 2006

Jerimie K.J. Duenas
Deputy Clerk Superior Court of Guam

 
| TAPE NO: 99-618 | ! PAGE NO: 1 | ! COURT CONVENED AT: 3:00 _ AM X PM | ! DATE: 05 06 1999 |

PRESENT: **JUDGE:** ALBERTO C . LAMORENA III , Presiding Judge
**CLERK:** EVELYN CABRERA

CASE NUMBER: CF0317-97

! CASE TITLE:
PEOPLE OF THE TERRITORY OF GUAM
VS.
RANDY I CHARGUALAF *

COUNSEL PRESENT:
PLAINTIFF: *V. Hattori*
DEFENDANT: *T. Timblin*

PROCEEDINGS: *Mtn To Withdraw as Counsel*

LOG NUMBER !

DESCRIPTION

*RECEIVED*

*10* !-Case Called

*deft present*

*deft req. another counsel*
*unsatisfied w/ representation*
*of a. timblin*

*ct. deny motion to withdraw*

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

MAY 1 9 2006

Jerimie K. J. Duenas
Deputy Clerk Superior Court of Guam

! Matter continued to: , 1999 At: am/pm

TAPE NO: 99-6 73  PAGE NO:  1  COURT CONVENED AT:  10:00 X AM _ PM  DATE: 05 14 1999

PRESENT: **JUDGE:** ALBERTO C . LAMORENA III , Presiding Judge
**CLERK:** EVELYN CABRERA

CASE NUMBER:  CF0317-97  |  CASE TITLE:
PEOPLE OF THE TERRITORY OF GUAM
VS.
RANDY I CHARGUALAF *

COUNSEL PRESENT:
**PLAINTIFF:** _T. Fisher_
**DEFENDANT:** _T. Tomslin_

PROCEEDINGS: _Mtn._

| LOG NUMBER | DESCRIPTION |
|---|---|
| 2390 | Case Called — _deft present_ |
| | _p/a = address ct. of investigators of deft_ |
| 2500 | _Notice Certeza_ |
| 2509 | _p/a = direct examination PW#1_ |
| 2660 | _witness identified deft._ |
| | _ct = so ordered_ |
| 2680 | _p/a = cont. direct examination_ |
| 2795 | _d/a = cross examination PW#1 Certeza_ |
| 3590 | _p/a = req. copy of statement_ |
| 3660 | _p/a = closing statement_ |
| 3740 | _d/a = address ct. clsg_ |
| 3940 | _p/a = re. close_ |
| 4070 | _ct = under advisement_ |
| | _d/a - time waived_ |

Matter continued to: _____, 1999 At: ____ am/pm

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
Clerk of the Superior Court of Guam

JUL 06 2006

Jerimie K. Duenas
Deputy Clerk Superior Court of Guam

People v. Randy I. Chargualaf, CF 317-97
Decision and Order Regarding Defendant's Motion to Compel Discovery,
Motion to Suppress In Court Identification and Motion to Suppress Bad Acts.

IN THE SUPERIOR COURT OF GUAM

| PEOPLE OF GUAM, | ) | CRIMINAL CASE NO. CF 317-97 |
|---|---|---|
| | ) | |
| vs. | ) | **DECISION AND ORDER REGARDING** |
| | ) | **DEFENDANT'S MOTION TO COMPEL** |
| RANDY I. CHARGUALAF, | ) | **DISCOVERY, MOTION TO SUPPRESS** |
| | ) | **IN COURT IDENTIFICATION AND** |
| Defendant, | ) | **MOTION TO SUPPRESS BAD ACTS** |
| | ) | |

## INTRODUCTION

On March 9, 1999, the Defendant filed a Motion to Compel on March 9, 1999. Defendant also filed two suppression motions, namely a Motion to Suppress In Court Identification and a Motion to Suppress Bad Acts, on February 16, 1999.[1] The People filed a response to the Motion to Compel Discovery on March 18, 1999. The People filed a response to both suppression motions on April 7, 1999.[2] The Defendant, at the time of the filing of these motions was represented by Rawlen Mantanona, whose motion to withdraw was granted on March 18, 1999. Attorney Terry Timblin was appointed in Mr. Mantanona's stead and subsequently represented Defendant at the suppression hearing. After his appointment, Mr. Timblin also filed a Motion to Withdraw. Mr. Timblins' Motion to Withdraw was denied at a hearing on May 6, 1999. A hearing on the two suppression motions as well as the Motion to Compel was held on May 10, 1999. At the hearing, the victim, a crucial witness was not present and the Motion to Suppress In Court Identification was postponed until May 14, 1999.

---

[1] This Motion is a replacement of an earlier motion filed by one of Defendant's earlier attorneys (Mark Willams) on March 20, 1998.
[2] Peoples response to the Motion to Suppress In Court Identification directs this Court back to a response filed on April 9, 1998.

People v. Randy I. Chargualaf, CF 317-97
Decision and Order Regarding Defendant's Motion to Compel Discovery,
Motion to Suppress In Court Identification and Motion to Suppress Bad Acts.

# BACKGROUND

On about 9:45 a.m. on July 21, 1997, Officer C.F. Dawson of the Guam Police Department stopped a black Nissan Sentra travelling South on Marine Drive in Tamuning for a cracked windshield and lack of front license plate. The driver of the vehicle was Randy Ignacio Chargualaf, the Defendant. The passenger in the vehicle was Candelaria Q. Mendiola.[3]

As a result of the stop defendant was indicted on July 31, 1997 on the following charges: (1) Robbery (As a 2nd Degree Felony) (with Special Allegation of Possession of a Deadly Weapon in the Commission of a Felony; (2) Robbery by Complicity (As a 2nd Degree Felony)(2 counts); (3) Conspiracy to Commit Robbery (As a 2nd Degree Felony); (4) Theft (As a Misdemeanor); (5) Possession of a Firearm Without an Identification Card (As a Felony) and (6) Possession of a Concealed Firearm (As a Felony). Defendant waived his right to a speedy trial on August 7, 1997, and has not reasserted his right to date.

The charges stem from an incident in which Noboyo Certeza was robbed at gunpoint by two female individuals and a male individual. The police during the course of the traffic stop determined that the Defendant and the other occupant of the vehicle fit the description of two of the individuals who may have committed the robbery. The robbery lasted about five minutes and the victim was able to clearly see the faces and bodies of the individuals involved. The victim identified the male individual to be 5'8", medium build, black hair, mustache, wearing a light green polo shirt and black baseball cap.

# DISCUSSION

## 1. **Motion to Compel.**

The Court granted this Motion orally at the hearing and shall not discuss it further.

---

[3] A co-defendant who has already plead guilty and been sentenced.

People v. Randy I. Chargualaf, CF 317-97
Decision and Order Regarding Defendant's Motion to Compel Discovery,
Motion to Suppress In Court Identification and Motion to Suppress Bad Acts.

### 2. **Motion To Suppress In Court Identification.**

In this motion the Defendant contends that the People's concession that the "pretrial 'show-up' was unnecessary and suggestive"[4] taints any in court identification by the same witness. The People respond that the witness, who is the victim in this case, has an independent basis for making the identification thereby allowing the Court to allow the in-court identification notwithstanding the pretrial "unnecessary and suggestive" identification. Defendant argues that both the United States Constitution and Guam's Rules of Evidence require suppression. This Court will address each argument in turn.

### A. **Constitutional Argument.**

There are, generally speaking, two kinds of identification testimony which raise suppression problems. First, a witness may be asked to identify the defendant in the courtroom during trial. Second, the witness is asked to testify to having identified the defendant on an earlier occasion, before trial. Many witnesses, possibly including the victim in this case, are asked to do both. The measure of whether an in-court identification is or is not reliable despite an earlier, unnecessarily suggestive (and usually, out-of-court) identification, is whether the suggestion connected with the earlier identification was so corrupting as to lead to "a very substantial likelihood of irreparable misidentification." Neil v. Biggers, 409 U.S. 188, 198, 93 S. Ct. 375, 381 (1972); Simmons v. United States, 390 U.S. 377, 384, 88 S. Ct. 967, 971 (1968). The same standard, "with the deletion of 'irreparable,' " also serves when the issue is the admissibility of testimony as to the earlier identification. Biggers, 409 U.S. at 198, 93 S. Ct. at 381. In either instance, the factors to be considered in assessing reliability and the likelihood of misidentification include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description

---

[4] *See* People's Response to Defendant's Motion to Suppress Evidence filed April 9, 1998 at 1.

People v. Randy I. Chargualaf, CF 317-97
Decision and Order Regarding Defendant's Motion to Compel Discovery,
Motion to Suppress In Court Identification and Motion to Suppress Bad Acts.

of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation." Manson, 432 U.S. at 114, 97 S. Ct. at 2253; Biggers, 409 U.S. at 199-200, 93 S. Ct. at 382. In sum, we must weigh the totality of these circumstances against the corrupting effect of the suggestive identification itself to determine whether suppression is warranted. Manson, 432 U.S. at 114, 97 S. Ct. at 2253.

In order to determine whether the unnecessarily suggestive pretrial identification creates the substantial likelihood of misidentification it is necessary to describe the facts surrounding the incident in more detail. On the day following the robbery, the victim and her husband proceeded to a police koban to identify whether certain property[5] was theirs. The victim's husband saw the Defendant at the koban and asked Officer Crest whether that was "the son of a bitch sitting there." See Defendant's First Motion to Suppress Evidence, Exhibit 1, Statement of Benjamin F.T. Certeza. The officer responded "Yes." Id. There is an indication that the victim, whose testimony the Defendant seeks to suppress, heard the exchange because she witnessed the statement. Id. During the exchange the Defendant was not in handcuffs and he was accompanied by only one police officer at the time of this identification. The victim later identified the Defendant as being the perpetrator at the suppression hearing and it is likely that she will be called to do so at trial.

In this case, the victim saw her attacker at a well-lit apartment during the commission of the crime. She gave the police a relatively detailed description of her attacker immediately after the crime. The victim's description sufficiently matched that of the Defendant so that Officer Santo Tomas, who took part in the initial traffic stop, had probable cause to believe the Defendant was possibly the perpetrator. See Decision and Order Regarding Defendant's Motion to Dismiss and Suppress Evidence, filed April 23, 1999. Thus, in applying Manson and Biggers,

---

[5] Items included jewelry and a credit card.

People v. Randy I. Chargualaf, CF 317-97
Decision and Order Regarding Defendant's Motion to Compel Discovery,
Motion to Suppress In Court Identification and Motion to Suppress Bad Acts.

the suggestiveness, if any, created by the initial identification, was not so corruptive as to lead to a substantial likelihood of misidentification.

The Defendant's relies heavily on Stovall v. Denno, 388 U.S. 293 (1969). Such reliance is misplaced. The Stovall Court's decision related to whether the rules laid out in United States v. Wade,[6] and Gilbert v. State of California,[7] providing for the exclusion of identification evidence which is tainted by exhibiting the accused to identifying witnesses before trial in the absence of his counsel, was to be prospective or retroactive. It is important to note that neither the Wade nor the Gilbert decision explicitly holds that any pretrial identification found to be unnecessarily suggestive automatically requires suppression. See Wade, supra, (remanded the case for a hearing to give the government the opportunity to establish that the illegal identification did not taint the later in-court identification).

Moreover, a show-up[8] after arrest, but prior to initiation of any adversary criminal proceeding such as formal charge, preliminary hearing, etc., unlike the post-indictment confrontations involved in Gilbert and Wade, is not a criminal prosecution at which the accused, as a matter of right is entitled to counsel. See Kirby v. Illinois, 406 U.S. 682, 92 S. Ct. 1877, (1972).

Finally, as long as the witness has an independent recollection that is "wholly untainted by the police misconduct," an in-court identification is permissible. United States v. Crews, 445 U.s. 463, 474, 100 S. Ct. 1244, 1251, (1980).[9] In Crews, the victim of a robbery viewed her

---

[6] 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed.2d 1149 (1967).

[7] 388 U.S. 263, 87 S. Ct. 1951, 18 L.Ed.2d 1178 (1967).

[8] Generally where the victim of a crime "shows-up" and identifies the alleged perpetrators.

[9] Granted, the Defendant correctly points out that the Crews case was limited to a Fourth Amendment violation as opposed to an alleged due process violation present in this case. The Crews Court however, did address this argument and found that the "independent source" test derived from Wade, involved a due process claim. Id. at n. 19.

People v. Randy I. Chargualaf, CF 317-97
Decision and Order Regarding Defendant's Motion to Compel Discovery,
Motion to Suppress In Court Identification and Motion to Suppress Bad Acts.

assailant at close range for a period of 5-10 minutes under good lighting conditions with no distractions, the victim closely matched the description given by the victim of the robbery, the victim did not identify anyone other than the Defendant, and only a week passed between the victim's initial observation of the Defendant and her first identification of him. The facts in this case (as described above) are very similar to that of <u>Crews</u>, thus this Court finds that the witness does have independent grounds for identifying the defendant aside from the suggestive identification.

### B. Statutory Analysis.

Defendant argues that regardless of the constitutionality of the in-court identification, the Victim should not be allowed to give identification testimony because doing so would be prejudicial to the Defendant as provided under Guam's Rules of Evidence. Specifically Defendant cites to 6 G.C.A. § 403 which provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence.

This Court however does not feel that the Defendant would be prejudiced by any so-called problems with the victims identification of the Defendant. More specifically, the victim has never failed to positively identify the Defendant when asked to do so. Rather, the Defendant's exhibit accompanying the initial motion shows that the victim's husband, not the victim, questioned the officer as to whether the Defendant "was the one." *See* Defendant's first Motion to Suppress Identification, exhibit 1. In addition, this Court will allow, to the extent allowed by law, to cross examine the victim on "problems" related to her identification.

People v. Randy I. Chargualaf, CF 317-97
Decision and Order Regarding Defendant's Motion to Compel Discovery,
Motion to Suppress In Court Identification and Motion to Suppress Bad Acts.

## 2. **Motion To Suppress Bad Acts.**

The People stated that they do not intend to bring forth this type of evidence, as such the motion by the Defendant is rendered moot.

## CONCLUSION

The Defendant asserted two arguments they feel support their motion for suppression of any in-court identification testimony by the victim. First, the defendant argued that the in-court testimony would be unconstitutional given the fact the People had admitted the pre-trial identification at the police koban was unnecessarily suggestive. The question is whether the victim had an independent basis, aside from the suggestive identification, upon which to rest her testimony. *See* Crews, *supra.* The test is the "totality of circumstances" which includes such factors as: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation." *See* Manson, *supra.*

The victim in this case had ample opportunity to view the Defendant, provided a description accurate enough to tip off the police during a routine traffic stop (which turned non-routine), and has never stated that the perpetrator was anyone other than the Defendant. Thus, this Court finds that given the circumstances surrounding the encounter, the pretrial identification, while unnecessarily suggestive does not violate the Defendant's due process rights.

The Defendant also urged this Court to suppress the in-court identification testimony on the basis of its prejudicial effect due to problems associated with the victim's identification of the Defendant. It is true that the victim in her report failed to mention the Defendant's tattoo's which are somewhat distinguishing. It is also true that the victim does not speak English with

People v. Randy I. Chargualaf, CF 317-97
Decision and Order Regarding Defendant's Motion to Compel Discovery,
Motion to Suppress In Court Identification and Motion to Suppress Bad Acts.

ease and may have had problems with communicating with the police on the subject. This Court will not speculate as to omissions or problems associated with the initial identification and leave it to the Defendant to flesh out any problems on cross examination of the witness.

Thus, based on the forgoing the Defendant's Motion to Compel Discovery and to Suppress Prior Bad Act are rendered moot. In addition, the Defendant's Motion to Suppress In Court Identification is DENIED.

Dated this _____ day of JUL 1 5 1999 , 1999.



_____
Alberto C. Lamorena III
Presiding Judge
Superior Court of Guam

Received for Service
4278
7/15 79
Marshal, Superior Court
Guam

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

MAY 1 9 2006

Jerimie K.J. Duenas
Deputy Clerk Superior Court of Guam

| TAPE NO: 99-/236 | PAGE NO: 1 | COURT CONVENED AT: | 11:00 X AM _ PM | DATE: 07 30 1999 |

PRESENT: **JUDGE:** ALBERTO C . LAMORENA III , Presiding Judge
**CLERK:** EVELYN CABRERA

CASE NUMBER: CF0317-97

CASE TITLE:
PEOPLE OF THE TERRITORY OF GUAM
vs.
RANDY I CHARGUALAF *

COUNSEL PRESENT:
PLAINTIFF:
DEFENDANT: _____

PROCEEDINGS: CRIMINAL TRIAL SETTING

| LOG NUMBER | DESCRIPTION |

3 8/25 | Case called: (✓)Deft present w/atty ()Deft not present ()D/A not present

() Jury selection and trial set for: 9/28/99  2  am/pm

(✓) Motion cut-off date: 9/

(✓) Pretrial Conference: 9/28/99  3 am/pm

(✓) Time waived by D/A

() Speedy trial asserted

() Trial setting continued: _____ ____am/pm

() Change of plea hearing: _____ ____am/pm

() Further proceedings hearing: _____ ____am/pm

() Issue order to show cause on defense attorney

() Bench warrant to issue - Bail set $_____

Others:

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

JUL 06 2006

Jerimie K.J. Duenas
Deputy Clerk Superior Court of Guam

 

| TAPE NO: 99-/ / 6 / | PAGE NO: 1 | COURT CONVENED AT: 3:00 _ AM X PM | DATE: 10 04 1999 |

PRESENT: **JUDGE:** ALBERTO C . LAMORENA III , Presiding Judge
**CLERK:** EVELYN SANTOS

| CASE NUMBER: CF0317-97 | CASE TITLE: |
| | PEOPLE OF THE TERRITORY OF GUAM |
| COUNSEL PRESENT: | VS. |
| PLAINTIFF: | RANDY I CHARGUALAF * |
| DEFENDANT: _T. Zinthia_ | |

PROCEEDINGS: _JT_ _heard a/int fd._

| LOG NUMBER | DESCRIPTION |
| --- | --- |
| | -Case Called |
| 705 | _deft prsnt_ |
| | 10/19/99 JST |

_I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam_

JUL 0 6 2006

**Jerimie K. J. Duenas**
Deputy Clerk Superior Court of Guam

| Matter continued to: , 1999 At: am/pm |

TERRY E. TIMBLIN
Attorney at Law
Suite 501C, GCIC Bldg.
414 W. Soledad Ave.
Hagåtña, Guam 96910
Telephone:    (671) 477-1389
Facsimile:    (671) 477-4809

Attorney for Defendant

FILED
SUPERIOR COURT
OF GUAM

1999 OCT 27 AM 10: 41

ALFREDO M. BORJA
CLERK OF COURT
BY _____

IN THE SUPERIOR COURT OF GUAM

| | | |
|---|---|---|
| PEOPLE OF GUAM | ) | CASE NO. CF0317-97 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MOTION IN LIMINE |
| | ) | |
| RANDY IGNACIO CHARGUALAF | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

TO:    Attorney General of Guam, Prosecution Division

Please take notice that, prior to the testimony of the complaining witness, Nobuyo
Certeza, the Defendant will move for permission to cross examine her with respect to the Waiver
of Prosecution and accompanying letter, attached hereto as Exhibit A.

MEMORANDUM OF POINTS AND AUTHORITIES

Exhibit A was obtained by former counsel, Mark E. Williams, Esq. and recently
presented to this writer by the Defendant. It indicates a desire on the part of Ms. Certeza, to
resolve this matter by way of a cash payment to herself. This establishes a financial motive for
her testimony which should be considered by the jury in determining her credibility.

> While interest no longer disqualifies a person as a witness in a civil
> suit, both in civil and criminal actions the fact of a witness' interest in the
> action, financial or otherwise, may be shown for the purpose of affecting
> his credibility. 81 Am Jur 2d, Witnesses, §885.

DATED: 10/27/99

TERRY E. TIMBLIN, Attorney for
Defendant

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

MAY 1 9 2006

Jerimie K.J. Duenas
Deputy Clerk Superior Court of Guam

ORIGINAL

Mark E. Williams, Esq.
404 W. Soledad Ave
Suite #A12-225
Agana, Guam 96910
Tel: 671-477-1389
Fax: 671-653-4502

Attorney for Defendant

# IN THE SUPERIOR COURT OF GUAM
## TERRITORY OF GUAM

PEOPLE OF THE TERRITORY OF GUAM, | CRIMINAL CASE NO. CF-317-97

      Plaintiff,

      vs. | **WAIVER OF PROSECUTION**

RANDY CHARGUALAF,

      Defendant.

---

I, Nobuyo Certeza, am victim in the above-captioned case. I would like to settle this case based on a payment of immediate financial compensation directly to me and I do not wish to testify in this case. I strongly feel this would resolve this case in the best interests of myself and my family, and, along with the confinement the defendant has already served, would be an appropriate punishment and more effective justice in this case.

Signed:

Nobuyo. K. Certeza

Nobuyo Certeza     3/29 1998

EXHIBIT  A

```
FROM:   Nobuyo K. Certeza                          25 Mar 98
        P.O. Box 12351
        Tamuning, Guam  96931

  TO:   Attorney General's Office
        ATTN:  Mr. Dave Moore
        120 W. O'Brien Drive
        Agana, Guam  96910
```

**SUBJECT:  CRIMINAL CASE CF-197-97**

Dear Sir,

    I am the victim in the above-captioned case.  As the victim I feel that it would be appropriate to seek prompt and direct monetary compensation from the defendant in my case for the anxiety and emotional distress suffered by myself and my family.  I would like to propose the government to settle this matter directing a prompt and immediate payment for me and avoid the additional distress and anxiety of testifying in this case, as well as any further delays.  I do not wish to testify in this case and strongly feel that it would be in our best interest and would accomplish more effective justice for my family to require an immediate payment from the defendant.

    Based on our feelings, I would like to have this case resolved by requiring the direct payment to us of **$8,000 dollars** lump sum payment immediately prior to being release and an additional **$5,000 dollars**, payable over the next **12 months**.  I feel that this would more appropriately compensate us for our suffering in this case since we have no interest in testifying, and then we could get on with our lives and avoid the additional stress of testifying, and the delay of our wish to return to a normal life.

Thank You very much,

*Nobuyo K. Certeza*
NOBUYO K. CERTEZA

| TAPE NO: 99/775 | PAGE NO: 1 | COURT CONVENED AT: 10:00 X AM _ PM | DATE: 11 01 1999 |

PRESENT: **JUDGE:** ALBERTO C . LAMORENA III , Presiding Judge
**CLERK:** EVELYN SANTOS

CASE NUMBER: CF0317-97

CASE TITLE:
PEOPLE OF THE TERRITORY OF GUAM
VS.
RANDY I CHARGUALAF *

COUNSEL PRESENT:
PLAINTIFF: _T. Fisher_
DEFENDANT: _T. Zimblin_

PROCEEDINGS: _Mtn In Limine_

| LOG NUMBER | DESCRIPTION |
|---|---|
| 1080 | Case Called |
| | deft present |
| | d/a - address ct. of wants of witness. |
| | possibly file civil suit. |
| | address ct. of cross |
| 1160 | pla -- address ct. non oppose of mtn in limine |
| | say to add M |

Matter continued to: _____ , 1999 At: _____ am/pm

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file at the office of the
clerk of the Superior Court of Guam

JUL 0 8 2006

**Jerimie K.J. Duenas**
Deputy Clerk Superior Court of Guam

OFFICE OF THE ATTORNEY GENERAL
JUL 14 2006
RECEIVED



MARSHAL'S TO SERVE!!

HE SUPERIOR COURT OF GUAM

)   CASE NO. CF0317-97
)
)
)
vs.    )   SUBPOENA
)
RANDY IGNACIO CHARGUALAF   )
)
Defendant,   )
)
_____)

TO:  **BENJAMIN CERTEZA**, 105 Kitetsu Apts. (Behind Acanta Mall), Tumon, Guam

**YOU ARE HEREBY COMMANDED** to attend and give testimony as a witness before the Honorable Presiding Judge Alberto C. Lamorena, III, in the Superior Court of Guam. located at the Guam Judicial Center, 120 West O'Brien Drive. Hagåtña, Guam, on Wednesday, the 3rd day of November, 1999, at 8:30 a.m. You are further commanded to appear each and every day thereafter at said time and place, until you are dismissed by the court.

For failure to attend or answer as a witness, you may be deemed guilty of contempt of court.

DATED:  NOV 01 1999

Received for Service

ℓ:do 1

11/1 19 99

Marshal, Superior Court
Guam

ALFREDO M. BORLAS
Clerk of Court

By: ___EF Aflague Jr___
Deputy Clerk

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam

MAY 19 2006

Jerimie K.J. Duenas
Deputy Clerk Superior Court of Guam

ORIGINAL

Date Received : 11/01/1999
Date Assigned : 11/01/1999
Date Due : 11/01/1999
Date To Return: 11/01/1999
Hearing Date : 11/3/99

FILED
SUPERIOR COURT
OF GUAM

1999 NOV -3 AM 8: 18

ALFREDO M. BORJAS
CLERK OF COURT
BY

Issuing attorney:

PEOPLE OF THE TERRITORY OF GUAM

vs.

RANDY IGNACIO CHARGUALAF,
CANDELARIA QUIDACHAY MENDIOLA
aka "KANDI" and DON ALLEN BORJA
MENDIOLA aka "KEILANI",

                    Defendants.

CASE NO. CF 317-97

AFFIDAVIT
( / ) OF SERVICE
( ) OF NON-SERVICE
( ) OF POSTING

RECEIVED
AUG 14 2006

John Taijeron / W. Urcangco          first being duly sworn, deposes and says:

That he/she is a Deputy Marshal of the Superior Court of Guam and not
interested in the above-caption case. That he/she:
( / ) served upon  BENJAMIN CERTEZA

the below listed document(s) by delivering said documents to
him  Dayne St. Mangilao  personally at  Res. # 109
on the 1 day of Nov , 99 , at 4/2 .

( ) attempted to serve the below listed document(s) on the address thereon
provided but was unable to effect such service for the following reason(s):

DOCUMENT(S) TO BE SERVED:

     SUBPOENA

DOCUMENT(S) FEES     :   Attempts
                         Mileage

                                        JOSEPH M. CRUZ
                            CHIEF MARSHAL, SUPERIOR COURT, GUAM

DATED: _____        By: _____
                                             DEPUTY MARSHAL

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

MAY 19 2006

Jerimie K.J. Duenas
Deputy Clerk, Superior Court of Guam

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING
IS TRUE AND CORRECT. 6 G.C.A. 4308

                  Executed On 11/1/99  ORIGINAL

IN THE SUPERIOR COURT OF GUAM

PEOPLE OF GUAM,

v.

RANDY IGNACIO CHARGUALAF,
  Defendant

CRIMINAL CASE NO. CF317-97

VERDICT Form 1
CHARGE 1

ROBBERY
(AS A 2nd DEGREE FELONY)

JUL 14 2006

RECEIVED

For the Charge of ROBBERY (As a 2nd Degree Felony),

WE, THE JURY FIND THE DEFENDANT, RANDY IGNACIO CHARGUALAF

[ ] Not Guilty

[✓] Guilty

    If you unanimously find the Defendant "Not Guilty," your
Foreperson will check the "Not Guilty" box, date and sign the
form below.  Move on to consider Charge 1A, ROBBERY (As a 3rd
Degree Felony) as a Lesser Included Offense in Verdict Form 1A.

    However, if you unanimously find the Defendant "Guilty,"
please have your Foreperson check the "Guilty" box, sign and date
the form below.  Move on to consider Charge 1, special allegation
in Verdict Form 2.

    If you are unable to decide whether the Defendant is guilty
or not guilty of this charge, sign below. Move on to consider
Charge 1A, ROBBERY (As a 3rd Degree Felony) as a Lesser Included
Offense, contained in Verdict Form 1A.

_____
Foreperson

11-9-99
_____
Date

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

JUL 10 2006

Jerimie K.J. Duenas
Deputy Clerk Superior Court of Guam

**ORIGINAL**

IN THE SUPERIOR COURT OF GUAM

PEOPLE OF GUAM,

v.

RANDY IGNACIO CHARGUALAF,
    Defendant

CRIMINAL CASE NO. 317-97

VERDICT FORM 2
CHARGE 1
SPECIAL ALLEGATION

POSSESSION OR USE
OF A DEADLY WEAPON

JUL 14 2006

VC1016

RECEIVED

---

For the Charge of POSSESSION OR USE OF A DEADLY WEAPON,

WE, THE JURY FIND THE DEFENDANT, RANDY IGNACIO CHARGUALAF

[ ] Not Guilty

[ ] Guilty

If you unanimously find the Defendant "Not Guilty," your Foreperson will check the "Not Guilty" box, date and sign the form below. Move on to consider Charge 1B in Verdict Form 1B.

However, if you unanimously find the Defendant "Guilty," please have your Foreperson check the "Guilty" box, sign and date the form below. Move on to consider Charge 2 in Verdict Form 3.

If you are unable to decide whether the Defendant is guilty or not guilty of this charge, sign below. Move on to consider Charge 2 contained in Verdict Form 3.

_____
Foreperson

11-9-99
_____
Date

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam

JUL 10 2006

**Jerimie K.J. Duenas**
Deputy Clerk Superior Court of Guam

**ORIGINAL**

IN THE SUPERIOR COURT OF GUAM

PEOPLE OF GUAM,

v.

RANDY IGNACIO CHARGUALAF,
    Defendant



CRIMINAL CASE NO. CF317-97

VERDICT FORM 3
CHARGE 2

CONSPIRACY TO COMMIT ROBBERY
(AS A 2nd DEGREE FELONY)

RECEIVED

---

For the Charge of CONSPIRACY TO COMMIT ROBBERY (As a 2nd Degree Felony),

WE, THE JURY FIND THE DEFENDANT RANDY IGNACIO CHARGUALAF

[ ]  <u>Not Guilty</u>

[✓]  <u>Guilty</u>

If you unanimously find the Defendant "Not Guilty," your Foreperson will check the "Not Guilty" box, date and sign the form below.  Move on to consider Charge 3, in Verdict Form 4.

However, if you unanimously find the Defendant "Guilty," please have your Foreperson check the "Guilty" box, sign and date the form below.  Move on to consider consider Charge 3, in Verdict Form 4.

If you are unable to decide whether the Defendant is guilty or not guilty of this charge, sign below. Move on to consider Charge 3, in Verdict Form 4.


_____              11-9-99
    Foreperson                         Date

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

JUL 1 0 2006

Jerimie K.J. Duenas
Deputy Clerk Superior Court of Guam

**ORIGINAL**

IN THE SUPERIOR COURT OF GUAM

PEOPLE OF GUAM,

v.

RANDY IGNACIO CHARGUALAF,
    Defendant

CRIMINAL CASE NO. CF 317-97

VERDICT FORM 4
CHARGE 3

THEFT
(AS A MISDEMEANOR)

---

FOR THE CHARGE OF THEFT (As a Misdemeanor),

    WE, THE JURY FIND THE DEFENDANT, RANDY IGNACIO CHARGUALAF

    [ ]  <u>Not Guilty</u>

    [✓]  <u>Guilty</u>

    If you unanimously find the Defendant Not Guilty, your Foreperson will check the Not Guilty box, date and sign the form below. Move on to consider Charge 3A, PETTY THEFT (As a Misdemeanor), as a Lesser Included Offense in Verdict Form 3A.

    However, if you unanimously find the Defendant Guilty, please have your Foreperson check the Guilty box, sign and date the form below. Move on to consider Charge 4, in Verdict Form 5.

    If you are unable to decide whether the Defendant is guilty or not guilty of this charge, sign below. Move on to consider Charge 3A, PETTY THEFT (As a Misdemeanor), as a Lesser Included Offense in Verdict Form 3A.

_____
Foreperson

11-9-99
_____
Date

**ORIGINAL**

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam

JUL 10 2006

Jerimie K. B. Duenas
Deputy Clerk, Superior Court of Guam

IN THE SUPERIOR COURT OF GUAM

PEOPLE OF GUAM,

v.

RANDY IGNACIO CHARGUALAF,

    Defendant



CRIMINAL CASE NO. CF317-97

VERDICT FORM 5
CHARGE 4

POSSESSION OF A FIREARM
WITHOUT AN IDENTIFICATION CARD
(AS A FELONY)

---

For the Charge of POSSESSION OF A FIREARM WITHOUT AN

IDENTIFICATION CARD (As a Felony),

WE, THE JURY FIND THE DEFENDANT, RANDY IGNACIO CHARGUALAF

[✓] Not Guilty

[ ] Guilty

If you unanimously find the Defendant "Not Guilty," your
Foreperson will check the "Not Guilty" box, date and sign the
form below.  Move on to consider Charge 5, in Verdict Form 6.

However, if you unanimously find the Defendant "Guilty,"
please have your Foreperson check the "Guilty" box, sign and date
the form below.  Move on to consider Charge 5, in Verdict Form 6.

If you are unable to decide whether the Defendant is guilty
or not guilty of this charge, sign below. Move on to consider
Charge 5, contained in Verdict Form 6.


_____            _11 - 9 - 99_____
    Foreperson                              Date

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

JUL 1 0 2006

Jerimie K. J. Duenas
Deputy Clerk Superior Court of Guam

ORIGINAL

IN THE SUPERIOR COURT OF GUAM

PEOPLE OF GUAM,

v.

RANDY IGNACIO CHARGUALAF

    Defendant

CRIMINAL CASE NO. CF317-97

VERDICT FORM 6
CHARGE 5

POSSESSION OF A CONCEALED
FIREARM
(As a Felony)

---

    For the Charge of POSSESSION OF A CONCEALED FIREARM (As a Felony),

    WE, THE JURY FIND THE DEFENDANT, RANDY IGNACIO CHARGUALAF

[✓] <u>Not Guilty</u>


[ ] <u>Guilty</u>

    If you unanimously find the Defendant "Not Guilty," your Foreperson will check the "Not Guilty" box, date and sign the form below.  Stop here.

    However, if you unanimously find the Defendant "Guilty," please have your Foreperson check the "Guilty" box, sign and date the form below.  Stop here.

    If you are unable to decide whether the Defendant is guilty or not guilty of this charge, sign below. Stop here.


_____          11-9-99
          Foreperson                            Date

ORIGINAL

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam

JUL 10 2006

Jerimie K.J. Duenas
Deputy Clerk Superior Court of Guam

TERRY E. TIMBLIN
Attorney at Law
Suite 501C, GCIC Bldg.
414 W. Soledad Ave.
Hagåtña, Guam 96910
Telephone: (671) 477-1389
Facsimile: (671) 477-4809



FILED
SUPERIOR COURT
OF GUAM

DEC -3 AM 11: 15

ALFREDO M. BORJAS
CLERK OF COURT
BY:

Attorney for Defendant

RECEIVED

IN THE SUPERIOR COURT OF GUAM

| | | |
|---|---|---|
| PEOPLE OF GUAM | ) | CASE NO. CF0317-97 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | AFFIDAVIT OF RANDY IGNACIO |
| | ) | CHARGUALAF |
| RANDY IGNACIO CHARGUALAF | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

I, Randy I. Chargualaf, hereby declare under penalty of perjury as follows:

1.     I am the Defendant in the above matter and I make this Affidavit in support of my Motion to be confined at the Agana Detention Facility pending appeal.

2.     I am concerned for my safety, should I be confined at the Adult Correctional Facility in Mangilao as I have had previous differences with one of the guards there with respect to a mutual female acquaintance and am concerned that this may lead to a confrontation.

DATED: _____     _____
                                             RANDY IGNACIO CHARGUALAF

TERRY E. TIMBLIN
Attorney at Law
Suite 501C, GCIC Bldg.
414 W. Soledad Ave.
Hagåtña, Guam 96910
Telephone:    (671) 477-1389
Facsimile:    (671) 477-4809

Attorney for Defendant



FILED
SUPERIOR COURT
OF GUAM

'9? DEC -3 AM 11: 19

ALFREDO M. BORLAS
CLERK OF COURT
BY:_____

## IN THE SUPERIOR COURT OF GUAM

|  |  |  |
|---|---|---|
| PEOPLE OF GUAM | ) | CASE NO. CF0317-97 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MOTION TO BE CONFINED AT THE |
| | ) | AGANA DETENTION FACILITY |
| RANDY IGNACIO CHARGUALAF | ) | PENDING APPEAL |
| | ) | |
| Defendant, | ) | |

TO:    Attorney General of Guam, Prosecution Division

Please take notice that on the 23rd day of December, 1999, at 11:00 A.M., in the Superior

Court of Guam, the Defendant will move for an Order that he continue to be confined at the

Agana Detention Facility pending appeal.

### MEMORANDUM OF POINTS AND AUTHORITIES

Defendant has been confined at the Agana Detention Facility since his arrest on July 21,

1997. He is scheduled for sentencing on December 23, 1999 and anticipates appealing from the

judgment and sentence to be rendered at that time. Normally he would be transferred to the

Adult Correctional Facility in Mangilao following sentencing.

As indicated by the Affidavit of Randy I. Chargualaf, submitted herewith, he has had

previous differences with one of the guards at the Adult Correctional Facility with respect to a

mutual female acquaintance and is concerned that this may lead to a confrontation if he is

252

confined there. This request is only for the period pending appeal and, should his conviction be

affirmed, Defendant recognizes that the balance of his sentence would have to be served at the

Adult Correctional Facility.

DATED: 12/3/99

TERRY E. TIMBLIN, Attorney for
Defendant

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

MAY 1 9 2006

Jerimie K.J. Duenas
Deputy Clerk Superior Court of Guam

# VOUCHER FOR COMPENSATION OF
## COURT-APPOINTED COUNSEL

06555

## FELONY CASE
### SUPERIOR COURT OF GUAM

DATE: 3/2/99

PAYEE MANTANONA LAW OFFICE A Professional Corporation
ADDRESS 414 W Soledad Avenue Ste 601B
CASE Hagatna, Guam 96910
CASE NO. Telephone (671) 472-2666
Telecopier (671) 472-2663

People vs Randy Cheregualof
CF317-97

## A. TIME SPENT IN COURT:

| | | | |
|---|---|---|---|
| 1. Date 2/5/99 | No. of Hrs. 1.0 | x $ 75.00 | 75.00 |
| 2. Date | No. of Hrs. | x 75.00 | |
| 3. Date | No. of Hrs. | x 75.00 | |
| 4. Date | No. of Hrs. | x 75.00 | |

$75.00

## B. TIME SPENT IN PREPARATION:

| | | | |
|---|---|---|---|
| 1. Date 2-2-99/2-9-99 | No. of Hrs. 8.25 | x $ 50.00 | 412.50 |
| 2. Date 2-10-99/2-12-99 | No. of Hrs. 20.00 | x 50.00 | 1000.00 |
| 3. Date 2-16-99/2-17-99 | No. of Hrs. 7.25 | x 50.00 | 362.50 |
| 4. Date 2-18-99/2-19-99 | No. of Hrs. 1.5 | x 50.00 | 75.00 |

$1850.00

## C. EXPENSES OF REPRESENTATION:

1. 
2. 
3. 
4. 

## D. LESS COMPENSATION RECEIVED OR CLAIMS FILED EARLIER UNDER SEPARATE VOUCHER (S) FOR REPRESENTATION IN THIS CASE

NET AMOUNT CLAIMED $1,925.00

OFFICE OF THE ATTORNEY GENERAL
HAGATNA, GUAM

RECEIVED

I certify that the above claim is correct and just and that payment has not been received and, except as noted in item D, no payment or promise of payment has been requested or accepted for representation in the above case.

SIGNATURE OF PAYEE

66-0530311

PAYEE SS# OR TAXPAYER I.D. #

* For felony cases, this amount plus item D shall not exceed $7,500.00 the limit set by the Judicial Court.

## FOR COURT USE ONLY

Certification of Fund

Approved for Payment

Judge, Superior Court

Date: _____

Date: _____

# Rawlen M.T. Mantanona, P.C.

### First Savings & Loan Building
### 655 S. Marine Drive, Suite 102
### Tamuning GU 96911

Invoice submitted to:
Randy Chargualof
Superior Court of Guam

March 2, 1999

In Reference To:     *Criminal Case No. CF317-97*
Invoice #   11245

Professional services

|  |  | Hrs/Rate | Amount |
|---|---|---|---|
| 02/02/99 | Telephone conference with client regarding pro se suppression motion and People's motion. | 1.25 50.00/hr | 62.50 |
| 02/03/99 | Research in court identification. | 1.00 50.00/hr | 50.00 |
| 02/04/99 | Meeting with client on motions and research in cout identification. | 3.00 50.00/hr | 150.00 |
| 02/05/99 | Court appearance for hearing on motion cut off date. | 1.00 75.00/hr | 75.00 |
| 02/09/99 | Research in court identification. | 3.00 50.00/hr | 150.00 |
| 02/10/99 | Research and draft motion to suppress in court identifiation. | 6.00 50.00/hr | 300.00 |

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 02/11/99 | Research and draft suppression motion. | 7.00<br>50.00/hr | 350.00 |
| 02/12/99 | Drafted 404(b) motion to exclude prior bad acts, 403 argument to exclude in court identification and redraft other motions. | 7.00<br>50.00/hr | 350.00 |
| 02/16/99 | Research and draft motion to suppress, consent and nervousness arguments and draft motion to compel discovery. | 7.00<br>50.00/hr | 350.00 |
| 02/17/99 | Telephone conference with client as to status of motion. | 0.25<br>50.00/hr | 12.50 |
| 02/18/99 | Meeting with Jugde's staff as to motions hearing. | 0.25<br>50.00/hr | 12.50 |
| 02/19/99 | Telephone conference with attorney T. Fisher as to status, review plea for CM1544-98, and research People v. Santos 1999 Guam 1. | 1.25<br>50.00/hr | 62.50 |

| | | | |
|---|---|---|---|
| | For professional services rendered | 38.00 | $1,925.00 |
| | Previous balance | | $801.50 |
| | Balance due | | $2,726.50 |

Payment is due upon receipt of this statement. Thank you in advance for your prompt payment.

# VOUCHER FOR COMPENSATION OF
# COURT-APPOINTED COUNSEL

## FELONY CASE
### SUPERIOR COURT OF GUAM

DATE: 02/23/99

PAYEE _TRACE INVESTIGATIONS INC._
ADDRESS _Ste. 104F, 216 A Chln Santo Papa, Agana, Gu 96910_
CASE _PEOPLE_ VS _RADOICOVICH_
CASE NO. _CF317-97_

### A. TIME SPENT IN COURT:

|   |   |   |   |
|---|---|---|---|
| 1. Date _____ | No. of Hrs. _____ | x | 75.00 _____ |
| 2. Date _____ | No. of Hrs. _____ | x | 75.00 _____ |
| 3. Date _____ | No. of Hrs. _____ | x | 75.00 _____ |
| 4. Date _____ | No. of Hrs. _____ | x | 75.00 _____ |

### B. TIME SPENT IN PREPARATION:

|   |   |   |   |
|---|---|---|---|
| 1. Date _____ | No. of Hrs. _____ | x $ | 50.00 _____ |
| 2. Date _____ | No. of Hrs. _____ | x | 50.00 _____ |
| 3. Date _____ | No. of Hrs. _____ | x | 50.00 _____ |
| 4. Date _____ | No. of Hrs. _____ | x | 50.00 _____ |

### C. EXPENSES OF REPRESENTATION:

1. _Investigator's Fees Inv. No. 76_        $108.75
2. _____        _____
3. _____        _____        $108.75
4. _____        _____

### D. LESS COMPENSATION RECEIVED OR CLAIMS FILED EARLIER UNDER SEPARATE VOUCHER (S) FOR REPRESENTATION IN THIS CASE.

Note: Please reference attached Investigator's
Order.                                          **NET AMOUNT CLAIMED**        $108.75

I certify that the above claim is correct and just and that payment has not been received and, except as noted in item D, no payment or promise of payment has been requested or accepted for representation in the above case.

_____
SIGNATURE OF PAYEE

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

**PAYEE SS# OR TAXPAYER I.D. #**

* For felony cases, this amount plus item D shall not exceed $7,500.00 the limit set by the Judicial Court.

---

## FOR COURT USE ONLY
### VOUCHER VERIFIED

Certification of Fund

By: _____
Deputy Clerk
Date: _____

Approved for Payment

_____
Judge, Superior Court

FEB 01 2000

Date: _____

Superior Court of Guam
Guam Judicial Center
120 West O'Brien Drive
Agana Guam 96910
ATTN:

MATTER 970012

People v. Randy Charqualaf; CF317-97

| FEES | | HOURS | AMOUNT | |
|------|------|-------|--------|---|
| Apr-28-98 | Tele-conference to Defense Attorney's office. | 0.50 | 7.50 | RST |
| | Tele-conference with witnesses for defendant's case matter. | 0.50 | 7.50 | RST |
| | Meeting with witness regarding defendant's case matter. | 0.50 | 7.50 | RST |
| Feb-03-99 | Tele-conference with Detention Facility personnel. | 0.25 | 3.75 | RST |
| | Tele-conference with Detention Facility, personnel. | 0.50 | 7.50 | RST |
| | Conference with Detention Facility, personnel. | 0.25 | 3.75 | RST |
| | Conference with defendant at Guam Detention Facility. | 1.75 | 26.25 | RST |
| | Reviewed correspondence. | 0.25 | 3.75 | RST |
| | Reviewed correspondence. | 1.50 | 22.50 | RST |
| Feb-09-99 | Recieved correspondence regarding defendant's case status. | 0.25 | 3.75 | RST |
| | Tele-conference with Defense Attorney. | 0.25 | 3.75 | RST |
| Feb-10-99 | Conference with Defense Attorney. | 0.75 | 11.25 | RST |
| TOTAL FEES | | 7.25 | $108.75 | |

| | |
|---|---|
| TOTAL FOR THIS BILL | $108.75 |
| PREVIOUS BALANCE | $622.50 |
| PREVIOUS RECEIPTS | $622.50 |
| PLEASE PAY | $108.75 |

# VOUCHER FOR COMPENSATION OF
## COURT-APPOINTED COUNSEL

07284

# FELONY CASE
## SUPERIOR COURT OF GUAM

MANTANONA
LAW OFFICE
A Professional Corporation

DATE: 3/5/99

PAYEE ___ 414 W Soledad Avenue Ste 501B

ADDRESS ___ Hagatna, Guam 96910

CASE ___ Telephone (671) 472-6654 ___ People vs Randy Charguiaf

CASE NO. ___ Telecopier (671) 472-3551 ___ CF317-97

## A. TIME SPENT IN COURT:

| | | | |
|---|---|---|---|
| 1. Date 3/18/99 | No. of Hrs. .5 | x $ 75.00 | 37.50 |
| 2. Date | No. of Hrs. | x 75.00 | |
| 3. Date | No. of Hrs. | x 75.00 | |
| 4. Date | No. of Hrs. | x 75.00 | 37.50 |

## B. TIME SPENT IN PREPARATION:

| | | | |
|---|---|---|---|
| 1. Date 3-5-99/3-15-99 | No. of Hrs. 3.25 | x $ 50.00 | 162.50 |
| 2. Date 3/16/99 | No. of Hrs. 1.5 | x 50.00 | 75.00 |
| 3. Date 3/17/99 | No. of Hrs. .25 | x 50.00 | 12.50 |
| 4. Date 3/19/99 | No. of Hrs. .5 | x 50.00 | 25.00 | 275.00 |

## C. EXPENSES OF REPRESENTATION:

1. _____
2. _____
3. _____
4. _____

312.50

## D. LESS COMPENSATION RECEIVED OR CLAIMS FILED EARLIER UNDER SEPARATE VOUCHER (S) FOR REPRESENTATION IN THIS CASE.

NET AMOUNT CLAIMED  $312.50

**RECEIVED** *(stamp: OFFICE OF THE ATTORNEY GENERAL)*

I certify that the above claim is correct and just and that payment has not been received and, except as noted in item D, no payment or promise of payment has been requested or accepted for representation in the above case.

_____
SIGNATURE OF PAYEE

66-0530311
PAYEE SS# OR TAXPAYER I.D. #

* For felony cases, this amount plus item D shall not exceed $7,500.00 the limit set by the Judicial Court.

## FOR COURT USE ONLY

Certification of Fund

Approved for Payment

_____

_____
Judge, Superior Court

Date: _____

Date: _____

# Mantanona Law Office

### GCIC Building
### 414 W Soledad Avenue, Suite 601B
### Hagatna GU 96910

Invoice submitted to:
Randy Chargualof
Superior Court of Guam

April 5, 1999

In Reference To:  *Criminal Case No. CF317-97*
Invoice #   11359

Professional services

|  |  | Hrs/Rate | Amount |
|---|---|---|---|
| 03/05/99 | Telephone conference with client as to discovery motion. | 0.25 50.00/hr | 12.50 |
| 03/15/99 | Draft Ex Parte motion to shorten time, draft motion to withdraw, draft declaration, telephone conference with client and telephone conference with Assistant Attorney General. | 3.00 50.00/hr | 150.00 |
| 03/16/99 | Revisions on motions, file motions, telephone conference with Sam Taylor, review client fax and telephone conference with Assistant Attorney General Thomas Fisher. | 1.50 50.00/hr | 75.00 |
| 03/17/99 | Conference with court staff as to scheduling of hearing on motion to withdraw. | 0.25 50.00/hr | 12.50 |
| 03/18/99 | Court appearance to argue motion to withdraw. | 0.50 75.00/hr | 37.50 |

Randy Chargualof                                              Page    2

|            |                                      | Hrs/Rate   |   Amount  |
|------------|--------------------------------------|------------|-----------|
| 03/19/99   | Meeting with Attorney Timblin.       | 0.50       | 25.00     |
|            |                                      | 50.00/hr   |           |
|            | For professional services rendered   | 6.00       | $312.50   |
|            | Previous balance                     |            | $2,726.50 |
|            | Balance due                          |            | $3,039.00 |

Payment is due upon receipt of this statement. Thank you in advance for your prompt payment.

SUPERIOR COURT OF GUAM
MINUTE ENTRY

10

| TAPE NO: 2-143 | PAGE NO: 1 | COURT CONVENED AT: 11:00 X AM _ PM | DATE: 2/1/00 |

PRESENT: **JUDGE:** ALBERTO C. LAMORENA III, Presiding Judge
**CLERK:** EVELYN C. SANTOS

CASE NUMBER: CF317-97

CASE TITLE:
PEOPLE OF THE TERRITORY OF GUAM
vs
Randy _____ Quenalof

COUNSEL PRESENT:
PLAINTIFF: L. Papules
DEFENDANT: T. Sumbles

PROCEEDINGS: SENTENCING

RECEIVED

LOG NUMBER | DESCRIPTION

| CASE CALLED: (√)D appeared with D/A ()D not present w/ bench warrant $_____
3630 | ()D/A - no objections on PSI Report ()P - no objections on PSI Report
| ()D/A - comments on PSI Report ()P - comments on PSI Report
| ()D/A - comments on Restitution Report ()P - comments on Restitution Report
3625 | (√)D/A - Recommendations very minimum ()P - Recommendations
| ()D - Addresses the court ()D - No Comments

3625 | COURT SENTENCES THE DEFT TO: concurrent.
3917 | √ 10 Days/Mos/Yrs Confinement ()Time served credited 25 yrs annuity
| ()Probation for ____ Days/Mos/Yrs
| ____ Days/Mos/Yrs is suspended except ____ Days/Mos/Yrs to serve
| $_____ fine + $20 court costs $_____ is suspended ()Attend ATP
| ()12 AA Mtings ()Perform ____ community service ()D/L suspended ____ Days/Mos/Yrs
| ()Allowed to convert fine into community service
| ()Fine payable within probationary period
| ()Deft to pay restitution ()Restitution ordered at $_____
| ct= deny mot on recommend prosecution in DOC
| * RELEASE CONDITIONS * of deft.
| ()Report to probation once a month in person
| ()Shall obey all laws of Guam incorporate in Judgmt
| ()Shall not leave Guam w/o permission of court
| ()Shall submit to random drug/alcohol test
| ()Report to client services for counseling
| ()No alcohol
| ()Stay away from the victim(s)
| ()Stay away from all known felons
| ()May not enter alcohol establishments
| ()Probation to search home anytime
| ()Report to mental health; shall pay all and any costs
| ()Stay away from all firearms
| ()Firearms & firearms I.D. is forfeited to GPD for disposition
| ()$_____ of fine is suspended upon completion of high school
| within ____ Days/Mos/Yrs 3560 D/A= direct exam T. Ananich.
| ()Others: Thomas Ananich 3630 pltf= cross exam. T. Ananich.
|
| ()Govt to prepare judgment (D/A) to prepare judgment
| ()D/A to prepare confinement order
| D/A request 197. - return to victim from GPD lockup
| request to dismiss Rest. amount

272

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

JUL 08 2006

Jerimie K.J. Duenas
Deputy Clerk Superior Court of Guam

Case 1:05-cv-00014 Document 10-12 Filed 07/14/2006 Page 18 of 23

MARSHAL'S

TO

SERVE!!

89
09

IN THE SUPERIOR COURT OF GUAM

```
                              )    CASE NO. CF0317-
                              )
              ntiff,          )
                              )
        vs.                   )    SUBPOENA
                              )
RANDY IGNACIO CHARGUALAF      )
                              )
         Defendant,           )
_____)
```

OFFICE OF THE ATTORNEY GENERAL

RECEIVED

TO:  **CPL. THOMAS ANANICH**, Department of Corrections, Government of Guam

**YOU ARE HEREBY COMMANDED** to attend and give testimony as a witness before

the Honorable Presiding Judge Alberto C. Lamorena, III, in the Superior Court of Guam. located

at the Guam Judicial Center, 120 West O'Brien Drive. Hagåtña, Guam, on Wednesday, the 1st

day of February, 2000, at 11:00 a.m.  You are further commanded to appear each and every day

thereafter at said time and place, until you are dismissed by the court.

For failure to attend or answer as a witness, you may be deemed guilty of contempt of

court.

DATED: **2 8 JAN 2000**

ALFREDO M. BORLAS
Clerk of Court

By:  _EF Aplagun Jr._

Deputy Clerk

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

JUN 2 6 2006

Ryan T. Balajadia
Clerk of the Superior Court of Guam

**ORIGINAL**

Date Received : 1/28/2000
Date Assigned : 1/28/2000
Date Due :
Date To Return: 1/31/2000
Hearing Date : 2/01/2000

Issuing attorney:

PEOPLE OF THE TERRITORY OF GUAM )

        vs.

RANDY IGNACIO CHARGUALAF,
CANDELARIA QUIDACHAY MENDIOLA
aka "KANDI" and DON ALLEN BORJA
MENDIOLA aka "KEILANI",

        Defendants.

CASE NO. CF 317-97

AFFIDAVIT
OF SERVICE
OF NON-SERVICE
OF POSTING

ALFREDO M. BORJA
CLERK OF COURT

William T. Uncangco       first being duly sworn,    deposes and says:

That he/she is a Deputy Marshal of the Superior Court of Guam and a party not interested in the above-caption case. That he/she:
( ) served upon CPL. THOMAS ANANICH, D.O.C.

the below listed document(s) by delivering said documents to personally at W/K. AGA-A lock up on the 31 day of JAn , 00, at 3:30P.

( ) attempted to serve the below listed document(s) on the address thereon provided but was unable to effect such service for the following reason(s):

DOCUMENT(S) TO BE SERVED:

    SUBPOENA

DOCUMENT(S) FEES    : Attempts    2
                 Mileage    0

JOSEPH M. CRUZ
CHIEF MARSHAL, SUPERIOR COURT, GUAM

DATED: _____

By: _____

DEPUTY MARSHAL

I hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam

MAY 19 2006

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING
IS TRUE AND CORRECT. 6 G.C.A. 4308

Jerimia K.J. Duenas
Deputy Clerk Superior Court of Guam

Executed On 1/31/2000

ORIGINAL





IN THE SUPERIOR COURT

OF GUAM

THE PEOPLE OF GUAM,

CRIMINAL CASE NO. CF317-97

vs.

J U D G M E N T

RANDY IGNACIO CHARGUALAF,

Defendant.

RECEIVED

ATTORNEY GENERAL'S OFFICE - PROSECUTION DIVISION
2-200E Judicial Center Building
120 West O'Brien Drive
Agana, Guam 96910
Tel: (671) 475-3406 / Fax: (671) 477-3390

ORIGINAL

On the 31st day of July, 1997, the People of Guam filed an indictment charging the Defendant, RANDY IGNACIO CHARGUALAF, with SECOND DEGREE ROBBERY (As a 2nd Degree Felony), in violation of 9 GCA §§40.20(a)(3) and (b), a SPECIAL ALLEGATION of Possession and Use of a Deadly Weapon in the Commission of Second Degree Robbery, in violation of 9 GCA §80.37, CONSPIRACY TO COMMIT SECOND DEGREE ROBBERY (As a 2nd Degree Felony), in violation of 9 GCA §§13.30, 40.20(a)(3) and (b), THEFT (As a Misdemeanor), in violation of 9 GCA §§43.20(c) and 43.30(a), POSSESSION OF A FIREARM WITHOUT AN IDENTIFICATION CARD (As a Felony), in violation of 10 GCA §§60106 and 60121(e), and POSSESSION OF A CONCEALED FIREARM (As a Felony), in violation of 10 GCA §§60109, 60108(e) and 60121(c). The People additionally filed a NOTICE OF PRIOR FELONY CONVICTION, pursuant to 8 GCA §55.40(a).

On the 6th day of August, 1997, came the attorney for the Government and the Defendant appeared with counsel, and the Defendant entered pleas of not guilty to the charges.

On the 9th day of November, 1999, after a trial by jury, the jury returned verdicts of guilty to the charges of SECOND DEGREE ROBBERY (As a 2nd Degree Felony), SPECIAL ALLEGATION of Possession

and Use of a Deadly Weapon in the Commission of Second Degree Robbery, CONSPIRACY TO COMMIT SECOND DEGREE ROBBERY (As a 2nd Degree Felony, and THEFT (As a Misdemeanor).

The Court accepted the verdicts of the jury, and based on these verdicts, JUDGMENTS OF GUILTY are hereby entered on the charges.

Sentencing was held on 1st day of February, 2000. Present at the sentencing were Assistant Attorney General Leonardo M. Rapadas appearing for the People, Defendant, RANDY IGNACIO CHARGUALAF, appearing with counsel, Terrence E. Timblin. After counsel and Defendant were afforded an opportunity to address the Court, the Court proceeded with sentencing.

WHEREFORE, IT IS HEREBY ORDERED as follows:

1. That for the offense of Second Degree Robbery (As a 2nd Degree Felony), the Defendant is sentenced to serve a period of ten (10) years incarceration at the Department of Corrections, Mangilao, Guam ("DOC");

2. That for the Special Allegation of Possession and Use of a Deadly Weapon in the Commission of Second Degree Robbery (As a 2nd Degree Felony), the Defendant is sentenced to serve a period of 25 years imprisonment at DOC, to be served consecutive to the sentence for the Second Degree Robbery charge imposed in paragraph 1 above;

3. That for the offense of Conspiracy to Commit Second Degree Robbery (As a 2nd Degree Felony), the Defendant is sentenced to serve a period of ten (10) years incarceration at DOC, to be served concurrent to the sentence for the Second Degree Robbery charge imposed in paragraph 1 above;

4.    That for the offense of Theft (As a Misdemeanor), the Defendant is sentenced to serve a period of one (1) year incarceration at DOC, to be served concurrent to the sentence for the Second Degree Robbery charge imposed in paragraph 1 above.

**SO ORDERED, NUNC PRO TUNC,** this _____ day of _____, 2000.

_____
HONORABLE ALBERTO C. LAMORENA, III
PRESIDING JUDGE
SUPERIOR COURT OF GUAM

SUBMITTED BY:

_____
LEONARDO M. RAPADAS
Assistant Attorney General

Dated: ___2/25/00___

APPROVED AS TO FORM:

_____
TERRENCE E. TIMBLIN
Attorney for Defendant

Dated: ___2/28/00___

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam

MAY 19 2006

**Jerimie K.J. Duenas**
Deputy Clerk Superior Court of Guam

ORIGINAL

# VOUCHER FOR COMPENSATION OF
## COURT-APPOINTED COUNSEL

## FELONY CASE

### SUPERIOR COURT OF GUAM

DATE: 2/24/00

PAYEE      Terry E. Timblin
ADDRESS    Suite 501C, GCIC Bldg., 414 W. Soledad Ave., Agana, Guam 96910
CASE       People _____ VS ___ Randy _____
CASE NO.   CF0317-97

**A. TIME SPENT IN COURT:**

1. Date  See attached      No. of Hrs.  30.4      x $ 75.00   2280.00
2. Date _____     No. of Hrs. _____  x  75.00  _____
3. Date _____     No. of Hrs. _____  x  75.00  _____   2280.00
4. Date _____     No. of Hrs. _____  x  75.00  _____

**B. TIME SPENT IN PREPARATION:**

1. Date  See attached      No. of Hrs.  71.5      x $ 50.00   3575.00
2. Date _____     No. of Hrs. _____  x  50.00  _____
3. Date _____     No. of Hrs. _____  x  50.00  _____   3575.00
4. Date _____     No. of Hrs. _____  x  50.00  _____

**C. EXPENSES OF REPRESENTATION:**

1. _____          _____
2. _____          _____
3. _____          _____
4. _____          _____

**D. LESS COMPENSATION RECEIVED OR CLAIMS FILED EARLIER UNDER
SEPARATE VOUCHER (S) FOR REPRESENTATION IN THIS CASE.**          _____

                                            **NET AMOUNT CLAIMED**   5855.00

I certify that the above claim is correct and just and that payment has not been received and, except as noted in item D, no payment or promise of payment has been requested or accepted for representation in the above case.

_____
SIGNATURE OF PAYEE

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

_____
PAYEE SS# OR TAXPAYER I.D. #

* For felony cases, this amount plus item D shall not exceed $7,500.00 the limit set by the Judicial Court.

## FOR COURT USE ONLY

Certification of Fund

VOUCHER VERIFIED

By: _____
Deputy Clerk

Date: _____

_____
Approved for Payment

_____
Judge, Superior Court

Date: _____

IN COURT

| Date | Service | Hours |
|---|---|---|
| 3/23/99 | Attend Further Proceeding | 1.1 |
| 4/13/99 | Attend Hearing re Motion to Suppress Evidence | 2.6 |
| 5/6/99 | Attend Hearing re Motion to Withdraw | 2.0 |
| 5/10/99 | Attend Hearing re Motion to Compel Discovery and Suppress Bad Acts Evidence | 1.2 |
| 5/14/99 | Attend Hearing re Motion to Suppress Identification | 1.6 |
| 7/30/99 | Attend Trial Setting | 0.5 |
| 10/4/99 | Attend Pretrial Conference | 2.1 |
| 11/1/99 | Attend Trial: Jury Selection | 2.2 |
| 11/3/99 | Attend Trial: Opening Stmts, Evidence | 6.1 |
| 11/4/99 | Attend Trial: Evidence | 4.3 |
| 11/5/99 | Attend Trial: Discussion of Jury Instructions | 1.7 |
| 11/8/99 | Attend Trial: Evidence, Closing Arguments, Instructions | 3.4 |
| 11/9/99 | Attend Trial: Verdict | 0.8 |
| 2/1/00 | Attend Sentencing | 0.8 |

Total In Court

X $75

ja ~~28.4~~ OK
(30.4)
~~$2,280.00~~

OUT OF COURT

| Date | Service | Hours |
|---|---|---|
| 3/19/99 | Phone conference with Rawlen Mantanona | 0.2 |
| 3/19/99 | Conference with Rawlen Mantanona | 0.5 |
| 3/22/99 | Conference w Client at Agana Lockup | 1.2 |
| 3/23/99 | Review File, Discovery Materials | 1.4 |
| 3/24/99 | Phone Conference with Client | 0.3 |
| 3/25/99 | Review File, Discovery Materials | 3.1 |
| 3/29/99 | Phone Conference with Client | 0.2 |
| 3/30/99 | Review File, Discovery Materials | 2.4 |
| 3/31/99 | Review File, Discovery Materials | 1.3 |
| 3/31/99 | Phone Conference with Client | 0.2 |
| 4/1/99 | Review File, Discovery Materials | 2.5 |
| 4/1/99 | Phone conference with Rawlen Mantanona | 0.3 |
| 4/2/99 | Conference w Client at Agana Lockup | 1.4 |
| 4/2/99 | Phone Conference with Client | 0.3 |
| 4/5/99 | Phone conference with Rawlen Mantanona | 0.3 |
| 4/5/99 | Legal Research re Investigative Stops | 1.3 |
| 4/5/99 | Review Fax from Client | 0.2 |
| 4/5/99 | Draft Notice of Additional Authorities | 0.7 |
| 4/6/99 | Draft Notice of Additional Authorities | 0.4 |
| 4/6/99 | Review Fax from Client | 0.2 |

| Date | Description | Hours |
|---|---|---|
| 4/7/99 | Review Government's Opposition to Motion to Suppress | 0.3 |
| 4/7/99 | Conference w Client at Agana Lockup | 0.9 |
| 4/7/99 | Phone Conference with Client | 0.2 |
| 4/7/99 | Phone Conference with Tom Fisher | 0.2 |
| 4/7/99 | Phone Conference with Client | 0.2 |
| 4/7/99 | Phone Conference with Tom Fisher | 0.2 |
| 4/8/99 | Prepare for Motions Hearing | 1.1 |
| 4/8/99 | Phone Conference with Client | 0.2 |
| 4/8/99 | Phone Conference with Judge Lamorena's Chambers | 0.2 |
| 4/8/99 | Check Court for subpoenaed witnesses | 0.7 |
| 4/9/99 | Draft Reply to Opposition to Motion to Suppress | 4.8 |
| 4/10/99 | Draft Reply to Opposition to Motion to Suppress | 1.0 |
| 4/12/99 | Review Fax from Client | 0.2 |
| 4/12/99 | Revise Reply to Opposition to Motion to Suppress | 0.8 |
| 4/12/99 | Phone Conference with Client | 0.2 |
| 4/14/99 | Phone Conference with Client | 0.2 |
| 4/26/99 | Review Decision and Order re Motion to Suppress | 0.3 |
| 4/26/99 | Phone Conference with Client | 0.2 |
| 4/27/99 | Phone Conference with Client | 0.3 |
| 4/28/99 | Review Fax from Client | 0.2 |
| 4/28/99 | Phone Conference with Client | 0.2 |
| 4/28/99 | Draft Motion to Withdraw | 1.0 |
| 4/29/99 | Draft Affidavit in Support of Motion to Withdraw | 1.1 |
| 4/29/99 | Phone Conference with Client | 0.2 |
| 5/7/99 | Review Fax from Client | 0.2 |
| 5/10/99 | Review Fax from Client | 0.2 |
| 5/10/99 | Prepare for Motion Hearing | 0.5 |
| 5/12/99 | Phone Conference with David Highsmith | 0.3 |
| 5/12/99 | Draft letter to David Highsmith | 1.4 |
| 5/14/99 | Review Fax from Client | 0.2 |
| 5/14/99 | Phone Conference with Mark Williams | 0.4 |
| 5/18/99 | Phone Conference with Client | 0.2 |
| 5/20/99 | Draft letter to Tom Fisher | 0.4 |
| 5/26/99 | Review Additional Discovery | 0.4 |
| 7/16/99 | Review Decision and Order re Motion to Suppress Identification, etc | 0.3 |
| 7/19/99 | Draft letter to Client | 0.3 |
| 7/23/99 | Phone Conference with Client | 0.4 |
| 8/6/99 | Phone Conference with Client | 0.3 |
| 8/26/99 | Review Additional Discovery Materials | 0.8 |
| 8/27/99 | Att'd Review of Related Case at Clerk's Office | 0.7 |
| 9/9/99 | Draft letter to Tom Fisher | 0.5 |
| 9/21/99 | Phone Conference with Tom Fisher | 0.2 |
| 9/22/99 | Phone Conference with Client | 0.2 |
| 9/22/99 | Review File, Trial Preparation | 4.3 |
| 9/28/99 | Review File, Trial Preparation | 2.4 |
| 10/1/99 | Phone Conference with Client | 0.2 |
| 10/4/99 | Phone Conference with Tom Fisher | 0.2 |

| Date | Description | Hours |
|---|---|---|
| 10/7/99 | Phone Conference with Tom Fisher | 0.2 |
| 10/12/99 | Phone Conference with Tom Fisher | 0.2 |
| 10/13/99 | Phone Conference with Tom Fisher | 0.2 |
| 10/14/99 | Review Exhibts at GPD Property Section | 1.9 |
| 10/14/99 | Conference w Client at Agana Lockup | 1.0 |
| 10/15/99 | Phone Conference with AG Investigator Duarte | 0.2 |
| 10/15/99 | Review Exhibts at GPD Property Section | 0.8 |
| 10/18/99 | Phone Conference with Client | 0.2 |
| 10/18/99 | Phone Conference with Judge Lamorena's Chambers | 0.2 |
| 10/18/99 | Phone Conference with Client | 0.2 |
| 10/19/99 | Phone Conference with Client | 0.2 |
| 10/19/99 | Phone Conference with Judge Lamorena's Chambers | 0.2 |
| 10/19/99 | Phone Conference with Marshalls | 0.2 |
| 10/20/99 | Phone Conference with Prosecutor's Office | 0.2 |
| 10/20/99 | Review Additional Discovery Material | 0.2 |
| 10/26/99 | Legal Research re Interest in case, Draft Motion in Limine | 0.4 |
| 10/29/99 | Phone Conference with Judge Lamorena's Chambers | 0.2 |
| 10/29/99 | Phone Conference with Client | 0.2 |
| 10/29/99 | Phone Conference with Anita Sukola, Atty for Co-Def | 0.2 |
| 10/29/99 | Phone Conference with Terry Long, Atty for Co-Def | 0.2 |
| 11/1/99 | Prepare Subpoenas | 0.2 |
| 11/2/99 | Trial Preparation | 2.3 |
| 11/3/99 | Prepare Closing Argument | 1.6 |
| 11/4/99 | Legal Research re Evidence Admitted for Limited Purpose | 0.4 |
| 11/4/99 | Review Proposed Jury Instructions | 0.5 |
| 11/4/99 | Draft Instruction re Evidence Admitted for Limited Purpose | 0.3 |
| 11/4/99 | Prepare Closing Argument | 1.8 |
| 11/5/99 | Phone Conference with Witness's Employer | 0.2 |
| 11/5/99 | Phone Conference with Tom Fisher | 0.2 |
| 11/5/99 | Phone Conference with Judge Lamorena | 0.2 |
| 11/5/99 | Review Amended Jury Instructions | 0.2 |
| 11/5/99 | Prepare Closing Argument | 1.1 |
| 11/5/99 | Phone Conference with Witness, Benjamin Certeza | 0.2 |
| 11/9/99 | Conference w Client | 0.4 |
| 11/10/99 | Phone Conference with Client | 0.3 |
| 11/24/99 | Phone Conference with Client | 0.3 |
| 11/30/99 | Draft Motion re Confinement Pending Appeal | 0.5 |
| 12/2/99 | Draft Affidavit in support of Motion re Confinement Pending Appeal | 0.3 |
| 12/2/99 | Phone Conference with Client | 0.2 |
| 12/7/99 | Phone Conference with Client | 0.2 |
| 12/9/99 | Phone Conference with Tom Fisher | 0.2 |
| 12/9/99 | Draft Letter to Dept of Corrections | 0.5 |
| 12/14/99 | Review Oppositon to Motion re Confinement Pending Appeal | 0.2 |
| 12/22/99 | Phone Conference with Probation Dept. | 0.3 |
| 12/22/99 | Phone Conference with Client | 0.2 |
| 1/25/00 | Phone Conference with Probation Dept. | 0.2 |
| 1/26/00 | Review Presentence Report | 0.3 |

| Date | Description | Hours |
|---|---|---|
| 1/27/00 | Conference w Client at Agana Lockup | 0.8 |
| 1/27/00 | Phone Conference with Client | 0.3 |
| 1/27/00 | Draft Subpoena | 0.3 |
| 2/1/00 | Phone Conference with Client | 0.2 |
| 2/22/00 | Phone Conference with Lenny Rapadas | 0.2 |
| 2/23/00 | Phone Conference with Lenny Rapadas | 0.2 |
| 2/24/00 | Legal Research re Reduction of Sentence | 0.3 |
| 2/24/00 | Draft Fax Message to Lenny Rapadas | 0.3 |

Total Out of Court                                                     71.5

X $50                                                               $3,575.00

Total Billing                                                       $5,855.00

IN THE SUPERIOR COURT

PEOPLE OF GUAM )
)
)
vs. )
)
Randy I. Chargualaf, )
)
Defendant(s) )

CASE NUMBER CF 0317-97

FILED
SUPERIOR COURT
OF GUAM

MAR 15 '00 11:43

ALFREDO M. BORJAS
CLERK OF COURT

BY:

RECEIVED

NOTICE OF ENTRY ON DOCKET

TO: **OFFICE OF THE ATTORNEY GENERAL**
   **ATTORNEY TERRENCE E. TIMBLIN**

On **MARCH 15, 2000,** at **11:00 A.M.,** the **Judgment filed March 09, 2000** was entered
on the docket in this matter.

Date: **MARCH 15, 2000**

Richard Martinez
Acting-Clerk of Court
Superior Court of Guam

By: _____

Deputy Clerk

DECLARATION OF MAILING

On **MARCH 15, 2000,** after I had enclosed and sealed a copy of the **NOTICE OF
ENTRY ON DOCKET** in an envelope addressed to the individual(s) in said notice, I caused the same
envelope(s) with postage affixed to be placed in the U.S. mailbox.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE
AND CORRECT.

Date: **MARCH 15, 2000**

_____
Declarant

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

MAY 1 9 2006

**Jerimie K.J. Duenas**
Deputy Clerk Superior Court of Guam

# IN THE SUPERIOR COURT OF GUAM

| | | |
|---|---|---|
| PEOPLE OF GUAM | ) | CASE NO. CF0317-97 |
| Appellee, | ) ) ) | *CR A0D - 002* |
| vs. | ) ) | NOTICE OF APPEAL |
| RANDY IGNACIO CHARGUALAF | ) ) | |
| Appellant, | ) ) | |

TO THE CLERK OF THE SUPERIOR COURT OF GUAM

Pursuant to the Rules of Appellate Procedure for the Supreme Court of Guam, notice of appeal is hereby given:

1)     This appeal is taken from the Judgment entered on March 9, 2000;

2)     Appellant was indicted for Second Degree Robbery as a Second Degree Felony, a Special Allegation of Possession and Use of a Deadly Weapon in the Commission of a Felony, Conspiracy to Commit Second Degree Robbery; Theft as a Misdemeanor, Possession of a Firearm Without an Identification Card, and Possession of a Concealed Firearm; and convicted of Second Degree Robbery as a Second Degree Felony, a Special Allegation of Possession and Use of a Deadly Weapon in the Commission of a Felony, Conspiracy to Commit Second Degree Robbery; and Theft as a Misdemeanor, on November 9, 1999;

3)     He was sentenced to 35 years incarceration and is not currently released on bail.

Dated this 14th day of March, 2000.

TERRY E. TIMBLIN
Attorney at Law
Suite 501C, GCIC Bldg.
414 W. Soledad Ave.
Hagåtña, Guam 96910
Telephone: (671) 477-1389
Facsimile: (671) 477-4809
Attorney for Appellant

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam

MAY 19 2006

Jerimie K.J. Duenas
Deputy Clerk Superior Court of Guam

TERRY E. TIMBLIN
Attorney at Law
153 Martyr St., 1st Fl.
Hagåtña, Guam 96910
Telephone: (671) 472-4472/77
Facsimile: (671) 477-4809

Attorney for Defendant/Appellant

 

IN THE SUPERIOR COURT OF GUAM

| | | |
|---|---|---|
| PEOPLE OF GUAM | ) | CASE NO. CRA00-002 |
| | ) | |
| Plaintiff/Appellee, | ) | Superior Court Case No. CF0317-97 |
| | ) | |
| vs. | ) | DESIGNATION OF CLERK'S |
| | ) | RECORD |
| RANDY IGNACIO CHARGUALAF | ) | |
| | ) | |
| Defendant/Appellant, | ) | |

Pursuant to Rule 13(a) of the Rules of Appellate Procedure for the Supreme Court of

Guam, Defendant/Appellant hereby submits his Designation of Clerk's Record:

| | DOCUMENT | DOCKET NO. |
|---|---|---|
| 1. | Indictment | 18 |
| 2. | Don Mendiola Plea Agreement | 66 |
| 3. | Candalaria Mendiola Plea Agreement | 85 |
| 4. | Motion to Exclude ID Testimony | 97 |
| 5. | Opposition | 98 |
| 6. | Second Motion to Exclude ID Testimony | 157 |
| 7. | Motion to Dismiss and Suppress Evidence | 158 |
| 8. | Notice of Additional Authorities | 174 |
| 9. | Opposition | 175 |



10.    Opposition                        177

11.    Reply to Opposition                185

12.    Decision and Order                 187

13.    Decision and Order                 205

14.    Judgment                           285

15.    Notice of Appeal                   290

16.    Trial Court Docket Sheet

DATED: 8/25/00

TERRY E. TIMBLIN, Attorney for
Defendant/Appellant

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

MAY 1 9 2006

Jerimie K.J. Duenas
Deputy Clerk Superior Court of Guam

ATTORNEY GENERAL'S OFFICE - PROSECUTION DIVISION
2-200E Judicial Center Building
120 West O'Brien Drive
Hagåtña, Guam 96910
Tel: (671) 475-3406 / Fax: (671) 477-3390

**IN THE SUPERIOR COURT OF GUAM**

THE PEOPLE OF GUAM,

vs.

RANDY IGNACIO CHARGUALAF
DOB: 05/23/70
SSN: 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

            Defendant.

)
)
)
)
)
)
)
)
)
)
)

CRIMINAL CASE NO. **CM1544-98**
GPD REPORT NO. **98-21353**
CRIMINAL CASE NO. **CF317-97**
GPD REPORT NO. **97-17453**

**J U D G M E N T**

On **February 6, 2001**, came the attorney for the People, Assistant Attorney General **JOCELYN M. RODEN,** and for the Defendant appeared with **TERRENCE E. TIMBLIN,** counsel, and for the Defendant having moved to change his plea of NOT GUILTY to that of GUILTY to the offense of **ASSAULT (As a Misdemeanor)** in **CM1544-98**, in violation of 9 GCA §19.30(a)(1) and (e).

The Court informed the Defendant of the effect of the plea entered and asked him whether he insists on his plea or not.

The Defendant persisted on his plea of GUILTY of the offense of **ASSAULT (As a Misdemeanor)** in **CM1544-98.**

The Court then addressed the Defendant personally and found that the plea is made voluntarily with an understanding of the nature of the charge and consequences of his plea. The Court further found to its satisfaction that there is a factual basis for the plea.

ORIGINAL

The Court accepts Defendant's plea of GUILTY and based on his plea, a JUDGMENT of GUILTY is hereby entered. Sentencing was held on **February 6, 2001.**

**WHEREFORE, IT IS HEREBY ORDERED** as follows:

That for the offense of **ASSAULT (As a Misdemeanor)** in **CM1544-98**, the Defendant, **RANDY IGNACIO CHARGUALAF**, is sentenced as follows:

1.  Defendant shall serve ten (10) days at the Department of Corrections, with credit for time served, **concurrent** to the sentence imposed in **CF317-97.**

2.  Defendant shall be placed on supervised parole for one (1) year, **concurrent** with the parole term imposed in **CF317-97;**

3.  In addition to the standard conditions imposed by the Parole Board and the Parole Services Division, the People recommend and the defendant agrees to abide by the following recommended conditions, **in addition** to the recommendations of parole imposed in **CF317-97:**

    a.  Defendant shall stay away, directly and indirectly, from the victim, **NEMESIO FRANILISO.** The Defendant shall not contact the same by telephone, in writing, and/or through a third party, including a family member or friend;

    b.  Defendant shall stay away from the residence, dwelling, school, or place of employment of the victim, **NEMESIO FRANILISO,** or any other specified place;

    c.  Defendant shall refrain from threatening to commit or from committing acts of violence against, or from harassing, or annoying **NEMESIO FRANILISO;**

    d.  Defendant shall obey all federal and local laws of Guam; and

JUDGMENT - P. vs. RANDY IGNACIO CHARGUALAF
Criminal Case No. CM1544-98

Page 3

    e.   Defendant shall comply with any other condition imposed by the court or the Parole Board.

Defendant shall report to the Parole Office for intake and processing within forty-eight (48) hours after sentencing.

The Defendant understands, pursuant to 9 GCA § 80.70(c), that if he is recommitted upon his revocation of parole, the term of further imprisonment upon such re-commitment and of any subsequent re-parole or re-commitment under the same sentence shall be fixed by the Guam Parole Board but shall not exceed in length the longer of the unserved balance of (1) the parole term provided by 9 GCA § 80.70(b); or (2) the remainder of the original sentence determined from the date of conviction. The Defendant further understands that if such parole is revoked at any point in its duration, it can result in the Defendant's serving the entire parole term in prison.

**SO ORDERED, NUNC PRO TUNC**, this _____ day of MAR - 2 2001 , 2001.

Received for Service

3/6/01 _____ M

At _____ 19

Marshal, Superior Court
Guam

Original Signed By:
Hon. Alberto C. Lamorena, III

_____

**HONORABLE ALBERTO C. LAMORENA, III**
**PRESIDING JUDGE**
**SUPERIOR COURT OF GUAM**

I hereby certify that the foregoing is a full, true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam

JUN 2 6 2006

Ryan T. Balajadia
Deputy Clerk, Superior Court of Guam

Submitted by:

Approved as to form:

_____

**JOCELYN M. RODEN**
Assistant Attorney General

Dated: February 9, 2001

_____

**TERRENCE E. TIMBLIN**
Attorney for Defendant

Dated: 2/12/01

(VTK)

HOWARD TRAPP INCORPORATED
200 Saylor Building
139 Chalan Santo Papa
Hagåtña, Guam 96910
Telephone (671) 477-7000

Substituting attorney for defendant
Randy Ignacio Chargualaf





SUPERIOR COURT OF GUAM

------------

RECEIVED

THE PEOPLE OF GUAM,           (        Case No. CF 0317-97
                             )
            Plaintiff,       (        SUBSTITUTION OF ATTORNEYS
                             )
        vs.                  (
                             )
RANDY IGNACIO CHARGUALAF, et al., (
                             )
            Defendants.      (


------------

        Randy Ignacio Chargualaf, one of the defendants herein,

substitutes Howard Trapp Incorporated, Howard Trapp, Esq., as his

retained attorney of record in the above-entitled action, in the

place and  stead of Terrence E. Timblin, Esq., his court-appointed

attorney of  record  in  the  above-entitled  action,  each  of  the

--------------------

ORIGINAL

(SUBSTITUTION OF ATTORNEYS)
Case No. CF 0317-97

undersigned consenting hereto.

      Dated at Mangilao, Guam, this 18th day of September,

2002.

_____
RANDY IGNACIO CHARGUALAF
Defendant

      Dated at Hagåtña, Guam, this 18th day of September, 2002.

_____
TERRENCE E. TIMBLIN
Withdrawing attorney
  for defendant Randy
  Ignacio Chargualaf

_____
HOWARD TRAPP
For HOWARD TRAPP INCORPORATED
Substituting attorney
  for defendant Randy
  Ignacio Chargualaf

      APPROVED AND SO ORDERED.

      Dated at Hagåtña, Guam, this _____ day of September,

2002.

2 0 NOV 2002

_____
HONORABLE ALBERTO C. LAMORENA, III
Presiding Judge
Superior Court of Guam

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

MAY 1 9 2006

Jerime K.J. Duenas
Deputy Clerk Superior Court of Guam

(DOCUMENT\SUBATTY.RChargualaf)

2

# VOUCHER FOR COMPENSATION OF
## COURT-APPOINTED COUNSEL

19510

MISDEMEANOR CASE ~~FELONY~~

### SUPERIOR COURT OF GUAM

DATE: _____

PAYEE _____

ADDRESS _____

CASE _____ VS _____

CASE NO. _____

RECEIVED

**A. TIME SPENT IN COURT:**

1. Date _____ No. of Hrs. _____ x $ 75.00 _____
2. Date _____ No. of Hrs. _____ x 75.00 _____
3. Date _____ No. of Hrs. _____ x 75.00 _____
4. Date _____ No. of Hrs. _____ x 75.00 _____

**B. TIME SPENT IN PREPARATION:**

1. Date _____ No. of Hrs. _____ x $ 50.00 _____
2. Date _____ No. of Hrs. _____ x 50.00 _____
3. Date _____ No. of Hrs. _____ x 50.00 _____
4. Date _____ No. of Hrs. _____ x 50.00 _____

**C. EXPENSES OF REPRESENTATION:**

1. _____ _____
2. _____ _____
3. _____ _____
4. _____ _____

**D. LESS COMPENSATION RECEIVED OR CLAIMS FILED EARLIER UNDER SEPARATE VOUCHER (S) FOR REPRESENTATION IN THIS CASE.** _____

**NET AMOUNT CLAIMED** _____

I certify that the above claim is correct and just and that payment has not been received and, except as noted in item D, no payment or promise of payment has been requested or accepted for representation in the above case.

_____
SIGNATURE OF PAYEE

_____
PAYEE SS# OR TAXPAYER I.D. #

\* For felony cases, this amount plus item D shall not exceed $7,500.00 the limit set by the Judicial Court.

## FOR COURT USE ONLY

Certification of Fund

VOUCHER VERIFIED
BY: _Jacqueline S.C. Terlaje_
Deputy Clerk
Date: MAR 2 0 2008

_____

Date: _____

Approved for Payment

_____
Judge, Superior Court

Date: _____

# Rawlen M.T. Mantanona, P.C.

### First Savings & Loan Building
### 655 S. Marine Drive, Suite 102
### Tamuning GU 96911

Invoice submitted to:
Randy Chargualof
Superior Court of Guam

December 2, 1998

In Reference To: *Criminal Case No. CF317-97*
Invoice #   11086

Professional services

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 11/05/98 | Telephone conference with client. | 0.50 50.00/hr | 25.00 |
| 11/06/98 | Telephone conference with witness Joe Wusstig. | 0.28 50.00/hr | 14.00 |
| | For professional services rendered | 0.78 | $39.00 |
| | Previous balance | | $1,175.00 |
| | Balance due | | $1,214.00 |

Payment is due upon receipt of this statement. Thank you in advance for your prompt payment.

# Mantanona Law Office

**GCIC Building**
414 W Soledad Avenue, Suite 601B
Hagatna GU 96910

Invoice submitted to:
Randy Chargualof
Superior Court of Guam

May 6, 1999

In Reference To:     *Criminal Case No. CF317-97*
Invoice #     11439

Professional services

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 04/05/99 | Telephone conference with Attorney Timblin on strategy of motion to suppress and witnesses needed. | 0.25<br>50.00/hr | 12.50 |
| | For professional services rendered | 0.25 | $12.50 |
| | Previous balance | | $3,039.00 |
| | Balance due | | $3,051.50 |

Payment is due upon receipt of this statement. Thank you in advance for your prompt payment.

# IN THE SUPERIOR COURT OF GUAM

PEOPLE OF GUAM,

          Plaintiff,

          versus

RANDY IGLESIAS CHARGUALAF, et al.,

          Defendants.

)
)
)
)
)
)
)
)
)
)

SUPERIOR COURT CASE NO:
CF0317-97

**TABLE OF CONTENTS**

## REPORTER'S TRANSCRIPT OF PROCEEDINGS

| TAB: | Date: | Proceedings: |
|------|-------|--------------|
| 1 | August 18, 1998 | Continued Further Proceedings |
| 2 | August 21, 1998 | Criminal Trial Setting |
| 3 | February 5, 1999 | Further Proceedings |
| 4 | July 30, 1999 | Criminal Trial Setting |
| 5 | November 1, 1999 | Motion *In Limine* |
| 6 | February 1, 2000 | Sentencing Hearing |

COPY



*Jeanette B. Roberts, Court Transcriber, Superior Court of Guam*

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM,<br>　　　　　　　　Plaintiff,<br>versus<br>DON A.B. MENDIOLA,<br>　　　　　　　　Defendant. | SUPERIOR COURT CASE NO:<br>CF0352-97 |
| PEOPLE OF GUAM,<br>　　　　　　　　Plaintiff,<br>versus<br>RANDY IGLESIAS CHARGUALAF, et al.,<br>　　　　　　　　Defendants. | SUPERIOR COURT CASE NO:<br>CF0317-97<br><br>**CONTINUED FURTHER<br>PROCEEDINGS**<br><br>August 18, 1998 |

## REPORTER'S TRANSCRIPT OF PROCEEDINGS

BEFORE:

### THE HONORABLE JOAQUIN V.E. MANIBUSAN, JR.
JUDGE, SUPERIOR COURT OF GUAM

A P P E A R A N C E S:

For the People:

**DAVID SULLIVAN, Esquire**
OFFICE OF THE ATTORNEY GENERAL
Hagåtña, Guam

For the Defendant:

**TERRENCE LONG, Esquire**
ASSISTANT PUBLIC DEFENDER
PUBLIC DEFENDER SERVICE CORPORATION
Hagåtña, Guam

*Jeanette B. Roberts, Court Transcriber, Superior Court of Guam*



1        THE CLERK:    Your Honor, we're on the record in

2   CF317-97; *People Of Guam versus Don A.B. Mendiola*.    This is

3   a continued further proceedings.    Defendant is present,

4   confined, with Counsel Terrence Long.    Mr. David Sullivan

5   for the Government.

6        MR. TERRENCE LONG:    Good afternoon, Your Honor.

7        THE COURT:    Good afternoon.

8        MR. DAVID SULLIVAN:    Good afternoon, Your Honor.

9        MR. LONG:    Your Honor, this hearing I believe

10  was scheduled for two purposes; one would be to check on

11  how far along the Government's case is involving the co-

12  defendant, I believe his name is Chargualaf, because Don

13  Mendiola made an agreement with the Government, which he's

14  already entered a guilty plea under, and part of that

15  agreement is that he would cooperate with them in that

16  prosecution, which he's done to this point.    I believe the

17  Government doesn't have a trial date yet for Chargualaf,

18  and I'm not sure why that is, but nothing is on calendar as

19  far as I know.    And the Government, in recognition of

20  Mr. Mendiola's cooperation so far, and also in recognition

21  of the fact that he's been in custody for over a year

22  already, I believe they're prepared to agree that he be

23  released today pending further action.

24       MR. SULLIVAN:    Your Honor, that is what I

25  understand my ... my brief is.    The -- Of course, Attorney

1    Moore is the one that's handling this case, but as Mr. Long
2    has explained it, that's exactly the way I understand it.
3    It's not clear when the Chargualaf case will come to trial,
4    and Mr. Mendiola has spent, I believe, almost a year in
5    jail already.  He has cooperated with the Government.  We
6    would like to have him moved to a more comfortable
7    environment in terms of his having cooperated with us.  And
8    what's been represented to us is that his father is able
9    and willing to allow him to stay at the family ranch if --
10   and that being the case, if that turns out to be the case,
11   we don't oppose any kind of release, but we do want rather
12   closely controlled conditions of release.  Specifically,
13   we'd request that he be required to report to Probation and
14   do it weekly, and start out with reporting to Probation
15   either today or tomorrow depending on convenience; that
16   during his period of release, he not be allowed to use or
17   possess drugs or alcohol -- drugs, alcohol or firearms;
18   that he permit the search of his person, his vehicle, and
19   his residence for those items.  We would like him placed on
20   house arrest.  Now apparently it is not possible to arrange
21   a genuine third party custodian for him for some reason,
22   which I'm not privy to, but basically he would be on his
23   honor to stay at the family ranch and not go anyplace.  If
24   he were to do so, then of course he would violating the
25   conditions of his release and we would seek an arrest

1   warrant.  And no contact with his co-defendants of any

2   kind.  And then a matter that seems to be -- it's sort of

3   redundant because, after all, we're asking he'd be on house

4   arrest, but specifically, we want him not in the area of

5   the Dallas Lounge at any time.  There are allegations that

6   apparently some people attached some weight to that he has

7   engaged in prostitution in the past in that area and we

8   don't want him there.  There may be other conditions, of

9   course, the Court would impose, like, obey all laws and

10  stay on Guam and so forth, but those are our core concerns.

11          THE COURT:   Mr. Long?

12          MR. LONG:   Your Honor, we -- yeah, we pretty

13  much had an idea that these were going to be the

14  Government's requests and we don't have any ... any problem

15  with any of those conditions.  The one thing that I would

16  consider, Your Honor, or that I would like to bring to the

17  Court's attention is that putting him under house arrest, I

18  think, there's some merit in that, but I'm thinking that it

19  might be -- well, I know that he would ... he would benefit

20  from being able to leave the house maybe for a short

21  duration at a set time for personal reasons; to -- you

22  know, do a little shopping to pick up a few things.  He'd

23  be less dependent on others around him that way.  I'm

24  thinking maybe he needs to run to the store or something,

25  and I was thinking that if the Court could allow him maybe

1 a two hour period during the day, for instance, from 10 in
2 the morning to 12 noon, I don't believe that that would
3 be -- that would offer him very great opportunities to get
4 himself into trouble. It certainly would make it easier
5 for him. My thoughts are, Your Honor, down the road if
6 this works out, we'd be asking the Court to relax the house
7 arrest somewhat and maybe make it a curfew and allow him to
8 actually go out and try to get a legitimate job during the
9 day and ... and that sort of thing, but for now we're
10 content with the house arrest but we would ask that he be
11 allowed just a two hour window each day, let's say from 10
12 in the morning to ... to noon where he could actually run a
13 few errands and take care of a few personal matters.

14 MR. SULLIVAN: Your Honor, I would think that --
15 I don't know what the physical condition of his father is,
16 whether his father is able to accompany him or there's some
17 other responsible person that could accompany him. If he's
18 accompanied, we wouldn't have an objection to that but we
19 would basically want to stay with the house arrest
20 condition. And I omitted something, it's not on this sheet
21 of paper, it's -- I'm not sure whether it's become a part
22 of the standard conditions of release of Superior Court or
23 not but we would request drug testing when the Probation
24 Office deems it prudent. And we ... we actually do feel
25 that two hours alone is enough for Mr. Mendiola to get

1   himself into quite a mess, if given a fair opportunity, and

2   that's a fair opportunity.  We would like to see him --  If

3   he's going to go out for any kind of activity, that he be

4   accompanied by his father or some other responsible adult

5   that Probation accepts and Probation thinks will do the

6   job.

7           MR. LONG:   Your Honor, another way ... another

8   way of ... of alleviating concerns about a two hour period

9   of time which he could run some personal errands, I don't

10  think it would be any hardship for him to call Probation

11  and let them know where he's going to go; if he's going to

12  go out for two hours to do a little shopping or something.

13          You could do that, couldn't you, Don?

14          THE DEFENDANT:   (Response not audible.)

15          MR. LONG:   (Indiscernible - inaudible) where

16  you're gonna go and just give them a call and let them

17  know?

18          THE DEFENDANT:   (Response not audible.)

19          MR. LONG:   That would afford Probation an

20  opportunity, if they wanted to, they could check up on him

21  and make sure he's going to the store he says he's gonna go

22  to, or maybe the restaurant or whatever it is he's gonna do

23  for that two hour period.

24          MR. SULLIVAN:   Well, that's ... that's a

25  reasonable suggestion in that it puts -- allows Probation

*Jeanette B. Roberto, Court Transcriber, Superior Court of Guam*

1    to decide, but the misfortune is that there's nobody from

2    Probation sitting here.  They may not want the burden.

3    We'd again ask for him to be accompanied.  This is just --

4    Two hours is a lot of time and it's just -- I think it's

5    ... it's stretching the leash too far and we could have

6    very bad results.  And, of course, we have a selfish

7    interest in this apart from Mr. Mendiola's welfare, which

8    is if he manages to get himself arrested for something, his

9    value as a ... as a witness in the coming case will be

10   diminished, so we'd like to see him not have any troubles

11   with the law between now and the trial, and a good way to

12   do that is to ... is to have him on house arrest with his

13   father acting as a chaperone if he needs to go someplace.

                    *[Pause in proceedings.]*

15              THE COURT:    Are we saying that he's not ready to

16   be sentenced yet?

17              MR. SULLIVAN:    No, Your Honor, he's not.

18              MR. LONG:    No, Your Honor, he's not.

19              THE COURT:    Because of the trial that's pending?

20              MR. SULLIVAN:    That's right.

21              MR. LONG:    Yeah.  I think the Government --

22              THE COURT:    -- And so ... so ultimately that

23   determines the recommendation that the Government will have

24   in --

25   ///

1          MR. SULLIVAN:   I think, no, Your Honor.   That's

2    not usually the way they're ... they're drafted, it's just

3    that if he undertakes to cooperate with the Government,

4    that's usually the form it takes.

5          MR. LONG:   His level of cooperation will

6    definitely have a bearing on what the Government argues for

7    sentencing.   So far he's ... he's cooperated fully as far

8    as Mr. Moore is concerned, but if he should turn up missing

9    or get himself into trouble or something, that will

10   definitely -- and he knows this will -- that'll have a

11   bearing on what the Government will ultimately ask for in

12   terms of jail time.   As it sits right now, I think the

13   Government -- if all goes as the -- the way the Government

14   expects it to go, that being a trial and a conviction of

15   the co-defendant, and he cooperates throughout, I think

16   it -- I think the Government envisions that time served is

17   what's gonna resolve this sentencing.   But if it doesn't go

18   as they envision and he turns up missing --

19         THE COURT:   And I suppose at that point in time

20   there will be no restrictions on his activities then?

21         MR. LONG:   No, I wouldn't think so.

22         MR. SULLIVAN:   Well, through time served then

23   there would be parole following time served.

24         MR. LONG:   Yeah.   Some type of probation or

25   parole at that time.   That's the way I see this.   And if he

Case 1:05-cv-00014   Document 10-14   Filed 07/14/2006   Page 9 of 24

1   messes this up -- and, clearly, Don knows this is on him to

2   either make it work or not, but that'll ... that'll come

3   out at the sentencing hearing.

4           THE COURT:   So the recommendation basically

5   that -- the Government's is making is that we release him

6   because of the fact he has been cooperating, and that he be

7   placed under house arrest, and Defense is saying, "Well,

8   give me at least two hours a day to do personal things."

9           The Defendant's father is -- how would we

10  describe his health or his physical abilities?  Is he able

11  to --

12          MR. LONG:   Well, Your Honor, we're not really

13  proposing him as a custodian of any kind.  We are

14  indicating that it's Mr. Mendiola's intention and the way

15  he understands it is he's welcome to live at his father's

16  place.  And --

17          THE COURT:   So if we release him today, what's

18  the condition; he -- to live with him or --?

19          MR. SULLIVAN:   Yes, just to live with him.

20  That's correct.

21          THE COURT:   So if he's not living with him, he's

22  violating the release condition then?

23          MR. SULLIVAN:   That's correct.

24          MR. LONG:   And, Your Honor, if that situation

25  should change, the way I'd handle that is I would ... I

1    would move for a change of address if that were
2    appropriate.
3            THE COURT:   So you're saying that that's fine
4    for the time being?  Is that what it --
5            MR. LONG:   As far as we know, he's going to stay
6    with his father and his father has indicated to him that
7    it's gonna be fine with him.
8            THE COURT:   And is ... is the father disabled
9    or --?
10           (Addressing the Defendant:)  Is your father
11   disabled that he can't go out with you?
12           THE DEFENDANT:   No.
13           THE COURT:   No?  Do you understand that if your
14   father is with you, then you could go shopping for as long
15   as you wanted to as long as he's with you.  Do you
16   understand that?
17           THE DEFENDANT:   Yes, Your Honor.
18           THE COURT:   And I suppose that's what the
19   Government is saying, that as long as your father is with
20   you, you don't need just -- I mean, you could have four
21   hours outside, five hours, just as long as he's with you.
22           THE DEFENDANT:   Yes, Your Honor.
23           THE COURT:   So there's no limit in terms of what
24   you can do shopping if he's with you.  Is that something
25   that you think that your father isn't able to do because,

1    let's say, for -- he's disabled or some disability on his

2    part or --?  Or he think -- do you think he can go out with

3    you --

4              THE DEFENDANT:   Yes, Your Honor.

5              THE COURT:   He can?

6              THE DEFENDANT:   Yes, Your Honor.

7              THE COURT:   All right.  Let's go ahead and

8    release him today then to reside at your father's address.

9    And you will be under house arrest in the sense that if you

10   are to leave the premises, you will do so only if you have

11   your third party custodian with you.  Or if for some reason

12   you get permission from Probation, then I suppose that's

13   also permissible.  All right?  So we'll give -- let's

14   assume your father's sick, you call in Probation and say

15   you're going to go to the Mall for about an hour, Probation

16   says, "Well, okay, that's fine," then I suppose in that

17   sense it's all right to do so.  Okay?  Just as long as you

18   get concurrence from them.  Okay?  So that's -- that'll be,

19   I guess, an option if in fact your father is sick and he's

20   not able to go with you.  All right?  Call Probation and

21   make sure they say, "Well, all right, it's fine with us,"

22   and we'll keep it within that window.

23             MR. LONG:   Your Honor, would it be okay if he

24   didn't have -- if he wasn't accompanied by his father for

25   the purposes of coming to court or to meet with his

1  attorney and that sort of thing?  Things that we really

2  don't --

3         THE COURT:  Well, things that he's required to

4  do.  Coming to court, I don't think it would be necessary

5  for his dad to take him.  -- Those necessary things that we

6  know -- or the Government can have a handle on where he's

7  going, where he will be at.  So things of that nature, I

8  suppose, you could just do on your own, but I suppose in

9  other areas not related to coming to court for a hearing,

10  you probably have to have your father with you.  All right?

11         MR. LONG:  That's understood.  Thank you, Your

12  Honor.

13         THE COURT:  All right.  The Court will go ahead

14  and release him at this time.

15         MR. SULLIVAN:  And are you going to order any of

16  the conditions that were requested?

17         THE COURT:  Well, I don't ... I don't think

18  Mr. Long has objected to those.

19         Right, Mr. Long?

20         MR. LONG:  No objection.

21         THE COURT:  All right.  So those conditions will

22  be ordered.

23         MR. SULLIVAN:  Okay.  And that includes the

24  random drug testing or drug testing at the request of

25  Probation?

1      THE COURT:    That will be included.    It's not

2  objected to by the Defendant.

3      MR. SULLIVAN:    Okay.    Thank you, Your Honor.

4      THE COURT:    -- Just get that form.

5                  *[Pause in proceedings.]*

6      MR. SULLIVAN:    Your Honor, the Defendant agreed

7  or offered to contact Probation tomorrow.    Can that be also

8  an order?

9      THE COURT:    All right.

10     (Addressing the Defendant:)    Could you do that

11  tomorrow?

12     THE DEFENDANT:    Yes, Your Honor.

13     THE COURT:    All right.

14                  *[Brief pause.]*

15     THE COURT:    And this will be weekly reporting in

16  person; all right?    So you don't need to have your dad take

17  you to Probation to check in, you can do that on your own

18  'cause you're going there; all right?

19     THE DEFENDANT:    Yes, Your Honor.

20     THE CLERK:    (Inaudible - indiscernible) --

21     THE COURT:    Wait.    Let me just fill this out.

22                  *[Brief pause.]*

23     MR. SULLIVAN:    And we request --  Mr. Moore

24  asked me to ask for no contact with co-defendants.    It's

25  probably equally important, no contact with the victim.

1      THE COURT:    All right.   No contact with the co-
2  defendant will be ordered here.
3      MR. SULLIVAN:    And also the victim, Your Honor.
4      THE COURT:    And victim.
5      MR. SULLIVAN:    Thank you, Your Honor.
6              *[Pause in proceedings.]*
7      THE COURT:    All right.   So report to Probation
8  tomorrow then.   All right?
9      The Court at this time will release you then
10  pursuant to the conditions that we've just stated.
11      You understand that if you violate these
12  conditions, you may be brought right back to court.
13      THE DEFENDANT:    Yes, Your Honor.
14      THE COURT:    Do you understand that?
15      THE DEFENDANT:    Yes, Your Honor.
16      THE COURT:    All right.
17      MR. SULLIVAN:    Thank you.   Thank you, Judge.
18      MR. LONG:   Thank you.
19      THE COURT:    You're welcome.
20      THE CLERK:    (Inaudible - indiscernible) --
21      THE COURT:    Whatever --
22      **\*\* Whereupon the proceedings concluded. \*\***
23
24
25

*Jeanette B. Roberts, Court Transcriber, Superior Court of Guam*

1

# C E R T I F I C A T E

2          I, Jeanette B. Roberto, do hereby certify that the foregoing

3     pages, one through fifteen (15) inclusive, comprise the true and correct

4     transcript of the Continued Further Proceedings heard in the following case:

5                         Superior Court Case No. CF0352-97

6                              *PEOPLE OF GUAM, Plaintiff*

7                                        *versus*

8                          *DON A.B. MENDIOLA, Defendant.*

9                              -------------------------

10                        Superior Court Case No. CF0317-97

11                             *PEOPLE OF GUAM, Plaintiff*

12                                       *versus*

13                   *RANDY I. CHARGUALAF, et al., Defendants.*

14     heard before the Honorable Judge Joaquin V.E. Manibusan, Jr., heard on

15     August 18, 1998, recorded on Tape Numbers T98-0705 and T98-0706.

16          This transcript of this proceedings was transcribed by me to the

17     best of my knowledge, skill and ability.

18          Dated this 21st day of June, 2006.

19

20                                   _____
                                     JEANETTE B. ROBERTO
21

22

23

24

25

*Jeanette B. Roberto, Court Transcriber, Superior Court of Guam*

1
2
3
4

# IN THE SUPERIOR COURT OF GUAM

5

| | |
|---|---|
| 6 **PEOPLE OF GUAM,** ) | **SUPERIOR COURT CASE NO:** |
| 7 **Plaintiff,** ) | **CF0317-97** |
| 8 **versus** ) | **CRIMINAL TRIAL SETTING** |
| 9 **RANDY IGLESIAS CHARGUALAF, et al.,** ) | **August 21, 1998** |
| 10 **Defendants.** ) | |

11

12
## REPORTER'S TRANSCRIPT OF PROCEEDINGS

13
### BEFORE:

14
### THE HONORABLE ALBERTO C. LAMORENA, III
PRESIDING JUDGE, SUPERIOR COURT OF GUAM

15

16
### A P P E A R A N C E S:

17
For the People:

18
**DAVID MOORE, Esquire**
OFFICE OF THE ATTORNEY GENERAL
19
Hagåtña, Guam

20
For the Defendant:

21
**ALEXANDER GORMAN, Esquire**
GORMAN & GAVRAS
22
Hagåtña, Guam

23
24
25



*Jeanette B. Roberts, Court Transcriber, Superior Court of Guam*

1       THE COURT:    Okay.   CF317-97; *People of Guam*

2  *versus Randy Chargualaf.*

3                          *[Brief pause.]*

4       THE COURT:    Okay.   Mr. Gorman is withdrawing so

5  the Court will appoint another attorney, Mr. Mark Williams;

6  okay?

7       MR. DAVID MOORE:    Your Honor, if I may?

8       THE COURT:    Yes?

9       MR. MOORE:    Mr. Williams had been appointed

10  prior to Mr. Gorman and he had already withdrawn.

11       THE COURT:    Oh.   He was?   Okay.

12                          *[Brief pause.]*

13       THE COURT:    The Court then will appoint

14  Mr. Rawlen Mantanona to represent the Defendant and we'll

15  continue this hearing to ... August 25th for further

16  proceedings; okay?

17       MR. MOORE:    Thank you, Your Honor.

18       THE COURT:    You're welcome.

19              **\*\* Whereupon the proceedings concluded. \*\***

20

21

22

23

24

25

1

2

3

4

# C E R T I F I C A T E

   I, Jeanette B. Roberto, do hereby certify that the foregoing pages, one through three (3) inclusive, comprise the true and correct transcript of the Criminal Trial Setting heard in the following case:

5       Superior Court Case No. CF0317-97

6        *PEOPLE OF GUAM, Plaintiff*

7          *versus*

8     *RANDY I. CHARGUALAF, et al., Defendants.*

9 heard before the Honorable Presiding Judge Alberto C. Lamorena, III, heard

10 on August 21, 1998, recorded on Tape Number T98-1288.

11    This transcript of this proceedings was transcribed by me to the

12 best of my knowledge, skill and ability.

13    Dated this 21st day of June, 2006.

14

15

16        JEANETTE B. ROBERTO

17

18

19

20

21

22

23

24

25

*Jeanette B. Roberto, Court Transcriber, Superior Court of Guam*

# IN THE SUPERIOR COURT OF GUAM

PEOPLE OF GUAM,

             Plaintiff,

           versus

RANDY IGLESIAS CHARGUALAF, et al.,

             Defendants.

)
)
)
)
)
)
)
)

**SUPERIOR COURT CASE NO:**
**CF0317-97**

**FURTHER PROCEEDINGS**

**February 5, 1999**

---

## REPORTER'S TRANSCRIPT OF PROCEEDINGS

### BEFORE:

### THE HONORABLE ALBERTO C. LAMORENA III
PRESIDING JUDGE, SUPERIOR COURT OF GUAM

### A P P E A R A N C E S:

For the People:

**DAVID MOORE, Esquire**
OFFICE OF THE ATTORNEY GENERAL
Hagåtña, Guam

For the Defendant:

**RAWLEN MANTANONA, Esquire**
LAW OFFICE OF RAWLEN MANTANONA
Tamuning, Guam

COPY



*Jeanette B. Roberts, Court Transcriber, Superior Court of Guam*

1        THE COURT:    CF317-97; *People of Guam versus*
2    *Randy Chargualaf.*

3        MR. RAWLEN MANTANONA:    Your Honor, Rawlen
4    Mantanona for the Defendant.  Defendant is present.

5        THE COURT:    Okay.  This is for trial setting?

6        MR. MANTANONA:    Your Honor, the Defendant has
7    already been set for trial pursuant to the Court's
8    calendar.

9        THE COURT:    Mm-hm.  What are we here for?

10       MR. MANTANONA:    -- We're before the Court to ask
11   for an extension of the motion cut-off date, Your Honor.

12       THE COURT:    What was the trial date anyway?
13   -- March 4th?

14       MR. MANTANONA:    I think it's March 5th.

15       THE COURT:    Yeah, March 4th, Tuesday.  Right.

16       MR. MANTANONA:    Your Honor, I'm going to need at
17   least two weeks to do motions in this case.  This Defendant
18   is facing an extensive period of time.  I think for me to
19   be effective Counsel to him, I have to research these
20   issues and file the appropriate briefs.  I think if I --

21       THE COURT:    Any objections, Mr. Moore?

22       MR. DAVID MOORE:    Your Honor, the People do
23   object because there's been a lot of time that's passed
24   since Mr. Mantanona's been on the case, and that will not
25   leave us much time to respond before the trial.

*Jeanette B. Roberts, Court Transcriber, Superior Court of Guam*

1    THE COURT:    Well, you could always ask for a
2    motion to --  Well, yeah, but, you know, if he files any
3    motions, it sort of tolls everything; right?

4    MR. MANTANONA:    Your Honor, we've always -- we
5    always stand by the position that we are willing to take
6    the trial at a later date.  We understand the Court had a
7    previous engagement for the month of April.  My client
8    wants to have a full -- his full day in court with the full
9    set of motions filed.

10    THE COURT:    Did he waive time, Mr. Mantanona?

11    MR. MANTANONA:    Yes, Your Honor, he's waived
12    time since he's been incarcerated.  My client feels that
13    there are certain issues that he wants --

14    THE COURT:    Well, how much time do you need
15    then?

16    MR. MANTANONA:    Your Honor, I (indiscernible) to
17    try this case in April and have motions before that date.
18    I need two weeks at least to do motions, Your Honor.

19    MR. MOORE:    Your Honor, I'd prefer -- if the
20    Court is going to give him two weeks for the motions that
21    we keep the trial date on because my concern is that this
22    is an old case and I would like to -- out of interest with
23    the victim, to get this resolved.

24    THE COURT:    Okay.  What was the motion cut-off
25    date here?

*Jeanette B. Roberto, Court Transcriber, Superior Court of Guam*

1      MR. MANTANONA:   I believe it was -- (inaudible -
2  indiscernible) -- trial, Your Honor.
3      THE COURT:   February 5th?  No.  Okay.  The
4  pretrial is set for February 25th; right?
5      Okay.  I'll give you up until February the
6  15th -- I mean, 16th.  The fifteenth is a holiday, so you're
7  lucky.  February the 16th at 5 p.m. to file all motions;
8  okay?
9      MR. MANTANONA:   Thank you, Your Honor.
10     THE COURT:   And then for now we'll keep the
11 trial dates and pretrial conference dates; okay?
12     MR. MANTANONA:   Thank you, Your Honor.
13     MR. MOORE:   Fine, Your Honor.
14     THE COURT:   You're welcome.
15     **  Whereupon the proceedings concluded. **

16

17

18

19

20

21

22

23

24

25

# CERTIFICATE

I, Jeanette B. Roberto, do hereby certify that the foregoing pages, one through five (5) inclusive, comprise the true and correct transcript of the Further Proceedings, heard in the following case:

Superior Court Case No. CM1544-98

*PEOPLE OF GUAM, Plaintiff*

*versus*

*RANDY I. CHARGUALAF, et al., Defendants.*

heard before the Honorable Judge Alberto C. Lamorena III, heard on February 5, 1999, recorded on Tape Number T99-0094.

This transcript of this proceedings was transcribed by me to the best of my knowledge, skill and ability.

Dated this 15th day of June, 2006.

_____

JEANETTE B. ROBERTO

*Jeanette B. Roberto, Court Transcriber, Superior Court of Guam*

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM, | SUPERIOR COURT CASE No: CF0317-97 |
| Plaintiff, | |
| versus | CRIMINAL TRIAL SETTING |
| RANDY IGLESIAS CHARGUALAF, et al., | July 30, 1999 |
| Defendants. | |

## REPORTER'S TRANSCRIPT OF PROCEEDINGS

BEFORE:

### THE HONORABLE ALBERTO C. LAMORENA III
PRESIDING JUDGE, SUPERIOR COURT OF GUAM

A P P E A R A N C E S:

For the Defendant:

**TERRENCE E. TIMBLIN, Esquire**
Hagåtña, Guam

COPY



Jeanette B. Roberto, Court Transcriber, Superior Court of Guam

1          THE COURT:    CF317-97; *People of Guam versus*
2    *Randy Chargualaf.*

3          Mr. Timblin?

4          MR. TERRENCE TIMBLIN:    Good morning, Your Honor.
5    The Defendant is present.

6          THE COURT:    Okay.  Are we ready on this one?

7          MR. TIMBLIN:    Yes, Your Honor.  I've asked for
8    at least 30 days down the road for preparation.  It's gonna
9    take a lot -- (indiscernible) -- back to the file again.

10         THE COURT:    I'm sorry?

11         MR. TIMBLIN:    I ask for at least 30 days down
12   the road for a trial date, beyond that, no preference.

13         THE COURT:    Time is waived on this one; right?

14         MR. TIMBLIN:    That's correct.

15         THE COURT:    Okay.  I'll make this one
16   September 28th at 2 p.m. for jury selection; pretrial
17   conference will be September 23rd at 3 p.m., and motion
18   cut-off date will be August 27th.

19         [Whispering:]  Okay.  Leave this file here 'cause
20   there's a violation report on this one; okay?

21                        *[Brief pause.]*

22         THE COURT:    Who's handling this for the
23   Prosecution?

24         UNIDENTIFIED PROSECUTOR:    I am, Your Honor.

25         **\*\* Whereupon the proceedings concluded. \*\***

*Jeanette B. Roberto, Court Transcriber, Superior Court of Guam*

# CERTIFICATE

1
2      I, Jeanette B. Roberto, do hereby certify that the foregoing
3  pages, one through three (3) inclusive, comprise the true and correct
4  transcript of the Criminal Trial Setting heard in the following case:

5          Superior Court Case No. CF0317-97

6          *PEOPLE OF GUAM, Plaintiff*

7          *versus*

8          *RANDY I. CHARGUALAF, et al., Defendants.*

9  heard before the Honorable Judge Alberto C. Lamorena III, heard on July 30,
10  1999, recorded on Tape Number T99-1236.

11      This transcript of this proceedings was transcribed by me to the
12  best of my knowledge, skill and ability.

13      Dated this 15th day of June, 2006.

14

15                          JEANETTE B. ROBERTO

16

17

18

19

20

21

22

23

24

25

1
2
3
4 **IN THE SUPERIOR COURT OF GUAM**
5
6 PEOPLE OF GUAM,                        )    SUPERIOR COURT CASE No:
                                         )         CF0317-97
7                    Plaintiff,          )
                                         )
8              versus                    )    **MOTION *IN LIMINE***
                                         )
9 RANDY IGLESIAS CHARGUALAF, et al.,     )    November 1, 1999
                                         )
10                  Defendants.          )
                                         )
11 ——————————————————————————————
12          **REPORTER'S TRANSCRIPT OF PROCEEDINGS**
13                          BEFORE:
14          **THE HONORABLE ALBERTO C. LAMORENA III**
              PRESIDING JUDGE, SUPERIOR COURT OF GUAM
15
16                   A P P E A R A N C E S:
17                       For the People:
18                  **THOMAS FISHER, Esquire**
                  OFFICE OF THE ATTORNEY GENERAL
19                      Hagåtña, Guam
20                     For the Defendant:
21                **TERRENCE E. TIMBLIN, Esquire**
                      Hagåtña, Guam
22
23
24
25                      COPY

1    THE BAILIFF:    The Superior Court of Guam is now
2  in session.    The Honorable Alberto C. Lamorena, III,
3  presiding.

4         Please be seated.

5         THE COURT:    CF317-97; *People of Guam versus*
6  *Randy Ignacio Chargualaf*.   Defendant is present in court
7  with his attorney, Mr. Timblin.   The People are represented
8  by Mr. Fisher.

9         I think there's a motion *in limine* filed by
10  Defense Counsel on October 27th.

11         MR. TERRENCE TIMBLIN:    That's correct, Your
12  Honor.   I apologize for the relatively late notice on this
13  one, but I just didn't receive this until, again, last --
14  roughly last week.   As you indicated, the previous
15  attorney, Mark Williams went out, I guess, spoke with
16  Mrs. Certeza.   She did sign what's been called a waiver of
17  prosecution, although we understand that doesn't prevent
18  the Government from going forward obviously, but it does
19  make reference to her not wishing to testify and that she
20  would like to settle the case by basically having $5,000.00
21  paid to her.   Now, obviously, she has every right in the
22  world to file like her own civil suit against Mr.
23  Chargualaf should she wish, but I think as far as
24  attempting to profit out of a prosecution, which is
25  basically the Government's the ... the Plaintiff, that I

1   think that does indicate a monetary motive on her part to

2   participate in this case at all, and I think that would go

3   to her credibility, and therefore I would like to again

4   cross-examine her about that and bring it to the jury's

5   attention.

6           THE COURT:   Mr. Fisher?

7           MR. ERIC FISHER:   Your Honor, I think

8   Mr. Timblin's point on this issue is well taken.  It's

9   agreeable that she did file that, so we're not opposing the

10  motion *in limine*, but we would ask to be allowed to amend

11  our witness list to include Mr. Williams.

12          THE COURT:   Okay.  Now it hasn't been presented

13  to the jury, so the Court will permit you to add

14  Mr. Williams.  Attorney Mark Williams; right?

15          MR. FISHER:   Yes, Your Honor.

16          THE COURT:   -- To the list and you'll add

17  Ms. Certeza?

18          MR. TIMBLIN:   Well --

19          THE COURT:   She's been called anyway; right?

20          MR. FISHER:   She has been called, Your Honor.

21          MR. TIMBLIN:   She'll be called obviously, yeah,

22  she's kind of a star witness.

23          THE COURT:   Do you have your amended witness

24  list or --

25          How about you, Mr. Timblin, do you intend to --?

*Jeanette B. Roberts, Court Transcriber, Superior Court of Guam*

1    MR. TIMBLIN:   The only one I intend to call

2   right now would be the -- Benjamin Certeza, the husband of

3   the complaining witness.

4        THE COURT:   Who is on the Prosecution's --

5        MR. TIMBLIN:   He's on the Government's witness

6   list but Mr. Fisher indicated he wasn't planning on calling

7   him.

8        MR. FISHER:   Your Honor, I'm going to present

9   the Court with our witness list together with the two

10  additional People's witness lists.

11       THE COURT:   Okay.  And I'll add Mr. Mark

12  Williams on it, if you don't mind.

13       MR. FISHER:   Thank you, Your Honor.

14       THE COURT:   Okay.  Which witnesses shall I read?

15  All if it then?

16       MR. FISHER:   Well, Your Honor, we would ask out

17  of caution that the Court do read the entire witness list

18  for the People although we only anticipate calling about

19  ten of these.  As the Court is aware, sometimes things come

20  up in trial that make it necessary to call others.

21       THE COURT:   And yours is only Mr. Benjamin

22  Certeza; right?

23       MR. TIMBLIN:   Correct, Your Honor.

24  ///

25  ///

1          THE COURT:    Okay.  You know if you call up
2    Mr. Bascon, he can't sit on the -- your investigator;
3    right?  Do you have him on your witness list?
4          MR. FISHER:    No, Your Honor.  Mr. Duarte is --
5          THE COURT:    Is Mr. Bascon going to testify?
6          MR. FISHER:    No, Your --   Oh, I see.  No, Your
7    Honor.
8          THE COURT:    No?
9          MR. FISHER:    As far as I know.
10         THE COURT:    So I can take him out?
11         MR. FISHER:    Please.
12         THE COURT:    And I'll add basically no one;
13    right?
14         MR. FISHER:    We would just ask for Mr. Williams.
15         THE COURT:    Well, Mr. Williams will be the only
16    one added to it then.
17          Okay.  Any other motions before we have the jury
18    come in?
19         MR. TIMBLIN:    No, Your Honor.
20         THE COURT:    Okay.  We'll recess.  We'll bring
21    the potential jurors in and we'll begin jury selection.
22          The court is in recess.
23         THE BAILIFF:    All rise.
24          ** **Whereupon the proceedings concluded.** **
25

*Jeanette B. Roberts, Court Transcriber, Superior Court of Guam*

# CERTIFICATE

I, Jeanette B. Roberto, do hereby certify that the foregoing pages, one through six (6) inclusive, comprise the true and correct transcript of the Motion In Limine heard in the following case:

Superior Court Case No. CF0317-97

*PEOPLE OF GUAM, Plaintiff*

*versus*

*RANDY I. CHARGUALAF, et al., Defendants.*

heard before the Honorable Judge Alberto C. Lamorena III, heard on November 1, 1999, recorded on Tape Number T99-1775.

This transcript of this proceedings was transcribed by me to the best of my knowledge, skill and ability.

Dated this 15th day of June, 2006.

_____

JEANETTE B. ROBERTO

*Jeanette B. Roberto, Court Transcriber, Superior Court of Guam*

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| **PEOPLE OF GUAM,** | ) **SUPERIOR COURT CASE NO:** CF0317-97 |
| Plaintiff, | ) |
| versus | ) **SENTENCING** |
| **RANDY IGLESIAS CHARGUALAF, et al.,** | ) **February 1, 2000** |
| Defendants. | ) |

## REPORTER'S TRANSCRIPT OF PROCEEDINGS

BEFORE:

### THE HONORABLE ALBERTO C. LAMORENA III
PRESIDING JUDGE, SUPERIOR COURT OF GUAM

APPEARANCES:

For the People:

**LEONARDO RAPADAS, Esquire**
OFFICE OF THE ATTORNEY GENERAL
Hagåtña, Guam

For the Defendant:

**TERRENCE E. TIMBLIN, Esquire**
Hagåtña, Guam



*Jeanette B. Roberto, Court Transcriber, Superior Court of Guam*

1       THE COURT:    CF317-97; *People of Guam versus*

2  *Randy Ignacio Chargualaf*.  This is set for a sentencing.

3                         *[Brief pause.]*

4       THE COURT:    Okay.  Has everybody --

5       The Defendant is present in court with his

6  attorney, Mr. Timblin.  The People are represented by

7  Mister --

8       Is this your case, Mr. Rapadas?

9       MR. LEONARDO RAPADAS:    Yes, Your Honor.

10      THE COURT:    Okay.  Has everybody received a copy

11 of the pre-sentence report?

12      MR. RAPADAS:    Yes, Your Honor.

13      MR. TERRENCE TIMBLIN:    I have, Your Honor.

14      THE COURT:    Okay.  Mr. Timblin, do you wish to

15 make any comments or amendments to the report itself?

16      MR. TIMBLIN:    Just one, Your Honor.  On page six

17 regarding -- I'm sorry -- excuse me -- page four regarding

18 restitution; there's an indication Ms. Certeza asking for

19 $13,000 in restitution.  This is clearly of the type, I

20 guess, emotional stress-type damages, which she might have

21 sought on a civil case, but I believe that restitution is

22 strictly kept to out of pocket losses.  In this case,

23 virtually everything that was taken was given back to her

24 except for $127.00 which is still sitting up in the

25 Evidence Locker and for some reason wasn't offered into

*Jeanette B. Roberto, Court Transcriber, Superior Court of Guam*

1  evidence, much to my surprise.  But, anyway, I'd certainly

2  request that the Court order the return of the $127.00 to

3  Mrs. Certeza and otherwise deny further restitution.

4          MR. RAPADAS:   Your Honor, to the extent that

5  it --

6          THE COURT:   Only on the report itself.

7          MR. RAPADAS:   Right.  On the report, I have

8  no ... no amendments other than, you know, to the extent

9  that the victim is entitled to restitution.  I agree with

10 Mr. Timblin as far as what she's attempting to get out of

11 this Court in the criminal case.  She would, however, be

12 entitled to do whatever she wants in the civil case.  But I

13 would agree with the Court as far as the restitution is

14 concerned.

15         THE COURT:   I agree with both Counsels that

16 restitution is only for monetary damages that were lost;

17 okay?  -- But not for --

18         MR. RAPADAS:   Out of pocket costs and so forth.

19         MR. TIMBLIN:   Thank you.

20         THE COURT:   Yes.  And this is mostly a pain and

21 suffering type situation.

22         Okay.  Aside --  Mr. Rapadas, how about the

23 evidence?  Will that be returned?

24         MR. RAPADAS:   That would be, Your Honor, as soon

25 as we're done with this sentencing.

*Jeanette B. Roberts, Court Transcriber, Superior Court of Guam*

1    THE COURT:    Returned to the victim?    Okay.

2    Okay.    Do you wish to speak on behalf of the

3    Defendant at this point, Mr. Timblin?

4    MR. TIMBLIN:    Well, Your Honor, we also have

5    made notice there of a motion on file requesting that

6    Mr. Chargualaf be confined at the Agana Lockup pending

7    appeal in this case.    I do have one witness here to call

8    on.    I wonder if I can call him right now to get him off so

9    he can -- I think he has to report to work at noon.

10    THE COURT:    Okay.    Why don't you call him now?

11    MR. TIMBLIN:    This is Thomas Ananich.    He's

12    outside.

13    *[Pause while Mr. Thomas Ananich is summoned.]*

14    THE CLERK:    (Addressing the Witness:)    Raise

15    your right hand.

16    THE WITNESS:    (Complies)

17    **Thomas A. Ananich**, was called as a witness by the Defense,

18    after having been duly sworn, testified on his oath,

19    as follows:

20    THE CLERK:    Do you solemnly swear to tell the

21    truth, the whole truth, and nothing but the truth, so help

22    you God?

23    THE WITNESS:    I do.

24    THE CLERK:    Please be seated.    State your full

25    name.

1    THE WITNESS:   Thomas A. Ananich.

2    THE COURT:   You may proceed, Mr. Timblin.

3    MR. TIMBLIN:   Thank you, Your Honor.

4         D I R E C T   E X A M I N A T I O N

5  By Mr. Timblin:

6    Q.   Mr. Ananich, how are you employed?

7    A.   How am I employed?

8    Q.   Yes.  Or where do you work?

9    A.   Department of Corrections.

10   Q.   And how long have you worked at Department of

11 Corrections?

12   A.   About 14 years.

13   Q.   Okay.  And where are you currently assigned?

14   A.   Agana Lockup.

15   Q.   Okay.  And are you familiar with the Defendant,

16 Randy Chargualaf, sitting to my right?

17   A.   Yes, I am.

18   Q.   And how long have you known Mr. Chargualaf?

19   A.   I met Mr. Chargualaf the first time he was

20 incarcerated.

21   Q.   And that's been roughly since July of '97.  Is

22 that a fair statement?

23   A.   Yeah, that's pretty fair.

24   Q.   Okay.  And during your 13 years at Department of

25 Corrections, have you -- are you pretty much familiar with

1    all the personnel at Department of Corrections both at the

2    Agana Lockup and up at Mangilao?

3        A.    Yes, sir.

4        Q.    And to your knowledge, has there been any problem

5    between Mr. Chargualaf and any of the DOC personnel

6    stationed at Mangilao?

7        A.    Yes, sir.

8        Q.    And who is that person?  What is --  Who is the

9    person that he has a problem with?

10       A.    That's Officer Mike Afaisen.

11       Q.    Okay.  And what kind of problem exists between

12   Mr. Chargualaf and Mr. Afaisen?

13       A.    There --  It's personal.  Mr. Chargualaf and

14   Mr. Afaisen's wife, I think, had a relationship.

15       Q.    I see.  And to your knowledge, did that upset

16   Mr. Afaisen?

17       A.    Oh, yes, sir, it has.

18       Q.    And in your opinion, do you think there is a

19   fairly strong probability that there could be trouble

20   between Mr. Chargualaf and Mr. Afaisen should he be

21   incarcerated at Mangilao?

22       A.    Yes, sir.  I don't think Mr. Chargualaf should be

23   incarcerated in Mangilao, not at this time.

24            MR. TIMBLIN:    I see.   Thank you.

25            No further questions.

*Jeanette B. Roberts, Court Transcriber, Superior Court of Guam*

1    THE COURT:   Mr. Rapadas?

2    MR. RAPADAS:   Yes.

3         C R O S S - E X A M I N A T I O N

4  By Mr. Rapadas:

5    Q.   Officer Ananich?

6    A.   Sir?

7    Q.   Where is Mike Afaisen currently assigned?

8    A.   He's up at ACF, the main facility.

9    Q.   The main facility.

10   A.   Yes, sir.

11   Q.   And what does he do?

12   A.   He's a Corrections Officer.  I don't know what

13  post he's assigned to right now.

14   Q.   Okay.  And who's the Director at DOC?

15   A.   That's Mr. Angel Sablan.

16   Q.   Okay.  Now, if Mr. Sablan was aware of this

17  information, isn't it true that he could make the proper

18  assignments or reassignments -- in fact, could assign him

19  down at Agana Lockup if there are problems like this?

20   A.   The only thing I worry about there, like even if

21  Mike is moved, Mike could have spoke to someone to do

22  something.  What it is is in correct- --

23   Q.   Okay.  You're assuming then that corrections

24  officers are going to break the law?

25  ///

*Jeanette B. Roberts, Court Transcriber, Superior Court of Guam*

1    A.   No, I'm not saying that, they just might make

2    Randy's life a little harder.

3    Q.   Well, but he can make assignments if he needed

4    to?

5    A.   Right.

6    Q.   And Mr. Sablan -- or Director Sablan ...

7    A.   Yes, sir.

8    Q.   ... can make -- you know, he's the boss

9    basically?

10   A.   Yes, he is.

11   Q.   And our office or the Court can inform the

12   Director of these types of problems; right?

13   A.   Yes, he can.   Yes.

14          MR. RAPADAS:   Okay.   Nothing further, Your

15   Honor.

16          THE COURT:   Any other questions, Mr. Timblin?

17          MR. TIMBLIN:   No, Your Honor.

18          THE COURT:   Okay.   Officer Ananich, you may step

19   down.   Thank you.

20          THE WITNESS:   Thank you.

21              *[Officer Ananich is excused.]*

22          THE COURT:   Any other witnesses, Mr. Timblin?

23          MR. TIMBLIN:   No other witness, Your Honor.

24          THE COURT:   Any witnesses you wish to present?

25          MR. RAPADAS:   No, Your Honor.

*Jeanette B. Roberts, Court Transcriber, Superior Court of Guam*

1      THE COURT:    Okay.   The Court will hear

2  recommendations.

3           Mr. Timblin?

4      MR. TIMBLIN:    Okay.   As to this motion or for

5  both?

6      THE COURT:    For both.

7      MR. TIMBLIN:    Okay.   Your Honor, as far as the

8  motion is concerned, Mr. Chargualaf has been confined at

9  the Agana Lockup since July 21st, 1997.  We do plan to take

10 an appeal on the case.  The appeal would probably take

11 eight months or a year, but obviously at some point

12 it'll -- we succeed or fail, and we recognize that at some

13 point, if the appeal fails and there's a lengthy sentence

14 that he'll probably have to serve time that the -- wherever

15 DOC wants to put him, but I'm suggesting given he's been

16 sitting there two and half -- over two and a half years

17 already and we're talking another year maybe, I don't think

18 it would be any harm to -- or to the People 'cause he's

19 going to be confined anyway, to let him stay at the Agana

20 Lockup.

21           As far as the sentencing is concerned, Your

22 Honor, I would just note that all the property -- as

23 previously indicated, except $127.00 which is going to be

24 returned to Ms. Certeza has been returned to her.  She's

25 suffered no physical harm.  The Court is going to be

1  required, I guess, to sentence him at least a mandatory

2  minimum of ten years.  I would suggest that would be

3  sufficient in this case, again, given the relatively small

4  amount of property involved and no physical harm.  So I'd

5  ask that the Court sentence Mr. Chargualaf to the minimum.

6                THE COURT:    Okay.   Mr. Rapadas, recommendations?

7                MR. RAPADAS:    Yes, Your Honor.   At this time the

8  People would maybe remind the Court that he was charged

9  with second degree robbery and found guilty of that.  He's

10 looking at five to ten for that charge.  The third charge

11 of conspiracy, the same amount, he's looking at five to ten

12 years.  And the fourth charge of theft it's zero to ...

13 zero to one.  What is probably the most serious ...

14 serious -- what would give him the most serious time at

15 this point would be the possession and use of a deadly

16 weapon in the -- for the first charge, which would be a

17 minimum of five years to 25 years.  The People at this time

18 would ask for the maximum on each charge.  The Defendant is

19 a dangerous repeat offender.  He doesn't just steals and

20 threatens and assaults people.  He's committed these

21 crimes -- these specific crimes two months after his

22 release on his prior.  His prior charges were first degree

23 robbery, which was committing a theft while threatening

24 serious bodily injury.  At the same time he was also found

25 guilty in that second charge of two counts of aggravated

1   assault.   In this case, the victim had a gun -- a handgun
2   pointed to her while this home invasion occurred.   The
3   Defendant had gotten into the victim's house with other
4   individuals.   It was basically a home invasion robbery.
5   They broke into the sanctity of one's home.   It's supposed
6   to be --   The home is supposed to be the safest place you
7   could ever be in.   The Defendant destroyed that.   At this
8   point he's shown no remorse.   There's nothing in here about
9   his remorse about ... about the case.   He's not shown
10  that -- or not -- he's not --   after this conviction he
11  has not -- he's not -- you know, taken responsibility for
12  what he's done.   He basically makes a statement that he's
13  gonna appeal, which he has the right to do but, again, that
14  shows no remorse on his point.

15          To the extent that we can use the victim's
16  statement, like I said the restitution is not going to be
17  an issue here because the People at this point don't
18  contest the ... don't contest the Defendant's objection to
19  the amount.   We do presented -- it is presented in here to
20  the extent that the victim is suffering some ... some sort
21  of emotional trauma from this event, as any person would,
22  you know, if three people break into their house, take a
23  handgun and point it to ... point it to them and take
24  money.   I mean, who cares -- I mean, not who cares -- it's
25  irrelevant at this point that a small amount of money was

1   taken, the fact is violence was used to take this money,

2   violence was used to steal from this individual and

3   violence was used to perpetrate this crime.

4           So the People at this time would ask that the

5   Court sentence this Defendant to the maximum.  We would

6   object to his staying at the Agana facility.  This

7   Defendant still has not shown a specific threat.  All ...

8   all that he's shown is that there's a person up there

9   that ... that may have had -- that has a relationship with

10  someone that he may have a relationship to, and that's all

11  he's shown.  He's had two and a half years down at the

12  Agana facility with no problems.  You would think that if

13  there was such a danger, that Mr. Afaisen would ... would

14  make steps or take steps to ... to do things while he's

15  down there.  He's been there two and half years, nothing's

16  happened.  And as this witness has stated, Mr. -- Officer

17  Ananich has stated, the Director can make the assign- --

18  reassignments -- can make reassignments once he's aware or

19  made aware of, you know, this alleged danger which at this

20  time the People don't believe there is one, but if there is

21  even a hint of that, reassignments can be made.  And this

22  witness has testified that it can happen and they can do

23  that.  So -- and -- at this point, the People would also,

24  you know, if ... if the  Court requests, we could make the

25  specific -- give the specific information to the Director

*Jeanette B. Roberts, Court Transcriber, Superior Court of Guam*

1  to assist in that.  But at this point, the People would

2  object to his being held at the Agana facility pending

3  appeal.  And we'd request that because of the

4  dangerousness, the -- of this Defendant, the inability of

5  the system to rehabilitate him at this time, we would

6  request that the Court sentence him to the max on these

7  charges.

8           THE COURT:  Mr. Chargualaf, would you like to

9  say anything to this Court before I render this sentence

10 upon you?

11          THE DEFENDANT:  No, sir.

12          THE COURT:  Okay.  Okay, the Court then will

13 render the following sentence.

14          It's obvious, Mr. Chargualaf, that you haven't

15 learned from your first incident, so --  As soon as you

16 were released you again went back to the same old crime;

17 okay?

18          The Court will sentence you as follows:

19          As for the charge of Robbery as a 2nd Degree

20 Felony, the Court will sentence you to ten years in the

21 Department of Corrections; on the Special Allegation, 25

22 years to serve consecutive; on the Conspiracy to Commit

23 Robbery, ten years to be concurrent with the Robbery

24 charge; and on the Theft charge, one year to be concurrent

25 with the Robbery charge.

1      On the recommendation -- On the motion by your
2  Counsel to keep you in the Agana Lockup until you've
3  exhausted your appellate -- appeals, the Court will deny
4  that motion; however, the Court will recommend highly to
5  the Department of Corrections Director, Angel Sablan, to
6  take every precaution to make sure that you are safe and to
7  reassign whoever that person is to be reassigned to other
8  details within the Department of Corrections.  Maybe he can
9  go up to the Agana Lockup or other areas.  Okay?

10      Prepare the judgement, Mr. Rapadas, ...

11      MR. RAPADAS:   Yes, Your Honor.

12      THE COURT:   ... and have Mr. Timblin approve it
13  as to form.

14      MR. TIMBLIN:   Could we have your recommendation
15  to the Director incorporated into the judgement as well?

16      THE COURT:   Yes.

17      MR. RAPADAS:   I will do that, Your Honor.

18      THE COURT:   And maybe this individual would be
19  reassigned to other areas; okay?

20      MR. RAPADAS:   Thank you, Your Honor.

21      THE COURT:   The court stands adjourned.

22      THE BAILIFF:   All rise.

23      ** **Whereupon the proceedings concluded.** **

24

25

*Jeanette B. Roberts, Court Transcriber, Superior Court of Guam*

| | INDEX | | | |
|---|---|---|---|---|
| | **WITNESSES** | | | |
| **FOR THE DEFENSE:**<br>Direct Examination by Mr. Timblin:<br>Cross-Examination by Mr. Rapadas: | **DIRECT**<br>(Page) | **CROSS**<br>(Page) | **REDIRECT**<br>(Page) | **RECROSS**<br>(Page) |
| Thomas A. Ananich | 4 / 5 | 6 | -- | -- |

*Jeanette B. Roberts, Court Transcriber, Superior Court of Guam*

1

# C E R T I F I C A T E

2          I, Jeanette B. Roberto, do hereby certify that the foregoing

3   pages, one through fifteen (16) inclusive, comprise the true and correct

4   transcript of the Sentencing Hearing held in the following case:

5                      Superior Court Case No. CF0317-97

6                         *PEOPLE OF GUAM, Plaintiff*

7                                    *versus*

8               *RANDY I. CHARGUALAF et al., Defendants.*

9   heard before the Honorable Judge Alberto C. Lamorena III, heard on

10  February 1, 2000, recorded on Tape Number T2K-0143.

11          This transcript of this proceedings was transcribed by me to the

12  best of my knowledge, skill and ability.

13          Dated this 30th day of June, 2006.

14

15

16                                       JEANETTE B. ROBERTO

17

18

19

20

21

22

23

24

25



## SUPERIOR COURT OF GUAM
## MINUTE ENTRY

TAPE NO: 98-1704 | PAGE NO: 1 | COURT CONVENED AT: | AM X PM | DATE: 10/19/98

PRESENT: **JUDGE: ALBERTO C. LAMORENA III , Presiding Judge**
**CLERK: EVELYN L. CABRERA**

CASE NUMBER: CM154498 | CASE TITLE:
**PEOPLE OF THE TERRITORY OF GUAM**

COUNSEL PRESENT:
PLAINTIFF: _____
DEFENDANT: _____          VS.

PROCEEDINGS: **MAGISTRATE'S HEARING**

| LOG NUMBER | DESCRIPTION |
|---|---|
| 3943 | J - call of case |
| | ( )Deft appeared: //with //without counsel |
| | ( )Court provided deft with copy of complaint and affidavit of probable cause |
| | ( )Pursuant to 8 GCA s45.30, court read complaint and affidavit of probable cause |
| | ( )Deft's counsel waived reading of complaint |
| | ( )Court advised deft of right to retain attorney |
| | ( )Court advised deft of right to court-appted atty if unable to afford/hire one |
| | ( )Court inquires if deft desires assistance of counsel |
| | ( )Court appoints:  ( )Public Defender  (✓)Other: _____ |
| | ( )Deft will retain own attorney |
| | ( )Court advised deft regarding pre-trial release and bail pursuant to |
| | 8 GCA s40.10; 40.15; 40.20 |
| | ( )Deft is released on own recognizance |
| | ( )Court set bail at $1,000  //Cash //10% //PR |
| | ( )Court set conditions if bail is met (see attached) |
| | ( )Court advised deft of right to proceed by indictment |
| | ( )Court advised deft of right not to make a statement regarding matter before |
| | court, and that any statement made can and may be used against him. |
| | ( )Court advised deft of right to preliminary examination |
| | ( )Preliminary Hearing Set For: _____, 1998 At: 4:00 pm |
| | ( )Arraignment Set For: _____, 1998 At: |

I do hereby certify that the foregoing is a full true and correct copy of the original on file with the office of the clerk of the Superior Court of Guam

MAY 16 2006

**Jerimie K.J. Duenas**
Deputy Clerk Superior Court of Guam

# IN THE SUPERIOR COURT OF GUAM

THE PEOPLE OF GUAM )
)
              vs. )
RANDY IGNACIO CHARGUALAF, )
)
             Defendant. )

CRIMINAL CASE NO. CM1544-98;
          CF0317-97

## NOTICE OF COURT APPOINTMENT OF COUNSEL

TO: [       ]    **PUBLIC DEFENDER SERVICE CORPORATION**

    [ xxxxxxx ]    <u>RAWLEN MANTANONA, ESQ.</u>

    You are hereby notified that you are appointed by the court to represent Defendant <u>RANDY IGNACIO CHARGUALAF</u>, as stated on the above-captioned case.

## SAID DEFENDANT IS PRESENTLY ON:

[CCCC] Confined pending posting of cash bond of $<u>1,000.00</u>.
[    ] Confined = Prior Case(s)
[    ] Personal Recognizance (PR) Bond of.......$_____.
[    ] Cash Bond ...............................$_____.
[    ] Surety Bond of...........................$_____.
[    ] Bench Warrant...........................$_____.
[    ] Own Recognizance

## COURT APPEARANCE DATE:

[    ] Preliminary Hearing:_____.
[xxxx] Arraignment: <u>OCTOBER 28, 1998, 4:00 P.M.</u>_____.
[    ] Status Hearing:_____.
[    ] Trial Setting:_____.
[    ] Bench Trial:_____.
[    ] Jury Selection/Trial:_____.
[    ] Other:_____.

**ALBERTO C. LAMORENA, III**
**Presiding Judge**
**Superior Court of Guam**

DATED: OCTOBER 22, 1998

BY: _____
    EVELYN L. CABRERA
    Courtroom Chamber Clerk

*RECEIVED FOR SERVICE*
_____ .m.
_____

Deputy Marshal SCOG

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

MAY 1/6 2006

Jerome K.J. Duenas
Deputy Clerk Superior Court of Guam

| TAPE NO: | 98-1781 | PAGE NO: | 1 | COURT CONVENED AT: | 4:00 _ AM X PM | DATE: | 10 28 1998 |

PRESENT: **JUDGE:** ALBERTO C . LAMORENA III , Presiding Judge
**CLERK:** JESSICA CRUZ

CASE NUMBER: CM1544-98

CASE TITLE:
PEOPLE OF THE TERRITORY OF GUAM
VS.
RANDY IGNACIO CHARGUALAF *

COUNSEL PRESENT:
PLAINTIFF:
DEFENDANT:

PROCEEDINGS: ARRAIGNMENT

JUL 14 2006
RECEIVED

**LOG NUMBER** | **DESCRIPTION**

3462

| Case called = Deft appeared //with //without counsel
| // Deft not present //reissue summons //issue bench warrant at $_____ cash
| //J=Read charges of complaint/indictment/information
| //Counsel appointed: ()Public defender ()Other:_____
| ()Seek own counsel
| //Arraignment continued: _____, 1998 At: _____am/pm

| ()D/A waives reading of complaint/indictment/information
| ()D Pleads not guilty () Pleads guilty
| ()D Pleads guilty by reason of mental illness, defect, etc.
| ()D Pleads not guilty by reason of mental illness, defect, etc.

| ()Request grand jury transcripts ()Request discovery
| ()Psychological/psychiatric exam ordered

| ()Jury trial demanded of 6/12 persons ()Speedy trial is //asserted //waived
| ()Bench trial demanded
| ()Trial setting date: 12/4 11 Am PC17H ()Others:

| ()Deft is released on personal recognizance bond of $_____.
| ()Unsecured bond $_____
| ()Cash bond of $_____ ()Own recognizance ()Present bail conditions applied

| * RELEASE CONDITIONS *
| //Shall obey all laws of Guam
| //Shall not leave Guam without permission of this court
| //Shall stay away from any ports of entry/exit of Guam
| //Shall stay away from victim(s) listed in the complaint/indictment/information
| //Shall stay away from any known felons
| //Shall stay away from co-deft(s)
| //Shall report to probation once a week in person
| //Observe curfew hours //Surrender passport, travel documents, etc.
| //Shall not consume alcohol anytime //submit to random drug/alcohol test
| //Probation to search home anytime
| //Stay away from all firearms //Stay away from illegal drugs
| //Shall not threaten, assault, or harass victim(s)
| //Others:

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

MAY 1/6 2006

Jerimie K.J. Duenas
Deputy Clerk Superior Court of Guam



| TAPE NO: 00- 6603 | PAGE NO: 1 | COURT CONVENED AT: | 10:00 X AM _ PM | DATE: 04 28 2000 |

PRESENT: **JUDGE:** ALBERTO C . LAMORENA III , Presiding Judge
**CLERK:** EVELYN SANTOS

---

| CASE NUMBER: CM1544-98 | CASE TITLE: |

PEOPLE OF THE TERRITORY OF GUAM

VS.

COUNSEL PRESENT:
PLAINTIFF: _____ RANDY IGNACIO CHARGUALAF *
DEFENDANT: _____ T. Tamblin — not present

PROCEEDINGS: CRIMINAL TRIAL SETTING

*(stamp)* OFFICE OF THE ATTORNEY GENERAL · JUSTICE FOR ALL ·

*(stamp)* RECEIVED

---

| LOG NUMBER | DESCRIPTION |

Case called: (X)Deft present w/atty ()Deft not present ()D/A not present

() Jury selection and trial set for: _____ ____am/pm

() Motion cut-off date: _____

() Pretrial Conference: _____ ____am/pm

() Time waived by D/A

() Speedy trial asserted

(X) Trial setting continued: ____5/5____ 10 am/pm

() Change of plea hearing: _____ ____am/pm

() Further proceedings hearing: _____ ____am/pm

() Issue order to show cause on defense attorney

() Bench warrant to issue - Bail set $_____

Others:

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

JUL 0 6 2006

Jerimie K. J. Duenas
Deputy Clerk Superior Court of Guam

TAPE NO: 00- 884 | PAGE NO: 1 | COURT CONVENED AT: 10:00 X AM _ PM | DATE: 06 09 2000

PRESENT: **JUDGE:** ALBERTO C . LAMORENA III , Presiding Judge
**CLERK:** EVELYN C. SANTOS

CASE NUMBER: CM1544-98 | CASE TITLE:
PEOPLE OF THE TERRITORY OF GUAM
VS.
RANDY IGNACIO CHARGUALAF *

COUNSEL PRESENT:
PLAINTIFF:
DEFENDANT: T. Tumblin

PROCEEDINGS: CRIMINAL TRIAL SETTING



RECEIVED

| LOG NUMBER | DESCRIPTION |
|---|---|
| 6/00 | Case called: ( )Deft present w/atty ( )Deft not present ( )D/A not present |

( ) Jury selection and trial set for: _10/31/00_ 2 am/**pm**

( ) Motion cut-off date: _9/29/00_

( ) Pretrial Conference: _10/24/00_ 3 am/**pm**

( ) Time waived by D/A

( ) Speedy trial asserted

( ) Trial setting continued: _____ ____am/pm

( ) Change of plea hearing: _____ ____am/pm

( ) Further proceedings hearing: _____ ____am/pm

( ) Issue order to show cause on defense attorney

( ) Bench warrant to issue - Bail set $_____

Others:

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

JUL 0 6 2006

Jerimia K. J. Duenas
Deputy Clerk Superior Court of Guam

# SUPERIOR COURT OF GUAM
## MINUTE ENTRY

| TAPE NO: 00-6 | PAGE NO: 1 | COURT CONVENED AT: | 10:00 X AM _ PM | DATE: 11 17 2000 |

**PRESENT:** **JUDGE:** ALBERTO C . LAMORENA III , Presiding Judge
**CLERK:** JOE BAMBA

| CASE NUMBER: CM1544-98 | CASE TITLE: |

PEOPLE OF THE TERRITORY OF GUAM
VS.
RANDY IGNACIO CHARGUALAF *

**COUNSEL PRESENT:**
**PLAINTIFF:** _____
**DEFENDANT:** _____

OFFICE OF THE ATTORNEY GENERAL
RECEIVED

**PROCEEDINGS:** CRIMINAL TRIAL SETTING

| LOG NUMBER | DESCRIPTION |

317

Case called: (X)Deft present w/atty ()Deft not present ()D/A not present

() Jury selection and trial set for: 2/6/01 2 am/pm

(X) Motion cut-off date: 1/5

(X) Pretrial Conference: 2/1/01 3 am/pm

() Time waived by D/A

() Speedy trial asserted

() Trial setting continued: _____ ____am/pm

() Change of plea hearing: _____ ____am/pm

() Further proceedings hearing: _____ ____am/pm

() Issue order to show cause on defense attorney

() Bench warrant to issue - Bail set $_____

Others:

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

JUL 0 6 2006

Jerimie K.J. Duenas
Deputy Clerk Superior Court of Guam

| TAPE NO: | 01-222 | PAGE NO: | 1 | COURT CONVENED AT: | 3:00 _ AM X PM | DATE: | 02 01 2001 |

PRESENT: **JUDGE:** ALBERTO C. LAMORENA III, Presiding Judge
**CLERK:** EVELYN C. SANTOS

CASE NUMBER: CM1544-98

CASE TITLE:
PEOPLE OF THE TERRITORY OF GUAM
VS.
RANDY IGNACIO CHARGUALAF *

COUNSEL PRESENT:
PLAINTIFF:
DEFENDANT: T. Finth

PROCEEDINGS: PTC

| LOG NUMBER | DESCRIPTION |
| --- | --- |
| 4965 | -Case Called |
| | dept present |
| | 8/2 = awaiting proposed plea |
| | 2/5/01 9 pm |

RECEIVED
JUL 14 2006

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

JUL 06 2006

**Jerimie K.J. Duenas**
Deputy Clerk Superior Court of Guam

Matter continued to: _____, 2001 At: _____ am/pm

| TAPE NO: | 01- | PAGE NO: | 1 | COURT CONVENED AT: | 4:00 _ AM X PM | DATE: | 02 05 2001 |

PRESENT:  **JUDGE:** ALBERTO C . LAMORENA III ,  Presiding Judge
**CLERK:** EVELYN C. SANTOS

CASE NUMBER:   CM1544-98

CASE TITLE:
PEOPLE OF THE TERRITORY OF GUAM
VS.
RANDY IGNACIO CHARGUALAF *

COUNSEL PRESENT:
PLAINTIFF: _____
DEFENDANT: _____ T. Fumble _____

PROCEEDINGS: _____ PTC/PP _____

| LOG NUMBER | DESCRIPTION |
| --- | --- |
| 4080 | -Case Called    Rept pmt |
| | 8/0= awaits proposal plea |
| | Ct= 2/6/01 4p |

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

JUL 0 6 2006

Jerimie K.J. Duenas
Deputy Clerk Superior Court of Guam

| Matter continued to: | , 2001  At: | am/pm |

| TAPE NO: 01-231 | PAGE NO: 1 | COURT CONVENED AT: 4:00 - AM X PM | DATE: 2/6/01 |

PRESENT: **JUDGE:** ALBERTO C. LAMORENA III, Presiding Judge
**CLERK:** EVELYN C. SANTOS

CASE NUMBER: Cm1544-98

CASE TITLE: PEOPLE OF THE TERRITORY OF GUAM

COUNSEL PRESENT:
PLAINTIFF: _____
DEFENDANT: _J. Jumsler_

vs.
_Randy Charequalaf_

JUL 2006
HAGÅTÑA, GUAM
RECEIVED

PROCEEDINGS: CHANGE OF PLEA1

| LOG NUMBER | DESCRIPTION |
|---|---|
| 190 | |
| | CASE CALLED: (/)D appeared with D/A ()D not present ()Warrant to Issue $_____ |
| | (/)D sworn in ()INTERPRETER sworn in |
| | (/)PLEA AGREEMENT presented: () accepted ()withdrawn ()denied |
| | |
| | (/)D advised of charges, maximum sentence, rights, plea agreement and agrees to its contents, effects of the plea agreement, etc. |
| | (/)D satisfied with representation of counsel. |
| | (/)D 's plea is voluntary and insists on plea. |
| | (/)D not under medication, drugs, alcohol. |
| | ()D (/)D/A stipulates to factual basis. |
| | ()Incident related by: ()Govt ()Deft ()D/A |
| | ()D/A waives Reading of Complaint / Indictment / Information |
| | (/)D pleads GUILTY ()D pleads NOT GUILTY ()D voluntary signs Waiver of Indictment |
| | ()D withdraws plea -- TRIAL SETTING DATE: _____. |
| | |
| | ()GUILTY PLEA entered for the Offense of: _____. |
| | |
| | (/)COURT SENTENCED THE DEFT: |
| | ____ DYS/MOS/YRS CONFINEMENT |
| | ____ DYS/MOS/YRS is suspended except _/_ DYS/MOS/YRS to serve |
| | ()CREDITED for time served. ()PROBATION for _/_ DYS/MOS/YRS |
| | ()DEFERRED plea 1 yr _Parole w/other Case_ |
| | |
| | $_____ FINE + $20 court costs. $_____ OF SAID FINE is suspended |
| | |
| | ()ATTEND ATP & pay $200 tuition fee ()ATTEND 12 AA Meetings |
| | ()ALLOWED to convert fine into Community Service ()Perform ____ Hrs of Comm. Srvc |
| | ()DL suspended for ____ DYS/MOS/YRS |
| | ()AUTHORIZED to drive to and from: ()Work ()During Work/School |
| | ()Provide PROBATION w/work schedule |
| | ()SHALL attend Theft Diversionary Program - Pay Tuition Fee. |
| | (/)Must Comply with all Terms and Conditions set forth with PROBATION AND ASO. |
| | (/)SHALL obey all Laws of Guam |
| | (/)SHALL stay away from victim(s) |
| | ()SHALL stay away from all Firearms ()Firearms/I.D. forfeited to _____ |
| | ()SHALL stay away from co-defts |
| | ()SHALL stay away from all known felons |
| | ()CREDITED to New Beginnings Program |
| | ()REPORT to Mental Health - pay all costs |
| | ()REPORT to Probation Office once a month in person |

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam

JUL 06 2006

**Jerimie K.J. Duenas**
Deputy Clerk Superior Court of Guam



RECEIVED

**IN THE SUPERIOR COURT**
**OF GUAM**

| | |
|---|---|
| THE PEOPLE OF GUAM, | ) CRIMINAL CASE NO. **CM1544-98** |
| | ) GPD REPORT NO. 98-21353 |
| Plaintiff, | ) CRIMINAL CASE NO. **CF317-97** |
| vs. | ) GPD REPORT NO. 97-17453 |
| | ) |
| RANDY | ) |
| ~~RONNIE~~ IGNACIO CHARGUALAF, | ) |
| DOB: 05/23/70 | ) |
| SSN: 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 | ) **PLEA AGREEMENT** |
| | ) |
| Defendant. | ) |

**ATTORNEY GENERAL'S OFFICE - PROSECUTION DIVISION**
2-200E Judicial Center Building
120 West O'Brien Drive
Hagåtña, Guam 96910
Tel: (671) 475-3406 / Fax: (671) 477-3390

Pursuant to Criminal Procedure Code §60.80, the Defendant,

**RONNIE IGNACIO CHARGUALAF**, represented by **TERRY E. TIMBLIN, ESQ.**,

and the People of Guam represented by the Attorney General through

JOCELYN M. RODEN
~~TRICIA R.S. ADA~~, enter into the following plea agreement:

1. The Defendant, having been advised, understands the

following:

    a)    the nature of the charge and its elements to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law;

    b)    the right to consult with and be represented by an attorney at every stage of these proceedings;

    c)    the right to plead not guilty, the right to confront and cross-examine witnesses, and the right against self-incrimination;

    d)    that by pleading guilty to the charge the right to a jury trial is waived; and upon acceptance of the guilty plea by the Court, Defendant stands convicted just as though convicted by a jury; and

    e)    that if Defendant pleads guilty, the Court may ask questions about the offense charged, and if Defendant

PF\H:\PLEAS\FV\CHARGUAL.WPD

answers these questions on the record, and in the presence of his attorney, the answers later may be used against him.

2. Defendant voluntarily, and without coercion or promises apart from this plea agreement, agrees to enter a guilty plea to one count of **ASSAULT (As a Misdemeanor)** in **CM1544-98**, in violation of 9 G.C.A. §§ 19.30(a)(1) and (e), filed pursuant to 9 G.C.A. §§ 80.34 and 80.50 which carries a maximum sentence of one (1) year imprisonment and a maximum fine of one thousand dollars ($1,000.00). The charge arises out of the facts set forth in the People's Declaration of Probable Cause filed herein.

3. Defendant understands and agrees he may be called upon to testify under oath about the factual details of these transactions at the taking of this guilty plea.

4. The Attorney General and the Defendant agree to the following:

    a. Defendant shall serve ten (10) days at the Department of Corrections, with credit for time served, **concurrent** to the sentence imposed in **CF317-97**.

    b. Defendant shall be placed on supervised parole for one (1) year, **concurrent** with the parole term imposed in **CF317-97**;

    c. In addition to the standard conditions imposed by the Parole Board and the Parole Services Division, the People recommend and the defendant agrees to abide by the following recommended conditions, **in addition** to the recommendations of parole imposed in **CF317-97**:

        i. Defendant shall stay away, directly and indirectly, from the victim, **NEMESIO FRANILISO.** The Defendant shall not contact the same by telephone, in writing, and/or through a third party, including a family member or friend;

PF\H:\PLEAS\FV\CHARGUAL.WPD

    ii.    Defendant shall stay away from the residence, dwelling, school, or place of employment of the victim, **NEMESIO FRANILISO,** or any other specified place;

    iii.    Defendant shall refrain from threatening to commit or from committing acts of violence against, or from harassing, or annoying **NEMESIO FRANILISO;**

    iv.    Defendant shall obey all federal and local laws of Guam; and

    v.    Defendant shall comply with any other condition imposed by the court or the Parole Board.

d.    Defendant shall report to the Parole Office for intake and processing within forty-eight (48) hours after sentencing.

e.    The Defendant understands, pursuant to 9 GCA § 80.70(c), that if he is recommitted upon his revocation of parole, the term of further imprisonment upon such re-commitment and of any subsequent re-parole or re-commitment under the same sentence shall be fixed by the Guam Parole Board but shall not exceed in length the longer of the unserved balance of (1) the parole term provided by 9 GCA § 80.70(b); or (2) the remainder of the original sentence determined from the date of conviction. The Defendant further understands that if such parole is revoked at any point in its duration, it can result in the Defendant's serving the entire parole term in prison.

5.    Defendant understands that he has a right to move for a reduction of his sentence within one hundred twenty (120) days of sentencing pursuant to 8 G.C.A. §120.46 and agrees to waive that right for the purpose of this plea.

PF\H:\PLEAS\FV\CHARGUAL.WPD

6.   Defendant understands that he has a right to appeal his conviction in this case pursuant to 8 G.C.A. §§130.10 and 130.15, and agrees to waive that right for the purpose of this plea.

8.   Defendant states he has told his lawyer all the facts and circumstances known about the charges.  His lawyer has counselled and advised him on the nature of each charge as well as on any and all lesser included charges.

9.   Defendant and the People each intend this plea agreement and the sentence imposed be a final sentence and a total and conclusive resolution of the charges described within this plea agreement.

10.   Both parties understand that should the Court refuse to accept this plea agreement the Defendant shall be entitled to withdraw his plea of guilty.

11.   By his signature, Defendant attests he has read this agreement and its provisions have been fully explained by his attorney.  Defendant believes his lawyer has done all that anyone could do to counsel and assist him and is satisfied with the advice and help received.

RANDY

_____
RONNIE IGNACIO CHARGUALAF
Defendant

Dated: _2-6-001_

_____
TERRY E. TIMBLIN, ESQ.
Counsel for Defendant

Dated: _2/6/01_

_____
TRICIA R.S. ADA   JOAQUIN M. DOVE
Prosecuting Attorney

Dated: February 2, 2001

After a hearing held on _February 6_, 200_1_, and a finding that Defendant's plea of guilty to one count of **ASSAULT (As a Misdemeanor)** in **CM1544-98**, is knowingly and voluntarily made, this Court now accepts the plea agreement herein and his plea of guilty and adjudges Defendant guilty of one count of **ASSAULT (As a Misdemeanor)** in **CM1544-98**. Sentencing shall take place on the _6th_ day of _February_, 200_1_.

_____
HONORABLE ELIZABETH BARRETT-ANDERSON
JUDGE, SUPERIOR COURT OF GUAM

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

MAY 1 6 2006

Jerimie K.J. Duenas
Deputy Clerk Superior Court of Guam

PF\H:\PLEAS\FV\CHARGUAL.WPD

RECEIVED
[01/05a]
FEB 13 2001
SUPERIOR COURT
OF GUAM

JUL 14 2006
RECEIVED



# IN THE SUPERIOR COURT
# OF GUAM

ATTORNEY GENERAL'S OFFICE - PROSECUTION DIVISION
2-200E Judicial Center Building
120 West O'Brien Drive
Hagåtña, Guam 96910
Tel: (671) 475-3406 / Fax: (671) 477-3390

THE PEOPLE OF GUAM,

        vs.

**RANDY IGNACIO CHARGUALAF**,
**DOB: 05/23/70**
**SSN: 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**

                Defendant.

)
)
)
)
)
)
)
)
)
)
)

CRIMINAL CASE NO. **CM1544-98**
GPD REPORT NO. **98-21353**
CRIMINAL CASE NO. **CF317-97**
GPD REPORT NO. **97-17453**

# J U D G M E N T

On **February 6, 2001**, came the attorney for the People, Assistant Attorney General **JOCELYN M. RODEN,** and for the Defendant appeared with **TERRENCE E. TIMBLIN,** counsel, and for the Defendant having moved to change his plea of NOT GUILTY to that of GUILTY to the offense of **ASSAULT (As a Misdemeanor)** in **CM1544-98**, in violation of 9 GCA §19.30(a)(1) and (e).

The Court informed the Defendant of the effect of the plea entered and asked him whether he insists on his plea or not.

The Defendant persisted on his plea of GUILTY of the offense of **ASSAULT (As a Misdemeanor)** in **CM1544-98.**

The Court then addressed the Defendant personally and found that the plea is made voluntarily with an understanding of the nature of the charge and consequences of his plea. The Court further found to its satisfaction that there is a factual basis for the plea.

ORIGINAL

The Court accepts Defendant's plea of GUILTY and based on his plea, a JUDGMENT of GUILTY is hereby entered.  Sentencing was held on **February 6, 2001.**

**WHEREFORE, IT IS HEREBY ORDERED** as follows:

That for the offense of **ASSAULT (As a Misdemeanor)** in **CM1544-98**, the Defendant, **RANDY IGNACIO CHARGUALAF**, is sentenced as follows:

1. Defendant shall serve ten (10) days at the Department of Corrections, with credit for time served**, concurrent** to the sentence imposed in **CF317-97.**

2. Defendant shall be placed on supervised parole for one (1) year, **concurrent** with the parole term imposed in **CF317-97;**

3. In addition to the standard conditions imposed by the Parole Board and the Parole Services Division, the People recommend and the defendant agrees to abide by the following recommended conditions, **in addition** to the recommendations of parole imposed in **CF317-97:**

    a. Defendant shall stay away, directly and indirectly, from the victim, **NEMESIO FRANILISO.** The Defendant shall not contact the same by telephone, in writing, and/or through a third party, including a family member or friend;

    b. Defendant shall stay away from the residence, dwelling, school, or place of employment of the victim, **NEMESIO FRANILISO,** or any other specified place;

    c. Defendant shall refrain from threatening to commit or from committing acts of violence against, or from harassing, or annoying **NEMESIO FRANILISO;**

    d. Defendant shall obey all federal and local laws of Guam; and

(6) H:\JUGMENTS\MISDJDGT\CHARGUAL.wpd\pf

        e.    Defendant shall comply with any other condition
              imposed by the court or the Parole Board.

    Defendant shall report to the Parole Office for intake and
processing within forty-eight (48) hours after sentencing.

    The Defendant understands, pursuant to 9 GCA § 80.70(c), that
if he is recommitted upon his revocation of parole, the term of
further imprisonment upon such re-commitment and of any subsequent
re-parole or re-commitment under the same sentence shall be fixed
by the Guam Parole Board but shall not exceed in length the longer
of the unserved balance of (1) the parole term provided by 9 GCA §
80.70(b); or (2) the remainder of the original sentence determined
from the date of conviction.  The Defendant further understands
that if such parole is revoked at any point in its duration, it can
result in the Defendant's serving the entire parole term in prison.

    **SO ORDERED, NUNC PRO TUNC,** this _____ day of MAR - 2 2001, 2001.

Received for Service

3/6/01 MR M

_____ 19 _____

Marshal Superior Court
Guam

                              HONORABLE ALBERTO C. LAMORENA, III
                              PRESIDING JUDGE
                              SUPERIOR COURT OF GUAM.

                              I do hereby certify that the foregoing
                              is a full true and correct copy of the
                              original on file in the office of the
                              clerk of the Superior Court of Guam

                                            MAY 1 6 2006

Submitted by:                 Approved as to form:

_____       _____
JOCELYN M. RODEN              TERRENCE E. TIMBLIN      Jerime K.J. Duenas
Assistant Attorney General   Attorney for Defendant   Deputy Clerk Superior Court of Guam

Dated: February 9, 2001      Dated: 2/12/01



# VOUCHER FOR COMPENSATION OF COURT-APPOINTED COUNSEL

# MISDEMEANOR CASE
### SUPERIOR COURT OF GUAM

OFFICE OF THE ATTORNEY GENERAL
HAGÅTÑA GUAM
JUL 14 2006
RECEIVED

DATE: 2/12/01

PAYEE: Terry E. Timblin
ADDRESS: 155 Martyr St. 1st Fl.Hagatna Guam 96910
CASE: People VS Nancy T. Charfauros
CASE NO. CM1544-98

## A. TIME SPENT IN COURT:

| | | | | | |
|---|---|---|---|---|---|
| 1. Date See attached | No. of Hrs. 4.4 | x $ 75.00 | 330.00 | | |
| 2. Date | No. of Hrs. | x 75.00 | | | |
| 3. Date | No. of Hrs. | x 75.00 | | | |
| 4. Date | No. of Hrs. | x 75.00 | 330.00 | | |

## B. TIME SPENT IN PREPARATION:

| | | | | |
|---|---|---|---|---|
| 1. Date See attached | No. of Hrs. 2.3 | x $ 50.00 | 115.00 | |
| 2. Date | No. of Hrs. | x 50.00 | | |
| 3. Date | No. of Hrs. | x 50.00 | | |
| 4. Date | No. of Hrs. | x 50.00 | 115.00 | |

## C. EXPENSES OF REPRESENTATION:

1. _____
2. _____
3. _____
4. _____

## D. LESS COMPENSATION RECEIVED OR CLAIMS FILED EARLIER UNDER SEPARATE VOUCHER (S) FOR REPRESENTATION IN THIS CASE.

**NET AMOUNT CLAIMED**      445.00

I certify that the above claim is correct and just and that payment has not been received and, except as noted in item D, no payment or promise of payment has been requested or accepted for representation in the above case.

**SIGNATURE OF PAYEE**

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

**PAYEE SS# OR TAXPAYER I.D. #**

*For felony cases, this amount plus item D shall not exceed $2500.00 the limit set by the Judicial Court.

## FOR COURT USE ONLY

Certification of Fund

VOUCHER VERIFIED
By: Glenn Aguigua
Deputy Clerk
3/9/01

Approved for Payment

**Judge, Superior Court**

APR 0 2 2001

Date: _____

| DATE | SERVICE: People v. Randy I. Chargualaf, CM1544-98 | HOURS |
|------|---------------------------------------------------|-------|

**IN COURT**

| DATE | SERVICE | HOURS |
|------|---------|-------|
| 6/9/00 | Attend Trial Setting | 1.1 |
| 10/26/00 | Attend Pretrial Conference | 0.5 |
| 11/17/00 | Attend Cont'd Trial Setting | 0.8 |
| 2/1/01 | Attend Pretrial Conference | 0.8 |
| 2/5/01 | Attend Further Proceeding | 0.5 |
| 2/6/01 | Attend Further Proceeding, Change of Plea, Sentencing | 0.7 |

|  | | 4.4 |
|--|--|-----|
| X $75 | | $330.00 |

**OUT OF COURT**

| DATE | SERVICE | HOURS |
|------|---------|-------|
| 6/9/00 | Review Complt/Aff PC | 0.2 |
| 10/11/00 | Phone Conference with Client | 0.4 |
| 10/26/00 | Phone Conference with Client | 0.3 |
| 12/5/00 | Phone conference with Prosecutor's Office | 0.2 |
| 2/1/01 | Phone Conference with Client | 0.2 |
| 2/1/01 | Phone conference with Prosecutor's Office | 0.2 |
| 2/2/01 | Phone conference with Tricia Ada | 0.2 |
| 2/6/01 | Phone Conference with Client | 0.2 |
| 2/12/01 | Review Judgment | 0.2 |
| 2/12/01 | Phone Conference with Client | 0.2 |

| Total Out of Court | | 2.3 |
|--------------------|--|-----|
| X $50 | | $115.00 |
| Total Billing | | $445.00 |



# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM, | SUPERIOR COURT CASE NO: CM1544-98 |
| Plaintiff, | |
| versus | |
| RANDY I. CHARGUALAF, | TABLE OF CONTENTS |
| Defendant. | |

## REPORTER'S TRANSCRIPT OF PROCEEDINGS

### BEFORE:

### THE HONORABLE ALBERTO C. LAMORENA III
PRESIDING JUDGE, SUPERIOR COURT OF GUAM

| TAB: | Date: | Proceedings: |
|---|---|---|
| 1 | June 9, 2000 | Criminal Trial Setting |
| 2 | November 17, 2000 | Criminal Trial Setting |
| 3 | February 2, 2001 | Pretrial Conference |
| 4 | February 6, 2001 | Change of Plea |

COPY

*Jeanette B. Roberts, Court Transcriber, Superior Court of Guam*

1

2

3

4 # IN THE SUPERIOR COURT OF GUAM

5

6 **PEOLE OF GUAM,**

7 Plaintiff,

8 versus

9 **RANDY I. CHARGUALAF,**

10 Defendant.

| | |
|---|---|
| ) | **SUPERIOR COURT CASE NO:** |
| ) | **CM1544-98** |
| ) | |
| ) | **CRIMINAL TRIAL SETTING** |
| ) | |
| ) | **June 9, 2000** |
| ) | |

11

12 ## REPORTER'S TRANSCRIPT OF PROCEEDINGS

13 BEFORE:

14 **THE HONORABLE ALBERTO C. LAMORENA III**
PRESIDING JUDGE, SUPERIOR COURT OF GUAM

15

16 A P P E A R A N C E S:

17 For the People:

18 **BONNIE K. BRADY, Esquire**
OFFICE OF THE ATTORNEY GENERAL

19 Hagåtña, Guam

20 For the Defendant:

21 **TERRENCE TIMBLIN, Esquire**
Hagåtña, Guam

22

23

24

25



*Jeanette B. Roberts, Court Transcriber, Superior Court of Guam*

1          THE COURT:    *1544-98; People of Guam versus Randy*
2    *Chargualaf.*

3          Mr. Timblin?

4          MR. TERRENCE TIMBLIN:    Good morning, Your Honor.
5    Defendant is present.

6          Your Honor, first of all, I wonder if the Court
7    has an extra copy of the complaint.

8          THE COURT:    It's an assault case.

9          MR. TIMBLIN:    Yes.    Thank you, Your Honor.

10         Your Honor, we'll -- I don't know if he's been
11   arraigned or not by the --

12         THE COURT:    Yes, he has.

13         MR. TIMBLIN:    Okay.

14         THE COURT:    -- On October 28th.

15         MR. TIMBLIN:    Okay.    In that case, Your Honor,
16   we would just simply ask for a trial date, and
17   Mr. Chargualaf indicates a willingness to waive speedy
18   trial.

19         THE COURT:    Okay.

20              *[Brief pause.]*

21         THE COURT:    Okay.    The Court will set it for
22   October 31st at 2 p.m. for jury selection; October 26th at
23   2 p.m. -- 3 p.m., I'm sorry, for pretrial; motion cut-off
24   date will be September 29th; time is waived.

25   ///

1          Who's handling this with the Prosecution,

2    Ms. Brady?

3          MS. BONNIE BRADY:    It would probably be

4    Ms. Roden.

5          THE COURT:    Roden?  Okay.

6          ** **Whereupon the proceedings concluded.** **

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Jeanette B. Roberts, Court Transcriber, Superior Court of Guam*

# C E R T I F I C A T E

I, Jeanette B. Roberto, do hereby certify that the foregoing pages, one through four (4) inclusive, comprise the true and correct transcript of the Criminal Trial Setting, heard in the following case:

Superior Court Case No. CM1544-98

*PEOPLE OF GUAM, Plaintiff*

*versus*

*RANDY I. CHARGUALAF, Defendant.*

heard before the Honorable Judge Alberto C. Lamorena III, heard on June 9, 2000, recorded on Tape Number T2K-0884.

This transcript of this proceedings was transcribed by me to the best of my knowledge, skill and ability.

Dated this 15th day of June, 2006.

_____
JEANETTE B. ROBERTO

*Jeanette B. Roberto, Court Transcriber, Superior Court of Guam*

# IN THE SUPERIOR COURT OF GUAM

PEOPLE OF GUAM,

              Plaintiff,

versus

RANDY I. CHARGUALAF,

              Defendant.

**SUPERIOR COURT CASE NO:**
CM1544-98

**CRIMINAL TRIAL SETTING**

November 17, 2000

---

## REPORTER'S TRANSCRIPT OF PROCEEDINGS

### BEFORE:

### THE HONORABLE ALBERTO C. LAMORENA III
PRESIDING JUDGE, SUPERIOR COURT OF GUAM

### A P P E A R A N C E S:

<u>For the People:</u>

**BONNIE K. BRADY, Esquire**
OFFICE OF THE ATTORNEY GENERAL
Hagåtña, Guam

<u>For the Defendant:</u>

**TERRENCE TIMBLIN, Esquire**
Hagåtña, Guam

# COPY



*Jeanette B. Roberts, Court Transcriber, Superior Court of Guam*

1          THE COURT:    1544-98; *People of Guam versus Randy*

2   *Ignacio Chargualaf.*

3          MR. TERRENCE TIMBLIN:    Good morning, Your Honor.

4   We would just prepare for trial -- (indiscernible -

5   inaudible) -- waive time -- (inaudible - indiscernible) --

6          THE COURT:    Okay.   The Court will set it for

7   jury selection for February the 6th at 2 p.m.; pretrial

8   conference would be February the 1st at 3 p.m.; motion cut-

9   off date will be January the 5th.

10          The time is waived, Mr. Timblin?

11          MR. TIMBLIN:    Yes, it is, Your Honor.

12          THE COURT:    Who's handling this for the

13   Prosecution?

14          MS. BONNIE BRADY:    What type of case is it, Your

15   Honor?

16          THE COURT:    Assault.

17          MS. BRADY:    This will be Ms. Roden's case.

18          ** **Whereupon the proceedings concluded.** **

19

20

21

22

23

24

25

# CERTIFICATE

1

2          I, Jeanette B. Roberto, do hereby certify that the foregoing

3    pages, one through three (3) inclusive, comprise the true and correct

4    transcript of the Criminal Trial Setting, heard in the following case:

5                      Superior Court Case No. CM1544-98

6                          *PEOPLE OF GUAM, Plaintiff*

7                                    *versus*

8                      *RANDY I. CHARGUALAF, Defendant.*

9    heard before the Honorable Judge Alberto C. Lamorena III, heard on

10   November 17, 2000, recorded on Tape Number T2K-1756.

11          This transcript of this proceedings was transcribed by me to the

12   best of my knowledge, skill and ability.

13          Dated this 15th day of June, 2006.

14

15                                                  _____
                                                    JEANETTE B. ROBERTO
16

17

18

19

20

21

22

23

24

25

*Jeanette B. Roberto, Court Transcriber, Superior Court of Guam*

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM,<br><br>           Plaintiff,<br><br>        versus<br><br>RANDY I. CHARGUALAF,<br><br>           Defendant. | SUPERIOR COURT CASE NO:<br>CM1544-98<br><br>PRETRIAL CONFERENCE<br><br>February 1, 2001 |

## REPORTER'S TRANSCRIPT OF PROCEEDINGS

BEFORE:

**THE HONORABLE ALBERTO C. LAMORENA III**
PRESIDING JUDGE, SUPERIOR COURT OF GUAM

A P P E A R A N C E S:

<u>For the People:</u>

**LEWIS LITTLEPAGE, Esquire**
OFFICE OF THE ATTORNEY GENERAL
Hagåtña, Guam

<u>For the Defendant:</u>

**TERRENCE TIMBLIN, Esquire**
Hagåtña, Guam



*Jeanette B. Roberts, Court Transcriber, Superior Court of Guam*

1         THE BAILIFF:   The Superior Court of Guam is now

2 in session.   Alberto C. Lamorena, III presiding.   Draw near

3 and give your attention, you shall be heard.   God save Guam

4 and this honorable court.

5         Please be seated.

6         THE COURT:   CF1544-98; *People of Guam versus*

7 *Randy Ignacio Chargualaf.*

8         Okay.   I think we have a misdemeanor case pending

9 in here?

10         MR. TERRENCE TIMBLIN:   Yes, Your Honor.

11         Your Honor, I was just conferring with

12 Mr. Littlepage.   I have not, at this point, received any

13 kind of a plea offer from the Government, but he indicates

14 that he would be willing to look into making one and

15 prepping for this only for a couple of weeks.

16         THE COURT:   How come no plea agreement was

17 offered in this case?

18         MR. LEWIS LITTLEPAGE:   I don't have the file,

19 Your Honor, I couldn't tell you.   I'll be glad to make sure

20 that one is offered since this client has indicated that

21 they would like to review one.

22         THE COURT:   Okay.   I'll set this for further

23 proceedings for February the 5th at four; okay?   And I want

24 a plea agreement ready by tomorrow at four o'clock; okay?

25         MR. LITTLEPAGE:   Certainly, Your Honor.

*Jeanette B. Roberto, Court Transcriber, Superior Court of Guam*

1          THE COURT:    -- So that the Defendant can review

2     it.   If not, we'll go to trial on Tuesday.

3                    ** Whereupon the proceedings concluded. **

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Jeanette B. Roberts, Court Transcriber, Superior Court of Guam*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# CERTIFICATE

I, Jeanette B. Roberto, do hereby certify that the foregoing pages, one through four (4) inclusive, comprise the true and correct transcript of the Pretrial Conference, heard in the following case:

Superior Court Case No. CM1544-98

*PEOPLE OF GUAM, Plaintiff*

*versus*

*RANDY I. CHARGUALAF, Defendant.*

heard before the Honorable Judge Alberto C. Lamorena III, heard on February 1, 2001, recorded on Tape Number T01-0222.

This transcript of this proceedings was transcribed by me to the best of my knowledge, skill and ability.

Dated this 15th day of June, 2006.

_____
JEANETTE B. ROBERTO

*Jeanette B. Roberto, Court Transcriber, Superior Court of Guam*

1

2

3

4                    IN THE SUPERIOR COURT OF GUAM

5

6    PEOPLE OF GUAM,                    )    SUPERIOR COURT CASE NO:
                                        )         CM1544-98
7                    Plaintiff,         )
                                        )
8               versus                  )    CHANGE OF PLEA
                                        )
9    RANDY I. CHARGUALAF,               )    February 6, 2001
                                        )
10                   Defendant.         )
     _____)

11

12            REPORTER'S TRANSCRIPT OF PROCEEDINGS

13                          BEFORE:

14        THE HONORABLE ALBERTO C. LAMORENA III
           PRESIDING JUDGE, SUPERIOR COURT OF GUAM

15

16                   A P P E A R A N C E S:

17                      For the People:

18            LEWIS LITTLEPAGE, Esquire
               OFFICE OF THE ATTORNEY GENERAL
19                   Hagåtña, Guam

20                   For the Defendant:

21            TERRENCE TIMBLIN, Esquire
                    Hagåtña, Guam

22

23

24

25



*Jeanette B. Roberto, Court Transcriber, Superior Court of Guam*

1      THE COURT:   CM1544-98; *People of Guam versus*
2  *Randy Ignacio Chargualaf.*

3      Mr. Timblin, is there a plea agreement on this
4  one?

5      MR. TERRENCE TIMBLIN:   Good afternoon, Your
6  Honor.  Yes, there is a plea agreement.  (Indiscernible) by
7  the parties and tender it to the Court.

8      THE COURT:   Did the grand jury come out yet?
9  Oh, yes, they did, huh?

10     Okay.  Administer the oath to Mr. Chargualaf;
11 okay?

12     THE CLERK:   (Addressing the Defendant:)  Raise
13 your right hand.

14     THE DEFENDANT:   (Complies)

15     **RANDY IGLESIAS CHARGUALAF, SWORN**

16     THE CLERK:   Do you solemnly swear to the tell
17 the truth, the whole truth and nothing but the truth so
18 help you God?

19     THE DEFENDANT:   Yes.

20     THE CLERK:  State your name.

21     THE DEFENDANT:   Randy Ignacio Chargualaf.

22     THE COURT:   Mr. Chargualaf, do you understand
23 that you are now under oath and if you answer to my
24 questions falsely, your answers may be used against you?

25     THE DEFENDANT:   (Response not audible.)

*Jeanette B. Roberts, Court Transcriber, Superior Court of Guam*

1       THE COURT:    (Indiscernible) prosecution for
2   perjury and making a false statement.  Do you understand
3   that?

4       THE DEFENDANT:    I do.

5       THE COURT:    How old are you?

6       THE DEFENDANT:    Thirty.

7       THE COURT:    How far did you go to school?

8       THE DEFENDANT:    Tenth.

9       THE COURT:    Have you ever been treated for any
10   mental illness or addiction to drugs?

11       THE DEFENDANT:    No.

12       THE COURT:    Before you came to court today, did
13   you take any drugs, medication or drink any alcohol?

14       THE DEFENDANT:    No.

15       THE COURT:    Have you received a copy of the
16   complaint against you and discuss the charges in the
17   complaint with your lawyer, Mr. Timblin?

18       THE DEFENDANT:    Yes.

19       THE COURT:    Are you satisfied with the advice
20   given to you by Mr. Timblin in this case?

21       THE DEFENDANT:    Yes.

22       THE COURT:    The plea agreement I have before me,
23   did you read it, understand it, voluntarily agree to all
24   terms of this agreement?  Did you sign it?

25       THE DEFENDANT:    Yes.

1         THE COURT:    Are you voluntarily pleading guilty

2    today?

3         THE DEFENDANT:    Yes.

4         THE COURT:    Are you pleading guilty to Assault

5    which is a Misdemeanor?

6         THE DEFENDANT:    Yes.

7         THE COURT:    And the maximum sentence I could

8    impose upon you is one year in prison, a fine of $1,000.00.

9    Do you understand that?

10         THE DEFENDANT:    Yes.

11         THE COURT:    Waive the reading of the complaint?

12         MR. TIMBLIN:    We do, Your Honor.    We stipulate

13    to the affidavit of probable cause.

14         THE COURT:    Do you wish to be sentenced today?

15         MR. TIMBLIN:    Yes.

16         THE COURT:    Okay.    Mr. Chargualaf, how do you

17    wish to plead now to Assault as a Misdemeanor; guilty or

18    not guilty?

19         THE DEFENDANT:    Guilty.

20         THE COURT:    It is the finding of this Court in

21    *People of Guam versus Randy Ignacio Chargualaf* that the

22    Defendant is fully competent (indiscernible) an informed

23    plea, that his plea of guilty is a voluntary plea supported

24    by independent basis of fact within in each of the

25    essential elements of the offense.    Your plea is therefore

1   accepted.   You are now judged guilty of one count of

2   Assault as a Misdemeanor in CM1544-98.   Ten days in

3   Department of Corrections and that will be served

4   concurrently with your other case.   You will be placed on a

5   one year parole, concurrently with the other case in which

6   you must stay away from the victim, Nemesio Fernaliso

7   (phonetically spelled).   That means you must not see him

8   personally or call him up, send messages, use other people

9   to communicate on your behalf, that you not threaten,

10  assault or harass him; obey all laws of Guam, the orders of

11  this Court and the Probation Office; okay?

12          THE DEFENDANT:    Okay.

13          THE COURT:    That's it.

14          MR. TIMBLIN:    Thank you, Your Honor.

15          ** Whereupon the proceedings concluded. **

16

17

18

19

20

21

22

23

24

25

1

# C E R T I F I C A T E

2          I, Jeanette B. Roberto, do hereby certify that the foregoing

3  pages, one through six (6) inclusive, comprise the true and correct transcript

4  of the Change of Plea, heard in the following case:

5                     Superior Court Case No. CM1544-98

6                      *PEOPLE OF GUAM, Plaintiff*

7                           *versus*

8                 *RANDY I. CHARGUALAF, Defendant.*

9  heard before the Honorable Judge Alberto C. Lamorena III, heard on

10 February 6, 2001, recorded on Tape Number T01-0231.

11         This transcript of this proceedings was transcribed by me to the

12 best of my knowledge, skill and ability.

13         Dated this 15th day of June, 2006.

14

15                                                    _____

16                                                    JEANETTE B. ROBERTO

17

18

19

20

21

22

23

24

25

*Jeanette B. Roberto, Court Transcriber, Superior Court of Guam*